ORIGINAL
22

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

NETJUMPER, L.L.C.
a Michigan limited liability corporation,

        Plaintiff,

     v.

GOOGLE INC.,
a California corporation

        Defendant.

Civil Action No. 04-70366-CV
Hon. Julian Abele Cook

Magistrate Judge R. Steven Whalen

DEMAND FOR JURY TRIAL

FILED '04 MAR 26 P2:36 U.S. DIST COURT EAST...

---

Andrew Kochanowski
Sommers, Schwartz, Silver & Schwartz, P.C.
2000 Town Center, Suite 900
Southfield, MI 48075

*Attorney for NetJumper, LLC*

Kathleen A. Lang (P34695)
L. Pahl Zinn (P57516)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226-3425
(313) 223-3500

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804

Howard G. Pollack
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063

*Attorneys for Google Inc.*

## COUNTERCLAIM

Defendant Google asserts the following counterclaims against Plaintiff NetJumper:

### Parties

1.    Counterclaim Plaintiff Google is a Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043, and maintains an office within this judicial district at 39555 Orchard Hill Place, Suite 600, Novi, Michigan 48375.

1

Dockets.Justia.com

2.      On information and belief, Counterclaim Defendant NetJumper, L.L.C., is a Michigan limited liability corporation with offices in Southfield, Michigan, within this judicial district.

## Jurisdiction

3.      These counterclaims arise under the Patent Law of the United States, as enacted under Title 35 of the United States Code; the Lanham Act and the Anticybersquatting Consumer Protection Act of the United States, as enacted under Title 15 of the United States Code; the Michigan State Consumer Protection Act, as enacted under Chapter 445 § 903 *et seq.* of Michigan State Law; and the provisions of the Federal Declaratory Judgment Act, as enacted under Title 28 of the United States Code.  The jurisdiction of this Court is proper under Section 39(a) of the Lanham Act, 15 U.S.C. § 1121(a), 35 U.S.C. § 271 *et seq.*, and 28 U.S.C. §§ 1331, 1338, 1367, and 2201-2202.

## Venue

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## Facts Common To Counts V - XII

### A.    The GOOGLE Marks

5.      Google is the owner of the name and trademark GOOGLE (the "GOOGLE Mark") which it uses in connection with its highly popular Internet search engine, as well as for a variety of other goods and services including software, hardware, online directories, newsgroups, website indexing services, and areas identified in paragraph 12, below.

6.      Google is also the owner of the www.google.com Internet domain name (the "Google Domain").

7.      Google registered the Google Domain in September 1997 and has used it continuously since that time to operate the Google.com website (the "Google Site") where Google makes its search engine and various other goods and services available to the public.

8.      Google has used the same distinctive and recognizable trade dress on the Google Site for many years (the "Google Trade Dress").

9.    Google has used the GOOGLE Mark continuously and substantially exclusively since September 1997.

10.    Google also uses a stylized, color version of its GOOGLE Mark, which it has used in this form or in a prior form continuously and substantially exclusively since September 1997:



(the "GOOGLE Logo").

11.    At various times, and as early as 1999, Google has used special versions of its GOOGLE Mark on the Google Site to denote particular holidays or historical events, including the following examples used by Google in the past:



Winter 2003



MC Escher's birthday 2003



Thanksgiving 2003



Einstein's Birthday 2003

12.    Google owns a U.S. Federal Trademark registration for GOOGLE under Registration No. 2,806,075.  This registration is valid, subsisting and uncancelled, and a true copy is annexed as Exhibit A.  The GOOGLE registration covers:

computer services, namely, providing software interfaces available over a network in order to create a personalized on-line information service; extraction and retrieval of information and data mining by means of global computer networks; creating indexes of information, indexes of web sites and indexes of other information sources in connection

with global computer networks; providing information from searchable indexes and databases of information, including text, electronic documents, databases, graphics and audio visual information, by means of global computer information networks; providing electronic mail and workgroup communications services over computer networks; and providing multiple user access to proprietary collections of information by means of global computer information networks.

13.    Over the past six years, consumers have become familiar with the GOOGLE Mark, the Google Domain and the Google Trade Dress, and recognize them as the source of Google's renowned Internet search services and other quality goods and services.

14.    The GOOGLE Mark and Google Trade Dress have achieved a degree of fame and distinction among the relevant public due to the inherent distinctiveness of the marks, and by virtue of their long, exclusive, and widespread use by Google.

**B.    Google's Web APIs**

15.    Google makes available its Application Programming Interface (the "Google Web APIs") to the public pursuant to certain Terms and Conditions (the "Google Web APIs Terms and Conditions").

16.    Upon using the Google Web APIs, parties (hereinafter "authorized users") agree to be bound by the Google Web APIs Terms and Conditions.

17.    The Google Web APIs Terms and Conditions prohibit non-personal commercial use of the Google Web APIs .

18.    The Google Web APIs Terms and Conditions prohibit use of the Google search results generated by the Google Web APIs with an existing product or service that competes with products or services offered by Google.

19.    The Google Web APIs Terms and Conditions prohibit use of the Google Web APIs and of Google's trademarks, other than as specified in the Google Web APIs Terms and Conditions, without Google's prior written consent.

20.    An authorized user of the Google Web APIs may access search results that comprise a summary, a URL, and a snippet.

21.    An authorized user of the Google Web APIs is not given access to the GOOGLE Marks, including the GOOGLE Logo, or the Google Trade Dress.

22.    An authorized user of the Google Web APIs is not provided the search results in a format that incorporates the GOOGLE Mark or Google Trade Dress as used by Google on the search results page of the Google Site.

23.    The Google Web APIs Terms and Conditions further prohibits an authorized user of the Google Web APIs from using Google's trademarks in a manner that tarnishes, infringes, or dilutes Google's trademarks.

**C.    NetJumper's Unauthorized Use of GOOGLE, GOOGRAB, and the Google Web APIs**

24.    Upon information and belief, NetJumper is the owner of the www.goograb.com domain (the "Goograb Domain") and uses the Goograb Domain to provide content at the Goograb.com site (the "Goograb Site").

25.    Upon information and belief, NetJumper uses the Goograb Domain and Goograb Site to advertise, distribute, sell, and/or offer to sell Internet search engine services.

26.    Upon information and belief, NetJumper uses the Goograb Domain and Goograb Site to advertise, distribute, sell and/or offer to sell computer software for Internet search engine indexing under the name Linkzilla.

27.    NetJumper is using the term GOOGRAB in connection with the sale, advertisement, offer for sale, and/or distribution of Internet search engine services and Internet search engine indexing software.

28.    NetJumper is also using a stylized and color version of the GOOGRAB term, which characteristics create the same commercial impression as Google's GOOGLE trademarks, including the famous GOOGLE Logo:

   

NetJumper's GOOGRAB Term                Google's GOOGLE Mark

29.     Such use by NetJumper of the GOOGRAB term has been and continues to be without Google's permission or authorization.

30.     NetJumper is using the GOOGLE Mark, including the stylized color version of the GOOGLE Mark and the Google Trade Dress, which would not otherwise be accessible by an authorized user of the Google Web APIs in connection with the sale, advertisement, offer for sale, and/or distribution of Internet search engine services and Internet search engine indexing software on the Goograb Site:

   

NetJumper's Goograb.com Site           Google's Google.com Site

31.     Such use by NetJumper of the GOOGLE Marks and Google Trade Dress has been and continues to be without Google's permission or authorization.

32.    NetJumper makes the following statements on the Goograb Site: "GooGrab uses Google for results so you can use any and all Google-specific commands;" "If you are serious about searching, and want to save time using the leading search engine, GooGrab is an excellent solution. GooGrab uses Google results;" "GooGrab uses the Linkzilla bookmark injector software to put Google search results in your bookmarks;" and "GooGrab would like to thank the visionary people at Google for publishing their Application Programming Interface; we look forward to working with them for a very long time."

33.    Upon information and belief, these statements and the use of Google's trademarks and trade dress by NetJumper give the false and misleading impression that NetJumper's products and services are endorsed, promoted, condoned, authorized by or otherwise affiliated with Google.

34.    Upon information and belief, NetJumper's use of the GOOGLE Mark, the Google Trade Dress, and the GOOGRAB term causes a likelihood of confusion, mistake or deception with Google.

35.    Upon information and belief, NetJumper's use of the GOOGLE Mark, the Google Trade Dress, and the GOOGRAB term causes actual dilution of Google's rights in its GOOGLE Mark and Google Trade Dress.

36.    Upon information and belief, the aforesaid conduct of NetJumper irreparably injures Google by threatening a loss of reputation and quality standards embodied in its GOOGLE Mark and Google Trade Dress for which there is no adequate remedy at law.

37.    Upon information and belief, NetJumper is using the Google Web APIs in violation of the Terms and Conditions.

38.    Upon information and belief, NetJumper is using the Google Web APIs for non-personal commercial purposes.

39.    Upon information and belief, NetJumper is using the Google Web APIs in connection with a product or service that competes with products or services offered by Google.

40.     Upon information and belief, NetJumper is using the GOOGLE marks in violation of the Google Web APIs Terms and Conditions agreement.

41.     Upon information and belief, NetJumper has breached the terms of the Google Web APIs Terms and Conditions agreement with Google.

42.     Upon information and belief, NetJumper registered and/or is using the Goograb Domain, www.goograb.com, in bad faith.

43.     Upon information and belief, NetJumper's use of the Goograb Domain causes confusion with and dilutes Google's federally registered GOOGLE Mark.

### Count I: Declaratory Relief Regarding Non-Infringement of the '172 Patent

44.     The allegations of paragraphs 1-4 above are incorporated herein by reference.

45.     Google does not infringe and has not infringed any claim of the '172 patent, literally or under the doctrine of equivalents.

46.     In its Complaint, NetJumper alleges that Google infringes the '172 patent. Because Google denies that it infringes the '172 patent, an actual and justiciable controversy has arisen and now exists between Google and NetJumper as to whether Google infringes the '172 patent.

47.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Google requests the declaration of the Court that Google does not infringe the '172 patent.

### Count II: Declaratory Relief Regarding Non-Infringement of the '655 Patent

48.     The allegations of paragraphs 1-4 above are incorporated herein by reference.

49.     Google does not infringe and has not infringed any claim of the '655 patent, literally or under the doctrine of equivalents.

50.     In its Complaint, NetJumper alleges that Google infringes the '655 patent. Because Google denies that it infringes the '655 patent, an actual and justiciable controversy has arisen and now exists between Google and NetJumper as to whether Google infringes the '655 patent.

51.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Google requests the declaration of the Court that Google does not infringe the '655 patent.

### Count III: Declaratory Relief Regarding Invalidity of the '172 patent

52.    The allegations of paragraphs 1-4 above are incorporated herein by reference.

53.    The claims of the '172 patent are invalid because they fail to satisfy the conditions for patentability specified in Title 35 of the United States Code, including, *inter alia*, §§ 101, 102, 103, and 112.

54.    In its complaint, NetJumper alleges that the '172 patent was duly and legally issued. Google denies that the '172 patent was duly and legally issued because it fails to satisfy the conditions of patentability specified in Title 35 of the United States Code. An actual and justiciable controversy has arisen and now exists between Google and NetJumper as to the validity of the '172 patent.

55.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Google requests the declaration of the Court that the claims of the '172 patent are invalid.

### Count IV: Declaratory Relief Regarding Invalidity of the '655 patent

56.    The allegations of paragraphs 1-4 above are incorporated herein by reference.

57.    The claims of the '655 patent are invalid because they fail to satisfy the conditions for patentability specified in Title 35 of the United States Code, including, *inter alia*, §§ 101, 102, 103, and 112.

58.    In its complaint, NetJumper alleges that the '655 patent was duly and legally issued. Google denies that the '655 patent was duly and legally issued because it fails to satisfy the conditions of patentability specified in Title 35 of the United States Code. An actual and justiciable controversy has arisen and now exists between Google and NetJumper as to the validity of the '655 patent.

59.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Google requests the declaration of the Court that the claims of the '655 patent are invalid.

### Count V: Trademark Infringement

60.     The allegations of paragraphs 1-43 above are incorporated herein by reference.

61.     Upon information and belief, NetJumper's conduct as aforesaid constitutes trademark infringement in that it is the use in commerce, without the consent of the registrant, Google, of a reproduction, copy or colorable imitation of the registered GOOGLE Mark in connection with the sale, offering for sale, solicitation for, distribution, or advertising of its Internet search engine and Internet search engine indexing software, in connection with which such use is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of NetJumper with Google, or as to the origin, sponsorship or approval of NetJumper's goods and services by Google, in contravention of Section 32 of the Lanham Act, 15 U.S.C. §1114.

62.     Upon information and belief, the aforesaid acts constitute willful infringement.

63.     By reason of the acts of NetJumper alleged herein, Google has suffered, is suffering and, unless NetJumper is restrained, will continue to suffer, serious irreparable harm for which there is no adequate remedy at law.

64.     Upon information and belief, Google is entitled to treble damages for NetJumper's willful infringement, the profits realized from NetJumper's infringing conduct, both in amounts to be determined at trial, costs of this action, and an injunction to prevent continued and future infringement of Google's GOOGLE Mark.

65.     Upon information and belief, NetJumper's conduct in infringing Google's GOOGLE Mark was done willfully and intentionally. This conduct is the kind for which the law allows an award of reasonable attorney's fees to Google.

66.     Money damages alone will not adequately remedy Google's injuries.

### Count VI: False Representation

67.     The allegations of paragraphs 1-43 above are incorporated herein by reference.

68.     Upon information and belief, NetJumper's conduct as aforesaid constitutes false representation in that it is the misleading and unauthorized use in commerce in connection with

10

goods or services of a word, term, name, symbol or device, or a combination thereof, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of NetJumper with Google, or as to the origin, sponsorship or approval of NetJumper's goods and/or services by Google, in contravention of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

69.    Upon information and belief, NetJumper has made such false representations willfully and intentionally.

70.    By reason of the acts of NetJumper alleged herein, Google has suffered, is suffering and, unless NetJumper is restrained, will continue to suffer, serious irreparable harm for which there is no adequate remedy at law.

71.    Upon information and belief, Google is entitled to treble damages for NetJumper's willful false representation, the profits realized from NetJumper's false representation, both in amounts to be determined at trial, costs of this action, and an injunction to prevent continued and future false representation of Google's GOOGLE Mark.

72.    Upon information and belief, NetJumper's false representation in connection with Google's GOOGLE Mark and Google Trade Dress was done willfully and intentionally. This conduct is the kind for which the law allows an award of reasonable attorney's fees to the prevailing party.

73.    Money damages alone will not adequately remedy Google's injuries.

### Count VII: Federal Trademark Dilution

74.    The allegations of paragraphs 1-43 above are incorporated herein by reference.

75.    Upon information and belief, Google's GOOGLE Mark and Google Trade Dress are and long have been famous marks within the meaning of Section 43(c)(1) of the Lanham Act, 15 U.S.C. §1125(c)(1).

76.    Upon information and belief, NetJumper's conduct as aforesaid constitutes trademark dilution in that it is the use in commerce of marks that cause the dilution of the

distinctive quality of Google's famous GOOGLE Mark and Google Trade Dress, in contravention of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

77.     Upon information and belief, NetJumper has caused such dilution of Google's famous GOOGLE Mark and Google Trade Dress willfully and intentionally.

78.     By reason of the acts of NetJumper alleged herein, Google has suffered, is suffering and, unless NetJumper is restrained, will continue to suffer, serious irreparable harm for which there is no adequate remedy at law.

79.     Upon information and belief, Google is entitled to treble damages for NetJumper's willful dilution, the profits realized from NetJumper's conduct, both in amounts to be determined at trial, costs of this action, and an injunction to prevent continued and future dilution of Google's GOOGLE Mark and Google Trade Dress.

80.     Upon information and belief, NetJumper's conduct in diluting Google's GOOGLE Mark and Google Trade Dress was done willfully and intentionally. This conduct is the kind for which the law allows an award of reasonable attorney's fees to the prevailing party.

81.     Money damages alone will not adequately remedy Google's injuries.

## Count VIII: State Law Unfair Competition

82.     The allegations of paragraphs 1-43 above are incorporated herein by reference.

83.     Upon information and belief, NetJumper's conduct as aforesaid constitutes unfair competition with Google's GOOGLE Mark and Google Trade Dress because NetJumper's conduct causes a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of its goods or services; constitutes the use of deceptive representations in connection with its goods and services; and/or constitutes a representation that its goods or services have sponsorship, approval, characteristics, or uses that they do not have, in contravention of Michigan Compiled Laws § 445.903 preventing unfair practices.

84.     Upon information and belief, NetJumper's actions constitute a persistent and knowing violation of Michigan Compiled Laws § 445.903.

85.   By reason of the acts of NetJumper alleged herein, Google has suffered, is suffering and, unless NetJumper is restrained, will continue to suffer, serious irreparable harm for which there is no adequate remedy at law.

86.   Google is entitled to an injunction to prevent continued and future dilution of Google's trademark and trade dress rights, Google's actual damages, and reasonable attorney's fees.

87.   Money damages alone will not adequately remedy Google's injuries.

### Count IX: Common Law Unfair Competition and Trademark Infringement

88.   The allegations of paragraphs 1-43 above are incorporated herein by reference.

89.   Upon information and belief, and as described above, Google has used its GOOGLE Mark and Google Trade Dress since September 1997, and has used the marks continuously since that time.  Google's GOOGLE Mark and Google Trade Dress are or have become distinctive of the goods and services in connection with which they are used.

90.   Upon information and belief, NetJumper's use of the GOOGLE mark and Google Trade Dress as detailed above constitutes an unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and is intended to allow NetJumper to appropriate the value of the reputation Google has acquired in Google's own goods and services and to mislead the public and cause confusion and mistake.  NetJumper's actions as set forth above constitute both common law trademark infringement and/or unfair competition under the common law of the State of Michigan.

91.   By reason of the acts of NetJumper alleged herein, Google has suffered, is suffering and, unless NetJumper is restrained, will continue to suffer, serious irreparable harm for which there is no adequate remedy at law.

92.   Google is entitled to damages for NetJumper's infringement and unfair competition, including but not limited to NetJumper's profits realized from NetJumper's conduct and exemplary or punitive damages, in amounts to be determined at trial, , and an injunction to

prevent continued and future deceptive actions damaging to its GOOGLE Mark and Google Trade Dress.

93.    Money damages alone will not adequately remedy Google's injuries.

### Count X: Violation of Anti-Cybersquatting Consumer Protection Act

94.    The allegations of paragraphs 1-43 above are incorporated herein by reference.

95.    Upon information and belief, NetJumper's conduct as aforesaid constitutes a violation of the Anti-Cybersquatting Consumer Protection Act in that it is the registration, trafficking in and/or use in bad faith of the Goograb.com domain name, which is confusingly similar to Google's distinctive, famous, federally registered GOOGLE Mark, in contravention of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

96.    By reason of NetJumper's bad faith registration and use of the Goograb.com domain name, Google has suffered, is suffering and, unless NetJumper is restrained, will continue to suffer, serious irreparable harm for which there is no adequate remedy at law.

97.    Upon information and belief, Google is entitled to an injunction to prevent the continued and future use of the Goograb.com domain name and an order directing the forfeiture or cancellation of the Goograb.com domain name, or its transfer to Google.

98.    Upon information and belief, NetJumper's bad faith registration and use of the Goograb.com domain name was done willfully and intentionally, and is the kind of conduct that entitles Google to treble damages, NetJumper's profits realized from NetJumper's conduct, both in amounts to be determined at trial, costs of this action, and reasonable attorney's fees.

99.    Upon information and belief, NetJumper's bad faith registration and use of the Goograb.com domain name entitles Google to seek an alternative damages award in the amount of the statutory maximum of $100,000 per domain name as permitted by Section 35(d) of the Lanham Act, 15 U.S.C. § 1117(d).

100.    Money damages alone will not adequately remedy Google's injuries.

### Count XI: Breach of Contract

101.    The allegations of paragraphs 1-43 above are incorporated herein by reference.

102.    Upon information and belief, by using the Google Web APIs, NetJumper agreed to abide by the Google Web APIs Terms and Conditions and consequently NetJumper entered into a valid and enforceable agreement (the "Agreement") with Google governing NetJumper's use of the Google Web APIs and Google trademarks.

103.    Upon information and belief, NetJumper has breached that Agreement by: (i) using the Google Web APIs for non-personal commercial purposes; (ii) using the Google Web APIs with a product or service that competes with products or services offered by Google; and (iii) using the GOOGLE marks without the appropriate prior written permission from Google.

104.    Upon information and belief, all conditions precedent to Google's right to bring this action and to recover the requested relief have been performed, have occurred, or have been waived.

105.    Upon information and belief, as a direct and proximate result of NetJumper's willful breach of contract, Google has suffered, and will continue to suffer, damage, although such damages are not readily ascertainable or measurable.

106.    Money damages alone will not adequately remedy Google's injuries.

### Count XII: Quantum Meruit/Unjust Enrichment

107.    The allegations of paragraphs 1-43 above are incorporated herein by reference.

108.    Upon information and belief, and in the alternative, the conduct of NetJumper described herein, was without authorization and resulted in an improper and inequitable gain by NetJumper and loss to Google.

109.    Upon information and belief, as a result of such conduct, the fundamental principles of justice and equity and good conscience demand that NetJumper repay Google for the benefit obtained by NetJumper from its unlawful activities.

110.    Google seeks, in the alternative, to recover such actual and consequential damages as a result of NetJumper's unlawful activities to the extent allowed by law.

**Prayer for Relief**

Google respectfully requests a judgment against NetJumper as follows:

A.      That NetJumper take nothing by its Complaint;

B.      A declaration that Google does not infringe and has not infringed the '172 patent;

C.      A declaration that Google does not infringe and has not infringed the '655 patent;

D.      A declaration that the '172 patent is invalid;

E.      A declaration that the '655 patent is invalid;

F.      That NetJumper, its officers, directors, affiliates, employees, agents, servants, attorneys and representatives and all those in privity or acting in concert with NetJumper, be preliminarily and permanently enjoined and restrained from, directly or indirectly:

        1.      Using the GOOGLE Mark, the Google Trade Dress, the GOOGRAB term, the Goograb.com domain name, or any marks or domain names similar thereto, alone or in combination with other words, names, styles, titles, designs or marks in connection with the manufacture, distribution, sale, advertising, marketing, promotion, or solicitation for software or any related product or service;

        2.      Using in any way any other mark, domain name, or designation so similar to the GOOGLE Mark or the Google Trade Dress as to be likely to cause confusion, mistake or deception;

        3.      Falsely designating the origin, sponsorship, or affiliation of the NetJumper goods and services in any manner;

        4.      Otherwise using the GOOGLE Mark, the Google Trade Dress, the GOOGRAB term, or the Goograb.com domain name;

        5.      Using any trade practices whatsoever including those complained of herein, which tend to unfairly compete with or injure Google's business or trademarks and the goodwill pertaining thereto; and

        6.      Continuing to perform in any manner whatsoever any of the acts complained of in this complaint;

G.     An order directing the forfeiture or cancellation of the Goograb.com domain name, or its transfer to Google;

H.     That NetJumper be required to pay to Google compensatory damages for the injuries sustained by Google, including but not limited to exemplary or punitive damages, together with pre- and post-judgment interest, and a sum equal to three times the damages for any Lanham Act violation, to the extent allowed by 15 U.S.C. §1117 and/or the statutes and common law of the State of Michigan;

I.      That NetJumper account for and pay over to Google all profits derived from its acts complained of herein, enhanced as the Court deems just, together with pre- and post-judgment interest to the extent allowed by 15 U.S.C. §1117 and/or the statutes and common law of the State of Michigan, and at the maximum rate allowed by law;

J.      That NetJumper account for and pay to Google the costs and reasonable attorneys' fees in connection with this action, to the extent allowed by 15 U.S.C. §1117 and/or the statutes and common law of the State of Michigan;

K.     That NetJumper file with this Court and serve on counsel for Google within thirty (30) days after the entry of an injunction issued by this Court, a sworn written statement specifying in detail NetJumper's compliance with the injunction;

L.      That the Court enter judgment against NetJumper and in favor of Google and that NetJumper's complaint be dismissed with prejudice;

M.     That the Court enter judgment that this case is an exceptional case under 15 U.S.C. 1117 and 1125 and 35 U.S.C. § 285, and enter a judgment awarding Google costs and reasonable attorneys' fees; and

N.     That the Court grant Google whatever further relief the Court deems just and proper.

## Demand For Jury Trial

Defendant-Counterclaimant hereby demands a trial by jury as to all issues so triable.

By: _____

Kathleen A. Lang (P34695)
L. Pahl Zinn (P57516)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226-3425
(313) 223-3500

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804

Howard G. Pollack
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063

*Attorneys for Google Inc.*

Dated: March 26, 2004

04-70366
Attach A
3/26/4

A

NetJumper, L.L.C. v Google Inc.
Case No. 04-70366-CV

## PATENT, TRADEMARK, COPYRIGHT INFORMATION

1.     If this is a patent action, please respond:

| PATENT NO. | DATE OF PATENT | PATENTEE |
|---|---|---|
| 5,890,172 | March 30, 1999 | Tenretni Dynamics, Inc. |
| 6,226,655 | May 1, 2001 | NetJumper, Inc. |

2.     If this is a trademark action, please respond:

| MARK | REG. NO. | REG. DATE | GOODS |
|---|---|---|---|
| GOOGLE | 2806075 | 1/20/2004 | See attached TESS Printout |

3.     If this is a copyright action, please respond:

COPYRIGHT REG. NO.     TITLE OF WORK          AUTHOR OF WORK

_____

_____

Attorney's Signature
Kathleen A. Lang (P34695)
L. Pahl Zinn (P57516)

Dated:  March 26, 2004

DETROIT 28155-1 808875

http://tess2.uspto.gov/bin/showfield?f=doc&state=m5c21a.3.1



Home    Index    Search    System    eBusiness    News &    Contact Us
                            Alerts   Center      Notices

## Trademark Electronic Search System(Tess)

*TESS was last updated on Wed Mar 24 04:30:45 EST 2004*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP |

**Logout** | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

**Check Status** *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | GOOGLE |
| **Goods and Services** | IC 042. US 100 101. G & S: computer services, namely, providing software interfaces available over a network in order to create a personalized on-line information service; extraction and retrieval of information and data mining by means of global computer networks; creating indexes of information, indexes of web sites and indexes of other information sources in connection with global computer networks; providing information from searchable indexes and databases of information, including text, electronic documents, databases, graphics and audio visual information, by means of global computer information networks. FIRST USE: 19970900. FIRST USE IN COMMERCE: 19970300 |
| | IC 038. US 100 101 104. G & S: Providing electronic mail and workgroup communications services over computer networks; providing multiple user access to proprietary collections of information by means of global computer information networks. FIRST USE: 19970900. FIRST USE IN COMMERCE: 19970900 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial** | 75978469 |

http://tess2.uspto.gov/bin/showfield?f=doc&state=m5e21a.3.1

| | |
|---|---|
| **Number** | |
| **Filing Date** | September 16, 1999 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | December 4, 2001 |
| **Registration Number** | **2806075** |
| **Registration Date** | January 20, 2004 |
| **Owner** | (REGISTRANT) Google Inc. CORPORATION CALIFORNIA 2400 Bayshore Parkway Mountain View CALIFORNIA 94043 |
| **Attorney of Record** | Julie Anne Matheson |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | TOP | HELP

**HOME | INDEX | SEARCH | SYSTEM ALERTS | BUSINESS CENTER | NEWS&NOTICES | CONTACT US | PRIVACY STATEMENT**