*Attachment 25*

ORIGINAL

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NETJUMPER, L.L.C.
a Michigan limited liability corporation,

                    Plaintiff,                    Civil Action No. 04-70366-CV
                                                  Hon. Julian Abele Cook
        v.
                                                  Magistrate Judge R. Steven Whalen
GOOGLE INC.,
a California corporation
                                                  DEMAND FOR JURY TRIAL
                    Defendant.

---

Andrew Kochanowski                          Kathleen A. Lang (P34695)
Sommers, Schwartz, Silver & Schwartz, P.C.  L. Pahl Zinn (P57516)
2000 Town Center, Suite 900                 DICKINSON WRIGHT PLLC
Southfield, MI  48075                       500 Woodward Avenue, Suite 4000
                                            Detroit, MI 48226-3425
*Attorney for NetJumper, LLC*               (313) 223-3500

                                            Frank E. Scherkenbach
                                            FISH & RICHARDSON P.C.
                                            225 Franklin Street
                                            Boston, MA 02110-2804

                                            Howard G. Pollack
                                            FISH & RICHARDSON P.C.
                                            500 Arguello Street, Suite 500
                                            Redwood City, CA 94063-1568

                                            *Attorneys for Google Inc.*

---

## FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
## OF GOOGLE INCORPORATED TO NETJUMPER, L.L.C.'S COMPLAINT

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendant, Google

Incorporated ("Google"), hereby responds to the Complaint of Plaintiff NetJumper, L.L.C.

("NetJumper"), on personal knowledge as to its own activities and on information and belief as

to the activities of others, as follows.

Google denies each and every allegation contained in the Complaint that is not expressly

admitted below.  Any factual allegation admitted below is admitted only as to the specific

Dockets.Justia.com

admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that arguably follow from the admitted facts. Google denies that NetJumper is entitled to the relief requested or any other relief.

## PARTIES

1.      Google lacks sufficient information to admit or deny the allegations of paragraph 1, and, therefore, denies those allegations.

2.      Google admits that it does business in Michigan. Google denies the remaining allegations of paragraph 2.

## JURISDICTION AND VENUE

3.      Google admits that this action arises under the Patent Law of the United States, 35 U.S.C. § 271 et seq., and that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4.      Google admits the allegations of paragraph 4.

## THE PATENTS-IN-SUIT

5.      Google admits that U.S. Patent No. 5,890,172 (the '172 patent) issued on March 30, 1999. Google admits that U.S. Patent No. 6,226,655 (the '655 patent) issued on May 1, 2001. Google admits that the '655 patent is entitled "METHOD AND APPARATUS FOR RETREIVING DATA FROM A NETWORK USING LINKED LOCATION IDENTIFIERS." Google denies the remaining allegations of paragraph 5.

6.      Google lacks sufficient information to admit or deny the allegations of paragraph 6, and, therefore, denies those allegations.

## PATENT INFRINGEMENT

7.      Google admits that it provides Web searching and other services through its website at http://www.google.com. Google admits that it makes available through its website at http://labs.google.com technology that can be used to augment Google's searching technology. Google admits that a browser add-on search tool called the Google Toolbar was made available for downloading. Google admits that the Google Toolbar contains a feature called "Web

buttons" that include a "Next & Previous" feature. Google admits that technology called the Google Viewer was made available. Google admits that the Google Viewer contains a "continuously scrolling slide show" feature. Google admits that portions of the Google Toolbar and the Google Viewer were made by Google. Google admits that the Google Toolbar and Google Viewer are offered and/or used by Google. Google denies the remaining allegations of paragraph 7.

8.      Google admits that prior to the institution of this litigation, NetJumper communicated with Google concerning potential uses of technology purportedly developed by NetJumper. Google denies the remaining allegations of paragraph 8.

## AFFIRMATIVE DEFENSES

Defendant Google, as its Affirmative Defenses to the Complaint of NetJumper, states as follows:

### First Affirmative Defense

9.      Google does not infringe and has not infringed any claims of the '172 patent and/or the '655 patent (collectively the "patents-in-suit").

### Second Affirmative Defense

10.      The patents-in-suit are invalid because each fails to satisfy the conditions for patentability specified in the Patent Law of the United States, including, *inter alia*, 35 U.S.C. §§ 101, 102, 103, and 112.

### Third Affirmative Defense

11.      Plaintiff NetJumper is estopped, based on statements, representations, and admissions made during prosecution of the patent applications that resulted in the patents-in-suit and any related applications from asserting any interpretation of any claim of either of the patents-in-suit that would cover the Google Toolbar and/or Google Viewer.

### Fourth Affirmative Defense

12.      The relief sought by Plaintiff NetJumper is barred in whole or in part by the doctrine of unclean hands.

3

**Fifth Affirmative Defense**

13.    Google reserves the right to amend and/or supplement these Affirmative

Defenses.


## COUNTERCLAIMS

Defendant Google asserts the following counterclaims against Plaintiff NetJumper:

### Parties

14.    Counterclaim Plaintiff Google is a Delaware corporation with its principal place

of business at 1600 Amphitheatre Parkway, Mountain View, California 94043, and maintains an

office within this judicial district at 39555 Orchard Hill Place, Suite 600, Novi, Michigan 48375.

15.    On information and belief, Counterclaim Defendant NetJumper, L.L.C., is a

Michigan limited liability corporation with offices in Southfield, Michigan, within this judicial

district.

### Jurisdiction

16.    These counterclaims arise under the Patent Law of the United States, as enacted

under Title 35 of the United States Code; the Lanham Act and the Anticybersquatting Consumer

Protection Act of the United States, as enacted under Title 15 of the United States Code; the

Michigan State Consumer Protection Act, as enacted under Chapter 445 § 903 *et seq.* of

Michigan State Law; and the provisions of the Federal Declaratory Judgment Act, as enacted

under Title 28 of the United States Code.  The jurisdiction of this Court is proper under Section

39(a) of the Lanham Act, 15 U.S.C. § 1121(a), 35 U.S.C. § 271 *et seq.*, and 28 U.S.C. §§ 1331,

1338, 1367, and 2201-2202.

### Venue

17.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## Facts Common To Counts V - XII

**A.    The GOOGLE Marks**

18.    Google is the owner of the name and trademark GOOGLE (the "GOOGLE Mark") which it uses in connection with its highly popular Internet search engine, as well as for a variety of other goods and services including software, hardware, online directories, newsgroups, website indexing services, and areas identified in paragraph 25, below.

19.    Google is also the owner of the www.google.com Internet domain name (the "Google Domain").

20.    Google registered the Google Domain in September 1997 and has used it continuously since that time to operate the Google.com website (the "Google Site") where Google makes its search engine and various other goods and services available to the public.

21.    Since that time, Google has used a distinctive and recognizable trade dress on the Google Site (the "Google Trade Dress").

22.    Google has used the GOOGLE Mark continuously and substantially exclusively since September 1997.

23.    Google also uses a stylized, color version of its GOOGLE Mark, which it has used in this form or in a prior form continuously and substantially exclusively since September 1997:



(the "GOOGLE Logo").

24.     At various times, and as early as 1999, Google has used special versions of its

GOOGLE Mark on the Google Site to denote particular holidays or historical events, including

the following examples used by Google in the past:



Winter 2003



MC Escher's birthday 2003



Thanksgiving 2003



Einstein's Birthday 2003

25.     Google owns a U.S. Federal Trademark registration for GOOGLE under

Registration No. 2,806,075.  This registration is valid, subsisting and uncancelled, and a true

copy is annexed as Exhibit A.  The GOOGLE registration covers:

> computer services, namely, providing software interfaces available over a network in
> order to create a personalized on-line information service; extraction and retrieval of
> information and data mining by means of global computer networks; creating indexes of
> information, indexes of web sites and indexes of other information sources in connection
> with global computer networks; providing information from searchable indexes and
> databases of information, including text, electronic documents, databases, graphics and
> audio visual information, by means of global computer information networks; providing
> electronic mail and workgroup communications services over computer networks; and
> providing multiple user access to proprietary collections of information by means of
> global computer information networks.

26.     Over the past six years, consumers have become familiar with the GOOGLE

Mark, the Google Domain and the Google Trade Dress, and recognize them as the source of

Google's renowned Internet search services and other quality goods and services.

27.     The GOOGLE Mark and Google Trade Dress have achieved a degree of fame and distinction among the relevant public due to the inherent distinctiveness of the marks, and by virtue of their long, exclusive, and widespread use by Google.

**B.     Google's Web APIs**

28.     Google makes available its Application Programming Interface (the "Google Web APIs") to the public pursuant to certain Terms and Conditions (the "Google Web APIs Terms and Conditions").

29.     Upon using the Google Web APIs, parties (hereinafter "authorized users") agree to be bound by the Google Web APIs Terms and Conditions.

30.     The Google Web APIs Terms and Conditions prohibit non-personal commercial use of the Google Web APIs .

31.     The Google Web APIs Terms and Conditions prohibit use of the Google search results generated by the Google Web APIs with an existing product or service that competes with products or services offered by Google.

32.     The Google Web APIs Terms and Conditions prohibit use of the Google Web APIs and of Google's trademarks, other than as specified in the Google Web APIs Terms and Conditions, without Google's prior written consent.

33.     An authorized user of the Google Web APIs may access search results that comprise a summary, a URL, and a snippet.

34.     An authorized user of the Google Web APIs is not given access to the GOOGLE Marks, including the GOOGLE Logo, or the Google Trade Dress.

35.     An authorized user of the Google Web APIs is not provided the search results in a format that incorporates the GOOGLE Mark or Google Trade Dress as used by Google on the search results page of the Google Site.

36.     The Google Web APIs Terms and Conditions further prohibits an authorized user of the Google Web APIs from using Google's trademarks in a manner that tarnishes, infringes, or dilutes Google's trademarks.

**C.    NetJumper's Unauthorized Use of GOOGLE, GOOGRAB, the Google Trade Dress, and the Google Web APIs**

37.    Upon information and belief, NetJumper is the owner of the www.goograb.com domain (the "Goograb Domain") and has used the Goograb Domain to provide content at the Goograb.com site (the "Goograb Site").

38.    Upon information and belief, NetJumper has used the Goograb Domain and Goograb Site to advertise, distribute, sell, and/or offer to sell Internet search engine services.

39.    Upon information and belief, NetJumper has used the Goograb Domain and Goograb Site to advertise, distribute, sell, license, offer to sell and/or offer to license computer software and/or technology for Internet search engine indexing and navigation under the names Linkzilla and Bookmarks2.

40.    Upon information and belief, NetJumper has used the term GOOGRAB in connection with the sale, license, advertisement, offer for sale, offer to license, and/or distribution of Internet search engine services, computer software and/or technology.

41.    NetJumper has also used a stylized and color version of the GOOGRAB term, which characteristics create the same commercial impression as Google's GOOGLE trademarks, including the famous GOOGLE Logo:



NetJumper's GOOGRAB Term
(Goograb.com Site as of March 2004)



Google's GOOGLE Mark
(Google.com Site as of March 2004)

42.    Such use by NetJumper of the GOOGRAB term has been without Google's permission or authorization.

43.    NetJumper has used the GOOGLE Mark, including the stylized color version of the GOOGLE Mark and the Google Trade Dress, which would not otherwise be accessible by an authorized user of the Google Web APIs in connection with the sale, advertisement, offer for sale, and/or distribution of Internet search engine services and Internet search engine indexing software on the Goograb Site:

 

NetJumper's Goograb.com Site
as of March 2004

Google's Stylized Color Version of the Mark and the Google Trade Dress from the Google.com Site as of March 2004

44.    Such use by NetJumper of the GOOGLE Marks and Google Trade Dress has been without Google's permission or authorization.

45.    NetJumper made the following statements on the Goograb Site: "GooGrab uses Google for results so you can use any and all Google-specific commands;" "If you are serious about searching, and want to save time using the leading search engine, GooGrab is an excellent solution. GooGrab uses Google results;" "GooGrab uses the Linkzilla bookmark injector software to put Google search results in your bookmarks;" and "GooGrab would like to thank the visionary people at Google for publishing their Application Programming Interface; we look forward to working with them for a very long time."

46.    Upon information and belief, these statements and the use of Google's trademarks and trade dress by NetJumper has given the false and misleading impression that NetJumper's products and services are endorsed, promoted, condoned, authorized by or otherwise affiliated with Google.

47.    Upon information and belief, NetJumper's use of the GOOGLE Mark, the Google Trade Dress, and the GOOGRAB term has caused a likelihood of confusion, mistake or deception with Google.

48.    Upon information and belief, NetJumper's use of the GOOGLE Mark, the Google Trade Dress, and the GOOGRAB term has caused actual dilution of Google's rights in its GOOGLE Mark and Google Trade Dress.

49.    Upon information and belief, the aforesaid conduct of NetJumper has irreparably injured Google by threatening a loss of reputation and quality standards embodied in its GOOGLE Mark and Google Trade Dress for which there is no adequate remedy at law.

50.    Upon information and belief, NetJumper has used the Google Web APIs in violation of the Terms and Conditions.

51.    Upon information and belief, NetJumper has used the Google Web APIs for non-personal commercial purposes.

52.    Upon information and belief, NetJumper has used the Google Web APIs in connection with a product or service that competes with products or services offered by Google.

53.    Upon information and belief, NetJumper has used the GOOGLE marks in violation of the Google Web APIs Terms and Conditions agreement.

54.    Upon information and belief, NetJumper has breached the terms of the Google Web APIs Terms and Conditions agreement with Google.

55.    Upon information and belief, NetJumper registered and/or is using the Goograb Domain, www.goograb.com, in bad faith.

56.    Upon information and belief, NetJumper's use of the Goograb Domain has caused confusion with and dilutes Google's federally registered GOOGLE Mark.

10

### Count I: Declaratory Relief Regarding Non-Infringement of the '172 Patent

57.    The allegations of paragraphs 14-17 above are incorporated herein by reference.

58.    Google does not infringe and has not infringed any claim of the '172 patent, literally or under the doctrine of equivalents.

59.    In its Complaint, NetJumper alleges that Google infringes the '172 patent. Because Google denies that it infringes the '172 patent, an actual and justiciable controversy has arisen and now exists between Google and NetJumper as to whether Google infringes the '172 patent.

60.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Google requests the declaration of the Court that Google does not infringe the '172 patent.

### Count II: Declaratory Relief Regarding Non-Infringement of the '655 Patent

61.    The allegations of paragraphs 14-17 above are incorporated herein by reference.

62.    Google does not infringe and has not infringed any claim of the '655 patent, literally or under the doctrine of equivalents.

63.    In its Complaint, NetJumper alleges that Google infringes the '655 patent. Because Google denies that it infringes the '655 patent, an actual and justiciable controversy has arisen and now exists between Google and NetJumper as to whether Google infringes the '655 patent.

64.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Google requests the declaration of the Court that Google does not infringe the '655 patent.

### Count III: Declaratory Relief Regarding Invalidity of the '172 patent

65.    The allegations of paragraphs 14-17 above are incorporated herein by reference.

66.    The claims of the '172 patent are invalid because they fail to satisfy the conditions for patentability specified in Title 35 of the United States Code, including, *inter alia*, §§ 101, 102, 103, and 112.

67.    In its complaint, NetJumper alleges that the '172 patent was duly and legally issued.  Google denies that the '172 patent was duly and legally issued because it fails to satisfy

the conditions of patentability specified in Title 35 of the United States Code. An actual and justiciable controversy has arisen and now exists between Google and NetJumper as to the validity of the '172 patent.

68.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Google requests the declaration of the Court that the claims of the '172 patent are invalid.

**Count IV: Declaratory Relief Regarding Invalidity of the '655 patent**

69.    The allegations of paragraphs 14-17 above are incorporated herein by reference.

70.    The claims of the '655 patent are invalid because they fail to satisfy the conditions for patentability specified in Title 35 of the United States Code, including, *inter alia*, §§ 101, 102, 103, and 112.

71.    In its complaint, NetJumper alleges that the '655 patent was duly and legally issued. Google denies that the '655 patent was duly and legally issued because it fails to satisfy the conditions of patentability specified in Title 35 of the United States Code. An actual and justiciable controversy has arisen and now exists between Google and NetJumper as to the validity of the '655 patent.

72.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Google requests the declaration of the Court that the claims of the '655 patent are invalid.

**Count V: Trademark Infringement**

73.    The allegations of paragraphs 14-56 above are incorporated herein by reference.

74.    Upon information and belief, NetJumper's conduct as aforesaid constitutes trademark infringement in that it is the use in commerce, without the consent of the registrant, Google, of a reproduction, copy or colorable imitation of the registered GOOGLE Mark in connection with the sale, offering for sale, solicitation for, distribution, or advertising of its Internet search engine and Internet search engine indexing software, in connection with which such use is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of NetJumper with Google, or as to the origin, sponsorship or approval

of NetJumper's goods and services by Google, in contravention of Section 32 of the Lanham Act, 15 U.S.C. §1114.

75.     Upon information and belief, the aforesaid acts constitute willful infringement.

76.     By reason of the acts of NetJumper alleged herein, Google has suffered and, unless NetJumper is restrained, will continue to suffer, serious irreparable harm for which there is no adequate remedy at law.

77.     Upon information and belief, Google is entitled to treble damages for NetJumper's willful infringement, the profits realized from NetJumper's infringing conduct, both in amounts to be determined at trial, costs of this action, and an injunction to prevent continued and future infringement of Google's GOOGLE Mark.

78.     Upon information and belief, NetJumper's conduct in infringing Google's GOOGLE Mark was done willfully and intentionally.  This conduct is the kind for which the law allows an award of reasonable attorney's fees to Google.

79.     Money damages alone will not adequately remedy Google's injuries.

### Count VI: False Representation

80.     The allegations of paragraphs 14-56 above are incorporated herein by reference.

81.     Upon information and belief, NetJumper's conduct as aforesaid constitutes false representation in that it is the misleading and unauthorized use in commerce in connection with goods or services of a word, term, name, symbol or device, or a combination thereof, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of NetJumper with Google, or as to the origin, sponsorship or approval of NetJumper's goods and/or services by Google, in contravention of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

82.     Upon information and belief, NetJumper has made such false representations willfully and intentionally.

13

83.     By reason of the acts of NetJumper alleged herein, Google has suffered and, unless NetJumper is restrained, will continue to suffer, serious irreparable harm for which there is no adequate remedy at law.

84.     Upon information and belief, Google is entitled to treble damages for NetJumper's willful false representation, the profits realized from NetJumper's false representation, both in amounts to be determined at trial, costs of this action, and an injunction to prevent continued and/or future false representation of Google's GOOGLE Mark and Google Trade Dress.

85.     Upon information and belief, NetJumper's false representation in connection with Google's GOOGLE Mark and Google Trade Dress was done willfully and intentionally. This conduct is the kind for which the law allows an award of reasonable attorney's fees to the prevailing party.

86.     Money damages alone will not adequately remedy Google's injuries.

### Count VII: Federal Trademark Dilution

87.     The allegations of paragraphs 14-56 above are incorporated herein by reference.

88.     Upon information and belief, Google's GOOGLE Mark and Google Trade Dress are and long have been famous marks within the meaning of Section 43(c)(1) of the Lanham Act, 15 U.S.C. §1125(c)(1).

89.     Upon information and belief, NetJumper's conduct as aforesaid constitutes trademark dilution in that it is the use in commerce of marks that cause the dilution of the distinctive quality of Google's famous GOOGLE Mark and Google Trade Dress, in contravention of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

90.     Upon information and belief, NetJumper has caused such dilution of Google's famous GOOGLE Mark and Google Trade Dress willfully and intentionally.

91.     By reason of the acts of NetJumper alleged herein, Google has suffered and, unless NetJumper is restrained, will continue to suffer, serious irreparable harm for which there is no adequate remedy at law.

92.    Upon information and belief, Google is entitled to treble damages for NetJumper's willful dilution, the profits realized from NetJumper's conduct, both in amounts to be determined at trial, costs of this action, and an injunction to prevent continued and future dilution of Google's GOOGLE Mark and Google Trade Dress.

93.    Upon information and belief, NetJumper's conduct in diluting Google's GOOGLE Mark and Google Trade Dress was done willfully and intentionally.  This conduct is the kind for which the law allows an award of reasonable attorney's fees to the prevailing party.

94.    Money damages alone will not adequately remedy Google's injuries.

### Count VIII: State Law Unfair Competition

95.    The allegations of paragraphs 14-56 above are incorporated herein by reference.

96.    Upon information and belief, NetJumper's conduct as aforesaid constitutes unfair competition with Google's GOOGLE Mark and Google Trade Dress because NetJumper's conduct has caused a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of its goods or services; constitutes the use of deceptive representations in connection with its goods and services; and/or constitutes a representation that its goods or services have sponsorship, approval, characteristics, or uses that they do not have, in contravention of Michigan Compiled Laws § 445.903 preventing unfair practices.

97.    Upon information and belief, NetJumper's actions constitute a persistent and knowing violation of Michigan Compiled Laws § 445.903.

98.    By reason of the acts of NetJumper alleged herein, Google has suffered and, unless NetJumper is restrained, will continue to suffer, serious irreparable harm for which there is no adequate remedy at law.

99.    Google is entitled to an injunction to prevent continued and/or future dilution of Google's trademark and trade dress rights, Google's actual damages, and reasonable attorney's fees.

100.    Money damages alone will not adequately remedy Google's injuries.

### Count IX: Common Law Unfair Competition and Trademark Infringement

101.    The allegations of paragraphs 14-56 above are incorporated herein by reference.

102.    Upon information and belief, and as described above, Google began using the GOOGLE Mark and Google Trade Dress in September 1997, and has used the marks in the same or a substantially similar form continuously since that time. Google's GOOGLE Mark and Google Trade Dress are or have become distinctive of the goods and services in connection with which they are used.

103.    Upon information and belief, NetJumper's use of the GOOGLE mark and Google Trade Dress as detailed above constitutes an unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and is intended to allow NetJumper to appropriate the value of the reputation Google has acquired in Google's own goods and services and to mislead the public and cause confusion and mistake. NetJumper's actions as set forth above constitute both common law trademark infringement and/or unfair competition under the common law of the State of Michigan.

104.    By reason of the acts of NetJumper alleged herein, Google has suffered and, unless NetJumper is restrained, will continue to suffer, serious irreparable harm for which there is no adequate remedy at law.

105.    Google is entitled to damages for NetJumper's infringement and unfair competition, including but not limited to NetJumper's profits realized from NetJumper's conduct and exemplary or punitive damages, in amounts to be determined at trial, and an injunction to prevent continued and/or future deceptive actions damaging to its GOOGLE Mark and Google Trade Dress.

106.    Money damages alone will not adequately remedy Google's injuries.

### Count X: Violation of Anti-Cybersquatting Consumer Protection Act

107.    The allegations of paragraphs 14-56 above are incorporated herein by reference.

108.    Upon information and belief, NetJumper's conduct as aforesaid constitutes a violation of the Anti-Cybersquatting Consumer Protection Act in that it is the registration,

trafficking in and/or use in bad faith of the Goograb.com domain name, which is confusingly similar to Google's distinctive, famous, federally registered GOOGLE Mark, in contravention of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

109. By reason of NetJumper's bad faith registration and use of the Goograb.com domain name, Google has suffered and, unless NetJumper is restrained, will continue to suffer, serious irreparable harm for which there is no adequate remedy at law.

110. Upon information and belief, Google is entitled to an injunction to prevent the continued and/or future use of the Goograb.com domain name and an order directing the forfeiture or cancellation of the Goograb.com domain name, or its transfer to Google.

111. Upon information and belief, NetJumper's bad faith registration and use of the Goograb.com domain name was done willfully and intentionally, and is the kind of conduct that entitles Google to treble damages, NetJumper's profits realized from NetJumper's conduct, both in amounts to be determined at trial, costs of this action, and reasonable attorney's fees.

112. Upon information and belief, NetJumper's bad faith registration and use of the Goograb.com domain name entitles Google to seek an alternative damages award in the amount of the statutory maximum of $100,000 per domain name as permitted by Section 35(d) of the Lanham Act, 15 U.S.C. § 1117(d).

113. Money damages alone will not adequately remedy Google's injuries.

### Count XI: Breach of Contract

114. The allegations of paragraphs 14-56 above are incorporated herein by reference.

115. Upon information and belief, by using the Google Web APIs, NetJumper agreed to abide by the Google Web APIs Terms and Conditions and consequently NetJumper entered into a valid and enforceable agreement (the "Agreement") with Google governing NetJumper's use of the Google Web APIs and Google trademarks.

116. Upon information and belief, NetJumper has breached that Agreement by: (i) using the Google Web APIs for non-personal commercial purposes; (ii) using the Google Web

APIs with a product or service that competes with products or services offered by Google; and (iii) using the GOOGLE marks without the appropriate prior written permission from Google.

117.    Upon information and belief, all conditions precedent to Google's right to bring this action and to recover the requested relief have been performed, have occurred, or have been waived.

118.    Upon information and belief, as a direct and proximate result of NetJumper's willful breach of contract, Google has suffered, and will continue to suffer, damage, although such damages are not readily ascertainable or measurable.

119.    Money damages alone will not adequately remedy Google's injuries.

### Count XII: Quantum Meruit/Unjust Enrichment

120.    The allegations of paragraphs 14-56 above are incorporated herein by reference.

121.    Upon information and belief, and in the alternative, the conduct of NetJumper described herein, was without authorization and resulted in an improper and inequitable gain by NetJumper and loss to Google.

122.    Upon information and belief, as a result of such conduct, the fundamental principles of justice and equity and good conscience demand that NetJumper repay Google for the benefit obtained by NetJumper from its unlawful activities.

123.    Google seeks, in the alternative, to recover such actual and consequential damages as a result of NetJumper's unlawful activities to the extent allowed by law.

### Prayer for Relief

Google respectfully requests a judgment against NetJumper as follows:

A.    That NetJumper take nothing by its Complaint;

B.    A declaration that Google does not infringe and has not infringed the '172 patent;

C.    A declaration that Google does not infringe and has not infringed the '655 patent;

D.    A declaration that the '172 patent is invalid;

E.    A declaration that the '655 patent is invalid;

F.    That NetJumper, its officers, directors, affiliates, employees, agents, servants, attorneys and representatives and all those in privity or acting in concert with NetJumper, be preliminarily and permanently enjoined and restrained from, directly or indirectly:

    1.    Using the GOOGLE Mark, the Google Trade Dress, the GOOGRAB term, the Goograb.com domain name, or any marks or domain names similar thereto, alone or in combination with other words, names, styles, titles, designs or marks in connection with the manufacture, distribution, sale, advertising, marketing, promotion, or solicitation for software or any related product or service;

    2.    Using in any way any other mark, domain name, or designation so similar to the GOOGLE Mark or the Google Trade Dress as to be likely to cause confusion, mistake or deception;

    3.    Falsely designating the origin, sponsorship, or affiliation of the NetJumper goods and services in any manner;

    4.    Otherwise using the GOOGLE Mark, the Google Trade Dress, the GOOGRAB term, or the Goograb.com domain name;

    5.    Using any trade practices whatsoever including those complained of herein, which tend to unfairly compete with or injure Google's business or trademarks and the goodwill pertaining thereto; and

    6.    Continuing to perform in any manner whatsoever any of the acts complained of in this complaint;

G.    An order directing the forfeiture or cancellation of the Goograb.com domain name, or its transfer to Google;

H.    That NetJumper be required to pay to Google compensatory damages for the injuries sustained by Google, including but not limited to exemplary or punitive damages, together with pre- and post-judgment interest, and a sum equal to three times the damages for any Lanham Act violation, to the extent allowed by 15 U.S.C. §1117 and/or the statutes and common law of the State of Michigan;

I.    That NetJumper account for and pay over to Google all profits derived from its acts complained of herein, enhanced as the Court deems just, together with pre- and post-judgment interest to the extent allowed by 15 U.S.C. §1117 and/or the statutes and common law of the State of Michigan, and at the maximum rate allowed by law;

J.    That NetJumper account for and pay to Google the costs and reasonable attorneys' fees in connection with this action, to the extent allowed by 15 U.S.C. §1117 and/or the statutes and common law of the State of Michigan;

K.    That NetJumper file with this Court and serve on counsel for Google within thirty (30) days after the entry of an injunction issued by this Court, a sworn written statement specifying in detail NetJumper's compliance with the injunction;

L.    That the Court enter judgment against NetJumper and in favor of Google and that NetJumper's complaint be dismissed with prejudice;

M.    That the Court enter judgment that this case is an exceptional case under 15 U.S.C. 1117 and 1125 and 35 U.S.C. § 285, and enter a judgment awarding Google costs and reasonable attorneys' fees; and

N.    That the Court grant Google whatever further relief the Court deems just and proper.

**Demand For Jury Trial**

Defendant-Counterclaimant hereby demands a trial by jury as to all issues so triable.


Dated: April 9, 2004                                        DICKINSON WRIGHT PLLC


                                                            By:

                                                            _____
                                                            L. Pahl Zinn

                                                            Attorneys for Defendant
                                                            GOOGLE INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served, via U.S. Mail, upon all counsel of record, as identified below, on April 9, 2004:

Andrew Kochanowski
Sommers, Schwartz, Silver & Schwartz, P.C.
2000 Town Center, Suite 900
Southfield, MI  48075

Attorneys for Plaintiff
NETJUMPER, L.L.C.

L. Pahl Zinn

DETROIT 28155-1 802911





UNITED STATES PATENT AND TRADEMARK OFFICE

Home    Index    Search    System Alerts    eBusiness Center    News & Notices    Contact Us

## Trademark Electronic Search System(Tess)

*TESS was last updated on Wed Mar 24 04:30:45 EST 2004*

PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

Check Status *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

**Typed Drawing**

| | |
|---|---|
| **Word Mark** | GOOGLE |
| **Goods and Services** | IC 042. US 100 101. G & S: computer services, namely, providing software interfaces available over a network in order to create a personalized on-line information service; extraction and retrieval of information and data mining by means of global computer networks; creating indexes of information, indexes of web sites and indexes of other information sources in connection with global computer networks; providing information from searchable indexes and databases of information, including text, electronic documents, databases, graphics and audio visual information, by means of global computer information networks. FIRST USE: 19970900. FIRST USE IN COMMERCE: 19970300

IC 038. US 100 101 104. G & S: Providing electronic mail and workgroup communications services over computer networks; providing multiple user access to proprietary collections of information by means of global computer information networks. FIRST USE: 19970900. FIRST USE IN COMMERCE: 19970900 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial** | 75978469 |

| | |
|---|---|
| **Number** | |
| **Filing Date** | September 16, 1999 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | December 4, 2001 |
| **Registration Number** | **2806075** |
| **Registration Date** | January 20, 2004 |
| **Owner** | (REGISTRANT) Google Inc. CORPORATION CALIFORNIA 2400 Bayshore Parkway Mountain View CALIFORNIA 94043 |
| **Attorney of Record** | Julie Anne Matheson |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | Browse Dict | Top | HELP

HOME | INDEX | SEARCH | SYSTEM ALERTS | BUSINESS CENTER | NEWS&NOTICES | CONTACT US | PRIVACY STATEMENT