Gilbert Borman
June 29, 2005

Page 58

1    **build an Internet Buffet product.**

2        Q.    Prior to your meetings with HCL related to

3    the Internet Buffet project, had you made any efforts

4    to write down any of the concepts you had been thinking

5    about related to that project?

6        **A.    I don't recall.  I know that -- I remember**

7    **the thought why do I always have to click the back**

8    **button, and I've gone through my notes because I always**

9    **thought I'd written it down, but I've never found it,**

10    **and, you know, I can't tell you when I first had that**

11    **thought, early, late '95, early '96, sometime in there**

12    **I started thinking about the back button problem, and**

13    **at some point I sat down with HCL during the IVDM**

14    **meetings, and this is the napkin I was talking about.**

15        Q.    Did you keep any sort of notebook or diary

16    during the period of 1995, 1996 where you would jot

17    down ideas?

18        **A.    Yes.**

19        Q.    Do you still have that?  Well, what form did

20    that take?

21        **A.    It was a ruled notebook with grids.**

22        Q.    And do you have the notebook from 1995,

23    1996?

24        **A.    I may have.**

25        Q.    Did you make an effort to go back and try to

Dockets.Justia.com

Gilbert Borman
June 29, 2005

Page 59

1    find any notebooks that you had that you kept notes of

2    ideas, et cetera, as part of your looking for documents

3    in this case?

4         A.    Yes.

5         Q.    Do you recall finding one from the time

6    period that we're discussing, late '95, early '96?

7         A.    I may have, and I probably went through it

8    to see if there was anything in it that related to the

9    request.

10        Q.    So if that notebook was not produced in this

11   case, would I take that to mean that you reviewed it

12   and didn't find anything that you thought was relevant

13   to the issues in the case?

14        A.    That would be correct.

15        Q.    So just so we're clear, you don't and aren't

16   presently aware of any documents, any written records

17   prior to May of '96 that would reflect any of the ideas

18   you had related to the Internet Buffet as of that time

19   period?

20        A.    No.  When Andy gave me my request for

21   production, I went through everything I had, and I

22   reviewed I think every page in my notebooks from those

23   times, because obviously they're material, and I just

24   didn't find anything.

25        Q.    Do you recall having any conversations with

Hanson Renaissance Court Reporting & Video
(313) 567-8100  www.hansonreporting.com

Gilbert Borman
June 29, 2005

Page 61

1   you know, a lot of work by the programmers to figure

2   out exactly how to do that.

3        Q.    In your initial discussions, maybe even

4   associated with what we've just looked at as

5   Exhibit 47, what was the first concept you had for the

6   user interface that would be provided to the user

7   associated with the Internet Buffet?

8        A.    This is probably it right here.

9        Q.    And can you describe for me in a little bit

10  more detail what you were trying to convey by sort of

11  the made box we see on Exhibit 47?

12       A.    Okay.  I believe what you're seeing, I'm

13  not -- I don't recall exactly what we had in mind here,

14  but I believe that this describes the user interface,

15  at least the first concept of it, and what you're

16  looking at is either a banner ad across the top on the

17  right-hand column, and then below it the links and

18  descriptors of the URLs, and then the controlling tool

19  bar along the bottom.  The tool bar at the top, I

20  believe, was an expansion of the idea for the initial

21  first buttons, and the "Brought to you by" in the lower

22  left-hand corner looks like I was thinking about

23  advertising in the software from the beginning.

24       Q.    Now, was the original concept that you had

25  that the Internet Buffet would be a separate

Gilbert Borman
June 29, 2005

Page 62

1   application that would sit on top of the browser, is

2   that right?

3       A.   It had to be.  Until the version 4 browsers

4   and really the Version 5 browsers came out, I want to

5   say a year and a half or more later than this time

6   period it was impossible to do so.  Netscape 3 and

7   Internet Explorer 3, the two most common browsers at

8   the time, were, you know, by today's comparison

9   extremely crude and rapidly put together pieces of

10  software, and while they were the cutting edge at the

11  time from a software, a third-party software

12  developer's standpoint, there was nothing to work with.

13  So we had to improvise the entire interoperation

14  between our software external to the interoperation of

15  the browser.

16      Q.   And when did you first -- or do you recall

17  discussing at some time later some other way to provide

18  the surfing features of NetJumper other than having a

19  separate application float on top of the browser?

20      A.   Only when the new browsers came out later on

21  was it even possible to start thinking about something

22  that really wasn't quite stand alone, something that

23  could embed and be an organic part of it, but by that

24  time it was already 1998, early '98, and, you know, it

25  just didn't make commercial sense at that time to take

Gilbert Borman
June 29, 2005

Page 63

1    another run at it.

2         Q.    Okay.  Why don't we go ahead and take a

3    break now, we're out of tape, and we'll go off the

4    record.

5                        THE VIDEOGRAPHER:  Off the record,

6    12:36:54, end of Tape 1.

7                        (A recess was taken)

8                        THE VIDEOGRAPHER:  We're back on the

9    record at 1:26:40, Tape 2.

10   BY MR. POLLACK:

11        Q.    Mr. Borman, before we broke for lunch we

12   were talking about the early development of the

13   Internet Buffet product.  Can you recall when the first

14   discussion occurred about the what I'll call the

15   automatic jumping feature, when the first discussions

16   occurred about incorporating that into NetJumper?

17        A.    At this time I don't recall.

18        Q.    Was that one of the initial parts of the

19   specification or was that something that was added

20   later?

21                       MR. KOCHANOWSKI:  Object to the

22   form, the specification.

23                       THE WITNESS:  I'm going to wait

24   until she drops off and then I'll answer --

25   BY MR. POLLACK:

Hanson Renaissance Court Reporting & Video
(313) 567-8100  www.hansonreporting.com

Gilbert Borman
June 29, 2005

1   what about the Grasp product you believe was sort of

2   like Internet Buffet?

3        A.    Just the idea that it was a surfing

4   assistant.

5        Q.    I'd like to turn your attention back to

6   Exhibit Number 14, the Internet Organizers article.

7   And the next -- actually, it's a couple products later,

8   on Page 200 of the article there's a reference to a

9   Brooklyn North Software Works URL Grabber 95.

10       A.    Yes.

11       Q.    Do you have any recollection of reviewing

12  any material related to URL Grabber in the 1996, '97

13  time frame?

14       A.    No.  This product seems to let you build a

15  web page from the links on another web page, not

16  navigational really.

17       Q.    Do you have a recollection of knowing about

18  a product --

19                 MR. KOCHANOWSKI:   Listen to the

20  question.

21  BY MR. POLLACK:

22       Q.    Do you have any recollection about knowing

23  about a product called CyberPilot in the May of 1996

24  time frame?

25       A.    No, I do not.

Gilbert Borman
June 29, 2005

Page 124

1       DEPOSITION EXHIBIT 62

2       WAS MARKED BY THE REPORTER

3       FOR IDENTIFICATION

4   BY MR. POLLACK:

5       Q.    You've been handed what's been marked as

6   Exhibit 62.  It bears Production Number NetJumper 758

7   through 760.  It appears to be some printouts from a

8   website NetCarta.com printed on May 24th, 1996.  Do you

9   recall seeing Exhibit 62 before?

10      A.    I don't.

11      Q.    I'll refer you to the handwriting on the

12  first page of Exhibit 62 near the top.  Do you

13  recognize that writing?

14      A.    It's certainly mine, and it's saying, "This

15  is our Surflog," so I must have been thinking of this

16  in terms of IVDM in terms of the Surflogue that we

17  discussed earlier this morning.

18      Q.    Do you recall whether or not you retrieved

19  any additional information about CyberPilot from the

20  NetCarta website in or around May of '96?

21      A.    I do not.

22      Q.    Do you recall why you kept the information

23  reflected in Exhibit 60 related to Clearweb?

24      A.    Why I kept it?

25      Q.    Uh-huh.

Gilbert Borman
June 29, 2005

Page 125

1    A.    No, I don't.

2    Q.    Do you have any recollection as to why you

3  kept in your files the information in Exhibit 61

4  related to the Knowit All product?

5    A.    No.

6    Q.    The same question with regard to the

7  Exhibit 62 information about CyberPilot, do you have a

8  recollection as to why you kept this information?

9    A.    No.  I'm sure it was -- I'm sure at the time

10  I was, you know, curious what are other software

11  companies trying to do.

12    Q.    I'm going tc hand you what's been previously

13  marked as Exhibit 15.  It bears Production Numbers G

14  1191 through 1195.  It's an article by Andrew Wood, et

15  al., about HyperSpace:  Web Browsing with

16  Visualization.

17    A.    Uh-huh.

18    Q.    Do you recall ever seeing this article

19  before?

20    A.    I believe the first time I saw this is when

21  Mr. Kochanowski showed it to me.  I don't remember

22  seeing this prior to that.

23    Q.    So you've seen this article as part of your

24  work related to this case, but you don't recall seeing

25  it prior to that?



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NETJUMPER, L.L.C.,
a Michigan limited liability corporation,

      Plaintiff,

vs.

GOOGLE, INC.,
a California corporation,

      Defendant.

Case No. 04-70366-CV
Hon. Julian Abele Cook
Magistrate Judge R. Steven Whalen

---

SOMMERS, SCHWARTZ, SILVER
& SCHWARTZ, P.C.
Andrew Kochanowski (P55117)
Attorneys For Plaintiff
2000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-0300

BANIAK, PINE & GANNON
Michael Baniak
Co-Counsel For Plaintiff
150 N. Wacker Drive, Suite 1200
Chicago, IL 60606
(312) 673-0360

DICKINSON WRIGHT, PLLC
Kathleen A. Lang (P34695)
L. Pahl Zinn (P57516)
Attorneys For Defendant
500 Woodward Ave., Ste. 4000
Detroit, MI 48226
(313) 223-3500

FISH & RICHARDSON, P.C.
Howard G. Pollack
Attorneys For Defendant
500 Arguello Street, Ste. 500
Redwood City, CA 94063
(650) 839-5070

FISH & RICHARDSON, P.C.
Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
(617) 542-5070

---

## PLAINTIFF'S ANSWERS TO DEFENDANT
## GOOGLE INC.'S FIRST SET OF INTERROGATORIES

      NOW COMES Plaintiff, by and through its attorneys, SOMMERS, SCHWARTZ, SILVER &

SCHWARTZ, P.C., and for its answers to Defendant Google Inc.'s First Set of Interrogatories, states as

follows:

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

## INTERROGATORIES

1.    For each claim of the patents-in-suit that You contend is infringed by Google, provide an infringement claim chart that fully and completely states the basis for such contention, including identifying Your construction of each element of such claim, every Google product (including product version number, release number and/or release date, and particular feature) (i.e., "accused Google product") that You contend infringes such claim, how each element of such claim is met by or is present in each such accused Google product, whether literal or by the doctrine of equivalents, all facts, information and data alleged to support such contention, and if such alleged infringement is indirect (i.e., under 35 U.S.C. §§ 271 (b) and/or (c)), identify all persons or entities who You contend directly infringe such claims.

**ANSWER:**    **Plaintiff objects to this Interrogatory on the grounds it is overly broad, and premature.   Without wavier of its objection, NetJumper refers Google to Attachment 1 for an infringement chart showing the claims of the patents-in-suit, the current version of Google Toolbar, and the Google Viewer as it existed in approximately January, 2004.  NetJumper is not yet aware of Google's position concerning infringement, and therefore cannot respond factually whether Google has caused indirect or contributory infringement.  Investigation continues.**

2.    If you allege infringement under the doctrine of equivalents, identify all evidence, including citations to the patents and their prosecution history, allegedly indicating that features of the accused Google products are equivalent under the doctrine of equivalents to elements of the claims in the patents-in-suit.

**ANSWER:**    **NetJumper cannot respond to this Interrogatory at this point in discovery, as it believes Google's products infringe literally.  Once Google responds to NetJumper's discovery requests and provides its non-infringement position, if any, NetJumper will be in position to respond to this Interrogatory.**

2

3.     For each claim of the patents-in-suit that You contend is infringed by Google, describe fully the history and process leading to the alleged invention of each such claim, including identifying the date of conception and the date of first reduction to practice for that claim, the circumstances of such conception and first reduction to practice and any diligence there between, all persons involved in such conception, diligence, and first reduction to practice, and all documents that and persons who can corroborate such conception, diligence, and first reduction to practice.

**ANSWER:**     **Plaintiff objects to this Interrogatory on the grounds it is vague, overly broad and not calculated to lead to discovery of relevant evidence. Without waiver of any objection, NetJumper responds that the claims at issue in the '172 Patent and the '655 Patent were the result of collaboration between and among Gilbert Borman, Rajet Bhatnagar, Arul Sebastion, Anup Mathur, Vinay Wadwha, Mukesh Kumar and C. Viney Kumar Singh. The conception of the claims '172 Patent occurred no later than May, 1996. Although Plaintiff has no duty to do so as the patents are presumed valid, the individuals set forth above can collaborate the development of the invention. Additionally, see Response to Interrogatory No. 4.**

4.     Identify all things or methods (including all programs, software products, source code, object code, shareware, models, prototypes, samples, beta tests and the like) created, devised, made, sold, used, given away, produced, or manufactured by any person or entity anywhere in the world at any time that practice, employ, implement, or embody, or that are capable of practicing, employing, implementing, or embodying, any claim of the patent-in-suit.

**ANSWER:**     **Plaintiff objects to this Interrogatory on the grounds it is overly broad and burdensome. Without waiving its objection, NetJumper responds that other than Google's Toolbar and Viewer, and certain of NetJumper's own products, it is unaware of any other thing or method that currently implement the claims of the subject patents. Responding further, NetJumper developed the following software that embodies the claims:**

**Prototypes One and Two:**

**In May of 1996 HCL Technologies was directed to develop the first prototype of the invention. The prototype was initially internally called Internet Buffet.**

3

The initial development prototype was created on or about August of 1996. Its buttons and look and feel were subsequently changed to present an improved user look and feel.

In September, 1996 the second prototype was completed. It was shown to the Yahoo, Excite and Infoseek. These discussions were held under an NDA. NetJumper then finalized an end user download version of the product.

**First Commercial Version:**

NetJumper 2.5 shipped in early 1997. Based on the original prototype, the product was a cleaned up, debugged version of the product with a standard Windows software installer and full documentation.

In 1998 a prototype NetJumper Lite freeware version was developed but it was not distributed or sold. The product was discontinued before release.

Linkgrabberer '99 was the last version of the software to directly incorporate the claims of the patent. This product was a simplified version of NetJumper 2.5 with direct saving of links to bookmarks. An internet advertising module, iTimessquare was concurrently developed to display advertising in Linkgrabber and other internet software products.

NetJumper is not aware of other products that incorporate its claims. A slideshow product from Beagle software was briefly distributed, however no analysis of that technology to the claims at issue was ever done. In 1997 and 1998, prior to the issuance of NetJumper's patent, NetJumper was aware of New York based company Robocast distributing software that incorporated certain similar features. Robocast ceased business operations about the time NetJumper's patents issued. To the best of NetJumper's knowledge the company was liquidated, and no analysis comparing the features in that technology to the patents was ever performed.

In addition, NetJumper was aware of a company called eTour which exhibited slideshowing webpages in 1999. eTour was sold to Ask Jeeves sometime in 2000 or 2001. NetJumper has not seen any eTour technology at Ask Jeeves since its acquisition, and no infringement analysis was ever performed concerning that product.

5.    For each thing or method identified in response to Google's Interrogatory No. 4, describe

the circumstances of the commercialization and publication of such thing or method, including by

identifying the person and/or entity that made or devised the thing or method, the first offer for sale, first

sale, first offer to license, first license, first public demonstration, first use, and first public use of the

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

11.    Identify any poll, search, survey, or study conducted by You, or caused to be conducted by You related to any of the issues in this lawsuit, including but not limited to trademark availability searches and likelihood of confusion surveys.

**ANSWER:**    **None.**

12.    Identify and describe in detail any instances of actual or purported confusion between You and Google arising from your use of the GOGGLE Marks, GOOGRAB Mark, and/or the Goograb.com Domain website layout.

**ANSWER:** **None known.**

Respectfully submitted,

SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.

By:

Andrew Kochanowski (P55117)
Attorneys for Plaintiff
2000 Town Center Drive, Suite 900
Southfield, MI 48075-1100
(248) 355-0300

BANIAK, PINE & GANNON
Michael Baniak
Co-Counsel For Plaintiff
150 N. Wacker Drive, Ste. 1200
Chicago, IL 60606
(312) 673-0360

Dated:  September 20, 2004

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on _____9/20/04_____

By:  ☒ U.S. Mail          ☐ FAX
      ☐ Hand Delivered      ☐ Overnight Courier
      ☐ Federal Express     ☐ Other

Signature: _____

8

**INFRINGEMENT CHART**
**PATENT 5,890,172**

| Claims U.S. Patent No. 5,890,172 | Google Toolbar for Claims 1-8 Google Viewer for Claims 9-14 |
|---|---|
| 1. A computer implemented method for searching on a local computer a network of nodes with data files stored at corresponding ones of the nodes and each of the data files identifiable by a location identifier and several of the data files containing location identifiers for others of the data files, and the method for searching comprising the acts performed on the local computer of: | The method is shown as follows: Google Toolbar utilizes http protocol in software in a browser "Add-On" with computer readable code in a C++ (or other language) module to integrate with the browser.<br><br>The *"network of nodes with data files"* are (for example). Search Results shown in Screen Capture-1.<br><br>*"The data files identifiable by a location identifier"* are, for example, the links shown in the returned search results, such as "Welcome to AURA" in Screen Capture-1 which has the location identifier "http://www.aura-astronomy.org/" shown in the "Address" location in Screen Capture-2. |
| constructing a search window on a display screen of the local computer; | The *"search window"* that is constructed is shown in Screen Capture-1 with search term "Universities". |
| displaying a first and a second icon separate from the search window on said display screen; | The "Next and Previous" [image] Web Buttons in Screen Capture-2 are the displayed *"first and second icon separate from the search window on said display screen."* |
| retrieving an initial data file from the network together with displaying the initial data file in the search window, and the initial data file including location identifiers; | The retrieved *"initial data file from the network"* that is displayed *"in the search window"* in Screen Capture-1 is identified as Search Results. This file contains *"location identifiers"*. |
| parsing the location identifiers from the initial data file to form an initial list of location identifiers together with storing the initial list, responsive to a selection of the first icon; and | The Google Toolbar parses location identifiers from the initial data file as follows: when the "Next" Web Button shown in Screen Capture-2 is clicked, the *"initial data file with list of location identifiers"* buffered in the Google Toolbar is parsed to *"form an initial list of location identifiers together with storing the initial list"*. The *"stored initial list"* corresponds to the *"10 sites"* of the Google Toolbar description contained and identified in Screen Capture-3. |
| retrieving a first data file corresponding to a selected one of the location identifiers in the stored initial list together with displaying the first data file in the search window, responsive to a selection of the second icon. | When the "Previous" or "Next" Web Button is clicked, *"a first data file corresponding to a selected one of the location identifiers in the stored initial list"* is retrieved and *"displayed in the search window."* |

1

| Claims<br>U.S. Patent No. 5,890,172 | Google Toolbar for Claims 1-8<br>Google Viewer for Claims 9-14 |
|---|---|
| 2. The computer implemented method of claim 1 wherein; said initial data file comprises information in a markup language; and | The method is performed as shown in Code Listing-1, representing the Search Results which displays the hypertext *"markup language"* of the said *"initial data file"* representing the Search Results in Screen Capture-1. |
| said location identifiers comprise URLs. | Lines 295-363 of Code Listing-1 contain *"said location identifiers"* which *"comprise URLs"* such as the Welcome to AURA link (Line 313) shown in Screen Capture-1 which contains the location identifier URL http://www.aura-astronomy.org/ (Line 313). |
| 3. The computer implemented method of claim 1 wherein: said initial file and said first data file comprise information in a markup language; and | The method is performed as shown in Code Listing-2 representing, for example, the "Welcome to AURA" link in Screen Capture-1 which has the location identifier http://www.aura-astronomy.org/, additionally displays a hypertext *"markup language"* of *"first data file,"* which is shown in Screen Capture-2. |
| said location identifiers comprise URLs. | Lines 295-363 in Code Listing-1 contain *"said location identifiers"* which *"comprise URLs".* |
| 4. The computer implemented method of claim 1 wherein said retrieving act further comprises;<br><br>retrieving the first data file corresponding to the one of the location identifiers in the stored initial list selected from a group consisting of: a next location identifier, a prior location identifier, a first location identifier and a last location identifier, together with displaying the first data file in the search window, responsive to a selection of the second icon. | The Google Toolbar retrieves the first data file corresponding to one of the location identifiers in the stored initial list, from a group consisting of a next location identifier, a prior location identifier, a first location identifier and a last location identifier, *together with displaying the first data file in the search window, responsive to a selection of the second icon,* as follows: the method is shown in Code Listing-2, representing, for example, the "Welcome to AURA" file in Screen Capture-2 which, for example, has the location identifier **http://www.aura-astronomy.org/** at Line 313 of Code Listing-1 and has a next location identifier of **http://www.universities-scotland.ac.uk/** at Line 320 and a previous location identifier of **http://www.nasulgc.org/** at Line 306, and a first location identifier of **http://www.aascu.org/** at Line 297, and a last location identifier of **http://www.neoucom.edu/** at Line 355. |

2

| Claims<br>U.S. Patent No. 5,890,172 | Google Toolbar for Claims 1-8<br>Google Viewer for Claims 9-14 |
|---|---|
| 5. A computer usable medium having computer readable program code means embodied therein for searching on a local computer a network of nodes with data files stored at corresponding ones of the nodes and each of the data files identifiable by a location identifier and several of the data files containing location identifiers for others of the data files, the computer readable program code means in said article of manufacture comprising: | *"For searching on a local computer a network of nodes with data files stored at corresponding ones of the nodes and each of the data files identifiable by a location identifier and several of the data files containing location identifiers for others of the data files,"* as described in Claim #1 above, with *"computer readable program code"* for a browser "Add-On" written in a method, for example, for an Internet Explorer Toolbar Add-on.<br><br>Google's browser "Add-On" is the *"computer readable program code"* that *"participates in processing."* |
| computer readable program code means for causing a computer to construct a search window on a display screen of the local computer; | *"Construct a search window on a display screen of the local computer,"* as described in Claim #1 above with *"computer readable program code"* as described above. |
| computer readable program code means for causing a computer to display a first and a second icon separate from the search window on said display screen; | *"Display a first and a second icon separate from the search window on said display screen,"* as described in Claim #1 above with *"computer readable program code"* as described above. |
| computer readable program code means for causing a computer to retrieve an initial data file from the network and displaying the initial data file in the search window, and the initial data file including location identifiers; | *"An initial data file from the network and displaying the initial data file in the search window, and the initial data file including location identifiers,"* as described in Claim #1 above with *"computer readable program code"* as described above. |
| computer readable program code means for causing a computer to parse the location identifiers from the initial data file to form an initial list of location identifiers together with storing the initial list, responsive to a selection of the first icon; and | *"Parse the location identifiers from the initial data file to form an initial list of location identifiers together with storing the initial list, responsive to a selection of the first icon,"* as described in Claim #1 above with *"computer readable program code"* as described above. |
| computer readable program code means for causing a computer to retrieve a first data file corresponding to a selected one of the location identifiers in the stored initial list together with displaying the first data file in the search window, responsive to a selection of the second icon. | *"Retrieve a first data file corresponding to a selected one of the location identifiers in the stored initial list together with displaying the first data file in the search window, responsive to a selection of the second icon,"* as described in Claim #1 above with *"computer readable program code"* as described above. |

3

| Claims<br>U.S. Patent No. 5,890,172 | Google Toolbar for Claims 1-8<br>Google Viewer for Claims 9-14 |
|---|---|
| 6. The computer readable program code means in said article of manufacture of claim 5 comprising:<br><br>computer readable program code means for causing a computer to retrieve the initial data file, wherein said initial data file, comprises information in a markup language and said location identifiers comprise URLs. | *"Wherein said initial data file, comprises information in a markup language and said location identifiers comprise URLs,"* as described in Claim #2, above with *"computer readable program code"* as described above in Claim #5, first paragraph. |
| 7. The computer readable program code means in said article of manufacture of claim 5 comprising:<br><br>computer readable program code means for causing a computer to retrieve the initial data file and the first data file, wherein each of said initial and said first data files, comprise information in a markup language and said location identifiers comprise URLs. | *"Wherein each of said initial and said first data files, comprise information in a markup language and said location identifiers comprise URLs,"* as described in Claim #3, above with *"computer readable program code"* as described above in Claim #5, first paragraph. |
| 8. The computer readable program code means in said article of manufacture of claim 5 comprising:<br><br>computer readable program code means for causing a computer to retrieve the first data file corresponding to the one of the location identifiers in the stored initial list selected from a group consisting of: a next location identifier, a prior location identifier, a first location identifier and a last location identifier together with displaying the first data file in the search window, responsive to a selection of the second icon. | *"Retrieve the first data file corresponding to the one of the location identifiers in the stored initial list selected from a group consisting of: a next location identifier, a prior location identifier, a first location identifier and a last location identifier together with displaying the first data file in the search window, responsive to a selection of the second icon,"* as described in Claim #4, above with *"computer readable program code"* as described above in Claim #5, first paragraph. |

4

## Screen Capture-1:
## Search from Google Toolbar

Address Bar

Search Terms

Search Results representing a network of nodes, each representing a link to a data file in hypertext markup language. This *first file of information* is sent to the Google Toolbar as a buffer after one of the sites is clicked on. This buffer is then parsed and stored as a list of site identifiers when the "Next" Web Button is clicked as described on the next page in Screen Capture 2.



# Screen Capture-2:

## Use of "Next" and "Previous" Buttons in Google Toolbar

"Next and Previous" Web Buttons representing a "first and second icon" of the patents.



**AURA**
Association of Universities for Research in Astronomy

**INFORMATION**
See our FAQ page for AURA copyright permission, university programs, and employment.

**EDUCATION**
Looking for educational astronomy info? See our Astronomy info and Resources page, NewsAstronomy Education Review.

**SEARCH**
provided by Atomz.com

**WHO WE ARE** who we are, our astronomy careers, astronomy info and resources, frequently asked questions, AURA directory, message from our president, corporate office info

**NEWS&VIEWS** news and updates, policy papers, reports and projects, aura awards

**MEMBERSHIP** membership in AURA, member institutions and representatives, membership guidelines

**FELLOWSHIPS** AURA fellowship programs, Claudio Anguita fellowships; U.S. Gemini fellowships

**MEETINGS** listing of upcoming meetings and events

**WHAT'S NEW**

Workshop on the Science Potential of 8 & 10-30m UV/Optical Space Telescope

AURA 2002 Award Winners

AURA to reappoint Matt Mountain as Gemini Director

Claudio Anguita Fellowship Announcement of

## Screen Capture-3:

## Enabling the "Next" and "Previous" Web Buttons



- Web buttons

  ○ Up - Enables you to navigate up one level in the site you're currently
     visiting. For example, if you are currently viewing
     http://www.example.com/articles/may/money.html:
     
     ■ Clicking Up takes you to:
        http://www.example.com/articles/may/
     ■ Clicking Up again takes you to:
        http://www.example.com/articles/

  ○ Next & Previous - These buttons take you to the next or the
     previous result for the current search without returning to the Google
     search results page. It works only on the first page of results, taking
     you from one URL to another through the first 10 results.

The "Next and Previous" Web Buttons are
initially hidden in the Toolbar Options and are
enabled there with a checkbox.



# FISH & RICHARDSON P.C.

12390 El Camino Real
San Diego, California
92130

Telephone
858 678-5070

Facsimile
858 678-5099

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951



AUSTIN
BOSTON
DALLAS
DELAWARE
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

VIA FACSIMILE

May 25, 2005

Nabeel N. Hamameh, Esq.
Sommers, Schwartz, Silver & Schwartz, P.C.
2000 Town Center, Suite 900
Southfield, MI 48075

Re:    NetJumper Software, L.L.C. v. Google Inc.
       USDC-E.D. MI - Case No. 2:04CV70366

Dear Nabeel:

In advance of the NetJumper Rule 30(b)(6) witness deposition, we write concerning NetJumper's responses to the following Google Interrogatories:

No. 1

Please provide your proposed claim constructions for the claims at issue in the patents-in-suit. We will assume that you have no claim construction other than the plain language of the claims if we receive no reply.

No. 2

NetJumper has not identified whether it believes the alleged infringement by Google is under the doctrine of equivalents. NetJumper has sufficient information from Google with which to answer this interrogatory. We will assume that you have no theory on infringement under the doctrine of equivalents if we receive no reply.

No. 3

Please identify all documents that support NetJumper's assertion that it conceived and reduced to practice the claims of the patents-in-suit prior to October 8, 1996. No claim elements or dates were provided, by claim, that specify with particularity the alleged prior invention. We will assume there are no such documents and no specific dates are known if we receive no reply.

No. 4

Please provide specific dates upon which each of the events of commercialization took place, and whether those events were other than on the dates identified. For instance, the initial prototype is said to have been "created on or about August of 1996," but it is not said what this prototype was, if it was functional, and whether it

FISH & RICHARDSON P.C.

Nabeel N. Hamameh, Esq.
May 25, 2005
Page 2

included all of the elements of the patent claims. As for the alleged September 1996 second prototype, the same information is missing. Also, it is not said when the prototype was shown to Yahoo, Excite or Infoseek. And it is also not clear when "NetJumper then finalized an end user download version of the product." Please provide the specific information responsive to this interrogatory.

No. 10

Please produce and identify the documents responsive to this interrogatory pursuant to Rule 33(d).

Very truly yours,

Jason W. Wolff

JYW/tmb

10518334.doc

```
                        *********************
                  ***    TX REPORT    ***
                        *********************


   TRANSMISSION OK

   TX/RX NO                0292
   CONNECTION TEL          13#00153531#12487464001#
   CONNECTION ID
   ST. TIME                05/25 15:05
   USAGE T                 01'25
   PGS. SENT                  3
   RESULT                  OK
```

# FISH & RICHARDSON P.C.

12390 El Camino Real
San Diego, California
92130

Telephone
858 678-5070

Facsimile
858 678-5099

Web Site
www.fr.com

**Date**  May 25, 2005

**To**  Nabeel N. Hamameh, Esq.
Sommers, Schwartz, Silver & Schwartz, P.C.
2000 Town Center, Suite 900
Southfield, MI 48075
Telephone: (248) 355-0300

**Facsimile number**  16113-00153531 / (248) 746-4001

**From**  Jason W. Wolff

**Re**  NetJumper Software, L.L.C. v. Google Inc.
USDC-E.D. MI - Case No. 2:04CV70366
Our Ref.: 16113-001LL1

**Number of pages
Including this page**  3

**Message**



# Google's Proposed Claim Construction of Certain Terms in Claims 1-8 of the '172 Patent

| Term | Claim in which the term is found | Google's Construction[1] |
|---|---|---|
| "parsing", "parse" | 1[e], 5[e] | "The act of examining a string of text, breaking it into subunits, and establishing the relationships among the subunits."[2] |
| "icon" | 1[c], 1[d], 1[e], 4, 5[c], 5[d], 5[e], 8 | "A graphic symbol, such as text or a picture, that can be selected on a computer display using a pointing device."[3] |
| "parsing in response to selection of an icon" | 1[e], 5[e] | "The act of parsing of the hyperlinks is performed on the initial data file only after one of the two separately displayed icons has been selected."[4] |
| "search window" | 1[b], 1[c], 1[d], 1[f], 4, 5[b], 5[c], 5[d], 5[f], 8 | "Browser window (400)."[5] |
| "separate from the search window" | 1[c], 5[c] | "Outside of the four corners of the browser window."[6] |

---

[1] The claim constructions are discussed in detail in the moving papers and documents in support of Google's Motion for Summary Judgment of Non-Infringement and Invalidity of the '172 Patent.

[2] *See* '172 patent at 6:26-39 (Wolff Dec. Ex. A); Institute of Electrical and Electronic Engineers ("IEEE"), *Dictionary of Electrical and Electronic Terms* (1996), at 747 (Ex. D).

[3] *See* '172 patent, cover page and abstract, Figures 5C and 6 (Ex. A); G 212, "Office Action", p. 8 (Ex. B); IBM *Dictionary of Computing* (1994), at 323 (Ex. E); Bhatnagar Dep. at 35:7-10 (Ex. F); Mathur Dep. at 46:2-19 (Ex. G).

[4] *See* '172 patent at 6:41-7:15, describing Figure 3, 7:15-21, 10:1-17, describing Figure 8A, steps 802 and 804 (Ex. A); G 125, G 208, G 213, and G 260-61 (Ex. B).

[5] *See* '172 patent at 7:30-34, Figures 4 and 5A-C (Ex. A); G 260, G 286 (Ex. B); IEEE, *Dictionary of Electrical and Electronic Terms* (1996) at 1205 (Ex. D).

[6] *See* '172 patent at 3:23-30, 4:29-30, 7:22-26, 7:51-8:42, 12:32-34, Figures 3, 5A-C (Ex. A); G 261-64, G 286 (Ex. B); Bhatnagar Dep. at 80:25-81:15 (Ex. F); Mathur Dep. at 61:23-62:4 (Ex. G); Webster's Ninth New Collegiate Dictionary (1989), at 1073 (Ex. H); Borman Dep. at 44:21-45:23 (Ex. I).