UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NETJUMPER SOFTWARE, L.L.C.
a Michigan limited liability corporation,

        Plaintiff,

v.

GOOGLE INC.,
a Delaware corporation

        Defendant.

Civil Action No. 04-70366-CV
Hon. Julian Abele Cook

Magistrate Judge R. Steven Whalen

---

Andrew Kochanowski
Nabeel M. Hamameh
Sommers Schwartz, PC
2000 Town Center, Suite 900
Southfield, MI 48075

Michael H. Baniak
Baniak Pine & Gannon
150 North Wacker Drive, Suite 1200
Chicago, IL 60606

*Attorneys for NetJumper Software, L.L.C.*

Kathleen A. Lang (P34695)
L. Pahl Zinn (P57516)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226-3425
(313) 223-3500

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804

Howard G. Pollack
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063

*Attorneys for Google Inc.*

**GOOGLE'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '172 PATENT**

I.   **SUMMARY OF REPLY**

No factual disputes prevent entry of summary judgment in favor of Google. NetJumper's opposition brief ("Opp.") is simply an attempt to rewrite its claims by: (1) arguing that the very examiner who granted the patent misunderstood the invention; (2) manipulating the claims to try and cover disclosure in the patent that is excluded from the claims as a matter of law under the Federal Circuit's "disclosed but unclaimed" subject matter rule; and (3) attempting to insert limitations from the claim preambles, again contrary to plain Federal Circuit authority. NetJumper's efforts to apply a veneer of "factual" dispute through an expert declaration that is simply dressed-up legal argument is an approach the Federal Circuit has repeatedly rejected. Once the Court has properly construed the claims—a wholly legal, not factual, undertaking— there is no dispute that NetJumper's claims are invalid and not infringed by the Google Toolbar.

II.  **ARGUMENT**

Because NetJumper defends its position only under its peculiar definition of the claim term "search window," the Court can grant Google's motion on non-infringement by construing that term properly. The term appears nowhere in the patent specification—NetJumper added it two years after filing the patent application. However, the patent claims and specification indicate that the search window is the entire window in which the program is running and the patent examiner understood the term as such when he allowed the patent to issue -- a determination that NetJumper cannot now avoid.

Under any construction, however, the CyberPilot program anticipates claims 1-8 of the '172 Patent. Therefore, based on the record before it, the Court need not even decide this construction issue in order to grant Google's alternative motion that the claims are invalid.

A.   **NetJumper's Conclusory Statements Do Not Satisfy Its Summary Judgment Burden.**

Once a properly supported motion for summary judgment is made, the adverse party must come forward with <u>specific facts</u> showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (emphasis added). Mere allegations or denials

1

will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Ortho-McNeil Pharma. Inc. v. Caraco Pharma. Labs. Ltd.*, 2005 WL 2679788, at *2 (E.D. Mich. October 19, 2005). Attached as Exhibit 5. Moreover, a court should discount any expert testimony "that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc). NetJumper's expert, Prof. Galler, did not even consider the Patent Examiner's Reasons for Allowance. [Reply Brief, Exhibit 1[1] (Galler Depo. Tr.) at 79:7-80:25.] As set forth in detail below, NetJumper has manifestly failed to set forth facts demonstrating a genuine issue for trial and its expert's declaration should be completely disregarded by the Court.[2]

    B.    **The Only Issue of Claim Construction Relevant to, and Determinative of, the Non-Infringement Motion is the Meaning of "Search Window".**

        1.    **The Term "Search Window" Is Properly Construed to Cover the Entire Window, and Not Simply the Portion of the Window in Which Internet Content is Displayed.**

NetJumper frames the claim construction dispute here as whether the term "search window" corresponds to item 400 in the patent drawings or item 406, relying on the patent's Figure 4—a picture of the prior art, <u>not</u> the claimed invention—in construing the claims for its invention. NetJumper then asserts that the indicator 406 corresponds only to the display area of the browser window, and <u>not</u> to the whole browser window.

By focusing on prior art Figure 4, NetJumper carefully avoids the fact that the figures of its invention (e.g., Figures 5A-C) show that indicator 406 points to the whole window – including the browser frame – because 406 points to the frame portion of the window in those figures, and <u>not</u> to the viewing area. NetJumper's entire edifice falls apart once this plank is removed. Given (as explained below) that the patent's written description also calls 406 the

---

[1] All references to "Exhibit" refer to the Exhibits attached to Google's Reply Brief.
[2] Notably absent from NetJumper's opposition are: (1) any direct challenge to the Declaration of Randall Stark concerning CyberPilot; and (2) any direct challenge to the Declaration of Joseph Hardin, Google's technical expert, on the facts supporting his expert opinions.

"browser window," not a distinct and different "search window" as Prof. Galler opines, the intrinsic evidence compels the conclusion that the search and browser windows are synonymous.

### 2. The Patent Examiner Was Not Wrong In His Understanding of the Term "Search Window."

NetJumper takes a remarkable position for a patent-holder—that the examiner who allowed its patent was wrong when he issued the patent because he "confused the terminology." [Opp. at 21-22, n. 10; *compare* Declaration of Bernard A. Galler ("Galler Dec.") ¶ 26 ("One of ordinary skill in the art would *not* confuse these structures [400 and 406].") (emphasis added).][3] NetJumper could easily have corrected the examiner at the time of the alleged mistake but instead chose to remain silent and let the patent issue.[4]

NetJumper's assertion that the examiner's allowance of the patent was correct, but that his basis for issuing the patent was incorrect, runs counter to Federal Circuit precedent that NetJumper ignores. First, because examiners are presumed to carry out their duties correctly, NetJumper bears a heavy burden on this issue. *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1322 (Fed. Cir. 2000). NetJumper cannot meet this burden since its expert admitted that he did not even consider the Examiner's Statement of Reasons for Allowance in his declaration and NetJumper submits no other evidence on the point. [Exhibit 1 (Galler Depo. Tr.) at 79:7-80:25.]

Second, the general rule is that statements by an examiner about the meaning of a claim will bind an applicant who does not object.[5] This rule has a very narrow exception: examiner statements can be non-binding only when they are unilateral (i.e., when the applicant did not

---

[3] *Compare*, Exhibit 1 (Galler Depo. Tr.) at 62:3-5 ("Well, everything matters, but if there's a conflict, the number is what I would take as determinant.").

[4] The Examiner's Statement of Reasons for Allowance explicitly invites responsive comment: "Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee . . . . Such submission should be clearly labeled 'Comments on Statement of Reasons for Allowance.'" [Wolff Dec., Ex. B (G 286).]

[5] *See ACCO Brands, Inc. v. Micro Security Devices, Inc.*, 346 F.3d 1075, 1079 (Fed. Cir. 2003) (adopting construction asserted in applicant's arguments and repeated by the examiner in his reasons for allowance); *Inverness Med. Switzerland v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1372 (Fed. Cir. 2002) ("A broader definition may be disclaimed, for example, where the examiner adopts a narrow definition and the applicant does not object.").

3

make an earlier amendment or remark to which the examiner's comments are connected) and not related to the patentability of the claims. For example, in *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005), the court found no authority for the proposition that "an examiner's <u>unilateral</u> statements in a Notice of Allowance constitute a clear and unambiguous disavowal of claim scope." (emphasis added). *See also 3M Innovative Properties Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373-74 (Fed. Cir. 2003).

NetJumper relies on the *Salazar* decision but ignores the distinction made there between examiner comments in response to actions by the applicant (which are binding), and examiner comments that are unilateral and unconnected to the allowance of the patent (which are not necessarily binding). NetJumper also neglects the decisions in *ACCO, Inverness, Torpharm, Inc. v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322 (Fed. Cir. 2003), and *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973 (Fed. Cir. 1999) and relegates the entire issue to a footnote. [Opp. at 21-22, n. 10.]

Here, precedent compels the conclusion that the Reasons for Allowance bind NetJumper. The examiner's comments were not unilateral but were instead made in direct response to NetJumper's amendment of the claims. Specifically, the examiner rejected the claims over prior art that showed first and second icons <u>as part of a display screen</u>. [Wolff Dec. Ex. B (G 217-227).] The inventors subsequently narrowed the claims to recite the "separate from the search window" limitation to overcome the prior art of record. [Google Brief, at 12-13; Wolff Dec., Ex B (G 249-264).] It was this amendment (and related argument) to which the examiner's subsequent Reasons for Allowance related. [Google Brief, at 28-30; Wolff Dec., Ex. B (G 286).] This case is thus like *Elkay*, where the examiner's Reasons for Allowance commented on a narrowing amendment the applicants made in the prior response to overcome prior art. *Elkay*, 192 F.3d at 978-79. The Examiner's comments here were in response to NetJumper's amendment and argument—they were not unilateral and they are binding.

The term "search window" is properly construed to correspond to browser window (400) even if NetJumper's acquiescence does not bar its arguments here. Specifically, as the court in *Salazar* noted, an Examiner's comments are relevant to the meaning a skilled artisan would give

4

a term even if the comments were unilateral. *Salazar*, 414 F.3d at 1346-47. Here, the comments of the Examiner, trained in the relevant technical area, provide the best indicator of such a meaning. Accordingly, NetJumper cannot escape the conclusion that "search window" refers to the entire browser window (400).

    3.    **The Written Description and Portions of the Prosecution History Other Than the Reasons for Allowance Also Contradict NetJumper's Construction of the Claim Term "Search Window."**

NetJumper makes three arguments regarding the written description's role in claim construction: (1) that the applicants defined "search window" in the specification; (2) that item 406 is the "search window" and refers only to the display area in the middle of the browser; and (3) that following Google's construction would cause the claims not to cover every embodiment shown in the patent. [Opp. at 11-15.] All three arguments are wrong.

First, the written description cannot and does not define "search window" because the term never appears there. Instead, the written description repeatedly uses the term "browser window" or variants to describe both items 400 and 406—specifically, "browser interface" and "browser window" for 400, and "browser view window," "window," and "browser window" for 406.[6] It is therefore incorrect for NetJumper to state that the "Web page display area that corresponds to [sic] 'search window' was explicitly defined by the inventors of the '172 Patent as structure 406 ('browser view window 406')." [Opp. at 11.]

Google also addressed NetJumper's second argument above, noting that 406 cannot refer only to the display area, since it points to the outside of the very bottom of the browser window in Figs. 5A-5C, but rather confirms that the entire browser window is the "search window."

Finally, NetJumper is wrong on the law when it suggests that claims must be construed to cover all embodiments, particularly any alternate embodiments suggested at column 7, lines 22-26 of the patent that do not require the icons to be separate from the search/browser window. In

---

[6] It is worth noting that, although the specification refers to 406 eight times as "browser window" and only once as "browser view window," NetJumper chose only to cite the latter in its brief—in a transparent attempt to suggest that the patent identifies only the Web page display area as 406.

fact, Federal Circuit precedent states the reverse—embodiments that a patentee discloses in the specification but fails to recite in the claims are dedicated to the public. *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (*en banc*).[7] There is no doubt that the "separate from" limitation added by amendment to each of the claims excludes the alternate embodiments NetJumper is alluding to. NetJumper therefore cannot (and does not) argue that such "disclosed but unclaimed" subject matter is covered by the literal language of the claims. NetJumper cannot resort to the doctrine of equivalents, either, since such disclosed but unclaimed subject matter has been "dedicated to the public." *Id.*; *see also Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1106 (Fed. Cir. 1996).

> 4.  **When the Court Properly Construes "Separate from the Search Window" It Must Find that the Google Toolbar Does Not Infringe.**

NetJumper's only challenge to Google's motion for summary judgment of non-infringement is to assert its alternate construction of the "search window" limitation of the claims. There is no dispute as to how the accused software functions. There is also no dispute, and NetJumper's own expert admits, that if the court construes this limitation as suggested by Google, there is no infringement.[8] [Exhibit 1 (Galler Depo. Tr.) at 112:20-113:13.] Accordingly, the Court should grant summary judgment of non-infringement.

> C.  **NetJumper's Attempts to Rewrite the Claims to Incorporate Additional Limitations Relates Only to the Issue of Invalidity and Should be Rejected.**

NetJumper declined to provide any claim construction during discovery in this case.[9] However, now faced with the invalidating CyberPilot prior art, NetJumper offers several result-

---

[7] NetJumper misapplies case law holding that claims should not be construed to exclude every embodiment in the patent or the preferred embodiment. [*See, e.g.,* Opp. at 15-16, 21.] Here, the preferred embodiment—a window floating on top of the browser, as described in Figs. 5A-5C—is covered by Google's construction of "search window."

[8] NetJumper makes the conclusory statement that doctrine of equivalents still applies. [Opp. at 26.] It does not, and NetJumper cannot carry its burden in this regard. [*See* Google Brief, at 10-13, 17-19; *see also Network Commerce, Inc. v. Microsoft Corp.*, 422 F. 3d 1353, 1362-1363 (Fed. Cir. 2005) (must provide "particularized testimony and linking argument" to create a genuine issue of material fact).]

[9] After Google filed its motion for summary judgment, NetJumper amended its infringement contentions, though this does not change the outcome of this motion. *See,* Exhibit 4.

6

oriented constructions for phrases such as "concept of search" and "concept of automation" that appear nowhere in the claims but that NetJumper hopes to use to avoid invalidity.[10]

### 1. The Preambles to Claims 1 and 5 (elements [1a] and [5a]) Do Not Include a So-Called "Concept of Search" Limitation.

NetJumper claims that the "concept of search" entered the claims when the applicants amended them to recite "a computer implemented method for searching on a local computer..." instead of a "computer implemented method." [Opp. at 19.] NetJumper then morphs this "concept of search" into a "search capability" requirement, and then still further into a specific requirement for the "ent[ry] of keywords or terms to search the Internet for, but [not entry of] an already known URL," which NetJumper asserts is absent from the CyberPilot prior art. [Opp. at 32; Galler Dec. ¶¶ 30, 38.]

There are several obvious problems with NetJumper's approach. First, none of these words is in the claims. Only the preamble refers to "searching." There is a "heavy presumption" that the plain meaning of the claim language, and not some litigation-induced gloss on that language, controls. *Phillips*, 415 F.3d, at 1318-9. A corollary principle is that examples from the specification are not to be read into the claims. *Id.*, at 1323. Therefore, the fact that the prior art shows a natural language search (e.g., the user enters "rat" rather than the URL of a file relating to "rat") does not mean that the claims require this particular detail. Unless the claims say so, or unless the applicant or Examiner said so during prosecution, they do not.

Second, even the language that is in a claim preamble (the part of the claim before the colon) is not construed as a claim limitation when it simply states an intended use of an invention—here, "for searching on a local computer." *Catalina Marketing Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002); *Intirtool, Ltd., v. Texar Corp.*, 369

---

[10] NetJumper's opposition brief provides no summary table or chart for its claim constructions, does not provide consistent constructions, and even "reserves the right...to submit a proposed construction at a later time." [Opp. at 23.] Even its assertion that "an inventor may be his own lexicographer" does not say whether the inventors here acted as their own lexicographers for any particular term. [Opp. at 13.]

F.3d 1289, 1295-6 (Fed. Cir. 2004). The only exceptions are when the applicants used the preamble language to overcome the prior art, or the preamble language provides "antecedent basis" for the claim body, i.e., the exact term in the preamble is repeated in the body. *Catalina Marketing*, 289 F.3d at 808-9. Neither exception applies here: the preamble language was added to the claim because the examiner had found the earlier language confusing, not because it was necessary to avoid the prior art, and the term "searching" is not repeated in the claim body.[11]

    2.    **Google's Invalidity Motion Does Not Turn on Particular Constructions for the Claim Terms "Icon" and "Parse;" NetJumper's Constructions Are Even Broader Than Google's.**

Because NetJumper construes "icon" and "parse" more broadly than does Google, Google's invalidity motion does not turn on construction of these terms. For "icon," NetJumper simply states that the proper construction is "at least as broad" as Google's construction, and Google has no objection to a broader definition of that term. For "parse," Google believes NetJumper's proposed construction is too broad, but that dispute is not material to this motion.

D.    **CyberPilot Anticipates Claims 1-8 of the '172 Patent.**

CyberPilot anticipates claims 1-8 of the '172 Patent and NetJumper points to no facts in dispute here. Notably, NetJumper and its expert wholly ignored: (1) the functionality of the Netscape Navigator browser with which CyberPilot operates[12]; (2) the CyberPilot tutorial; and (3) Randall Stark's declaration.[13] NetJumper's opposition relies instead on conclusory statements by Prof. Galler and naked attorney argument. Prof. Galler's bare conclusions cannot

---

[11] *Compare* Opp. at 19, 32 and Galler Dec. ¶¶ 34, 38 (asserting that alleged "searching" language was added to avoid prior art) *with* Galler Dec. ¶ 31 (asserting that when the Examiner rejected the claims, he pointed only to the icons in a web display area and not to anything involving search) and Wolff Dec., Ex. B (G 207: examiner rejecting pending claims 1-6 (issued claims 1-4, but not issued claims 5-8) as indefinite, not based on prior art, and making no rejection of the other claims on this ground; and G 258-259: inventors expressly pointing to the non-prior art reason as the basis for their amendment of the preamble).

[12] CyberPilot must operate with some Web browser; NetJumper used a browser other than the prior art Netscape Navigator browser used by Google, but then ignored the functionality of both.

[13] NetJumper's opposition brief does not challenge claim elements [1f] or [5f]. NetJumper also does not substantively challenge Google on the merits of claims 2 and 6, but instead focuses on what it alleges Google's expert Prof. Hardin did not do. This is not material to Google's motion.

8

raise a material issue of fact. First, much of the declaration is legal argument and should be ignored for that reason.[14] *Phillips*, 415 F.3d at 1318 ("However, conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court"). Second, Dr. Galler admitted he did not even review all of the materials upon which Google's motion and Prof. Hardin's opinions are based. [Exhibit 1 (Galler Depo. Tr.) at 108:17-109:2; 175:23-176:10; 177:19-178:6; 179:6-180:6); *see Phillips*, 415 F.3d, at 1318 ("[a] court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history.'").] Finally, bare opinions without factual basis are insufficient as a matter of law to support a denial of a properly supported motion for summary judgment. *Ortho-McNeil*, 2005 WL 2679788, at *2. Because NetJumper failed to meet Google's evidence of invalidity with admissible <u>evidence</u> in rebuttal, the Court should grant Google's motion.

1.   **The Claim Preambles ([1a] and [5a]) Do Not Limit Claims 1-8, and if They Did, CyberPilot Still Anticipates the Claims.**

As Google pointed out above, the preamble term "searching" does not limit the claims. If it did, CyberPilot in operation with a prior art browser like Netscape Navigator would still anticipate the claims because it teaches what NetJumper calls the "concept of search" limitation. Specifically, a user could navigate to the Yahoo! homepage exactly as shown and admitted as prior art in Figure 4 of the patent. Second, the "Search" option in CyberPilot permits entry of keywords or terms to search a WebMap file. [Stark Dec., Ex. B, at 20-23.]

2.   **Claim Elements [1b] and [5b][15] ("Constructing a Search Window") Are Present in CyberPilot.**

The key to NetJumper's argument here is to suggest that the "concept of search" limitation applies to the "constructing a search window" language. This was addressed above regarding claim construction. CyberPilot, like the inventors' preferred embodiment, however,

---

[14] Specifically, Google believes paragraphs 16-43 are substantially legal argument.
[15] NetJumper mislabels the claim elements in its brief.

9

tells a Web browser to construct the "search window" (whether it is item 400 or item 406) under either definition of this limitation. [Hardin Dec. Exs. D, E, and F.] Claim elements [1b] and [5b] are present in the CyberPilot prior art.[16] [*Id.*] Again, NetJumper provides no evidence to counter the evidence provided by Google on this teaching of the prior art.

    3.    **Claim Elements [1c] and [5c] ("Separate From the Search Window") Are Present in CyberPilot.**

NetJumper's analysis of limitations [1c] and [5c] in CyberPilot appears to be misdirection. First, NetJumper protests that "Google is not particularly precise in its description of what it considers to be the CyberPilot 'search window.'" [Opp. at 33.] NetJumper then wrongly suggests that Google argued that the New Map icon and corresponding window is the "search window." Google provided a detailed declaration, claim construction chart, annotated figures from the CyberPilot tutorial, and an invalidity chart which set forth the relevant facts. [Hardin Dec., Exs. F and E; Wolff Dec. Ex. L.] Google and its expert analyzed CyberPilot and identified the "search window" as the "browser window" referred to at pages 12-13 of the CyberPilot tutorial and "browser window (400)" as identified by the Patent Examiner. [*Id.*; Stark Dec. Ex. B.] The CyberPilot window, which is nearly identical to jumper window 300 in Figure 5A, is where the "first and second icons" are displayed, which is separate from the "search window" – regardless of whether "search window" is construed to cover item 400 or 406 in Figure 5A. [Hardin Dec. Exs. E and F; Stark Dec., Ex. B, at 12-13.][17] Claim elements [1c] and [5c] are, therefore, present in the CyberPilot prior art. [Hardin Dec., Ex. F.] Although NetJumper provides attorney argument incorrectly characterizing Google's assertions, it again fails to provide <u>any evidence</u> that contradicts these assertions in any way.

    4.    **Claim Elements [1d] and [5d] ("Displaying an Initial Data File") Are Present in CyberPilot.**

---

[16] It is further noted in this regard that Figure 4 of the patent labeled this same Netscape browser window 400 as prior art.

[17] NetJumper does not deny that CyberPilot displays a "first and second icon."

10

As with the other claim elements, NetJumper's only opposition to Google's evidence is to provide argument that sets up a straw man by mischaracterizing Google's position and then making "rebuttal" arguments without evidentiary support. In this case, NetJumper mistakenly refers to the "New Map dialog box," which is invoked through the "New Map" icon, for its argument on the "displaying an initial data file" limitation.[18] But Google identified the Web page displayed in the Netscape browser window 400 as meeting this limitation. NetJumper's analysis of a different feature is irrelevant and leaves Google's analysis and evidence on this limitation unopposed. Thus, claim elements [1d] and [5d] are present in CyberPilot. [Hardin Dec., Exs. D, E, and F.]

### 5. Claim Elements [1e] and [5e] ("Form an Initial List of Location Identifiers") Are Present in CyberPilot.

The sleight-of-hand in NetJumper's analysis of claim elements [1e] and [5e] is its unstated requirement that there be a particular sequence to the steps described in the claims, and in particular that the step of "displaying a search window on a display screen" must be performed before any icons are selected. This is simply not so. The initial data file can be presented in the browser window before, or after, the control icon is selected. Either way, CyberPilot forms an initial list of location identifiers responsive to the selection of the control icon. Whether the initial data file is already displayed in the search window at this point is irrelevant. Moreover, NetJumper admits in multiple places that CyberPilot forms an initial list of location identifiers responsive to the selection of an icon that is in the CyberPilot window, and thus necessarily is not in the "search window" (whether it is element 400 or 406). [Opp. at 33, 35-36.]

### 6. Claims 4 and 8 are anticipated by CyberPilot.

Contrary to NetJumper's assertion, Google did "separately and particularly" analyze these claims and explained exactly the first, next, previous, and last location identifier referred to in these claims as found in the CyberPilot prior art. [Google Brief, at 35-36; Hardin Dec., Ex. F

---

[18] The New Map dialog box would, in any event, constitute a window separate from the search window consistent with Galler Dec. ¶ 25.

11

(p. 4, claim 4); Exhibit 1 (Galler Depo. Tr.) at 169:2-3 ("I may have overstepped on those words").] While all of these limitations are found in the CyberPilot prior art, NetJumper offers no law for its suggestion that <u>all</u> of the location identifiers need be present. The claims are clear and say "the one . . . selected from a group consisting of" – not "all." NetJumper chose not to respond to Google's analysis or law directly but instead, again, responded to irrelevant constructions and invalidity arguments it concocted.[19] NetJumper and its expert's responses are irrelevant argument that cannot raise a genuine issue of material fact.

7. **Claims 2 and 6 ("markup language") are anticipated by CyberPilot.**

NetJumper asserts that Google offered no evidence that the initial data file displayed in the "search window" (browser window 400) is in a markup language, and states, without any support, that Google's expert "never actually looked at" some undefined "code." [Opp. at 37.][20] NetJumper overlooks that it admitted this limitation was, in fact, in the prior art relied upon by Google when NetJumper stated earlier in its brief, "specifically the area where the browser would display the returned HTML file, exactly as shown by 406 in Figure 4." [Opp. at 13.] Moreover, Figure 4 is labeled as "PRIOR ART" and is the same Netscape Navigator browser that operates with CyberPilot. The written description of the patent describes this prior art ability of the Netscape Navigator too. [Wolff Dec., Ex. B ('172 Patent, Col. 1:29-46).]

III. **CONCLUSION**

For the foregoing reasons, Google's motion of summary judgment of non-infringement of claims 1-8 by the Google Toolbar and invalidity of claims 1-8 in view of CyberPilot should be granted.

Dated: <u>November 3, 2005</u>

Respectfully Submitted,
By: <u>/s/ L. Pahl Zinn</u>
L. Pahl Zinn (P57516)
*Attorney for Google Inc.*

---

[19] *See*, Exhibit 1 (Galler Depo. Tr.) at 169:1-173:7.
[20] *See*, Exhibit 2 (Hardin Depo. Tr.) at 147:17-19; and Exhibit 3, detailing the evidence Google offered in support of its markup analysis. NetJumper, on the other hand, offers no evidence or analysis other than to simply deny Google's conclusion.

12

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>NOVEMBER 3, 2005</u>, I electronically filed <u>GOOGLE'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '172 PATENT</u> with the Clerk of the Court using the ECF system, which will send notice of such filing upon the following attorney: <u>ANDREW KOCHANOWSKI</u>, and that I have mailed by United States Postal Service the foregoing to the following non-ECF participants: <u>MICHAEL H. BANIAK</u>.

          Respectfully Submitted,

          DICKINSON WRIGHT PLLC

          By: /s/ L. Pahl Zinn
               Kathleen A. Lang (P34695)
               L. Pahl Zinn (P57516)
          Attorneys for Google Inc.
          500 Woodward Avenue, Suite 4000
          Detroit, MI 48226
          (313) 223-3500

DETROIT 28155-1 905936v1