Dockets.Justia.com

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NETJUMPER SOFTWARE, L.L.C.,
a Michigan limited liability corporation,

    Plaintiff,

vs.

GOOGLE INC.,
a Delaware corporation,

    Defendant.

Case No. 04-70366-CV
Hon. Julian Abele Cook
Magistrate Judge R. Steven Whalen

---

SOMMERS SCHWARTZ, PC
Andrew Kochanowski (P55117)
Nabeel N. Hamameh (P60981)
Attorneys For Plaintiff
2000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-0300

BANIAK, PINE & GANNON
Michael Baniak
Co-Counsel For Plaintiff
150 N. Wacker Drive, Suite 1200
Chicago, IL 60606
(312) 673-0360

DICKINSON WRIGHT, PLLC
Kathleen A. Lang (P34695)
L. Pahl Zinn (P57516)
Attorneys For Defendant
500 Woodward Ave., Ste. 4000
Detroit, MI 48226
(313) 223-3500

FISH & RICHARDSON P.C.
Howard G. Pollack
Attorneys For Defendant
500 Arguello Street, Ste. 500
Redwood City, CA 94063
(650) 839-5070

FISH & RICHARDSON P.C.
Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
(617) 542-5070

---

LAW OFFICES SOMMERS SCHWARTZ, P.C. • 2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

**PLAINTIFF NETJUMPER SOFTWARE, L.L.C.'S SECOND NOTICE OF DEPOSITION OF DEFENDANT GOOGLE, INC. PURSUANT TO RULE 30(b)(6)**

**PLEASE TAKE NOTICE THAT** pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Net Jumper Software, L.L.C. ("Net Jumper"), by and through its counsel,

will take the deposition of Google, Inc. ("Google") at the law offices of Fish & Richardson, P.C., 500 Arguello Street, Ste. 500, Redwood City, California 94063, commencing on October 19, 2005 at 9:30 a.m., or at a time mutually convenient for the parties. The deposition will continue from day to day thereafter until completed. The deposition will take place upon oral examination pursuant to the Federal Rules of Civil Procedure before an officer duly authorized by law to administer oaths and record testimony. Some or all of the depositions may be recorded stenographically and may be recorded by videotape.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant is obliged to designate one or more officers, directors, or managing agents, or one or more other persons who consent to testify on Defendant's behalf concerning the matters set forth in the attached Appendix A. Defendant is requested to set forth, for each person designated, the matters on which the person will testify.

SOMMERS SCHWARTZ, PC

*[signature]*

Andrew Kochanowski (P55117)
Nabeel N. Hamameh (P60981)
Attorneys for Plaintiff
2000 Town Center, Suite 900
Southfield, Michigan 48075
(248) 355-0300

Dated: October 11, 2005

# APPENDIX A

## DEFINITIONS AND INSTRUCTIONS

A. "Google", "Defendant", "you" or "your" refers to Google Inc. as well as any predecessor, successor, parent, subsidiary, division, related company or other business entity, including any entity controlled by or operated by or on behalf thereof, including all past and present officers, directors, employees, persons acting in joint-venture or partnership relationships with it, and agents and representatives (including consultants and attorneys) acting or purporting to act on behalf of any of the foregoing.

B. "Netjumper" means Netjumper Software, L.L.C., including its officers, directors, employees, agents and attorneys and subsidiaries and/or divisions.

C. The "172 Patent" means U.S. Patent No. 5,890,172, entitled "Method and Apparatus for Retrieving Data From a Network Using Location Identifiers", issued on March 30, 1999; and the "655B1 Patent" means U.S. Patent No. 6,226,655B1, entitled "Method and Apparatus for Retrieving Data From a Network Using Linked Location Identifiers", issued on May 1, 2001.

D. The phrase "Patents-in-Suit" refers to U.S. Patent No. 5,890,172 and U.S. Patent No. 6,226,655B1.

E. The word "Document" is used in its broadest sense to include everything that is contemplated by Rules 26 and 34 of the Federal Rules of Civil Procedure, including without limitation documents stored in electronic form, such as electronic mail, computer source code, object code and microcode, and Documents stored on any media accessible by electronic means. A comment or notation appearing on any Document that is not part of the original text is to be considered a separate "Document."

F. "Thing" means any tangible object other than a Document.

G. "Person" or "Entity" means not only natural Persons, but also, without limitation, firms, partnerships, associations, corporations and other legal entities, and divisions, departments or other units thereof.

H. "Infringement" refers to any form of infringement actionable under United States law, including, without limitation, direct infringement, contributory infringement, inducement to infringe, literal infringement and infringement under the doctrine of equivalents.

I. "Related to", "Relating to" and "Related to" means describing, discussing, concerning, reflecting, compromising, illustrating, containing, embodying, constituting, analyzing, stating, identifying, referring to, dealing with or in any way pertaining to.

J. "Litigation" shall mean the action initiated by Net Jumper Software L.L.C. in the United States District Court for the District of Michigan, entitled Net Jumper Software, L.L.C. v Google, Inc., and assigned Case No. 04-70366-CV by that Court.

## TOPICS FOR EXAMINATION

1. The method of distribution, sales and/or licensing of Google Toolbars to endusers, including the total number of Google Toolbars distributed, sold and/or licensed, and Google's knowledge concerning the amount/number of total Google Toolbar users since inception of the Google Toolbar.

2. The substance of any and all license agreements with any and all manufacturers (e.g., Sony, Dell, Hewlett Packard, Compaq) for the Google Toolbar, regardless of whether such agreements are still in effect or the technology no longer employed.

3. The number or amount of Google Toolbars downloaded from date of inception through the present.

4. The identity of the creator(s), designer(s), or engineer(s) of the Google Toolbar.

5. The exact structure and operation of the Google Toolbar, and specifically, the Next-Previous option on the Google Toolbar.

6. The history of the Google Toolbar development, including the dates when the Google Toolbar went into beta distribution and non-distribution.

7. The identification of all people who (a) developed the Google Toolbar, (b) made the decision to implement the Google Toolbar, (c) adopted the Next-Previous feature, and (d) made the decision to adopt the Next-Previous feature.

8. The reasons for choosing to include the Next-Previous feature in the Google Toolbar.

9. The substance of Google's policies regarding technology licensing.

10. The incremental revenues and/or benefits received or anticipated/expected to be received from (a) the Google Toolbar, and (b) the Next-Previous option in the Google Toolbar.

11. The costs associated with development of (a) the Google Toolbar, and (b) the Next-Previous option of the Google Toolbar.

12. The meaning, interpretation, construction or scope of any claim or claim term of the '172 patent and/or the '655B1 patent including the basis or support of any position taken.

4

13. The type of search conducted by Google employees or third parties relating to the scope of the '172 patent and/or the '655B1 patent and the outcome or result of each search.

14. The substance of Google's advertisements and/or publications as related to Google's web-surfing and/or web-navigation systems, including but not limited to the Google Toolbar and the Next-Previous option.

15. The type and amount of damages that Goograb allegedly caused to Google and the basis and/or cause of those damages.

16. The basis for Google's assertion/contention that the Google Toolbar does not infringe on the '172 patent and/or the '655B1 patent.

17. The basis for Google's assertion/contention that the '172 patent and/or the '655B1 is invalid.

18. The basis for Google's Third Affirmative Defense which states that Netjumper is estopped from asserting any interpretation of any claims of either of the patents-in-suit that would cover the Google Toolbar and/or Google Viewer.

19. The basis for Google's Fourth Affirmative Defense that Netjumper's claims are barred by the doctrine of unclean hands.

20. With respect to the following agreements: (1) their content, (2) the number of Google Toolbars downloaded as a result of each agreement, (3) the revenues generated by each agreement, (4) the amount(s) paid by Google under each agreement, and (5) the costs associated with each agreement.

    a. The Google Promotion and Distribution Agreement with RealNetworks, Inc., as set forth in G005470-005555.

    b. The Google Toolbar Promotion and Distribution Agreement between Google and Toshiba America Information Systems, Inc., Google's G005556-005568.

    c. The Google Toolbar Promotion and Distribution Agreement between Google and AG, Com., Inc., Google's G005569-005596.

    d. The Google Promotion and Distribution Agreement between Google and Atom Shockwave Corp., Google's G005597-005631.

    e. The Google Toolbar Distribution Agreement between Google and Computer Shopper Magazine, Google's G005632-005637.

5

f.  The Google Promotion and Distribution Agreement between Google and Cyberlink Corp., Google's G005638-005671.

g.  The Google Promotion and Distribution Agreement between Google and Cyberlink Corp., Google's G005672-005715.

h.  The Amendment to Google Toolbar and Google Desk Bar Promotion and Distribution Agreement between Google and Div-Xnetworks, Inc., Google's G005716-005755.

i.  Google Toolbar Distribution Agreement between Google and Edizioni Master SRL, Google's G005756-005761.

j.  The Google Toolbar Promotion and Distribution Agreement between Google and Fujitsu Computer Systems Corporation, Google's G005762-005773.

k.  The Google Toolbar Promotion and Distribution Agreement between Google and Globalscape Texas, LP, Google's G005774-005798.

l.  The Google Toolbar Promotion and Distribution Agreement between Google and Hewlett-Packard Company, Google's G005799-005842.

m.  The Google Toolbar and Google Desk Bar Promotion and Distribution Agreement between Google and IGN Entertainment, Inc., Google's 005843-005883.

n.  The Google Toolbar Distribution Agreement between Google and Sony (including Sony USA, and other Sony entities throughout the world).

o.  The Google Distribution Agreement between Google and the three entities referenced in a letter dated July 21, 2005 from Julie M. Wheeler, litigation case manager, to Nabeel Hamameh.

21. The identify of the person(s) who made the decision to implement the above agreements.

22. The rationale, financial analysis, and basis for Google's payments under the above agreements.

23. The identification of all documents supporting the analysis of #3 above.

6