UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NETJUMPER SOFTWARE, L.L.C.,

        Plaintiff,

                                                    Case number 04-70366

v.                                                Honorable Julian Abele Cook, Jr.

GOOGLE, INC.,

        Defendant.

## ORDER

On February 2, 2004, the Plaintiff, NetJumper, Inc. ("NetJumper") initiated this lawsuit, in which it complained that Google, through an application of its "Google Toolbar,"[1] had infringed upon two of its patents: (1) U.S. Patent No. 5,890,172 ('172 patent") and (2) U.S. Patent No. 6,226,655B1('655 patent"). On August 17, 2005, Google filed a "Motion for Summary Judgment of Non-Infringement and Invalidity of the '172 Patent." For the reasons that are stated below, the Court denies Google's motion for summary judgment.

I.

In its '172 patent, NetJumper has attempted to solve a problem known as "drilling down" by providing a navigational system program which works in conjunction with a web browser. In its preferred embodiment, the '172 patent employs a floating window,[2] which is separate and

---

[1]The "Google Toolbar" is a software program that is integrated within the four corners of the web browser. It was introduced as a browser add on, which allowed the user to enter a search into the browser frame without having to travel to the Google web page. Included within the "Google Toolbar" are the "Next" and "Previous" buttons which were designed to solve the "drilling " down" problem.

[2]The floating window within the '172 patent is known as the "Internet Buffet."

distinct from a web browser's window. Notwithstanding its preferred embodiment, NetJumper asserts that the '172 patent provides for its invention to be "integrated" within the four corners of the browser window, exactly like the "Google Toolbar."

In its motion for summary judgment, Google sets forth two principal arguments:

> NetJumper's patent infringement case suffers from two fundamentals flaws: (1) its '172 patent is limited to a computer program that is displayed in a different window than an internet web browser, while Google integrates its accused Toolbar product into the Internet browser window; and (2) the "invention" claimed in the '172 patent is not an invention at all because it already existed in a third-party product known as CyberPilot – which the patent examiner did not know about, but the NetJumper inventors did. Because of the first problem, Google's Toolbar cannot infringe the claims, and because of the second, the claims are invalid.

Google's Br. at 10. The Court disagrees.

## II.

In its motion for summary judgment, Google relies upon Fed. R. Civ. P. 56© ) to support its arguments. In *Celotex Corp. v. Catrett*, the Supreme Court opined that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." 477 U.S. 317, 323–24 (1986). The text of Rule 56© provides that a motion for summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." The burden rests with Google, as the proponent of this dispositive motion, to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must not attempt to weigh the facts in this case. *See 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, it is obligatory for this Court to examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ.

P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

A "[s]ummary judgment of non-infringement requires a two-step analytical approach. First, the claims of the patent must be construed to determine their scope. Second, a determination must be made as to whether the properly construed claims [encroach upon] the accused device." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).Thus, a "[s]ummary judgment of non-infringement can only be granted if, after viewing the alleged fact in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the [patent] claims." *Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

"The first step of this analysis - claim construction - is a question of law. Accordingly, it falls upon the district court to discern the meaning of the claim language." *Id.*; *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). On the other hand, "[t]he second step of this analysis – the determination of whether the properly construed claims [encroach upon] . . . the accused device – is question of fact," which is generally submitted to a jury. *Pitney Bowes, Inc.*, 182 F.3d at 1304. Although the second step is a question of fact, "it is amenable to summary judgment where, *inter alia*, no reasonable fact finder could find infringement." *Ethicon Endo-Surgery, Inc. et al. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998) (internal citations and quotation omitted); *see also Warner-Jenkinson Co., Inc. V. Hilton Davis Chemical, Co.*, 520 U.S. 17, 39 n.8 (1997) ("Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obligated to grant partial or complete summary judgment."). However, because "infringement is itself a fact issue, a district court must approach a motion for summary judgment

of infringement or non-infringement with a care proportioned to the likelihood of its being inappropriate." *SRI Int'l v. Matsushita Elec. Corp. Of America*, 775 F.2d 1107, 1116 (Fed. Cir. 1985). Thus, the Court must (1) construe the relevant '172 patent claim and (2) determine whether a reasonable jury could find infringement.

In construing a patent claim, a court "looks first to the three sources of intrinsic evidence of record: the patent itself, including the claims, the specification, and, if in evidence, the prosecution history. . . . A construing court does not accord the specification, prosecution history, and other relevant evidence the same weight as the claim itself, but consults these sources to give the necessary context to the claim language." *Ductmate Industries, Inc. v. Famous Supply Corp.*, 55 F. Supp.2d 777, 782 (N.D. Ohio 1999) (citing *Cybor Corp. v. FAS Tech., Inc.*, 138 F.3d 1448, 1454 (Fed. Cri. 1998)). "Terms used in the claim are to be given their ordinary and customary meaning, unless another meaning is specified or evident from the patent history." *Id.* (internal quotation and citation omitted). A court should look "to extrinsic evidence[, such as expert testimony,] to assist construing a patent claim only if the intrinsic evidence is ambiguous." *Id.*

For the sake of convenience, the Court will now direct its focus upon claim 1 as being representative of the remaining claims.[3] Claim 1 provides, *inter alia*, as follows:

> What is claimed is: . . .
> 1. A computer implemented method for searching on a local computer . . . and the method for searching comprising the acts performed on the local computer of:
>> constructing a search window on a display screen of the local computer;
>> displaying a first and a second icon *separate from the search window on said display screen;*
>  . . . .

---

[3]The parties have also focused their briefs on claim 1 as being representative of claims 1-8.

*See* '172 Patent at col. 13, ll 43-55 (emphasis added).

In determining whether the Google toolbar infringes upon the '172 patent, the dispositive phrase on this issue is "search window." Significantly, the patent does not define this phrase. However, it is Google's position that the "search window" is denoted by item 400 in the patent, which is "the area defined by the four corners of the browser window, such as the Netscape browser[.]"[4] *See* Google's Br. at 24-26. NetJumper, by contrast, suggests that the "search window" is identified by item 406 in the patent.[5] *See* NetJumper's Br. at 8. According to NetJumper, item 400 represents the "browser interface"- not the "search window"- as Google contends.

Having carefully reviewed the evidence,[6] there are several unyielding reasons to adopt NetJumper's position. First and foremost, the patent specification (i.e., the written description of the patent) clearly describes alternative embodiments of the '172 which are incorporated within the four corners of the browser interface (item 400):

> In alternate embodiments the jumper window [(i.e., Internet Buffet)] may take any of several forms. The user interface may include popup or persistent window, *a toolbar*, a menu modification of the browser window, *a toolbar modification of the browser window*, or the use of accelerator keys on the keyboard

.

---

[4]Google also submits that the '172 patent refers to item 400 as the "browser window." *See* Google's Br. at 24.

[5]NetJumper also contends that the '172 patent refers to item 406 as the "browser view window" and, less often, as the "browser window."

[6]The Court notes that because the intrinsic evidence as a whole sufficiently resolves the disputed definition of the phrase, "search window," it must not look to any of the parties' extrinsic evidence. *See Ductmate Industries, Inc.*, 55 F. Supp.2d. at 782. Google's points the Court to the dictionary definition of "search window." However, upon reflection, the Court believes that the dictionary meaning of the "search window" offers little guidance.

'172 patent, col. 7, ll. 22-26 (emphasis added).  Other language within the specification also sets forth alternative embodiments of the invention.  *See Id.* at col. 12, ll. 32-37 ("In another embodiment, the jumper functions are built directly into the browser. . . . All of these embodiments provide a more integrated jumper/browser environment for the user.").  Accordingly, the specification language in conjunction with the language of claim 1 clearly supports NetJumper's position that the "search window" is denoted by item 406.[7]  *See Eolas Technologies Incorp. V. Microsoft Corp.*, 399 F.3d 1325,1337(Fed. Cir. 2005).  If the Court were to conclude otherwise, it would have to ignore the plain language of the specification.

Second, notwithstanding Google's contentions that the "search window" and the "browser window" represent item 400, it neglects to provide the Court with an adequate explanation for, under its interpretation, the function or independent significance of item 406 in the patent specification.  In its Reply Brief, Google advances its argument that "[item] 406 cannot refer only to the display area, since it points to the outside of the very bottom of the browser window in Figs. 5A-5C, but rather confirms that the entire browser window is the 'search window.'" Google's

---

[7]It should be mentioned that Google labels the patent's alternative  embodiments as "hypothetical alternative[s]" because "[t]he inventors admitted . . . that at the time the patent was filed , they had neither the desire nor the ability to integrate their invention into the browser." Google's Br. at 27 (citing to depositions).   However, Google's proposed extrinsic evidence regarding the inventor's intention must be rejected because the patent specification is unambiguous. As such, extrinsic evidence, such as depositions and dictionaries, may not be considered.  *See, e.g.*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence."). Moreover, Google submits that the alternative embodiments outlined in the patent specification were disclosed but left unclaimed and, therefore, "dedicated to the public." However, the question as to whether the alternative embodiments outlined in the specification were "unclaimed," as Google submits, requires  an interpretation of the phrase "search window."  As noted above, the Court has concluded that the "search window" is denoted by item 406, which is also described as the "browser view window" (or "browser window").  Therefore, under this interpretation, the alternative embodiments in the specification are claimed in the '172 patent. Therefore, this argument by Google must be rejected.

Reply Br. at 5. However, the mere existence of item 406 suggests that it represents an area in the patent that is different from item 400. Google's lack of a satisfactory explanation for the significance of item 406 is significant because, under this interpretation, it would be rendered superfluous and, therefore, inconsequential.

Finally, the Court now turns to the prosecution history of the '172 patent. *See Lemelson v. General Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992) ("The prosecution history gives insight into what the applicant originally claimed as the invention, and often what the applicant gave up in order to meet the Examiner's objections."); *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 45 (Fed. Cir. 1985) ("[T]he prosecution history . . . limits the interpretation of claims so as to exclude any interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance."). The record shows that the examiner rejected NetJumper's original claims because they were too broad; namely, the prior art (i.e., the CNN interactive website, the Alta Vista site, and Yahoo site) included navigation controls that were hardcoded into the web page display area (or "search window"). NetJumper responded by amending its original claims to separate its invention from the web page display area, which, as identified in the specification, describes the embodiments (e.g., toolbars) within the browser interface (item 400) or the embodiments outside the four corners of the browser interface (i.e., floating window denoted as item 300).

In accepting NetJumper's distinctions between its amended claims and the prior art, the examiner accepted the amended claims and set forth the following reasons:

> As shown in the FIGURE 5A of the Applicant's invention, the first and second icons . . . are provided separate (item 300) from the browser window (item 400), which is not shown and not suggested by the prior art of record.

No objections were made by NetJumper to the examiner's "Reasons for Allowance."

Google maintains that this language, when read in conjunction with NetJumper's "acquiescence," amounts to a clear and unmistakable disavowal of any embodiment of the invention that is integrated within the browser interface (item 400). *See N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281 (Fed. Cir. 2000) (requiring "reasonable clarity and deliberateness" for statements cited as narrowing claim scope). However, in *Eolas Technologies Incorp. v. Microsoft Corp.*, the Federal Circuit held that a patentee "has 'no obligation to respond to an examiner's statement of Reasons for Allowance, and the statement of an examiner will not necessarily limit a claim.'" 399 F.3d 1325, 1338 (Fed. Cir. 2005) (citing *ACCO Brands, Inc. v. Micro Sec. Devices*, 346 F.3d 1075, 1079 (Fed. Cir. 2003)). While the Federal Circuit has carved out an exception wherein "the examiner simply repeated the arguments that the patentee had presented," *ACCO Brands, Inc.*, 346 F.3d at 1079, Google has not presented any language in the prosecution history which suggests that "the examiner simply repeated the arguments that [NetJumper] had presented."[8] Therefore, based on the specification and the prosecution history,

---

[8]

Google does assert that "the examiner's comments were . . . made in *direct response* to NetJumper's amendment of the claims." Google's Reply Br. at 4. *ACCO Brands* does not simply require that the examiner's statement are made "in response" to the patentee. Rather, *ACCO Brands* requires an advocate to demonstrate that "the examiner *repeated* the arguments the patentee had presented." 346 F.3d at 1079 (emphasis added). As additional support, Google points to *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999) for the proposition that "statements by an examiner abut the meaning of a claim will bind an applicant who does not object." Google's Reply Br. at 3. However, in *Elkay*, the court considered the applicant's silence in addition to the other evidence which demonstrated the applicant's to intent to disavow broader interpretations of the claims within the patent. 192 F.3d at 979-980; *see also Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005) ("[A]n applicant's silence regarding statements made by the examiner during prosecution, *without more*, cannot amount to a 'clear and unmistakable disavowal' of claim scope." (emphasis added)); *3M Innovative Props. v. Avery Dennison Corp.*, 350 F.3d 1365, 1374-75 (Fed. Cir. 2003) ("An applicant's silence in response to an examiner's characterization of a claim does not reflect the applicant's clear and unmistakable acquiescence to that characterization if the claim is eventually allowed on grounds unrelated to the examiner's unrebutted characterization."). Here,

the Court interprets the phrase, "search window," to refer to item 406 ("the browser view window").

After having construed the phrase, "search window," and viewing all reasonable inferences in favor of the NetJumper, the Court concludes that there is a genuine issue of a material fact as to whether the Google Toolbar literally, or by its equivalents, infringed upon the '172 patent. *See Pitney Bowes, Inc.*, 182 F.3d at 1304.

### III.

In the alternative, Google contends that the '172 patent is "invalid as anticipated" by the CyberPilot program. Google's Br. at 32. A patent is presumed to be valid. *See* 35 U.S.C. § 282 (1982). A party "challenging its validity bears the burden of proving invalidity by clear and convincing evidence." *Mas-Hamilton Group*, 156 F.3d at 1216; *see also Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988) ("a challenger must establish facts, by clear and convincing evidence, which persuasively lead to the conclusion of invalidity."). Whether a prior art anticipates the challenged patent is a question of fact. *See Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999). Therefore, a dispositive motion, such as an application for the entry of summary judgment, which challenges the invalidity of a patent can be granted only if, by clear and convincing evidence, "all of the same elements [or claims] are found in exactly the same situation and united in the same way . . . in a single prior art reference." *E.I. DuPont de Nemours & Co. v. Polaroid Graphics Imaging, Inc.*, 706 F.Supp. 1135,1141 (D. Del.), *aff'd*, 887 F.2d 1095 (Fed. Cir. 1989). "Thus, anticipation is a narrow

---

there is no other evidence in this record which demonstrates NetJumper's "clear and unmistakable disavowal" of the claim scope. *See N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281 (Fed. Cir. 2000) (requiring "reasonable clarity and deliberateness" for statements cited as narrowing claim scope).

technical defense that should be strictly applied." *Id.*

In the instant matter, Google's challenge to the invalidity of the '172 patent falls short of the requisite "clear and convincing" standard under *Polaroid Graphics Imaging*. Hence, this comparison must be rejected. Foremost, Google submits that the CyberPilot program anticipates the '172 Patent which, in turn, invalidates the claims in the '172 Patent. To establish this point, Google compares claims 1-8 of the '172 patent to the CyberPilot program. *See* Google's Br. at 33-36. However, these anticipation arguments by Google must be rejected because it has relied upon an incorrect interpretation of a key phrase (i.e."search window") in the '172 Patent.[9]

Moreover, Google attempts to bolster its argument by comparing the '172 patent to the CyberPilot program with the professional declarations of its experts. *See id.* However, in an effort to counter Google's experts, NetJumper has submitted the declarations of its own experts who have identified purported distinctions between the CyberPilot program and the '172 patent. *See* NetJumper's Br. at Ex. 2. These differences of opinions among the experts strongly demonstrates that the issue of anticipation is not ripe for a summary judgment. *See Edwards Systems Technology, Inc. v. Digital Control Systems, Inc.*, 99 Fed. Appx. 911, 921 (Fed. Cir. 2004) ("a classic 'battle of the experts' . . . renders summary judgment improper."); *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) ("competing expert opinions present the 'classic battle of the experts' and it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves.") (internal quotation marks and citation omitted). Therefore, the Court must reject Google's invalidity arguments in its motion for summary judgment.

---

[9]Furthermore, it should be noted that Google has not compared any alternative interpretation of the '172 patent to the CyberPilot program. *See Avia Group,* 853 F.2d at 1562 ("'[a challenger's] silence leaves untouched at this stage what the statute presumes, namely, that [the] patent is valid'" (quoting *Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1270 (Fed. Cir. 1985) (alterations in original)).

III.

For the reasons stated above, the Defendant's motion for summary judgment must be, and is, denied.

IT IS SO ORDERED.

DATED:   March 29, 2006                     s/ Julian Abele Cook, Jr.
         Detroit, Michigan                  JULIAN ABELE COOK, JR.
                                            United States District Judge

Certificate of Service

I hereby certify that on March 29, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                            s/ Kay Alford
                                            Courtroom Deputy Clerk