EXHIBIT 5
PART 1 OF 2



PATENT NUMBER

**6226655**

6226655

## U.S. UTILITY PATENT APPLICATION

| O.I.P.E. | PATENT DATE |
|---|---|
| SCANNED ☑ O.A. | MAY 0 1 2001 |

TEAM 2

| SECTOR | CLASS | SUBCLASS | ART UNIT | EXAMINER |
|---|---|---|---|---|
| | 707 | 1 | 2446 | HO |

2176

FILED WITH: ☐ DISK (CRF)  ☐ FICHE
(Attached in pocket on right inside flap)

EXHIBIT
2
MATHUS

## PREPARED AND APPROVED FOR ISSUE

### ISSUING CLASSIFICATION

| ORIGINAL | | CROSS REFERENCE(S) | | |
|---|---|---|---|---|
| CLASS | SUBCLASS | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | |
| 707 | 501 | 707 | 513 | |
| **INTERNATIONAL CLASSIFICATION** | | 345 | 339 | |
| G06F | 15/16 | | | |
| | / | | | |
| | / | | | |
| | / | | ☐ Continued on Issue Slip Inside File Jacket | |

| ☑ TERMINAL DISCLAIMER | DRAWINGS | | | CLAIMS ALLOWED | |
|---|---|---|---|---|---|
| | Sheets Drwg. | Figs. Drwg. | Print Fig. | Total Claims | Print Claim for O.G. |
| | 14 | 14 | 5C | 10 | 13 |

| ☐ a) The term of this patent subsequent to _____ (date) has been disclaimed. | NOTICE OF ALLOWANCE MAILED |
|---|---|
| | (Assistant Examiner)            (Date)  |
| | 1-10-01 |
| ☑ b) The term of this patent shall not extend beyond the expiration date of U.S Patent. No. 5,810,700 | ISSUE FEE |
| STEPHEN S. HONG  PRIMARY EXAMINER  1/8/01 | |
| (Primary Examiner)            (Date) | Amount Due | Date Paid |
| | 1340.00 | 3-12-01 |
| ☐ c) The terminal _____ months of this patent have been disclaimed. | ISSUE BATCH NUMBER |
| SChan  1-10-01 | A74 |
| (Legal Instruments Examiner)            (Date) | |

**WARNING:**
The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-436A
(Rev. 8/98)

ISSUE FEE IN FILE

(LABEL AREA)

Formal Drawings (_____ shts) set _____

(FACE)

G 000326

09/204,214  US PTO
12/02/98
707  Class  Subclass
ISSUE CLASSIFICATION

PATENT APPLICATION

09204214

Jc135  U.S. PTO
09/204214
12/02/98

DEC
INITIALS

# CONTENTS

| | Date received (Incl. C. of M.) or Date Mailed | | | Date received (Incl. C. of M.) or Date Mailed |
|---|---|---|---|---|
| 1. Application 24 papers. | | 42. | | |
| 2. Prior Art Watch | Feb. 4 1999 | 43. | | |
| 3. Since (2) | 11-23-98 | 44. | | |
| 4. Abandonment withdrawn 6-20-00 | 6-6-00 | 45. | | |
| 5. Def declime 3 | 5-30-00 | 46. | | |
| 6. amdt A (NE) | 5-30-00 | 47. | | |
| 7. Advisory action | 6-26-00 | 48. | | |
| 8. Resp. P/A by Applicant | 5-23-00 | 49. | | |
| 9. Notice of Accept | 7-14-00 | 50. | | |
| 10. Abandonment | 7/18/00 | 51. | | |
| 11. Pet 1.137(b) | 7-24-00 | 52. | | |
| 12. CPA appn | 7/24/00 | 53. | | |
| 13. Chrnes & Otto | 7/21/00 | 54. | | |
| 14. Pet. Granted | 8/4/00 | 55. | | |
| 15. R.E. 3 month | 8-30-00 | 56. | | |
| 16. Amdt B | Dec. 1 2000 | 57. | | |
| 17. Terminal Disclaimer | Dec. 1 2000 | 58. | | |
| 18. Allowance | 1-10-01 | 59. | | |
| 19. Rev of Powers of Atty | 12-02-98 | 60. | | |
| 20. Notice of acc effect | 1-18-01 | 61. | | |
| 21. SMALL ENTITY | 03/12/01 | 62. | | |
| 22. Formal Drawings ( 15 shts) set | 04/22/01 | 63. | | |
| 23. | | 64. | | |
| 24. | | 65. | | |
| 25. | | 66. | | |
| 26. | | 67. | | |
| 27. | | 68. | | |
| 28. | | 69. | | |
| 29. | | 70. | | |
| 30. | | 71. | | |
| 31. | | 72. | | |
| 32. | | 73. | | |
| 33. | | 74. | | |
| 34. | | 75. | | |
| 35. | | 76. | | |
| 36. | | 77. | | |
| 37. | | 78. | | |
| 38. | | 79. | | |
| 39. | | 80. | | |
| 40. | | 81. | | |
| 41. | | 82. | | |

(LEFT OUTSIDE)

G 000329

US006226655B1

(12) **United States Patent**
Borman et al.

(10) Patent No.: **US 6,226,655 B1**
(45) Date of Patent: **\*May 1, 2001**

(54) **METHOD AND APPARATUS FOR RETRIEVING DATA FROM A NETWORK USING LINKED LOCATION IDENTIFIERS**

(75) Inventors: **Gilbert Borman**, Bloomfield Hills, MI (US); **Rajat Bhatnagar**; **Arul Sebastian**, both of Stamford, CT (US); **Anup Mathur**, Sunnyvale, CA (US); **Vinay Wadhwa**; **Mukesh Kumar**, both of New Delhi (IN); **C. Vinay Kumar Singh**, Gurgaon (IN)

(73) Assignee: **NetJumper, Inc.**, Southfield, MI (US)

( \* ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **09/204,214**

(22) Filed: **Dec. 2, 1998**

**Related U.S. Application Data**

(63) Continuation of application No. 08/727,085, filed on Oct. 8, 1996, now Pat. No. 5,890,172.

(51) Int. Cl.[7] ........................................... G06F 15/16
(52) U.S. Cl. ..................... 707/501; 707/513; 345/339
(58) Field of Search ........................... 707/501, 513, 707/530, 3, 104; 70/10, 102; 345/329, 333, 335, 338, 339, 340, 346

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,801,702  \*  9/1998  Dolan et al. ......................... 345/357

| | | |
|---|---|---|
| 5,808,613 | \* 9/1998 | Marrin et al. ......... 345/355 |
| 6,034,689 | \* 3/2000 | White et al. ......... 345/357 |
| 6,038,610 | \* 3/2000 | Belfiore et al. ......... 709/300 |

OTHER PUBLICATIONS

CNN Interactive, "http://cnn.com/index", Feb. 20, 1998, screen printouts, 7 pages.
AltaVista, "http://www.altavista.com", Feb. 20, 1998, screen printouts, 2 pages.
Adobe Acrobat 2.0 Exchange/Distiller Getting Started, Adobe Systems Incorporated, 1994, pp. 2–48.\*

\* cited by examiner

Primary Examiner—Stephen S. Hong
(74) Attorney, Agent, or Firm—Brooks & Kushman P.C.

(57) **ABSTRACT**

A computer implemented method and system for retrieving information through a browser connected to a network. A first file of information is received which includes a first mark-up language to identify contents of the information, which contents include site identifiers. The site identifiers corresponding for example to file locations on the Internet. The first file is displayed in a browser window. Responsive to receiving the first file of information by the browser, the first file of information is parsed by a jumper to generate a list of site identifiers. This list of site identifiers is then stored by the jumper and displayed in a jumper window. Responsive to an activation by the user, a computer is directed to perform the following steps. The jumper determines which of the stored site identifiers is currently selected and automatically selects the next. Next the jumper directs the browser to access the file at the site corresponding to automatically selected site identifier. Finally, the browser is directed to display the file the browser has retrieved in the browser window.

**10 Claims, 14 Drawing Sheets**



U.S. Patent     May 1, 2001     Sheet 1 of 14     US 6,226,655 B1

FIG. 1

G 000331

FIG. 2

G 000332

U.S. Patent     May 1, 2001     Sheet 3 of 14     US 6,226,655 B1



FIG. 3

G 000333

Case 2:04-cv-70366-JAC-RSW    Document 86-9    Filed 07/11/2006    Page 8 of 124



**(PRIOR ART)**
**FIG. 4**

G 000334



FIG. 5A

G 000335



**FIG. 5B**

**U.S. Patent**    May 1, 2001    Sheet 7 of 14    US 6,226,655 B1



**FIG. 5C**



**FIG. 6**

G 000338

**U.S. Patent**     May 1, 2001     Sheet 9 of 14     US 6,226,655 B1

(Prior Art)
FIG. 7

G 000339



FIG. 8A



**FIG. 8B**

G 000341



FIG. 8C

U.S. Patent          May 1, 2001          Sheet 13 of 14          US 6,226,655 B1



(Prior Art)
FIG. 9A

G 000343

U.S. Patent       May 1, 2001      Sheet 14 of 14       US 6,226,655 B1



FIG. 9B

US 6,226,655 B1

1

**METHOD AND APPARATUS FOR RETRIEVING DATA FROM A NETWORK USING LINKED LOCATION IDENTIFIERS**

This application is a continuation of U.S. application Ser. No. 08/727,085 filed on Oct. 8, 1996, now U.S. Pat. No. 5,890,172.

BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to information retrieval. More specifically, the invention relates to tools for traversing hypertext data.

2. Background Information

The development of computerized information resources such as the Internet and various on-line services, such as CompuServe™, America On-Line™, Prodigy™ and other services has lead to a proliferation of electronically-available information. This electronic information is increasingly displacing more conventional means of information transmission, such as newspapers, magazines and even television.

The largest information resource in existence today is the Internet. The Internet is a group of client and server computers linked one to another and each having a unique identifier, DNS (distributed network server), assigned by the Internet authority in Cambridge, Mass. and Geneva, Switzerland. In order for information to be found on the Internet every file is given a specific address by which it may be located. To access the Internet a user employs what is called a browser. Currently the most popular browser is Netscape Navigator™ browser developed by Netscape Communications Corporation of Mountain View, Calif. A wide array of browsers is available for just about every platform. The browser's job is twofold. First, given a pointer to a piece of information on the net it has to be able to access the information or operate in some way based on the contents of that pointer. Second, if the document/file (hereinafter file) is encoded the browser has to translate that to a suitable format for display to the user. The display may include multimedia effects, e.g. sound and animation.

The most popular encoding of Internet files communicated between client and server is the HTML (hypertext markup language). The WWW (World Wide Web) or simply the "Web" includes all the servers adhering to this standard. Each page loaded from the Internet is a single file encoded in HTML. HTML describes the structure of a file. The structure of the file includes title, paragraphs, images and any pointers to other files.

The pointer to a specific site is called an URL (Uniform Resource Locator). The URL provides a universal, consistent method for finding and accessing information for a Web browser. The URL comprises a file type, a server I.D. (DNS), one or more directories and subdirectories, and a file name. URLs are also used as part of a hypertext link within a file to another file. These URLs then provide the browser with a way to navigate the Web. URLs contain information about a file: including file type (FTP, Gopher, HTTP), the Internet server on which the file is located (WWW.NCSA.UIUC.EDU, or FDP.APPLE.COM, or Net Com 16.Net.Com, and so on), the directory of the file, and the file name.

In order to speed the process of finding relevant information on the Internet several servers on the Internet provide an index to the Internet and a search engine. These information

2

indexers such as Yahoo™, Excite™, Lycos™, Inktomi™, and Alta Vista™ perform two valuable functions. First, using their own Internet links, they continually search the Internet and index all files on the Internet into subject categories and store this index on their own database. The information indexers also allow a client to connect to their server and enter a search query. In response the information indexer provides a list of all files on the web that meet the search criteria. Therefore, the information indexer such as Yahoo™ not only updates and maintains a topical index for all files on the web, but also makes that index searchable by a client. It should be noted that the information that is retrieved from Yahoo™ contains only a general topic identifier and the file location on the Internet for that specific topic.

It would indeed be a cumbersome process for the client seeking specific information if the indexes that were retrieved from Yahoo™ only told the searcher where to look. If this were the case, the considerable task remaining to the client would be to manually enter the network address, URL, of each file and the go through the process of retrieving that file. To overcome this problem, the search result retrieved by Yahoo™ is encoded in HTML as a hot-link which makes every "footnote" an active rather than a passive reference. These hot-links appear to the user in the browser window as bold face text which is easily distinguished from the other text based information in the file. A hot-link comprises a text description and a corresponding URL. When the user selects a hot-link the browser detects that selection and outputs the URL on the Internet to retrieve the file corresponding to that URL and display it to the user. Therefore, by merely selecting with a mouse a specific footnote in a file encoded in a markup language, a client is immediately given access to the remote web server that contains the specific file referred to in the footnote.

With a markup language such as HTML (hypertext markup language) both amateurs and professionals become authors and the footnotes on the printed page become the hypertext of the electronic page. What was a passive reference now becomes an accessible link to a related file. A markup language describes the structure of a file including headings, paragraphs, images and what are called hot-links. A hot-link displays at the user level as text or graphic and is processed for communication purposes as an URL. It is these hot-links which provide the interactive footnotes described above.

Even with the indexing provided by Yahoo™, Lycos™, Excite™, Inktomi™, Alta Vista™, etc., the process of finding the exact topic is still extremely time consuming and can involve visiting literally hundreds of Web Sites. Typically, a user will retrieve a file from an information indexer and will not only look at the files retrieved by selecting the indexers hot-links, but will also select other hot-links in the retrieved documents. This process of starting a search that begins with an initial hot-link and following a search trail that leads to successive files each increasingly displaced from the starting point is known as a drill-down. The problem with current browsers is that when a user has drilled-down through many levels of sites, the only way to return to the original HTML file is to hit the browser's back key which moves the user up one level at a time through the original search tree back to level "1." Only then can the user access other hot-links retrieved in the original search.

What is needed is a more efficient way to conduct a search.

SUMMARY

A first object of the invention is to provide operational controls for simplified Internet navigation from various sites and back again.

G 000345

US 6,226,655 B1

3

A second object of the invention is to save users time and effort in finding information on the Internet.

A third object of the invention is to enable the publication of a new format for on-line magazines, called Netazines, which allow publishers to leverage the navigational controls provided in the invention product to foster a new paradigm for browsing magazine style information on the Internet.

A computer implemented method and system for retrieving information from a network. In a first embodiment a first file of information is received which may include a first mark-up language to identify contents of the information, which contents include site identifiers. The site identifiers corresponding for example to file locations on the Internet. The first file is displayed in a browser window. Responsive to receiving the first file of information by the browser, the first file of information is parsed by a jumper to generate a list of site identifiers. This list of site identifiers is then stored by the jumper and displayed in a jumper window. Responsive to an activation by the user, a computer is directed to determine which of the stored site identifiers is currently selected and automatically selects an other. The other includes the first, the prior, the next, or the last on the list.

In a second preferred embodiment a first file of information in a hypertext markup language is received and displayed in the browser window. The first file of information also contains site identifiers and other information. The first file is displayed in the browser and is parsed, and the site identifiers from that file are stored by the jumper in a list. The stored list of site identifiers is displayed in the jumper window. Responsive to a selection by a user of automatic mode, a computer is directed to perform the following steps. The jumper selects a first site identifier from the stored list of site identifiers. The jumper directs the browser to access the file at the site corresponding to the automatically selected site identifier. The browser, is directed by the jumper, to display the file in the browser window. Then the jumper initiates a delay of a predetermined interval. At the end of the interval the jumper selects the next site identifier from the stored list of site identifiers. The jumper directs the browser to access the file at the site corresponding to the automatically selected next site identifier. The browser, is then directed by the jumper, to display that file in the browser window. The jumper continues to repeat this animation loop from one site identifier in the stored list of site identifiers to the next, until either the entire list of site identifiers has been sent to the browser and displayed, or until the user terminates the process. In this manner, an animated tour of all files having site identifiers parsed from the first file is displayed in the browser window under the direction of the jumper.

In a third embodiment, a first file of information in a hypertext markup language is received and displayed in a browser window. The first file of information also contains a site identifier and other information. The first file of information is displayed by the browser in the browser window. Responsive to receiving the first file of information, the jumper parses the first file and extracts and stores a list comprised of first file site identifiers. The stored list of site identifiers is then displayed in the jumper window. The user is allowed to select from the browser window a specific site identifier, known as a search level "1" site identifier, and responsive thereto cause the browser to access and display a second file retrieved from the site corresponding to the selected level "1" site identifier. This second file includes a hypertext markup language and site identifiers. The user is again allowed to select from the browser window a specific site identifier and responsive thereto causes the browser to

4

access and display a third file retrieved from the site corresponding to the selected site identifier. This process can be repeated in the browser, until the user has completed their search, or drill-down.

Responsive to the completion of the drill-down in the browser, as indicated to the jumper by receipt of a single jump selection from the user, the computer is directed to perform the following steps. The jumper determines which of the stored level "1" site identifiers is currently selected and automatically selects the single jump level "1" site identifier. Next the jumper directs the browser to access the file at the site corresponding to the single jump selected level "1" site identifier. Finally, the browser is directed to display the file the browser has retrieved in the browser window. This allows the user to return to the files pointed to by the original level "1" site identifiers without having to traverse in reverse serial order the site identifiers selected in the drill-down.

BRIEF DESCRIPTIONS OF DRAWINGS

The present invention is illustrated by way of example and not limitation in the figures in which like references indicate like elements and in which:

FIG. 1 shows a client server system including embodiments of the jumper invention.

FIG. 2. shows a more detailed view of the client server system illustrated in FIG. 1.

FIG. 3. shows a preferred embodiment of the screen interface and tool bar of the jumper.

FIG. 4 shows a prior art browser user interface, and the query form of an information index provider.

FIGS. 5A–C shows a the initial stages of a search session utilizing a prior art browser and the jumper.

FIG. 6. shows a later stage in the search session of FIGS. 5A–C.

FIG. 7. shows the steps in the search process in prior art browsers.

FIGS. 8A–C shows the processes of a search session on the jumper.

FIGS. 9A–B show the search traversal patterns of a prior art browser and the jumper.

DETAILED DESCRIPTION

One embodiment of the invention is a method and apparatus for retrieving information through a browser connected to a network, and providing the information to a user. Although the following will be described with reference to certain particular embodiments, including data structures, flow of steps, hardware configurations, menu configurations, etc. . . , implementation of the invention can be practiced without these specific details.

One embodiment of the invention allows a search to be conducted in non-linear order. This may be done in either single jump or automatic jump mode utilizing a jumper. A search tree does not therefore need to be traversed in reverse serial order after a drill-down as is required utilizing prior art browsers. The invention allows a searcher to jump across multiple levels at a time.

Search Levels:

The operation of prior art browsers is best described by reference to FIG. 9A. FIG. 9A shows a series of hypertext files. The files may be resident on a hard drive, a local network, a wide area network or the Internet. Three hot-links are shown 920, 922, 924 on file 902. Hot-link 924 is shown

G 000346

US 6,226,655 B1

5

as linked to four levels of files. Selecting hot-link 924 causes the browser to access file 926, which is a level 2 file. Selecting the first hot-link on file 926 causes the browser to access file 928, which is a level 3 file. Selecting the first hot-link on file 928 causes the browser to access file 930, which is a level 4 file. Finally, selecting the first hot-link on file 930 causes the browser to access file 932, which is a level 5 file. Selecting hot-link 922 causes the browser to access file 934, which is a level 2 file. Selecting hot-link 920 causes the browser to access file 936, which is a level 2 file.

The traversal steps from hot-link 924 through 926, 928, 930 and 932 constitute a drill-down from level 1 to level 5. Prior art browsers require that the user, in order to return to the original file 902, must traverse the search tree in reverse serial order. As shown serial return 904 traverses from 932 to 930, serial return 906 traverses from 930 to 928, serial return 908 traverses from 928 to 926, and finally serial return 910 traverses from 926 to 902, the initial starting point. This requires the needless steps of visiting each of the branches traversed in the drill-down. This process is unnecessarily time consuming when compared with the capabilities of the current jumper invention.

FIG. 9B shows the same tree structures as does FIG. 9A. FIG. 9B shows the use of one embodiment of the invention to traverse many levels at a time in either single jump or automatic jump mode. In the single jump mode when the searcher has reached level 5 file 932. If the user wants to return to level 1 they do not need to do so in reverse serial order, as is required by prior art browsers. Instead, the user directs the jumper to access the next level 1 hot-link. In response, the jumper returns the user in a single jump 914 from level 5 file 932 to the level 2 files pointed to by the hot-links in the level 1 file 902. Much time is saved and the user can proceed to search other level 1 hot-links. In automatic jump mode, the user instructs the jumper to access all hot-links on the level 1 file 902. In response, the jumper directs the browser to access and display in the browser window each of level 2 files 926, 934 and 936. These files are accessed by the browser in response to the jumper sending at timed intervals each of hot-links 924, 922, and 920 from a parsed hot-link list to the browser. The browser accesses each of the files 926, 934, and 936 to which hot-links 924, 922, and 920 respectively point. This allows the user to see an animation in the browser window for a timed interval.

Hardware:

In order to better understand the operation of a jumper, it is necessary to first understand an environment in which the jumper is practiced. FIGS. 1–2, show the hardware environment in which the jumper operates. In FIG. 1, an Internet 22 is connected to client 20 by an incoming Internet line 24 and an outgoing Internet line 26. Jumper 28 and browser 30 are part of client 20. Internet 22 comprises servers 32, 34, 36, and 38. Each server contains HTML files. The client and all servers are linked electronically. Server 34 is shown as the server of an information broker. The server comprises a CGI 44 (common gateway interface), forms 44 on which a user query is entered, and storage containing an updated topical index 46 of all files on the web. To access a specific site on the network, browser 30 outputs an URL 60 across outgoing Internet line 26. Routers on the Internet establish an electronic link between the client 20 and the appropriate server 32–38. Communications with the Internet are received on incoming Internet line 24.

The client hardware architecture for both the browser and the jumper is shown in greater detail in FIG. 2. The client 20 contains storage 204, computational hardware 202, operat-

6

ing system 206, and GUI (Graphical User Interface) 200. The storage 204 contains a storage segment 230 in which the jumper stores parsed HTML files. Hardware 202 comprises a microprocessor, an I/O interface, a display and a bus connection to storage 204. The operating system 206 may comprise a bios and an operating environment such as System 7™, Unix™ or Windows™. The GUI 200 comprises jumper 28 and browser 30. Browser 30 comprises user I/O 208 and presenter 210. The jumper 28 comprises user I/O 212, presenter 214, and parser 216.

The operation of hardware 202 is controlled by the operating system 206. The operating system and graphical user interface (GUI) 200, create the local environment in which the jumper 28 and browser 30 exist. The browser user I/O 208 handles the tasks of sending and retrieving communications 218 via the operating system 206 and hardware 202 to the Internet 22. The browser handles Internet communications for the jumper. The browser user I/O communicates with the jumper user I/O 212 via jumper-parser I/O 208 and presenter 210. The jumper 28 comprises user I/O translating files received from the—Internet, e.g., HTML encoded files, to the presenter 210 via presenter protocol 220. Additionally, browser user I/O uploads at the direction of jumper user I/O 212, HTML encoded files to parser 216 via browser I/O-jumper parser protocol 222.

Jumper parser 216 handles the task of converting an HTML encoded file uploaded from browser user I/O 208 into a format suitable for a single jump or automatic jump mode search, as discussed above in connection with FIG. 9B. The parser extracts from the HTML file: an advertisement, a plurality of URLs and topic descriptors corresponding to each URL. The parser passes these via jumper-parser I/O protocol 226 to jumper user I/O 212. Jumper user I/O 212 communicates with jumper presenter 214 via jumper I/O -presenter protocol 228 to display to the user available jump sites and to provide a user interface by which the user may input commands. Jumper user I/O also communicates with browser I/O 208 via browser I/O-jumper I/O protocol 224.

User Interface:

An embodiment of the jumper user interface is shown in FIG. 3. This interface allows the user to see all the hot-links on a given level and to select a hot link in either single jump or automatic jump mode as described above in connection with FIG. 9B. The jumper thus enhances the search capabilities of the browser.

Jumper window 300 comprises a menu bar 302, a button bar 304, an advertisement area 306, a jump site window 308, and a drop-down list button 310. The jumper menu bar contains file, edit, action, and help items. Jumper button bar contains a first entry button 312, a previous entry button 314, a random jump button 316, a next entry button 318, a last entry button 320, a start timer button 322, a stop timer button 324 and a refresh/update button 326.

The jump site window 308 has an associated drop down list accessible by selecting drop-down-down list button 310. This list comprises parsed hot-links. These hot-links are extracted from a file initially retrieved by the browser. Any one of the hot-links in the parsed list can be selected by the user with a mouse. This drop-down list provides one method for selecting a specific Internet site to jump to. Advertisement area 306 contains an advertisement parsed from an HTML page received by the browser. Button bar 304 provides controls for single jump and automatic jump mode. All buttons relate to the hot-links in the jumper's parsed list regardless of how far the user has drilled-down in the browser. All buttons return the user to at least one of the

G 000347

US 6,226,655 B1

7

hot-links on the list and direct the browser 30 shown in
FIGS. 1–2 to retrieve a file from the site corresponding to the
URL associated with the hot-link and further direct the
browser to display that file to the user.

First entry button 312 allows the user to return from a
drill-down to the first entry on parsed list. Previous entry
button 314 returns the user to the prior hot-link on the list.
Random jump button 316 returns the user to a randomly
selected hot-link on the parsed list. Next entry button 318
selects the next hot-link on the list, and last entry button 320
accesses the last entry on the list. Start timer button 322
initiates the automatic and successive selection of every
hot-link on the parsed list and the browser responsive
thereto, displays for the user a file retrieved from the URL
corresponding to each hot-link. The animation initiated by
start timer button is terminated by stop timer button 324.
Refresh/update button 326 causes all hot-links in a file
which the browser has retrieved to be parsed and uploaded
and displayed in the drop-down list of jumper window 300.
Additionally, this parsed list is stored in HTML storage
segment 230 as shown in FIG. 2.

In alternate embodiments the jumper window may take
any of several forms. The user interface may include popup
or persistent window, a toolbar, a menu modification of the
browser window, a toolbar modification of the browser
window, or the use of accelerator keys on the keyboard.

FIG. 4 shows a prior art browser user interface and a
query from of an information index provider. This interface
allows the user to access web files and also displays the file
contents to the user. The browser interface 400 is that of
Netscape Navigators™. The browser interface includes a
browser menu bar 402, a site window 404, and a window
406 for viewing a file. The browser menu bar includes a back
button 412 and a home button 414. The file shown in the
view window is the query form 408 of Yahoo™. The query
form has a query field 410.

The browser menu bar 402 generally provides for editing
and saving files. Back button 412 allows the user to move
back a search tree in reverse serial order as shown in FIG.
9A. Home button 414 allows the user to return to their home
page 900 in the browser window. The browser site window
404 displays the URL corresponding to the file currently
being displayed, in this case the query form 408 of Yahoo™.
The query form is encoded in a markup language and
contains a query field 410 in which the user may enter the
search topic for which a topical of the web is desired. In this
case, the search topic is "Rat." When the search topic is
entered, it is sent by the browser over the web to Server 34
owned by Yahoo™ 40 and shown in FIG. 1.

Conducting a Search:

FIGS. 5A–C show the initial stages of a search session
conducted with the jumper and browser. A browser interface
400, a file retrieved by the browser, and a jumper window
300 are shown. These are the basic tools for the demonstra-
tive search. The initial file retrieved from Yahoo™ in
response to the query "Rat" is shown as an upper page
portion 502a and a lower page portion 502b in FIGS. 5A–B
and 5C, respectively. These are accessed by scrollable
window bar 500. The retrieved file contains an advertise-
ment 504, a search result summary 506, a plurality of
hot-links of which 508–514 and 580–584 are referenced. A
representative hot-link 514, is shown to contain both an
URL 516 and a text portion 518. In FIG. 5C a jumper drop
down list 586 is shown. In addition, the retrieved file also
contains a next feature 588.

In response to the entry of the query "Rat" as shown on
FIG. 4, the query is sent by browser to Yahoo™. The topical

8

index 46 at Yahoo™, shown in FIG. 1, is searched and the
file 502a–b containing all related level 1 hot-links and other
information is returned to the client 20 and displayed to the
user by the browser as 502a–b. Page 502a is captioned with
an advertisement 504. Immediately below the advertisement
is a search result summary 506, which indicates 74 matches
pertaining to the word "Rat" and display of the first 20 hot
links for those matches. Various hot-links with subject
descriptions appear on the page in bold text with underlin-
ing. These are, for example, 508, "Entertainment,
Humor. . .", 510, "Regional Alternative Theater. . .", 512,
"Space RAT. . .", 514, "Agrizap, Inc. . .".

Each hot-link as discussed above is an active reference.
For example the hot-link 514 comprises a hypertext identi-
fier "<A", an URL 516, a text portion 518 and a closing
identifier. The browser displays to the user only text portion
518 and any images that may accompany it. These are
highlighted and underlined on the user display to indicate to
the user that when they are selected with a mouse a corre-
sponding URL will be sent by the browser to the Internet to
access the specific file referred-to by the URL.

As shown in FIG. 5B, jumper window 300 has been
refreshed via refresh/update button 326, discussed above in
connection with FIG. 3. Responsive to selection of refresh/
update button 326, the file 502a–b is passed from the
browser 30 to the jumper parser 216 as shown in FIG. 2. All
hot-links including the referenced hot-links 508–514 and
580–584 are extracted and passed to jumper user I/O 212.
These are passed to jumper presenter 214 and displayed in
the jumper window 300. Specifically the advertisement 504
is displayed in jumper advertisement area 306, and all
hot-links 508–514 and 580–584 are put in the jumper drop
down list. The first of these hot-links 508 is displayed in the
jumper site window 308.

In FIG. 5C, the lower portion 502b of the retrieved HTML
page is shown. It contains hot-links 580, 582, 584. In jumper
window 300 and specifically jumper site window 308
thereof, the jumper drop-down window, 586, is shown. This
window has been accessed by the user's selection of jumper
drop-down list button 310. The drop-down list contains all
hot-links that were obtained from the original file 502a–b.

Now, by reference to FIG. 6, a later stage of the search
session is shown. FIG. 6 shows a file 600 in browser view
window 406, an URL corresponding to file 600 in browser
site window 404, and a highlight 602 around hot-link 580 in
the jumper drop-down window 586 and the jumper
site window 308. The file 600 was obtained in a drill-down
conducted in the browser window 406. The steps in that
drill-down intervening between FIG. 5C and FIG. 6 have not
been shown. The drill-down however resembles that shown
and discussed above in connection with FIG. 9A. The file
600, shown in browser window 406 is four levels removed
from the initial level 1 hot-link 580. The drill-down was
conducted on the browser view screen by selecting the
hot-links presented in the files retrieved by the browser. If
the user desires to return to the an other hot-link from the
level 1 file, shown as 502a–b in FIGS. 5A–C, from this file
600, they could use the browser menu bar to do so but it
would be slow. They would have to select back button 412
four times to return them one level at a time in reverse serial
order through their entire search back to the level 1 file. The
process is time consuming. Alternately, if they selected the
browser home key 414 they would return to their home page
and lose the level 1 search results. Neither of these alterna-
tives is acceptable. Both of these alternatives are cumber-
some.

US 6,226,655 B1

9

If the jumper product is utilized instead, the user has several options. As a first option, the user may select one of jumper buttons 312, 314, 316, 318 or 320 to return to respectively: a first, a previous, a random, a next, or a last of the hot-links shown in FIG. 6 in jumper drop-down list window 586. In response to user selection, the file corresponding to the selected hot-link will be retrieved and displayed in the browser window 406. As a second option, the user may select start timer button 322 to initiate the automatic and successive selection at a timed interval of every hot-link on the parsed list. In response to the automatic jump mode selection, each file corresponding to the selected hot-link will be retrieved and displayed by the browser for the timed interval. As a third option, the user may select drop-down window button 310 and select a given entry from the drop down list by clicking on it with a mouse. In response to their selection the file corresponding to the selected hot-link will be retrieved and displayed in the browser window 406. Alternately, another instance of browser can be opened to display the selected file. All of these choices enhance the search, and none require multiple reverse serial order steps to return to the level 1 hot-links. Process Flow:

FIG. 7 shows the process connected with conducting a search utilizing a prior art browser. Commencing with start process 700, a connection process 702 results in Yahoo's™ home page 408 and query form being displayed in browser window 406, as shown in FIG. 4. Then in query process 704, the user enters a search topic, e.g., "Rat", in information indexer query field 410. In response to the entry of that search topic, the browser sends the query to server 34 of the search index provider, e.g., Yahoo™, the relevant topical identifiers and URLs are uploaded on an HTML encoded file/page and presented to the user in page receipt process 706. Subsequently, when a user utilizing a mouse selects one of the hot-links shown on that page, e.g., 502a–b, that selection is detected in site access decision 708. The URL corresponding to the last selected hot-link is output over the Internet to access the file indicated by that URL and that file is uploaded and displayed in access process 710 to the user. Subsequently, in history creation process 712, that URL is added to a stack comprising in LIFO order the most recently accessed files, including the complete URL for those files. Control is then returned to back-one decision 714 which decision is also reached if a negative determination is made in site access decision 708. In back-one decision 714, a determination is made as to whether the user has selected back button 412 on the browser menu 402. If that selection has been made, then control is passed to repeat history process 716 in which the previous site visited is popped from the history stack and in access process 718 the browser accesses the site and file indicated by the prior URL and presents that in its view window to the user. Control is subsequently returned to site access decision 708.

Alternately, if in back-one decision 714 a negative determination is reached the browser awaits the next user command 720.

In FIGS. 8A–C the process connected with one embodiment of the current invention is shown. It contrasts with the prior art process, in that the user may return to the level of files pointed to by any level one hot-link immediately. The cumbersome process and many steps of reverse serial order traversal discussed above in FIG. 7, are not therefore necessary. FIG. 8A is an overall view of the process connected with either the single jump or automatic jump mode. FIG. 8B details the specific steps connected with the automatic jump mode. FIG. 8C details the specific steps connected with the single jump mode.

10

Commencing with FIG. 8A and start jumper process 800 control is passed to refresh decision 802. In the event a determination is made that refresh/update button 326 shown in FIG. 3 has been selected, then control is passed to fetch and parse process 804 in which an HTML encoded page displayed in the browser view window is uploaded and parsed into an advertisement and hot-links. These are displayed in the jumper advertisement area 306 and the jumper drop-down window 586, respectively. Then in history decision 806, the determination is made as to whether the jumper history maintain option has been selected. This option is found under the edit portion of the menu bar 302. In the event that this option has been selected, then control is passed to append and store process 808 in which the hot-links extracted in fetch and parse process 804 are appended and stored with previous hot-links in the parsed HTML files in storage segment 230 shown on FIG. 2. Control is then passed to display URL process 812. Alternately, if a negative determination is made in history decision 806, then control is passed to store process 810 in which the hot-links from the fetch and parse process 804 replace any existing stored hot-links. Subsequent control also is passed to display URL process 812. In display URL process 812, the hot-links are displayed in the jumper drop-down window 586 as shown in FIG. 6. Control subsequently passes to display advertisement process 814 in which an image corresponding to an advertisement parsed from the browser page is placed in the jumper advertisement area 306.

As discussed above in connection with refresh decision 802, if a negative determination is made that the refresh button has not been pressed, then control passes also to display advertisement process 814 in which the advertisement from the page currently displayed on browser window 406 is uploaded and displayed in the jumper advertisement area 306. Control subsequently passes to start timer decision 816. If the user has selected start timer button 322 from the jumper menu bar, then automatic jump mode commences in a manner set forth in FIG. 8B. Alternately, if a negative determination is reached, then control is passed to jumper button select decision 818. A determination is made as to whether the user has selected any one of buttons 310–320 in the jumper window 300. In this event, control is passed to processes set forth in FIG. 8C and corresponding to single jump mode. The return from either the automatic jump or single jump process is via splice block B to jumper button select decision 818. Finally, when a negative determination is reached in jumper button select decision, control returns to refresh decision 802. This completes the overall processing connected with the jumpers tree traversal.

In FIG. 8B, the automatic jump mode of the search process is shown in greater detail. This process allows a user to view an animated tour of the level 2 files pointed to by the level 1 hot links in the browser window. Commencing with splice block A, control passes to memory fetch process 840 in which the first URL, of the hot-links in storage segment 230 shown in FIG. 2, is fetched by the jumper. In the next process, jumper-browser process 842 the first URL is sent to the browser, user I/O 208 caused the browser to access the specific site and file on the site, to upload the file and to display the file in the browser window 406. In one embodiment, if the browser is still loading a previous file when the jumper-browser process 842 is reached, then sending the browser the URL interrupts the loading of the previous file. In another embodiment, the jumper-browser process 842 does not interrupt the loading of the previous file. In a third embodiment, whether the jumper-browser

G 000349

US 6,226,655 B1

11

process 842 interrupts the loading of the previous file is a user configurable option.

Control is then passed to delay process 844 in which a user selectable display interval causes the page image to be displayed on browser window 406 for the selected time interval. At the end of that time interval, control is passed to memory fetch process 846 in which the next URL in the parsed HTML file is uploaded and in last of list decision 848 a determination is made as to whether that URL is the last among the stored URLs. In the event that determination is in the negative, control returns to jumper-browser process 842 for the timed display of the next accessed URL. This loop from jumper-browser process 842 through last of list decision 848 constitutes a user configurable animation, in which a set of URLs which have been parsed and stored are now used to drive an automatic retrieval and display process.

Alternately, in last URL decision 848, if a determination is made in the affirmative, control is passed to "next" link decision, 850. In next link decision 850 a determination is made as to whether the last URL also includes a query for the next 10 entries corresponding to the example shown in FIG. 5C and indicated by 588. In the event that determination is in the affirmative, control is passed to jumper-browser-jumper process 852. In process 852 the query for the next 10 hot-links is sent to Yahoo™. In response the next HTML encoded page containing the 10 hot-links is retrieved. Control is passed to parse process 854 in which all the URLs and corresponding text identifiers are parsed along with the image corresponding to the advertisement. Then in buffer process 856, the parser output is saved for this session. Control then passes to memory fetch process 840 for automatic retrieval and display. Alternately, if in "next" link decision 850, a negative determination is made, then in jumper-browser process 858, the last URL is sent to the browser to both access and display the file corresponding to the last URL. Subsequently, control is passed to splice block B for a return to hot-link select decision 818.

The process corresponding to the single jump mode is shown in FIG. 8C. This process allows the user to select a specific level 1 hot-link and have the browser retrieve and display the level 2 file corresponding to the selected level 1 hot-link. In window process 880, the jumper drop-down window 586 is automatically opened, as is shown in FIG. 5C. Then in drop-down button process 882 a determination is made at to whether the button selected by the user and detected in jumper button select decision 818, was the drop-down list button 310. If the user did select button 310 then the user has not yet selected a specific hot-link from the parsed hot-links in the jumper drop-down window 586. Control is then passed to wait process 884. When the user selects a specific entry from the drop-down list control passes to locate select process 886. Alternately, if a negative determination is reached in jumper button select decision 818 then control is passed directly to locate select process 886. A negative determination in jumper select decision 818 means that one of jumper buttons 312, 314, 316, 318 or 320, was selected thereby indicating a specific user choice for the single jump location. These buttons were discussed above in connection with FIG. 3.

In locate select process 886 a determination is made as to which of the hot-links in the jumper drop-down window was selected. If, for example, first entry button 312 were selected then the first of the hot-links in the list is selected. Alternately, if the user selected drop-down window button 310 and then mouse selected an entry e.g. the fourth entry on the drop-down list, then that entry would be highlighted. In the example shown in FIG. 6 the user has selected hot-link

12

580 and that selection, the "Ricky Rock Rat" hot-link is detected by the jumper.

Subsequent to selection detection, control is passed to jumper-browser process 888. The URL corresponding to the selected hot-link is passed by the jumper to the browser causing the browser to locate and subsequently display a file corresponding to that URL. The jumper continues to display all level "1" sites as hot-links. In the next step highlight process 890 the selected hot-link is highlighted, as shown for example in FIG. 6 as highlight 602 around selected hot-link 580, "Ricky Rock Rat". After the highlight process, the selected hot-link on the drop-down list is copied to the jumper site window 308 in copy process 892. Subsequently, in process 894 the jumper drop-down window is closed.

When the browser displays the above mentioned file, the user may conduct a drill-down on the hot-links in that file in the browser window. In that case, the browser window is active and the jumper window is inactive. When the drill-down is complete and the user reactivates the jumper window by mouse clicking on it, that reactivation is detected in process 898 and control is passed to jumper select decision 818 via the splice block B, shown in FIG. 8A.

The following describes additional embodiments of the invention. Except where stated in alternative form, each of these embodiments include features that can be combined with the features discussed above.

Some alternative embodiments provide better integration of the jumpers functions and the browsers functions. In one embodiment of the invention, when a user initiates a search in the browser, the jumper automatically starts and begins parsing the results of the search. This saves the user from having to start the jumper separately from the browser. In another embodiment, the jumper functions are built directly into the browser. In a different embodiment, the jumper is implemented as an application, such as an applet, which is sent to the browser by the search engine. All of these embodiments provide a more integrated jumper/browser environment for the user.

Some alternative embodiments provide the user with more powerful tools for traversing the search results. In one embodiment, the categories in the search results are specially tagged (e.g., with a previously unused HTML tag) to indicate category fields as opposed to simple URLs. Alternatively, the categories can be parsed given their location in the search result (e.g., not indented). In an embodiment that includes category identification, the jumper includes functions for jumping from one category to the next category, in addition to being able to jump from one site identifier to the site identifier. As an enhancement to this embodiment, the user is presented with additional buttons for jumping from category to category. In another embodiment, the user can define how many site identifiers should be parsed from the search results. For example, if the search results provide twenty site identifiers, but the user may only want the first five identifiers, the user can specify that only the first five identifiers be provided. Similarly, in another embodiment, the user can specify what types of results should be parsed (e.g., only categories). Alternatively, in another embodiment, the jumper parses all the site identifiers, but the user specifies how many or what type to display.

In another embodiment, the user will be able to invoke the product from within their electronic e-mail box simply by double-clicking on attached files. These files may be encoded in markup language. In another embodiment, the HTML parsed files for both transmission and receipt by users would be able to be compressed and decompressed by

US 6,226,655 B1

**13**

users with simple click commands common to normal software operations. In another embodiment, the product will not require an additional instance of the presenter to be invoked upon return to the original home page. In still another embodiment of the product, the list box will contain a drag and drop user interface which will allow the user to cut and paste URLs from one list to another and compile their own individual lists to their preferred selection and taste. In still one more embodiment of the product, the user will be able to adjust and modify the overall interface of the various URLs, hot-links and other files viewable within the presenter to both highlight the various objects mentioned previously for marking the users place in the list that they are working from, and similarly be able to change the nature of the highlight of such previously mentioned item to be noted as important by a permanent highlighting of the particular object.

Thus, a method and apparatus for retrieving information has been described. Note that though the foregoing has particular utility and has been described with reference to certain specific embodiments in the figures and the text, that one may practice the present invention without implementing all of these specific details. Thus, the figures and the text are to be viewed in an illustrative sense only, and not limit the present invention. The present invention is only to be limited by the appended claims which follow.

DEFINITIONS

1. NETWORK: A network is a hard drive, a local network, a wide area network, an intranet, the internet or any series or combination of computers or computing hardware.

2. FILE: A file is a collection of data that may be coded or unencoded. Coded files may contain the HTML, SGML or other mark up language. Unencoded files comprise: audio, visual, graphics, and/or video. Files may be encrypted or unencrypted during transmission. An electronic mail message is also considered to be a file. In addition, attachments to electronic mail are also considered files.

3. PRESENTER: A presenter is an interactive information media either visual or audio, animated or static, graphical or textual, audio or silent.

4. SITE IDENTIFIER: A site identifier is a pointer to a file.

What is claimed is:

1. A computer implemented method of retrieving information from a network comprising:

receiving a first file of information which includes at least site identifiers;

parsing said first file of information to extract a list of site identifiers storing the list of site identifiers;

automatically sending a plurality of jump commands to the browser separated by a selectable delay period wherein each of said jump commands includes a one of said site identifiers from said list comprising site identifiers, and wherein further responsive to said plurality of jump commands a site corresponding to each of said site identifiers is accessed.

2. The computer implemented method of claim 1 wherein said step of automatically sending further comprises;

retrieving a file from each of said accessed sites corresponding to each of said site identifiers.

**14**

3. The computer implemented method of claim 2 wherein said step of automatically sending further comprises;

displaying each of said retrieved files.

4. The computer implemented method of claim 1 wherein:

said first file comprises information in a markup language; and

said site identifiers comprise URLs.

5. The computer implemented method of claim 3 wherein:

said first file comprises information in a markup language; and

said site identifiers comprise URLs.

6. A computer usable medium having computer readable program code means embodied therein for causing a retrieval of information from the computer readable program code means in said article of manufacture comprising:

computer readable program code means for causing a computer to receive a first file of information which includes site identifiers and other information;

computer readable program code means for causing a computer to parse said first file of information to extract a list comprising site identifiers;

computer readable program code means for causing a computer to automatically send a plurality of jump commands separated by a delay period wherein each of said jump commands includes a one of said site identifiers from said list comprising site identifiers, and wherein further responsive to said plurality of jump commands, a site corresponding to each of said site identifiers is accessed.

7. The computer readable program code means in said article of manufacture of claim 6 comprising:

computer readable program code means for causing a computer responsive to said automatically sending a plurality of jump commands to retrieve a file from each of said accessed sites corresponding to each of said site identifiers.

8. The computer readable program code means in said article of manufacture of claim 7 comprising:

computer readable program code means for causing a computer responsive to said automatically sending a plurality of jump commands, to display each of said retrieved files.

9. The computer readable program code means in said article of manufacture of claim 6 comprising:

computer readable program code means for causing a computer to receive said first file of information, wherein said first file, comprises information in a markup language and said site identifiers comprise URLs.

10. The computer readable program code means in said article of manufacture of claim 8 comprising:

computer readable program code means for causing a computer to receive said first file of information, wherein said first file, comprises information in a markup language and said site identifiers comprise URLs.

* * * * *

PTO/SB/05 (12/97)

Please type a plus sign (+) inside th    → [+]

Approved fo:    hrough 09/30/00. OMB 0651-0032
Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

| UTILITY | Attorney Docket No. | 18041-702 | Total Pages | 98 |
|---|---|---|---|---|
| PATENT APPLICATION TRANSMITTAL (Only for new nonprovisional applications under 37 CFR 1.53(b)) | First Named Inventor or Application Identifier |
| | Gilbert BORMAN et al., "Internet Search Tools" |
| | Express Mail Label No. | EM083242546 US |

**APPLICATION ELEMENTS**
See MPEP chapter 600 concerning utility patent application contents.

ADDRESS TO:    Assistant Commissioner for Patents
Box Patent Application
Washington, DC 20231

1. [X] Fee Transmittal Form
   *(Submit an original, and a duplicate for fee processing)*
2. [X] Specification    [Total Pages 32 ]
   *(preferred arrangement set forth below)*
   - Descriptive title of the Invention
   - Cross References to Related Applications
   - Statement Regarding Fed sponsored R&D
   - Reference to Microfiche Appendix
   - Background of the Invention
   - Brief Summary of the Invention
   - Brief Description of the Drawings
   - Detailed Description
   - Claim(s)
   - Abstract of the Disclosure
3. [X] Drawing(s) (37 CFR 1.152)    [Total Sheets 14 ]
4. [X] Oath or Declaration    [Total Pages 20 ]
   a. [ ]  Newly executed (original or copy)
   b. [X]  Copy from a prior application (37 CFR 1.63(d))
      *(for continuation/divisional with Box 17 completed)*
      *[Note Box 5 below]*
      i. [ ]  DELETION OF INVENTOR(S)
         Signed statement attached deleting inventor(s) named in the prior application, see 37 CFR 1.63(d)(2) and 1.33(b).
5. [X] Incorporation By Reference *(useable if Box 4b checked)*
   The entire disclosure of the prior application, from which a copy of the oath or declaration is supplied under Box 4b, is considered as being part of the disclosure of the accompanying application and is hereby incorporated by reference therein.

6. [ ]  Microfiche Computer Program (Appendix)
7. Nucleotide and/or Amino Acid Sequence Submission
   *(if applicable, all necessary)*
   a. [ ]  Computer Readable Copy
   b. [ ]  Paper Copy (identical to computer copy)
   c. [ ]  Statement verifying identity of above copies
8. [X] Assignment Papers (cover sheet & documents(s)) (5)
9. [ ]  37 CFR 3.73(b) Statement  [X] Power of Attorney by
         *(when there is an assignee)*  Assignee
10. [ ]  English Translation Document *(if applicable)*
11. [ ]  Information Disclosure  [ ] Copies of IDS
         Statement (IDS)PTO-1449  Citations
12. [ ]  Preliminary Amendment
13. [ ]  Return Receipt Postcard (MPEP 503)
         *(Should be specifically itemized)*
14. [X] Small Entity  [X] Statement filed in prior application,
         Statement(s)  Status still proper and desired
15. [ ]  Certified Copy of Priority Document(s)
         *(if foreign priority is claimed)*
16. [ ]  Other: ..................................................
         ..................................................

17. If a CONTINUING APPLICATION, check appropriate box and supply the requisite information:

   [X] Continuation    [ ] Divisional    [ ] Continuation-in-part (CIP)    of prior application No. 08 / 727,085

**16. CORRESPONDING ADDRESS**

[X] Customer Number of Bar Code Label    021971    or [ ] Correspondence address below

*(Insert Customer No. or Attach bar code label here)*

| NAME | | | |
|---|---|---|---|
| ADDRESS | | | |
| CITY | STATE | | ZIP CODE |
| COUNTRY | TELEPHONE | | FAX |

SUBMITTED BY
Typed or
Printed Name    Charles C. Cary

Signature

Reg. Number    36,764
Date    Dec 2 1998

DRHC:\WRPORTBL\PALIBI\DRHV076684.1

G 000352

PTO/SB/17 (12-97)
Approved for use through 9/30/00. OMB 0651-0032
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# FEE TRANSMITTAL

*Note: Effective October 1, 1997.*
*Patent fees are subject to annual revision.*

| | Complete if Known | |
|---|---|---|
| Application Number | Unassigned | |
| Filing Date | Herewith | |
| First Named Inventor | Gilbert Borman et al. | |
| Group Art Unit | Unknown | |
| Examiner Name | Unknown | |
| TOTAL AMOUNT OF PAYMENT ($) | 784.00 | |
| Attorney Docket Number | 18041-702 | |

## METHOD OF PAYMENT (check one)

1. [X] The Commissioner is hereby authorized to charge indicated fees and credit any over payments to:

Deposit Account Number: 23-2415 (18041-702)

Deposit Account Name: Wilson Sonsini Goodrich & Rosati

[X] Charge Any Additional Fee Required Under 37 CFR 1.16 and 1.17

[ ] Charge the Issue Fee Set in 37 CFR 1.18 at the Mailing of the Notice of Allowance

2. [X] Payment Enclosed:
[ ] Check  [ ] Money Order  [X] Other

## FEE CALCULATION

### 1. FILING FEE

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 101 | 790 | 201 | 395 | Utility filing fee | 395.00 |
| 106 | 330 | 206 | 165 | Design filing fee | |
| 107 | 540 | 207 | 270 | Plant filing fee | |
| 108 | 790 | 208 | 395 | Reissue filing fee | |
| 114 | 150 | 214 | 75 | Provisional filing fee | |

SUBTOTAL (1) ($) 395.00

### 2. CLAIMS

| | | | | Fee from below | Fee Paid |
|---|---|---|---|---|---|
| Total Claims | 26 - 20 = | 6 | X | 11 = | 66.00 |
| Independent Claims | - 6 - 3 = | 3 | X | 41 = | 123.00 |
| Multiple Dependent Claims | | 0 | X | 135 = | 0.00 |

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description |
|---|---|---|---|---|
| 103 | 22 | 203 | 11 | Claims in excess of 20 |
| 102 | 82 | 202 | 41 | Independent claims in excess of 3 |
| 104 | 270 | 204 | 135 | Multiple dependent claim |
| 109 | 82 | 209 | 41 | Reissue independent claims over original patent |
| 110 | 22 | 210 | 11 | Reissue claims in excess of 20 and over original patent |

SUBTOTAL (2) ($) 189.00

## FEE CALCULATION (continued)

### 3. ADDITIONAL FEES

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 105 | 130 | 205 | 65 | Surcharge - late filing fee or oath | |
| 127 | 50 | 227 | 25 | Surcharge - late provisional filing fee or cover sheet | |
| 139 | 130 | 139 | 130 | Non-English specification | |
| 147 | 2,520 | 147 | 2,520 | For filing a request for reexamination | |
| 112 | 920* | 112 | 920* | Requesting publication of SIR prior to Examiner action | |
| 113 | 1,840* | 113 | 1,840* | Requesting publication of SIR after Examiner action | |
| 115 | 110 | 215 | 55 | Extension for reply within first month | |
| 116 | 400 | 216 | 200 | Extension for reply within second month | |
| 117 | 950 | 217 | 475 | Extension for reply within third month | |
| 118 | 1,510 | 218 | 755 | Extension for reply within fourth month | |
| 128 | 2,060 | 228 | 1,030 | Extension for reply within fifth month | |
| 119 | 310 | 219 | 155 | Notice of Appeal | |
| 120 | 310 | 220 | 155 | Filing a brief in support of an appeal | |
| 121 | 270 | 221 | 135 | Request for oral hearing | |
| 138 | 1,510 | 138 | 1,510 | Petition to institute a public use proceeding | |
| 140 | 110 | 240 | 55 | Petition to revive - unavoidable | |
| 141 | 1,320 | 241 | 660 | Petition to revive - unintentional | |
| 142 | 1,320 | 242 | 660 | Utility issue fee (or reissue) | |
| 143 | 450 | 243 | 225 | Design issue fee | |
| 144 | 670 | 244 | 335 | Plant issue fee | |
| 122 | 130 | 122 | 130 | Petitions to the Commissioner | |
| 123 | 50 | 123 | 50 | Petitions related to provisional applications | |
| 126 | 240 | 126 | 240 | Submission of Information Disclosure Stmt | |
| 581 | 40 | 581 | 40 | Recording each patent assignment per property (times number of properties) | 200.00 |
| 146 | 790 | 246 | 395 | Filing a submission after final rejection (37 CFR 1.129(a)) | |
| 149 | 790 | 249 | 395 | For each additional invention to be examined (37 CFR 1.129(b)) | |
| | | | | Other fee (specify) | |
| | | | 25 | Other fee (specify) Request for Corrected Filing Receipt | |

* Reduced by Basic Filing Fee Paid

SUBTOTAL (3) ($) 200.00

## SUBMITTED BY

| | | Complete (if applicable) | |
|---|---|---|---|
| Typed or Printed Name | Charles C. Cary | Reg. Number | 36,764 |
| Signature | | Date Dec 3, 1990 | Deposit Account/User ID 23-2415 (18041-702) |

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

DRHC:\RPORTBL\PALIB1\DRH\976571.1

G 000353

CERTIFICATE OF MAILING BY "EXPRESS MAIL"
"Express Mail" Mailing Label No. EM432433030US
Date of Deposit October 8, 1996. I hereby certify that this paper or fee is being
deposited with sufficient postage with the United States Postal Service
"Express Mail Post Office to Addressee" service under 37 CFR 1.10 on the
date indicated above and is addressed to Box Patent Application,
Assistant Commissioner for Patents , Washington, D.C. 20231

Signature of Person Signing _____ 10/8/96

PATENT
Attorney Docket No. 18041.701

### INTERNET SEARCH TOOLS

Inventors:  Gilbert Borman
            Rajat Bhatnagar
            Arul Sebastian
            Anup Mathur
            Vinay Wadhwa
            Mukesh Kumar

## BACKGROUND OF THE INVENTION

This application is a continuation of U.S. application 08/727,085 filed on

### Field of the Invention    10/09/1996, now U.S. Patent No. 5,890,172.

The present invention relates to information retrieval.  More
specifically, the invention relates to tools for traversing hypertext data.

### Background Information

5

        The development of computerized information resources such as the
Internet and various on-line services, such as CompuServe™, America On-
Line™, Prodigy™ and other services has lead to a proliferation of
electronically-available information.  This electronic information is increasingly
10    displacing more conventional means of information transmission, such as
newspapers, magazines and even television.

        The largest information resource in existence today is the Internet.
The Internet is a group of client and server computers linked one to another
15    and each having a unique identifier, DNS (distributed network server),
assigned by the Internet authority in Cambridge, Mass. and Geneva,
Switzerland.  In order for information to be found on the Internet every file is
given a specific address by which it may be located.  To access the Internet a

H:\PUBLIC\CC7\0106301.07

G 000354

-2-

user employs what is called a browser. Currently the most popular browser is Netscape Navigator™ browser developed by Netscape Communications Corporation of Mountain View, California. A wide array of browsers is available for just about every platform. The browser's job is twofold. First,

5   given a pointer to a piece of information on the net it has to be able to access the information or operate in some way based on the contents of that pointer. Second, if the document/file (hereinafter file) is encoded the browser has to translate that to a suitable format for display to the user. The display may include multimedia effects, e.g. sound and animation.

10       The most popular encoding of Internet files communicated between client and server is the HTML (hypertext markup language). The WWW (World Wide Web) or simply the "Web" includes all the servers adhering to this standard. Each page loaded from the Internet is a single file encoded in

15   HTML. HTML describes the structure of a file. The structure of the file includes title, paragraphs, images and any pointers to other files.

         The pointer to a specific site is called an URL (Uniform Resource Locator). The URL provides a universal, consistent method for finding and

20   accessing information for a Web browser. The URL comprises a file type, a server I.D. (DNS), one or more directories and subdirectories, and a file name. URLs are also used as part of a hypertext link within a file to another file. These URLs then provide the browser with a way to navigate the Web. URLs contain information about a file: including file type (FTP, Gopher, HTTP), the

25   Internet server on which the file is located (WWW.NCSA.UIUC.EDU, or FDP.APPLE.COM, or Net Com 16.Net.Com, and so on), the directory of the file, and the file name.

         In order to speed the process of finding relevant information on the

30   Internet several servers on the Internet provide an index to the Internet and a search engine. These information indexers such as Yahoo™, Excite™, Lycos™, Inktomi™, and Alta Vista™ perform two valuable functions. First,

I:\PUBLIC\CC70106301.07

-3-

using their own Internet links, they continually search the Internet and index all files on the Internet into subject categories and store this index on their own database. The information indexers also allow a client to connect to their server and enter a search query. In response the information indexer
5    provides a list of all files on the web that meet the search criteria. Therefore, the information indexer such as Yahoo™ not only updates and maintains a topical index for all files on the web, but also makes that index searchable by a client. It should be noted that the information that is retrieved from Yahoo™ contains only a general topic identifier and the file location on the Internet for
10   that specific topic.

It would indeed be a cumbersome process for the client seeking specific information if the indexes that were retrieved from Yahoo™ only told the searcher where to look. If this were the case, the considerable task
15   remaining to the client would be to manually enter the network address, URL, of each file and the go through the process of retrieving that file. To overcome this problem, the search result retrieved by Yahoo™ is encoded in HTML as a hot-link which makes every "footnote" an active rather than a passive reference. These hot-links appear to the user in the browser window as bold
20   face text which is easily distinguished from the other text based information in the file. A hot-link comprises a text description and a corresponding URL. When the user selects a hot-link the browser detects that selection and outputs the URL on the Internet to retrieve the file corresponding to that URL and display it to the user. Therefore, by merely selecting with a mouse a
25   specific footnote in a file encoded in a markup language, a client is immediately given access to the remote web server that contains the specific file referred to in the footnote.

With a markup language such as HTML (hypertext markup language)
30   both amateurs and professionals become authors and the footnotes on the printed page become the hypertext of the electronic page. What was a passive reference now becomes an accessible link to a related file. A markup

4

G 000356

-4-

language describes the structure of a file including headings, paragraphs, images and what are called hot-links. A hot-link displays at the user level as text or graphic and is processed for communication purposes as an URL. It is these hot-links which provide the interactive footnotes described above.

5

Even with the indexing provided by Yahoo™, Lycos™, Excite™, Inktomi™, Alta Vista™, etc., the process of finding the exact topic is still extremely time consuming and can involve visiting literally hundreds of Web Sites. Typically, a user will retrieve a file from an information indexer and will

10 not only look at the files retrieved by selecting the indexer's hot-links, but will also select other hot-links in the retrieved documents. This process of starting a search that begins with an initial hot-link and following a search trail that leads to successive files each increasingly displaced from the starting point is known as a drill-down. The problem with current browsers is that when a user

15 has drilled-down through many levels of sites, the only way to return to the original HTML file is to hit the browser's back key which moves the user up one level at a time through the original search tree back to level " 1." Only then can the user access other hot-links retrieved in the original search.

20        What is needed is a more efficient way to conduct a search.

### SUMMARY

A first object of the invention is to provide operational controls for simplified Internet navigation from various sites and back again.

25

A second object of the invention is to save users time and effort in finding information on the Internet.

A third object of the invention is to enable the publication of a new

30 format for on-line magazines, called Netazines, which allow publishers to leverage the navigational controls provided in the invention product to foster a new paradigm for browsing magazine style information on the Internet.

I:\PUBLIC\CC7\0106301.07

G 000357

-5-

A computer implemented method and system for retrieving information
from a network. In a first embodiment a first file of information is received
which may include a first mark-up language to identify contents of the
information, which contents include site identifiers. The site identifiers
5       corresponding for example to file locations on the Internet. The first file is
displayed in a browser window. Responsive to receiving the first file of
information by the browser, the first file of information is parsed by a jumper to
generate a list of site identifiers. This list of site identifiers is then stored by
the jumper and displayed in a jumper window. Responsive to an activation by
10      the user, a computer is directed to determine which of the stored site
identifiers is currently selected and automatically selects an other. The other
includes the first, the prior, the next, or the last on the list.

In a second preferred embodiment a first file of information in a
15      hypertext markup language is received and displayed in the browser window.
The first file of information also contains site identifiers and other information.
The first file is displayed in the browser and is parsed, and the site identifiers
from that file are stored by the jumper in a list. The stored list of site identifiers
is displayed in the jumper window. Responsive to a selection by a user of
20      automatic mode, a computer is directed to perform the following steps. The
jumper selects a first site identifier from the stored list of site identifiers. The
jumper directs the browser to access the file at the site corresponding to the
automatically selected site identifier. The browser, is directed by the jumper, to
display the file in the browser window. Then the jumper initiates a delay of a
25      predetermined interval. At the end of the interval the jumper selects the next
site identifier from the stored list of site identifiers. The jumper directs the
browser to access the file at the site corresponding to the automatically
selected next site identifier. The browser, is then directed by the jumper, to
display that file in the browser window. The jumper continues to repeat this
30      animation loop from one site identifier in the stored list of site identifiers to the
next, until either the entire list of site identifiers has been sent to the browser
and displayed, or until the user terminates the process. In this manner, an

I:\PUBLIC\CC\70106301.07

G 000358

-6-

animated tour of all files having site identifiers parsed from the first file is
displayed in the browser window under the direction of the jumper.

5        In a third embodiment, a first file of information in a hypertext markup
language is received and displayed in a browser window. The first file of
information also contains a site identifier and other information. The first file of
information is displayed by the browser in the browser window. Responsive to
receiving the first file of information, the jumper parses the first file and
extracts and stores a list comprised of first file site identifiers. The stored list
10      of site identifiers is then displayed in the jumper window. The user is allowed
to select from the browser window a specific site identifier, known as a search
level "1" site identifier, and responsive thereto to cause the browser to access
and display a second file retrieved from the site corresponding to the selected
level "1" site identifier. This second file includes a hypertext markup language
15      and site identifiers. The user is again allowed to select from the browser
window a specific site identifier and responsive thereto causes the browser to
access and display a third file retrieved from the site corresponding to the
selected site identifier. This process can be repeated in the browser, until the
user has completed their search, or drill-down.
20

         Responsive to the completion of the drill-down in the browser, as
indicated to the jumper by receipt of a single jump selection from the user, the
computer is directed to perform the following steps. The jumper determines
which of the stored level "1" site identifiers is currently selected and
25      automatically selects the single jump level "1" site identifier. Next the jumper
directs the browser to access the file at the site corresponding to the single
jump selected level "1" site identifier. Finally, the browser is directed to display
the file the browser has retrieved in the browser window. This allows the user
to return to the files pointed to by the original level "1" site identifiers without
30      having to traverse in reverse serial order the site identifiers selected in the
drill-down.

-7-

## BRIEF DESCRIPTIONS OF DRAWINGS

The present invention is illustrated by way of example and not limitation in the figures in which like references indicate like elements and in which:

5       Fig. 1 shows a client server system including embodiments of the jumper invention.

Fig. 2. shows a more detailed view of the client server system illustrated in Fig. 1.

10      Fig. 3. shows a preferred embodiment of the screen interface and tool bar of the jumper.

Fig. 4 shows a prior art browser user interface, and the query form of an information index provider.

15      Figs. 5A-C shows a the initial stages of a search session utilizing a prior art browser and the jumper.

20      Fig. 6. shows a later stage in the search session of Figs. 5A-C.

Fig. 7. shows the steps in the search process in prior art browsers.

Figs. 8A-C shows the processes of a search session on the jumper.

25      Figs. 9A-B show the search traversal patterns of a prior art browser and the jumper.

## DETAILED DESCRIPTION

30      One embodiment of the invention is a method and apparatus for retrieving information through a browser connected to a network, and providing the information to a user. Although the following will be described with

H:\PUBLIC\CC\70108301.07

G 000360

-8-

reference to certain particular embodiments, including data structures, flow of steps, hardware configurations, menu configurations, etc..., implementation of the invention can be practiced without these specific details.

5      One embodiment of the invention allows a search to be conducted in non-linear order. This may be done in either single jump or automatic jump mode utilizing a jumper. A search tree does not therefore need to be traversed in reverse serial order after a drill-down as is required utilizing prior art browsers. The invention allows a searcher to jump across multiple levels at a 10    time.

Search Levels:

      The operation of prior art browsers is best described by reference to Fig. 9A. Fig. 9A shows a series of hypertext files. The files may be resident on a hard drive, a local network, a wide area network or the Internet. Three 15    hot-links are shown 920, 922, 924 on file 902. Hot-link 924 is shown as linked to four levels of files. Selecting hot-link 924 causes the browser to access file 926, which is a level 2 file. Selecting the first hot-link on file 926 causes the browser to access file 928, which is a level 3 file. Selecting the first hot-link on file 928 causes the browser to access file 930, which is a level 4 file. Finally, 20    selecting the first hot-link on file 930 causes the browser to access file 932, which is a level 5 file. Selecting hot-link 922 causes the browser to access file 934, which is a level 2 file. Selecting hot-link 920 causes the browser to access file 936, which is a level 2 file.

25

      The traversal steps from hot-link 924 through 926, 928, 930 and 932 constitute a drill-down from level 1 to level 5. Prior art browsers require that the user, in order to return to the original file 902, must traverse the search tree in reverse serial order. As shown serial return 904 traverses from 932 to 30    930, serial return 906 traverses from 930 to 928, serial return 908 traverses from 928 to 926, and finally serial return 910 traverses from 926 to 902, the initial starting point. This requires the needless steps of visiting each of the

t:\PUBLIC\CC70106301.07

9

G 000361

-9-

branches traversed in the drill-down. This process is unnecessarily time consuming when compared with the capabilities of the current jumper invention.

5    Fig. 9B shows the same tree structures as does Fig. 9A. Fig. 9B shows the use of one embodiment of the invention to traverse many levels at a time in either single jump or automatic jump mode. In the single jump mode when the searcher has reached level 5 file 932. If the user wants to return to level 1 they do not need to do so in reverse serial order, as is required by prior

10    art browsers. Instead, the user directs the jumper to access the next level 1 hot-link. In response, the jumper returns the user in a single jump 914 from level 5 file 932 to the level 2 files pointed to by the hot-links in the level 1 file 902. Much time is saved and the user can proceed to search other level 1 hot-links. In automatic jump mode, the user instructs the jumper to access all hot-

15    links on the level 1 file 902. In response, the jumper directs the browser to access and display in the browser window each of level 2 files 926, 934 and 936. These files are accessed by the browser in response to the jumper sending at timed intervals each of hot-links 924, 922, and 920 from a parsed hot-link list to the browser. The browser accesses each of the files 926, 934,

20    and 936 to which hot-links 924, 922, and 920 respectively point. This allows the user to see an animation in the browser window for a timed interval.

Hardware:

In order to better understand the operation of a jumper, it is necessary

25    to first understand an environment in which the jumper is practiced. Figs. 1-2, show the hardware environment in which the jumper operates. As shown in Fig. 1, an Internet 22 is connected to client 20 by an incoming Internet line 24 and an outgoing Internet line 26. Jumper 28 and browser 30 are part of client 20. Internet 22 comprises servers 32, 34, 36, and 38. Each server contains

30    HTML files. The client and all servers are linked electronically. Server 34 is shown as the server of an information indexer. The server comprises a CGI 42 (common gateway interface), forms 44 on which a user query is entered,

I:\PUBLIC\CC7\0106301.07

G 000362

-10-

and storage containing an updated topical index 46 of all files on the web. To
access a specific site on the network, browser 30 outputs an URL across
outgoing Internet line 26. Routers on the Internet establish an electronic link
between the client 20 and the appropriate server 32-38. Communications with
5    the Internet are received on incoming Internet line 24.

The client hardware architecture for both the browser and the jumper is
shown in greater detail in Fig. 2. The client 20 contains storage 204,
computational hardware 202, operating system 206, and GUI (Graphical User
10    Interface) 200. The storage 204 contains a storage segment 230 in which the
jumper stores parsed HTML files. Hardware 202 comprises a microprocessor,
an I/O interface, a display and a bus connection to storage 204. The
operating system 206 may comprise a bios and an operating environment
such as System 7™, Unix or Windows™. The GUI 200 comprises jumper
15    28 and browser 30. Browser 30 comprises user I/O 208 and presenter 210.
The jumper 28 comprises user I/O 212, presenter 214, and parser 216.

The operation of hardware 202 is controlled by the operating system
206. The operating system and graphical user interface (GUI) 200, create the
20    local environment in which the jumper 28 and browser 30 exist. The browser
user I/O 208 handles the tasks of sending and retrieving communications 218
via the operating system 206 and hardware 202 to the Internet 22. The
browser handles Internet communications for the jumper. The browser user
I/O communicates with the jumper user I/O 212 via jumper-parser I/O protocol
25    224. The browser user I/O also handles the task of translating files received
from the Internet, e.g., HTML encoded files, to the presenter 210 via
presenter protocol 220. Additionally, browser user I/O uploads at the
direction of jumper user I/O 212, HTML encoded files to parser 216 via
browser I/O-jumper parser protocol 222.

30

Jumper parser 216 handles the task of converting an HTML encoded
file uploaded from browser user I/O 208 into a format suitable for a single jump

I:\PUBLIC\CC70106301.07

G 000363

-11-

or automatic jump mode search, as discussed above in connection with Fig.
9B. The parser extracts from the HTML file: an advertisement, a plurality of
URLs and topic descriptors corresponding to each URL. The parser passes
these via jumper-parser I/O protocol 226 to jumper user I/O 212. Jumper user
I/O 212 communicates with jumper presenter 214 via jumper I/O -presenter
protocol 228 to display to the user available jump sites and to provide a user
interface by which the user may input commands. Jumper user I/O also
communicates with browser I/O 208 via browser I/O- jumper I/O protocol 224.

10    User interface:

An embodiment of the jumper user interface is shown in Fig. 3. This
interface allows the user to see all the hot-links on a given level and to select a
hot link in either single jump or automatic jump mode as described above in
connection with Fig. 9B. The jumper thus enhances the search capabilities of
15    the browser.

Jumper window 300 comprises a menu bar 302, a button bar 304, an
advertisement area 306, a jump site window 308, and a drop-down list button
310. The jumper menu bar contains file, edit, action, and help items. Jumper
20    button bar contains a first entry button 312, a previous entry button 314, a
random jump button 316, a next entry button 318, a last entry button 320, a
start timer button 322, a stop timer button 324 and a refresh/update button
326.

25    The jump site window 308 has an associated drop down list
accessible by selecting drop-down-down list button 310. This list comprises
parsed hot-links. These hot-links are extracted from a file initially retrieved by
the browser. Any one of the hot-links in the parsed list can be selected by the
user with a mouse. This drop-down list provides one method for selecting a
30    specific Internet site to jump to. Advertisement area 306 contains an
advertisement parsed from an HTML page received by the browser. Button
bar 304 provides controls for single jump and automatic jump mode. All

H:\PUBLIC\CC7\0106301.07

-12-

buttons relate to the hot-links in the jumper's parsed list regardless of how far
the user has drilled-down in the browser.  All buttons return the user to at least
one of the hot-links on the list and direct the browser 30 shown in Figs.1-2 to
retrieve a file from the site corresponding to the URL  associated with the hot-
5      link and further direct the browser to display that file to the user.

First entry button 312 allows the user to return from a drill-down to the
first entry on parsed list.  Previous entry button 314 returns the user to the prior
hot-link on the list.  Random jump button 316 returns the user to a randomly
10     selected hot-link on the parsed list.  Next entry button 318 selects the next hot-
link on the list,  and last entry button 320 accesses the last entry on the list.
Start timer button 322 initiates the automatic and successive selection of every
hot-link on the parsed list and the browser responsive thereto, displays for the
user a file retrieved from the URL corresponding to each hot-link.  The
15     animation initiated by start timer button is terminated by stop timer button 324.
Refresh/update button 326 causes all hot-links in a file which the browser has
retrieved to be parsed and uploaded and displayed in the drop-down list of
jumper window 300.  Additionally,  this parsed list is stored in HTML storage
segment 230 as shown in Fig. 2.
20

In alternate embodiments the jumper window may take any of several
forms.  The user interface may include popup or persistent window, a toolbar,
a menu modification of the browser window, a toolbar modification of the
browser window, or the use of accelerator keys on the keyboard.
25

Fig. 4  shows a prior art browser user interface and a query form of an
information index provider.  This interface allows the user to access web files
and also displays the file contents to the user.  The browser interface-400 is
that of  Netscape Navigator™.  The browser interface includes a browser
30     menu bar 402,  a  site window 404, and a window 406 for viewing a file.  The
browser menu bar includes a back button 412 and a home button 414.  The

I:\PUBLIC\CC7\0106301.07

G 000365

-13-

file shown in the view window is the query form 408 of Yahoo™. The query form has a query field 410.

The browser menu bar 402 generally provides for editing and saving

5   files. Back button 412 allows the user to move back a search tree in reverse serial order as shown in Fig. 9A. Home button 414 allows the user to return to their home page 900 in the browser window. The browser site window 404 displays the URL corresponding to the file currently being displayed, in this case the query form 408 of Yahoo™. The query form is encoded in a markup

10  language and contains a query field 410 in which the user may enter the search topic for which a topical of the web is desired. In this case, the search topic is "Rat." When the search topic is entered, it is sent by the browser over the web to Server 34 owned by Yahoo™ 40 and shown in Fig. 1.

15  Conducting a search:
        Figs. 5A-C show the initial stages of a search session conducted with the jumper and browser. A browser interface 400, a file retrieved by the browser, and a jumper window 300 are shown. These are the basic tools for the demonstrative search. The initial file retrieved from Yahoo™ in response

20  to the query "Rat" is shown as an upper page portion 502a and a lower page portion 502b in Figs 5A-B and 5C, respectively. These are accessed by scrollable window bar 500. The retrieved file contains an advertisement 504, a search result summary 506, a plurality of hot-links of which 508-514 and 580-584 are referenced. A representative hot-link 514, is shown to contain

25  both an URL 516 and a text portion 518. In Fig. 5C a jumper drop down list 586 is shown. In addition, the retrieved file also contains a next feature 588.

        In response to the entry of the query "Rat" as shown on Fig. 4, the query is sent by browser to Yahoo™. The topical index 46 at Yahoo™, shown

30  in Fig. 1, is searched and the file 502a-b containing all related level 1 hot-links and other information is returned to the client 20 and displayed to the user by the browser as 502a-b. Page 502a is captioned with an advertisement 504.

I:\PUBLIC\CC7\0106301.07

G 000366

-14-

Immediately below the advertisement is a search result summary 506, which
indicates 74 matches pertaining to the word "Rat" and display of the first 20
hot links for those matches. Various hot-links with subject descriptions appear
on the page in bold text with underlining. These are, for example, 508,
"Entertainment, Humor. . .", 510, "Regional Alternative Theater. . .", 512,
"Space RAT. . .", 514, "Agrizap, Inc. . .". .

Each hot-link as discussed above is an active reference. For example
the hot-link 514 comprises a hypertext identifier "<A", an URL 516, a text
portion 518 and a closing identifier. The browser displays to the user only text
portion 518 and any images that may accompany it. These are highlighted
and underlined on the user display to indicate to the user that when they are
selected with a mouse a corresponding URL will be sent by the browser to the
Internet to access the specific file referred to by the URL.

As shown in Fig. 5B, jumper window 300 has been refreshed via
refresh/update button 326, discussed above in connection with Fig. 3.
Responsive to selection of refresh/update button 326, the file 502a-b is
passed from the browser 30 to the jumper parser 216 as shown in Fig. 2. All
hot-links including the referenced hot-links 508-514 and 580-584 are extracted
and passed to jumper user I/O 212. These are passed to jumper presenter
214 and displayed in the jumper window 300. Specifically the advertisement
504 is displayed in jumper advertisement area 306, and all hot-links 508-514
and 580-584 are put in the jumper drop down list. The first of these hot-links
508 is displayed in the jumper site window 308.

In Fig. 5C, the lower portion 502b of the retrieved HTML page is
shown. It contains hot-links 580, 582, 584. In jumper window 300 and
specifically jumper site window 308 thereof, the jumper drop-down window,
586, is shown. This window has been accessed by the user's selection of
jumper drop-down list button 310. The drop-down list contains all hot-links

5

10

15

20

25

30

I:\PUBLIC\CC7\0106301.07

G 000367

15

-15-

that were obtained from the original file 502a-b including the referenced hot-links 508-514 and 580-584.

Now, by reference to Fig. 6, a later stage of the search session is
5   shown. Fig. 6 shows a file 600 in browser view window 406, an URL
corresponding to file 600 in browser site window 404, and a highlight 602
around hot-link 580 in both the jumper drop-down list window 586 and the
jumper site window 308. The file 600 was obtained in a drill-down conducted
in the browser window 406. The steps in that drill-down intervening between
10   Fig. 5C and Fig. 6 have not been shown. The drill-down however resembles
that shown and discussed above in connection with Fig. 9A. The file 600,
shown in browser window 406 is four levels removed from the initial level 1
hot-link 580. The drill-down was conducted on the browser view screen by
selecting the hot-links presented in the files retrieved by the browser. If the
15   user desires to return to the an other hot-link from the level 1 file, shown as
502a-b in Figs. 5A-C, from this file 600, they could use the browser menu
bar to do so but it would be slow. They would have to select back button 412
four times to return them one level at a time in reverse serial order through
their entire search back to the level 1 file. The process is time consuming.
20   Alternately, if they selected the browser home key 414 they would return to
their home page and lose the level 1 search results. Neither of these
alternatives is acceptable. Both of these alternatives are cumbersome.

If the jumper product is utilized instead, the user has several options.
25   As a first option, the user may select one of jumper buttons 312, 314, 316,
318 or 320 to return to respectively: a first, a previous, a random, a next, or
a last of the hot-links shown in Fig. 6 in jumper drop-down list window 586. In
response to user selection, the file corresponding to the selected hot-link will
be retrieved and displayed in the browser window 406. As a second option,
30   the user may select start timer button 322 to initiate the automatic and
successive selection at a timed interval of every hot-link on the parsed list. In
response to the automatic jump mode selection, each file corresponding to the

I:\PUBLIC\CC7\0105301.07

G 000368

-16-

selected hot-link will be retrieved and displayed by the browser for the timed
interval. As a third option, the user may select drop-down window button 310
and select a given entry from the drop down list by clicking on it with a mouse.
In response to their selection the file corresponding to the selected hot-link will

5   be retrieved and displayed in the browser window 406. Alternately, another
instance of browser can be opened to display the selected file. All of these
choices enhance the search, and none require multiple reverse serial order
steps to return to the level 1 hot-links.

10  Process Flow:
        Fig. 7 shows the process connected with conducting a search utilizing
a prior art browser. Commencing with start process 700, a connection
process 702 results in Yahoo's™ home page 408 and query form being
displayed in browser window 406, as shown in Fig. 4. Then in query process

15  704, the user enters a search topic, e.g., "Rat", in information indexer query
field 410. In response to the entry of that search topic, the browser sends the
query to server 34 of the search index provider, e.g., Yahoo™, the relevant
topical identifiers and URLs are uploaded on an HTML encoded file/page and
presented to the user in page receipt process 706. Subsequently, when a

20  user utilizing a mouse selects one of the hot-links shown on that page, e.g.,
502a-b, then that selection is detected in site access decision 708. The URL
corresponding to the last selected hot-link is output over the Internet to access
the file indicated by that URL and that file is uploaded and displayed in access
process 710 to the user. Subsequently, in history creation process 712, that

25  URL is added to a stack comprising in LIFO order the most recently accessed
files, including the complete URL for those files. Control is then returned to
back-one decision 714 which decision is also reached if a negative
determination is made in site access decision 708. In back-one decision 714,
a determination is made as to whether the user has selected back button 412

30  on the browser menu 402. If that selection has been made, then control is
passed to repeat history process 716 in which the previous site visited is
popped from the history stack and in access process 718 the browser

I:\PUBLIC\CC\70106301.07

G 000369

-17-

accesses the site and file indicated by the prior URL and presents that in its
view window to the user.  Control is subsequently returned to site access
decision  708.

5          Alternately, if in back-one decision 714 a negative determination is
reached the browser awaits the next user command 720.

           In Figs. 8A-C the process connected with one embodiment of the
current invention is shown.  It contrasts with the prior art process, in that the
10   user may return to the level of files pointed to by any level one hot-link
immediately.  The cumbersome process and many steps of reverse serial
order traversal discussed above in Fig. 7, are not therefore necessary.  Fig. 8A
is an overall view of the process connected with either the single jump or
automatic jump mode.  Fig. 8B details the specific steps connected with the
15   automatic jump mode.  Fig. 8C details the specific steps connected with the
single jump mode.

           Commencing with Fig. 8A and start jumper process 800 control is
passed to refresh decision 802.  In the event, a determination is made that
20   refresh/update button 326 shown in Fig. 3 has been selected, then control is
passed to fetch and parse process 804 in which an HTML encoded page
displayed in the browser view window is uploaded and parsed into an
advertisement and hot-links.  These are displayed in the jumper advertisement
area 306 and the jumper drop-down window 586, respectively. Then in history
25   decision 806, the determination is made as to whether the jumper history
maintain option has been selected.  This option is found under the edit portion
of the menu bar 302.  In the event that this option has been selected, then
control is passed to append and store process 808 in which the hot-links
extracted in fetch and parse process 804 are appended and stored with
30   previous hot-links in the parsed HTML files in storage segment 230 shown on
Fig. 2. Control is then passed to display URL process 812. Alternately, if a
negative determination is made in history decision 806, then control is passed

I:\PUBLIC\CC7\0108301.07

1 9

G 000370

-18-

to store process 810 in which the hot-links from the fetch and parse process
804 replace any existing stored hot-links.  Subsequent control also is passed
to display URL process 812.  In display URL process 812, the hot-links are
displayed in the jumper drop-down window 586 as shown in Fig. 6.  Control
5    subsequently passes to display advertisement process 814 in which an image
corresponding to an advertisement parsed from the browser page is placed in
the jumper advertisement area 306.

       As discussed above in connection with refresh decision 802, if a
10    negative determination is made that the refresh button has not been pressed,
then control passes also to display advertisement process 814 in which the
advertisement from the page currently displayed on browser window 406 is
uploaded and displayed in the jumper advertisement area 306.  Control
subsequently passes to start timer decision 816.  If the user has selected start
15    timer button 322 from the jumper menu bar, then automatic jump mode
commences in a manner set forth in Fig. 8B.  Alternately, if a negative
determination is reached,  then control is passed to jumper button select
decision 818.  A determination is made as to whether the user has selected
any one of buttons 310-320 in the jumper window 300.  In this event, control
20    is passed to processes set forth on Fig. 8C and corresponding to single  jump
mode.  The return from either the automatic jump or single jump process is
via splice block B  to jumper button select decision 818.  Finally, when a
negative determination is reached in  jumper button select decision, control
returns to refresh decision 802.  This completes the overall processing
25    connected with the jumpers tree traversal.

       In Fig. 8B,  the automatic jump mode of the search process is shown in
greater detail.  This process allows a user to view an animated  tour of the
level 2 files pointed to by the level 1 hot links in the browser window.
30    Commencing with splice block A,  control passes to memory fetch process 840
in which the first URL, of the hot-links in storage segment 230 shown in Fig. 2,
is fetched by the jumper.  In the next process, jumper-browser process 842 the

I:\PUBLIC\CC7\0106301.07

G 000371

-19-

first URL is sent to the browser, user I/O 208 caused the browser to access
the specific site and file on the site, to upload the file and to display the file in
the browser window 406. In one embodiment, if the browser is still loading a
previous file when the jumper-browser process 842 is reached, then sending
5   the browser the URL interrupts the loading of the previous file. In another
embodiment, the jumper-browser process 842 does not interrupt the loading of
the previous file. In a third embodiment, whether the jumper-browser process
842 interrupts the loading of the previous file is a user configurable option.

10   Control is then passed to delay process 844 in which a user selectable
display interval causes the page image to be displayed on browser window
406 for the selected time interval. At the end of that time interval, control is
passed to memory fetch process 846 in which the next URL in the parsed
HTML file is uploaded and in last of list decision 848 a determination is made
15   as to whether that URL is the last among the stored URLs. In the event that
determination is in the negative, control returns to jumper-browser process
842 for the timed display of the next accessed URL. This loop from jumper-
browser process 842 through last of list decision 848 constitutes a user
configurable animation, in which a set of URLs which have been parsed and
20   stored are now used to drive an automatic retrieval and display process.

Alternately, in last URL decision 848, if a determination is made in the
affirmative, control is passed to "next" link decision, 850. In next link decision
850 a determination is made as to whether the last URL also includes a query
25   for the next 10 entries corresponding to the example shown in Fig. 5C and
indicated by 588. In the event that determination is in the affirmative, control is
passed to jumper-browser-jumper process 852. In process 852 the query for
the next 10 hot-links is sent to Yahoo™. In response the next HTML encoded
page containing the 10 hot-links is retrieved. Control is passed to parse
30   process 854 in which all the URLs and corresponding text identifiers are
parsed along with the image corresponding to the advertisement. Then in
buffer process 856, the parser output is stored for this session. Control then

I:\PUBLIC\CC7\0106301.07

G 000372

-20-

passes to memory fetch process 840 for automatic retrieval and display.
Alternately, if in "next" link decision 850, a negative determination is made,
then in jumper-browser process 858, the last URL is sent to the browser to
both access and display the file corresponding to the last URL.  Subsequently,
5   control is passed to splice block B for a return to hot-link select decision 818.

The process corresponding to the single jump mode is shown in
Fig. 8C. This process allows the user to select a specific level 1 hot-link and
have the browser retrieve and display the level 2 file corresponding to the
10  selected level 1 hot-link.  In window process 880,  the jumper drop-down
window 586 is automatically opened, as is shown in Fig. 5C.  Then in drop-
down button process 882 a determination is made at to whether the button
selected by the user and detected in jumper button select decision 818,  was
the drop-down list button 310.  If the user did select button 310 then the user
15  has not yet selected a specific hot-link from the parsed hot-links in the jumper
drop-down window 586.  Control is then passed to wait process 884. When the
user selects a specific entry from the drop-down list control passes to locate
select process 886.  Alternately, if a negative determination is reached in
jumper button select decision 818 then control is passed directly to locate
20  select process  886.  A negative determination in jumper select decision 818
means that one of  jumper buttons 312, 314, 316, 318 or 320, was selected
thereby indicating a specific user choice for the single jump location. These
buttons were discussed above in connection with Fig. 3.

25       In locate select process 886 a determination is made as to which of the
hot-links in the jumper drop-down window was selected.  If, for example, first
entry button 312 were selected then the first of the hot-links in the list is
selected.   Alternately, if the user selected drop-down window button 310 and
then mouse selected an entry e.g. the fourth entry on the drop-down list,  then
30  that entry would be highlighted.  In the example shown in Fig. 6 the user has
selected hot-link 580 and that selection, the  "Ricky Rock Rat"  hot-link is
detected by the jumper.

I:\PUBLIC\CC7\0106301.07

21

G 000373

-21-

Subsequent to selection detection, control is passed to jumper-browser process 888. The URL corresponding to the selected hot-link is passed by the jumper to the browser causing the browser to locate and subsequently display a file corresponding to that URL. The jumper continues
5    to display all level "1" sites as hot-links. In the next step highlight process 890 the selected hot-link is highlighted, as shown for example in Fig. 6 as highlight 602 around selected hot-link 580, "Ricky Rock Rat". After the highlight process, the selected hot-link on the drop-down list is copied to the jumper site window 308 in copy process 892. Subsequently, in process 894 the
10    jumper drop-down window is closed.

When the browser displays the above mentioned file, the user may conduct a drill-down on the hot-links in that file in the browser window. In that case, the browser window is active and the jumper window is inactive. When
15    the drill-down is complete and the user reactivates the jumper window by mouse clicking on it, that reactivation is detected in process 898 and control is passed to jumper select decision 818 via the splice block B, shown in Fig. 8A.

20    The following describes additional embodiments of the invention. Except where stated in alternative form, each of these embodiments include features that can be combined with the features discussed above.

25    Some alternative embodiments provide better integration of the jumper's functions and the browser's functions. In one embodiment of the invention, when a user initiates a search in the browser, the jumper automatically starts and begins parsing the results of the search. This saves the user from having to start the jumper separately from the browser. In another embodiment, the jumper functions are built directly into the browser.
30    In a different embodiment, the jumper is implemented as an application, such as an applet, which is sent to the browser by the search engine. All of these

G 000374

-22-

embodiments provide a more integrated jumper/browser environment for the user.

Some alternative embodiments provide the user with more powerful tools for traversing the search results. In one embodiment, the categories in the search results are specially tagged (e.g., with a previously unused HTML tag) to indicate category fields as opposed to simple URLs. Alternatively, the categories can be parsed given their location in the search result (e.g., not indented). In an embodiment that includes category identification, the jumper includes functions for jumping from one category to the next category, in addition to being able to jump from one site identifier to the site identifier. As an enhancement to this embodiment, the user is presented with additional buttons for jumping from category to category. In another embodiment, the user can define how many site identifiers should be parsed from the search results. For example, if the search results provide twenty site identifiers, but the user may only want the first five identifiers, the user can specify that only the first five identifiers be provided. Similarly, in another embodiment, the user can specify what types of results should be parsed (e.g., only categories). Alternatively, in another embodiment, the jumper parses all the site identifiers, but the user specifies how many or what type to display.

In another embodiment, the user will be able to invoke the product from within their electronic e-mail box simply by double-clicking on attached files. These files may be encoded in markup language. In another embodiment, the HTML parsed files for both transmission and receipt by users would be able to be compressed and decompressed by users with simple click commands common to normal software operations. In another embodiment, the product will not require an additional instance of the presenter to be invoked upon return to the original home page. In still another embodiment of the product, the list box will contain a drag and drop user interface which will allow the user to cut and paste URLs from one list to another and compile their own individual lists to their preferred selection and taste. In still one more

I:\PUBLIC\CC7\0106301.07

G 000375

-23-

embodiment of the product, the user will be able to adjust and modify the
overall interface of various URLs, hot-links and other files viewable within the
presenter to both highlight the various objects mentioned previously for
marking the users place in the list that they are working from, and similarly be
5    able to change the nature of the highlight of such previously mentioned item to
be noted as important by a permanent highlighting of the particular object.

Thus, a method and apparatus for retrieving information has been
described.  Note that though the foregoing has particular utility and has been
10    described with reference to certain specific embodiments in the figures and the
text, that one may practice the present invention without implementing all of
these specific details.  Thus, the figures and the text are to be viewed in an
illustrative sense only, and not limit the present invention.  The present
invention is only to be limited by the appended claims which follow.

H:\PUBLIC\CC7\0106301.07

-24-

DEFINITIONS

1.    NETWORK:    A network is a hard drive, a local network, a wide area
network, an intranet, the internet or any series or combination of computers or
5    computing hardware.

2.    FILE:    A file is a collection of data that may be coded or unencoded.
Coded files may contain the HTML, SGML or other mark up language.
Unencoded files comprise; audio, visual, graphics, and/or video.  Files may be
10    encrypted or unencrypted during transmission.  An electronic mail message is
also considered to be a file.  In addition, attachments to electronic mail are
also considered files.

-3.    PRESENTER:  A presenter is an interactive information media either
15    visual or audio, animated or static, graphical or textual, audio or silent.

4.    SITE IDENTIFIER:  A site identifier is a pointer to a file.

G 000377

-25-

What is claimed is:

1.      A computer implemented method and system for retrieving information
from a network comprising the following steps;
        receiving a 1st file of information which includes site identifiers and
other information;
        parsing said 1st file of information to extract a list comprising site
identifiers; and
        responsive to a jump command, determining which of the list of site
identifiers is currently selected and automatically selecting an other of said site
identifiers from said list.

2.      The computer implemented method of claim 1 wherein said responsive
step further comprises;
        accessing a  2nd file at a site corresponding to said automatically
selected other site identifier from said list.

3.      The computer implemented method of claim 2 wherein said responsive
step further comprises;
        displaying said 2nd file.

4.      The computer implemented method of claim 1 wherein;
        said 1st file comprises information in a markup language;  and
        said site identifiers comprise URLs.

5.      The computer implemented method of claim 3 wherein;
        said 1st file and said 2nd file comprise information in a markup
language; and
        said site identifiers comprise URLs.

L:\PUBLIC\CC70106301.07

0920476174 .10296

G 000378

-26-

6.      The computer implemented method of claim 5 wherein said responsive
step further comprises;
        automatically selecting from a group consisting of: a next site
identifier, a prior site identifier, a first site identifier and a last site identifier,
said other of said site identifiers from said list.

7.      A computer usable medium having computer readable program code
means embodied therein for causing a retrieval of information from a network,
the computer readable program code means in said article of manufacture
comprising:
        computer readable program code means for causing a computer to
receive a  1st  file of information which includes site identifiers and other
information;
        computer readable program code means for causing a computer to
parse said 1st file of information to extract a list comprising site identifiers;
        computer readable program code means for causing a computer
responsive to a jump command, to determine which of the list of site identifiers
is currently selected and to automatically select an other of said site identifiers
from said list.

8.      The computer readable program code means in said article of
manufacture of claim 7 comprising:
        computer readable program code means for causing a computer
responsive to said jump command, to access a 2nd file at a site corresponding
to said automatically selected other site identifier from said list.

9.      The computer readable program code means in said article of
manufacture of claim 8 comprising:
        computer readable program code means for causing a computer
responsive to said jump command, to display said 2nd file.

I:\PUBLIC\CC7\0106301.07

-27-

10.    The computer readable program code means in said article of
manufacture of claim 7 comprising:
        computer readable program code means for causing a computer to
receive said 1st file of information,  wherein said 1st file, comprises
information in a markup language and said site identifiers comprise URLs.

11.    The computer readable program code means in said article of
manufacture of claim 9 comprising:
        computer readable program code means for causing a computer to
receive a 1st file of information and to access a 2nd file,  wherein each of said
1st and said 2nd files, comprise information in a markup language and said
site identifiers comprise URLs.

12.    The computer readable program code means in said article of
manufacture of claim 11 comprising:
        computer readable program code means for causing a computer to
automatically select said other of said site identifiers from said list from a
group consisting of:  a next site identifier, a prior site identifier, a first site
identifier and a last site identifier.

13.    A computer implemented method of retrieving information from a
network comprising the following steps:
        receiving  a  1st  file of information which includes site identifiers and
other information;
        parsing said 1st file of information to extract a list comprising site
identifiers;
        automatically sending a plurality of  jump commands to the browser
wherein each of said  jump commands includes a one of said site identifiers
from said list comprising site identifiers,  and wherein further responsive to
said plurality of jump commands a site corresponding to each of said site
identifiers is accessed.

I:\PUBLIC\CC7\0106301.07

G 000380

-28-

1    14.  The computer implemented method of claim 13 wherein said step of
2    automatically sending further comprises;
3           retrieving a file from each of said accessed sites corresponding to each
4    of said site identifiers.

1    15.  The computer implemented method of claim 14 wherein said step of
2    automatically sending further comprises;
3           displaying each of said retrieved files.

1    16.  The computer implemented method of claim 13 wherein:
2           said 1st file comprises information in a markup language; and
3           said site identifiers comprise URLs.

1    17.  The computer implemented method of claim 15 wherein:
2           said 1st file comprises information in a markup language; and
3           said site identifiers comprise URLs.

1    18.    A computer usable medium having computer readable program code
2    means embodied therein for causing a retrieval of information from the
3    computer readable program code means in said article of manufacture
4    comprising:
5           computer readable program code means for causing a computer to
6    receive a  1st .file of information which includes site identifiers and other
7    information;
8           computer readable program code means for causing a computer to
9    parse said 1st file of information to extract a list comprising site identifiers;
10           computer readable program code means for causing a computer to
11    automatically send a plurality of jump commands wherein each of said  jump
12    commands includes a one of said site identifiers from said list comprising site
13    identifiers,  and wherein further responsive to said plurality of jump commands,
14    a site corresponding to each of said site identifiers is accessed.

I:\PUBLIC\CC79010630I.07

-29-

1    19.    The computer readable program code means in said article of
2    manufacture of claim 18 comprising:
3          computer readable program code means for causing a computer
4    responsive to said automatically sending a plurality of jump commands to
5    retrieve a file from each of said accessed sites corresponding to each of said
6    site identifiers.

1    20.    The computer readable program code means in said article of
2    manufacture of claim 19 comprising:
3          computer readable program code means for causing a computer
4    responsive to said automatically sending a plurality of jump commands, to
5    display each of said retrieved files.

1    21.    The computer readable program code means in said article of
2    manufacture of claim 18 comprising:
3          computer readable program code means for causing a computer to
4    receive said 1st file of information,  wherein said 1st file, comprises
5    information in a markup language and said site identifiers comprise URLs.

1    22.    The computer readable program code means in said article of
2    manufacture of claim 20 comprising:
3          computer readable program code means for causing a computer to
4    receive said 1st file of information,  wherein said 1st file, comprises
5    information in a markup language and said site identifiers comprise URLs.

1    23.    A computer-implemented method of retrieving information network
2    comprising the following steps:
3          receiving  into a browser window a 1st file of information which
4    includes site identifiers and other information;
5          parsing said 1st file of information to extract a list comprised of said 1st
6    file site identifiers;

I:\PUBLIC\CC7\0106301.07

28

G 000382

-30-

1    displaying a jumper window;

2    receiving into said jumper window said set of 1st file site identifiers;

3    selecting a one of said 1st file site identifiers from said browser

4  window, wherein the browser accesses a location corresponding to said one

5  selected and retrieves from said location a 2nd file which includes side

6  identifiers and other information;

7    receiving into said browser window said 2nd file of information;

8    selecting an other of said 1st file site identifier from said jumper

9  window, wherein the browser accesses a location corresponding to said other

10  selected site identifier and retrieves from said location a 3rd file; and

11    receiving into said browser said 3rd file.

1    24.    A computer-implemented method of retrieving information through a

2  browser according to claim 23, wherein:

3    wherein said 1st file and said 2nd file comprise information in a markup

4  language and said site identifiers comprise URLs.

1    25.    A computer usable medium having computer readable program code

2  means embodied therein for causing a retrieval of information from a network,

3  the computer readable program code means in said article of manufacture

4  comprising;

5    computer readable program code means for causing a computer to

6  receive into a browser window a 1st file of information which includes site

7  identifiers and other information;

8    computer readable program code means for causing a computer to

9  parse said 1st file of information to extract a list comprised of said 1st file site

10  identifiers;

11    computer readable program code means for causing a computer to

12  display a jumper window;

13    computer readable program code means for causing a computer to

14  receive into said jumper window said set of 1st file site identifiers;

I:\PUBLIC\CC\70108301.07

G 000383

-31-

15      computer readable program code means for causing a computer to
16  select a one of said 1st file site identifiers from said browser window, wherein
17  the browser accesses a location corresponding to said one selected and
18  retrieves from said location a 2nd file which includes side identifiers and other
19  information;
20      computer readable program code means for causing a computer to
21  receive into said browser window said 2nd file of information;
22      computer readable program code means for causing a computer to
23  select an other of said 1st file site identifier from said jumper window, wherein
24  the browser accesses a location corresponding to said other selected and
25  retrieves from said location a 3rd file; and
26      computer readable program code means for causing a computer to
27  receive into said browser said 3rd file.

1   26.    The computer readable program code means in said article of
2   manufacture of claim 25 comprising:
3       computer readable program code means for causing a computer to
4   receive said 1st file of information,  wherein said 1st file, comprises
5   information in a markup language and said site identifiers comprise URLs.

I:\PUBLIC\CC70105301.07

G 000384

-32-

## ABSTRACT

A computer implemented method and system for retrieving information through a browser connected to a network. A first file of information is received which includes a first mark-up language to identify contents of the information, which contents include site identifiers. The site identifiers corresponding for example to file locations on the Internet. The first file is displayed in a browser window. Responsive to receiving the first file of information by the browser, the first file of information is parsed by a jumper to generate a list of site identifiers. This list of site identifiers is then stored by the jumper and displayed in a jumper window. Responsive to an activation by the user, a computer is directed to perform the following steps. The jumper determines which of the stored site identifiers is currently selected and automatically selects the next. Next the jumper directs the browser to access the file at the site corresponding to automatically selected site identifier. Finally, the browser is directed to display the file the browser has retrieved in the browser window.

I:\PUBLIC\CC7\0105301.07

G 000385

PATENT
Attorney Docket No. 18041.701

## COMBINED DECLARATION AND POWER OF ATTORNEY
## FOR UTILITY PATENT APPLICATION

As a below-named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name;

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:

## INTERNET SEARCH TOOLS

the specification of which

_____ is attached hereto.

___X___ was filed on October 8, 1996, as Application Serial No. 08/727,085
and was amended on _____
(If Applicable)

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a) which states in relevant part: "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section....The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98."

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate as indicated below and have also identified below any foreign application for patent or inventor's certificate on this invention having a filing date before that of the application on which priority is claimed:

| Prior Foreign Application(s) | | | Priority Claimed | |
|---|---|---|---|---|
| _____ | _____ | _____ | _____ | _____ |
| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |

G 000386

Attorney Docket No. 18041.701

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulation, §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| | | |
|---|---|---|
| (Application Serial No.) | (Filing Date) | (Patented, Pending, Abandoned) |
| (Application Serial No.) | (Filing Date) | (Patented, Pending, Abandoned) |

I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith, and to file, prosecute and to transact all business in connection with international applications directed to said invention:

| | |
|---|---|
| Stephen C. Durant | 31,506 |
| Mark A. Haynes | 30,846 |
| Paul Davis | 29,294 |
| Michael Hetherington | 32,357 |
| Hark C. Chan | 35,477 |
| Charles D. Holland | 35,196 |
| David J. Weitz | 38,362 |
| Michael J. Panepucci | 37,203 |
| Michael J. Murphy | 37,404 |
| Kent R. Richardson | 39,443 |
| Charles C. Cary | 36,764 |

Address all correspondence to:

Wilson, Sonsini, Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304

Direct all telephone calls to Charles C. Cary at (415) 493-9300.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Title 18, United States Code, §1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Attorney Docket No. 18041.701

Full name of sole or
— first inventor:                Gilbert Borman

Inventor's signature:            _____

Date:                            1 - 7 - 97

Citizenship:                     U.S.A.

Residence:                       554 Bennington, Bloomfield Hills, MI 48304

Post Office Address:             Same as above.


Full name of second joint
    inventor, if any:            Rajat Bhatnagar

Inventor's signature:            _____

Date:                            _____

Citizenship:                     India

Residence:                       1435 Bedford Street, #5C, Stamford, CT 06905

Post Office Address:             Same as above.


Full name of third joint
    inventor, if any:            Arul Sebastian

Inventor's signature:            _____

Date:                            _____

Citizenship:                     India

Residence:                       60 Strawberry Hill Ave., #816, Stamford, CT 06902

Post Office Address:             Same as above.


Full name of fourth joint
    inventor, if any:            Anup Mathur

Inventor's signature:            _____

Date:                            _____

Citizenship:                     India

Residence:                       870 E. El Camino Real, #521, Sunnyvale, CA 94087

Post Office Address:             Same as above.

G 000388

Attorney Docket No. 18041.701

Full name of fifth joint
  inventor, if any:   Vinay Wadhwa _____

Inventor's signature: _____

Date: _____

Citizenship:     India _____

Residence:     C2150 Vasant Kunj, New Delhi, India 110070

Post Office Address:   Same as above. _____


Full name of sixth joint
  inventor, if any:   Mukesh Kumar _____

Inventor's signature: _____

Date: _____

Citizenship:     India _____

Residence:     A4C - 117, Janakpuri, New Delhi India 110058

Post Office Address:   Same as above. _____


Full name of seventh joint
  inventor, if any:   C. Vinay Kumar Singh _____

Inventor's signature: _____

Date: _____

Citizenship:     India _____

Residence:     A-502, Rail Vihar, Sector 15 phase II, Guragon, India

Post Office Address:   Same as above. _____

G 000389

PATENT
Attorney Docket No. 18041.701

## COMBINED DECLARATION AND POWER OF ATTORNEY
## FOR UTILITY PATENT APPLICATION

As a below-named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name;

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:

### INTERNET SEARCH TOOLS

the specification of which

___    is attached hereto.

_X_    was filed on October 8, 1996, as Application Serial No. 08/727,085
and was amended on _____
(If Applicable)

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a) which states in relevant part: "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section....The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98."

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate as indicated below and have also identified below any foreign application for patent or inventor's certificate on this invention having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s)                                    Priority Claimed

_____    _____          _____        ___    ___
(Number)   (Country)        (Day/Month/Year Filed)    Yes    No

G 000390

Attorney Docket No. 18041.701

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulation, §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| (Application Serial No.) | (Filing Date) | (Patented, Pending, Abandoned) |
|---|---|---|

| (Application Serial No.) | (Filing Date) | (Patented, Pending, Abandoned) |
|---|---|---|

I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith, and to file, prosecute and to transact all business in connection with international applications directed to said invention:

| | |
|---|---|
| Stephen C. Durant | 31,506 |
| Mark A. Haynes | 30,846 |
| Paul Davis | 29,294 |
| Michael Hetherington | 32,357 |
| Hark C. Chan | 35,477 |
| Charles D. Holland | 35,196 |
| David J. Weitz | 38,362 |
| Michael J. Panepucci | 37,203 |
| Michael J. Murphy | 37,404 |
| Kent R. Richardson | 39,443 |
| Charles C. Cary | 36,764 |

Address all correspondence to:

Wilson, Sonsini, Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304

Direct all telephone calls to Charles C. Cary at (415) 493-9300.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Title 18, United States Code, §1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

G 000391

Attorney Docket No. 18041.701

| | |
|---|---|
| Full name of sole or<br>— first inventor: | Gilbert Borman |
| Inventor's signature: | |
| Date: | |
| Citizenship: | U.S.A. |
| Residence: | 554 Bennington, Bloomfield Hills, MI 48304 |
| Post Office Address: | Same as above |

| | |
|---|---|
| Full name of second joint<br>inventor, if any: | Rajat Bhatnagar |
| Inventor's signature: | |
| Date: | 1/15/97 |
| Citizenship: | India |
| Residence: | 1435 Bedford Street, #5C, Stamford, CT 06905 |
| Post Office Address: | Same as above |

| | |
|---|---|
| Full name of third joint<br>inventor, if any: | Arul Sebastian |
| Inventor's signature: | |
| Date: | 1/20/97 |
| Citizenship: | India |
| Residence: | 60 Strawberry Hill Ave., #816, Stamford, CT 06902 |
| Post Office Address: | Same as above |

| | |
|---|---|
| Full name of fourth joint<br>inventor, if any: | Anup Mathur |
| Inventor's signature: | |
| Date: | |
| Citizenship: | India |
| Residence: | 870 E. El Camino Real, #521, Sunnyvale, CA 94087 |
| Post Office Address: | Same as above |

G 000392

**Attorney Docket No. 18041.701**

Full name of fifth joint
  inventor, if any:    Vinay Wadhwa

Inventor's signature:

Date:

Citizenship:    India

Residence:    C2150 Vasant Kunj, New Delhi, India 110070

Post Office Address:    Same as above.


Full name of sixth joint
  inventor, if any:    Mukesh Kumar

Inventor's signature:

Date:

Citizenship:    India

Residence:    A4C - 117, Janakpuri, New Delhi India 110058

Post Office Address:    Same as above.


Full name of seventh joint
  inventor, if any:    C. Vinay Kumar Singh

Inventor's signature:

Date:

Citizenship:    India

Residence:    A-502, Rail Vihar, Sector 15 phase II, Guragon, India

Post Office Address:    Same as above.

**PATENT**
Attorney Docket No. 18041.701

## COMBINED DECLARATION AND POWER OF ATTORNEY
### FOR UTILITY PATENT APPLICATION

As a below-named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name;

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:

### INTERNET SEARCH TOOLS

the specification of which

_____   is attached hereto.

__X__  was filed on October 8, 1996, as Application Serial No. 08/727,085
and was amended on _____
(If Applicable)

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a) which states in relevant part: "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section....The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98."

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate as indicated below and have also identified below any foreign application for patent or inventor's certificate on this invention having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s)                              Priority Claimed

_____    _____    _____    ___  ___
(Number)      (Country)      (Day/Month/Year Filed)   Yes   No

G 000394

Attorney Docket No. 18041.701

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulation, §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| (Application Serial No.) | (Filing Date) | (Patented, Pending, Abandoned) |
|---|---|---|
| (Application Serial No.) | (Filing Date) | (Patented, Pending, Abandoned) |

I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith, and to file, prosecute and to transact all business in connection with international applications directed to said invention:

| | |
|---|---|
| Stephen C. Durant | 31,506 |
| Mark A. Haynes | 30,846 |
| Paul Davis | 29,294 |
| Michael Hetherington | 32,357 |
| Hark C. Chan | 35,477 |
| Charles D. Holland | 35,196 |
| David J. Weitz | 38,362 |
| Michael J. Panepucci | 37,203 |
| Michael J. Murphy | 37,404 |
| Kent R. Richardson | 39,443 |
| Charles C. Cary | 36,764 |

Address all correspondence to:

Wilson, Sonsini, Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304

Direct all telephone calls to Charles C. Cary at (415) 493-9300.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Title 18, United States Code, §1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

G 000395

Attorney Docket No. 18041.701

| | |
|---|---|
| Full name of sole or first inventor: | Gilbert Borman |
| Inventor's signature: | |
| Date: | |
| Citizenship: | U.S.A. |
| Residence: | 554 Bennington, Bloomfield Hills, MI 48304 |
| Post Office Address: | Same as above. |

| | |
|---|---|
| Full name of second joint inventor, if any: | Rajat Bhatnagar |
| Inventor's signature: | |
| Date: | |
| Citizenship: | India |
| Residence: | 1435 Bedford Street, #5C, Stamford, CT 06905 |
| Post Office Address: | Same as above. |

| | |
|---|---|
| Full name of third joint inventor, if any: | Arul Sebastian |
| Inventor's signature: | |
| Date: | |
| Citizenship: | India |
| Residence: | 60 Strawberry Hill Ave. #816, Stamford, CT 06902 |
| Post Office Address: | Same as above. |

| | |
|---|---|
| Full name of fourth joint inventor, if any: | Anup Mathur |
| Inventor's signature: | Anup Kumar Mathur |
| Date: | 2/5/97 |
| Citizenship: | India |
| Residence: | 870 E. El Camino Real, #521, Sunnyvale, CA 94087 |
| Post Office Address: | Same as above. |

G 000396

Attorney Docket No. 18041.701

Full name of fifth joint
  inventor, if any:      Vinay Wadhwa
Inventor's signature:
Date:
Citizenship:      India
Residence:      C2150 Vasant Kunj, New Delhi, India 110070
Post Office Address:      Same as above.

Full name of sixth joint
  inventor, if any:      Mukesh Kumar
Inventor's signature:
Date:
Citizenship:      India
Residence:      A4C - 117, Janakpuri, New Delhi India 110058
Post Office Address:      Same as above.

Full name of seventh joint
  inventor, if any:      C. Vinay Kumar Singh
Inventor's signature:
Date:
Citizenship:      India
Residence:      A-502, Rail Vihar, Sector 15 phase II, Guragon, India
Post Office Address:      Same as above.

G 000397

PATENT
Attorney Docket No. 18041.701

### COMBINED DECLARATION AND POWER OF ATTORNEY
### FOR UTILITY PATENT APPLICATION

As a below-named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name;

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:

### INTERNET SEARCH TOOLS

the specification of which

_____    is attached hereto.

__X__    was filed on October 8, 1996, as Application Serial No. 08/727,085
and was amended on _____
(If Applicable)

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a) which states in relevant part: "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section....The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98."

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate as indicated below and have also identified below any foreign application for patent or inventor's certificate on this invention having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s)                                    Priority Claimed

_____  _____       _____       Yes     No
(Number)    (Country)        (Day/Month/Year Filed)

G 000398

Attorney Docket No. 18041.701

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulation, §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| (Application Serial No.) | (Filing Date) | (Patented, Pending, Abandoned) |
| --- | --- | --- |

| (Application Serial No.) | (Filing Date) | (Patented, Pending, Abandoned) |
| --- | --- | --- |

I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith, and to file, prosecute and to transact all business in connection with international applications directed to said invention:

| | |
| --- | --- |
| Stephen C. Durant | 31,506 |
| Mark A. Haynes | 30,846 |
| Paul Davis | 29,294 |
| Michael Hetherington | 32,357 |
| Hark C. Chan | 35,477 |
| Charles D. Holland | 35,196 |
| David J. Weitz | 38,362 |
| Michael J. Panepucci | 37,203 |
| Michael J. Murphy | 37,404 |
| Kent R. Richardson | 39,443 |
| Charles C. Cary | 36,764 |

Address all correspondence to:

**Wilson, Sonsini, Goodrich & Rosati**
**650 Page Mill Road**
**Palo Alto, CA 94304**

Direct all telephone calls to Charles C. Cary at (415) 493-9300.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Title 18, United States Code, §1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

G 000399

Attorney Docket No. 18041.701

Full name of sole or
first inventor:                 Gilbert Borman

Inventor's signature:           _____

Date:                           _____

Citizenship:                    U.S.A.

Residence:                      554 Bennington, Bloomfield Hills, MI 48304

Post Office Address:            Same as above.


Full name of second joint
inventor, if any:               Rajat Bhatnagar

Inventor's signature:           _____

Date:                           _____

Citizenship:                    India

Residence:                      1435 Bedford Street, #5C, Stamford, CT 06905

Post Office Address:            Same as above.


Full name of third joint
inventor, if any:               Anil Sebastian

Inventor's signature:           _____

Date:                           _____

Citizenship:                    India

Residence:                      60 Strawberry Hill Ave., #816, Stamford, CT 06902

Post Office Address:            Same as above.


Full name of fourth joint
inventor, if any:               Anup Mathur

Inventor's signature:           _____

Date:                           _____

Citizenship:                    India

Residence:                      870 E. El Camino Real, #521, Sunnyvale, CA 94087

Post Office Address:            Same as above.

G 000400

Attorney Docket No. 18041.701

Full name of fifth joint
  inventor, if any:           Vinay Wadhwa

Inventor's signature:         _____

Date:                         _____

Citizenship:                  India

Residence:                    C2150 Vasant Kunj, New Delhi, India 110070

Post Office Address:          Same as above.


Full name of sixth joint
  inventor, if any:           Mukesh Kumar

Inventor's signature:         Mukesh

Date:                         Feb. 04, 1997

Citizenship:                  India

Residence:                    285 E. Del Mar. Apt. 5, Pasadena, CA 91101

Post Office Address:          Same as above.


Full name of seventh joint
  inventor, if any:           C. Vinay Kumar Singh

Inventor's signature:         _____

Date:                         _____

Citizenship:                  India

Residence:                    A-502, Rail Vihar, Sector 15 phase II, Guragon, India

Post Office Address:          Same as above.

PATENT<br>
Attorney Docket No. 18041.701

## COMBINED DECLARATION AND POWER OF ATTORNEY
### FOR UTILITY PATENT APPLICATION

As a below-named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name;

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:

### INTERNET SEARCH TOOLS

the specification of which

    ___   is attached hereto.

    _X_  was filed on October 8, 1996, as Application Serial No. 08/727,085
        and was amended on _____
                    (If Applicable)

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a) which states in relevant part: "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section....The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98."

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate as indicated below and have also identified below any foreign application for patent or inventor's certificate on this invention having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s)                            <u>Priority Claimed</u>

| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |
|---|---|---|---|---|

G 000402

Attorney Docket No. 18041.701

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulation, §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| (Application Serial No.) | (Filing Date) | (Patented, Pending, Abandoned) |
| --- | --- | --- |
| (Application Serial No.) | (Filing Date) | (Patented, Pending, Abandoned) |

I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith, and to file, prosecute and to transact all business in connection with international applications directed to said invention:

| | |
| --- | --- |
| Stephen C. Durant | 31,506 |
| Mark A. Haynes | 30,846 |
| Paul Davis | 29,294 |
| Michael Hetherington | 32,357 |
| Hark C. Chan | 35,477 |
| Charles D. Holland | 35,196 |
| David J. Weitz | 38,362 |
| Michael J. Panepucci | 37,203 |
| Michael J. Murphy | 37,404 |
| Kent R. Richardson | 39,443 |
| Charles C. Cary | 36,764 |

Address all correspondence to:

Wilson, Sonsini, Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304

Direct all telephone calls to Charles C. Cary at (415) 493-9300.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Title 18, United States Code, §1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

G 000403

Attorney Docket No. 18041.701

| | |
|---|---|
| Full name of sole or first inventor: | Gilbert Borman |
| Inventor's signature: | |
| Date: | |
| Citizenship: | U.S.A. |
| Residence: | 554 Bennington, Bloomfield Hills, MI 48304 |
| Post Office Address: | Same as above |

| | |
|---|---|
| Full name of second joint inventor, if any: | Rajat Bhatnagar |
| Inventor's signature: | |
| Date: | |
| Citizenship: | India |
| Residence: | 1435 Bedford Street, #5C, Stamford, CT 06905 |
| Post Office Address: | Same as above |

| | |
|---|---|
| Full name of third joint inventor, if any: | Arul Sebastian |
| Inventor's signature: | |
| Date: | |
| Citizenship: | India |
| Residence: | 60 Strawberry Hill Ave., #816, Stamford, CT 06902 |
| Post Office Address: | Same as above |

| | |
|---|---|
| Full name of fourth joint inventor, if any: | Anup Mathur |
| Inventor's signature: | |
| Date: | |
| Citizenship: | India |
| Residence: | 870 E. El Camino Real, #521, Sunnyvale, CA 94087 |
| Post Office Address: | Same as above |

G 000404

Attorney Docket No. 18041.701

Full name of fifth joint
   inventor, if any:        Vinay Wadhwa
Inventor's signature:      _Vinay Wadhwa_
Date:                      _January 17th, 1997_
Citizenship:               India
Residence:                 C2150 Vasant Kunj, New Delhi, India 110070
Post Office Address:       Same as above.


Full name of sixth joint
   inventor, if any:        Mukesh Kumar
Inventor's signature:
Date:
Citizenship:               India
Residence:                 A4C - 117, Janakpuri, New Delhi India 110058
Post Office Address:       Same as above.


Full name of seventh joint
   inventor, if any:        C. Vinay Kumar Singh
Inventor's signature:      _Vinay_
Date:                      _January 17th, 1997_
Citizenship:               India
Residence:                 A-502, Rail Vihar, Sector 15 phase II, Guragon, India
Post Office Address:       Same as above.

02/18/97  14:42    WILSON SONSINI + 8103530383                    NO.074  P002/003

Patent
Attorney Docket No. 18041.701

Applicant or Patentee: Gilbert Borman et al.

Serial or Patent No.: 08/727,085

Filed or Issued: October 8, 1996

For: Internet Search Tools

## VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) and 1.27(c)) - SMALL BUSINESS CONCERN

I hereby declare that I am
[X]      the owner of the small business concern identified below:
[ ]      an official of the small business concern empowered to act on behalf of the concern identified below:

Name of Concern: Tenretni Dynamics, Inc.

Address of Concern: 1 Oakland Towne Square, Suite 1690, Southfield, Michigan 48076

I hereby declare that the above identified small business concern qualifies as a small business concern as defined in 13 CFR 121.3-18, and reproduced in 37 CFR 1.9(d), for purposes of paying reduced fees under Section 41(a) and (b) of Title 35, United States Code, in that the number of employees of the concern, including those of its affiliates, does not exceed 500 persons. For purposes of this statement, (1) the number of employees of the business concern is the average over the previous fiscal year of the concern of the persons employed on a full-time, part-time or temporary basis during each of the pay periods of the fiscal year, and (2) concerns are affiliates of each other when either, directly or indirectly, one concern controls or has the power to control the other, or a third-party or parties controls or has the power to control both.

I hereby declare that rights under contract or law have been conveyed, to and remain with the small business concern identified above with regard to the invention, entitled

## INTERNET SEARCH TOOLS

by inventors Gilbert Borman, Rajat Bhatnagar, Anil Sebastian, Anup Mathur, Vinay Wadhwa, Mukesh Kumar and C. Vinay Kumar Singh, described in

[ ]    the specification filed herewith
[x ]   Application Serial No. 08/727,085, filed October 8, 1996
[ ]    Patent No. _____ issued _____

If the rights held by the above identified small business concern are not exclusive, each individual, concern or organization having rights to the invention is listed below* and no rights to the invention are held by any person, other than the inventor, who could not qualify as a small business concern under 37 CFR 1.9(d) or by any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

Name: Gilbert Borman

Address: 1 Oakland Towne Square
            Suite 1690
            Southfield, MI 48076

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earlier of the issue fee or any maintenance fee due after the date on which status as a small business entity is no longer appropriate. (37 CFR 1.28(b)).

G 000406

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which the verified statement is directed.

Name of Person Signing:  Gilbert Borman

Title of Person Other Than Owner:  President

Address of Person Signing:  1 Oakland Towne Square, Suite 1690, Southfield, Michigan 48076

Signature: _____          Date: 2-28-97

G 000407





FIG. 1

G 000408

PRINT OF DRAWINGS
AS ORIGINALLY FILED



FIG. 2

PRINT OF DRAWINGS
AS ORIGINALLY     ΞD



FIG. 3

G 000410

PRINT OF DRAWINGS
AS ORIGINALLY FILED



# FIG. 4
# (Prior Art)

PRINT OF DRAWINGS
AS ORIGINALLY FILED



FIG. 5A

G 000412

PRINT OF DRAWINGS
AS ORIGINALLY FILED



FIG. 5B

PRINT OF DRAWINGS
AS ORIGINALLY FILED



## FIG. 5C





FIG. 6

G 000415

PRINT OF DRAWINGS
AS ORIGINALLY    ED



FIG. 7
(Prior Art)

G 000416

PRINT OF DRAWINGS
AS ORIGINALLY FILED



FIG. 8A

G 000417

PRINT OF DRAWINGS
AS ORIGINALLY     ED



FIG. 8B

G 000418

PRINT OF DRAWINGS
AS ORIGINALLY FILED



C

OPEN JUMPER
DROP-DOWN
WINDOW — 880

882 DROP-DOWN
BUTTON ? —YES→ WAIT FOR SELECTION  884

NO

886 — LOCATE SELECTED
HOT-LINK IN DROP
DOWN LIST

888 — SEND
LEVEL "1" SITE
TO
BROWSER
TO LOCATE & DISPLAY

HIGHLIGHT SELECTED
ENTRY IN
JUMPER
DROP-DOWN
WINDOW — 890

COPY HIGHLIGHT
ENTRY TO
JUMPER
LOCATION
WINDOW — 892

894

CLOSE JUMPER DROP
DOWN                                896

USER DRILLS DOWN
FROM SELECTED SITE
ON BROWSER

898 — DETECT RETURN TO
JUMPER

B

FIG. 8C

PRINT OF DRAWINGS
AS ORIGINALLY FILED



FIG. 9A
(Prior Art)

G 000420

PRINT OF DRAWINGS
AS ORIGINALLY ED



FIG. 9B

LEVEL 1 >

LEVEL 2 >

LEVEL 3 >

LEVEL 4 >

LEVEL 5 >

G 000421

CERTIFICATE OF MAILING
I hereby certify that this correspondence is being deposited with the U.S. Postal Service with
sufficient postage as first class mail in an envelope addressed to: Assistant Commissioner for
Patents, Washington, D.C. 20231, on _____ February 1, 1999
      Drew R. Herndon
(Typed or Printed Name of Person Mailing Paper or Fee)

_____
(Signature of Person Mailing Paper or Fee)

99 FEB -8 PM 2: RECEIVED

GROUP 2700

Attorney Docket No. 18041-702

FEB 04 1999

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application | ) PATENT APPLICATION |
| | ) |
| Inventor(s):   Gilbert Borman et al. | ) |
| | ) Art Unit: 2776   RECEIVED |
| Application No.: 09/204,214 | ) |
| | ) Examiner: Unknown FEB 1 0 1999 |
| Filed:   December 2, 1998 | ) |
| | ) Group 2700 |
| Title:   INTERNET SEARCH TOOLS | ) |
| | ) |

### INFORMATION DISCLOSURE STATEMENT UNDER 37 C.F.R. §1.97

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

Listed below or on an attached Form PTO-1449 is information known to applicant(s). A copy of each listed publication and U.S. and foreign patent, except for pending U.S. applications, is being submitted herewith, along with a concise explanation of information in a foreign language, if any, pursuant to 37 C.F.R. §1.97-1.98.

Applicants respectfully request that the listed information be considered by the Examiner and be made of record in the above-identified application. If form PTO-1449 is enclosed, the Examiner is requested to initial and return it in accordance with MPEP §609.

This statement is not intended to represent that a search has been made or that the information cited in the statement is, or is considered to be, material to patentability as defined in §1.56.

- 1 -

C:\NRPORTBL\PALIB1\DRH\995469.1
Attorney Docket No.: 18041-702

G 000422

   X    This statement qualifies under *37 C.F.R. §1.97, subsection (b)* because (check all that apply):

        x    (1)    It is being filed within 3 months of the application filing date
                          -- OR --

        ___   (2)    It is being filed within 3 months of entry of a national stage
                          -- OR --

        ___   (3)    It is being filed before the mail date of the first Office Action on the
                          merits.

___  *37 C.F.R. §1.97(c).* If this statement is being filed after the latest of: (1) three months beyond the filing date of a national application; (2) three months beyond the date of entry of the national stage as set forth in §1.491 in an international application; or (3) the mailing date of a first Office action on the merits, but before the mailing date of the earlier of a final office action under §1.113 or a notice of allowance under §1.311, then:

       ___    a certification as specified in §1.97(e) is provided below; **or**

       ___    a fee of $240.00 as set forth in §1.17(p) is authorized below, enclosed, or included with
            the payment of other papers filed together with this statement.

___  *37 C.F.R. §1.97(d).* If this statement is being filed after the mailing date of the earlier of a final office action under §1.113 or a notice of allowance under §1.311, but before payment of the issue fee, then:

      A.    a certification as specified in §1.97(e) is completed below; **and**

      B.    a petition under 37 C.F.R. §1.97(d) requesting consideration of this statement is submitted
          herewith; **and**

      C.    a fee of $130.00 as set forth in §1.17(i)(1) is authorized below, enclosed, or included with
          the payment of other papers filed together with this statement.

   X    *Fee Authorization.* The Commissioner is hereby authorized to charge the above-referenced fees of $ __0.00__ and charge any additional fees or credit any overpayment associated with this communication to Deposit Account No. 23-2415 (Docket No. 18041-702).

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

Date: __1 February 1999__        By: _____
                                  Paul Davis
                                  Reg. No. 29,294

650 Page Mill Road
Palo Alto, CA 94304-1050
(650) 493-9300

- 2 -



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. / FILING DATE | | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| | 2/03/98 | DORMAN | 18041-702 |

021971
WILSON SONSINI GOODRICH & ROSATI          LM41/1123
850 PAGE MILL ROAD
PALO ALTO CA 94304-1050

| EXAMINER |
|---|
| HUNG, S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2776 | |

DATE MAILED:          11/23/99

Please find below and/or attached an Office communication concerning this application or
proceeding.

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)

1 - File Copy          G 000424

| *Office Action Summary* | Application No. 09/204,214 | Applicant(s) Boman et al. |
|---|---|---|
| | Examiner Hong | Group Art Unit 2776 |

*—The MAILING DATE of this communication appears on the cover sheet beneath the correspondence address—*

**Period for Response**

A SHORTENED STATUTORY PERIOD FOR RESPONSE IS SET TO EXPIRE __three__ MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a response be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for response is specified above, such period shall, by default, expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to respond within the set or extended period for response will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).

**Status**

☑ Responsive to communication(s) filed on ___2-4-99___
☑ This action is FINAL.
☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 1 1; 453 O.G. 213.

**Disposition of Claims**

☑ Claim(s) ___1-26___ is/are pending in the application.
   Of the above claim(s) ___NONE___ is/are withdrawn from consideration.
☐ Claim(s) _____ is/are allowed.
☑ Claim(s) ___1-26___ is/are rejected.
☐ Claim(s) _____ is/are objected to.
☐ Claim(s) _____ are subject to restriction or election requirement.

**Application Papers**

☑ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.
☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.
☐ The drawing(s) filed on _____ is/are objected to by the Examiner.
☐ The specification is objected to by the Examiner.
☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119 (a)-(d)**

☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 11 9(a)-(d).
   ☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been
   ☐ received.
   ☐ received in Application No. (Series Code/Serial Number) _____
   ☐ received in this national stage application from the International Bureau (PCT Rule 1 7.2(a)).

   *Certified copies not received: _____

**Attachment(s)**

☑ Information Disclosure Statement(s), PTO-1449, Paper No(s). ___2___    ☐ Interview Summary, PTO-413
☐ Notice of References Cited, PTO-892    ☐ Notice of Informal Patent Application, PTO-152
☑ Notice of Draftsperson's Patent Drawing Review, PTO-948    ☐ Other _____

*Office Action Summary*

U.S. Patent and Trademark Office
PTO-326 (Rev. 3-97)    *U.S. GPO: 1997-417-381/62710    Part of Paper No. ___3___

G 000425

Serial Number: 09/204,214
Art Unit: 2776

2

## Part III   DETAILED ACTION

1.    This action is responsive to communications: application filed on 12/2/98, which is a

continuation of application, 08/727,085, filed on 10/8/96; prior art filed on 2/1/99.

2.    Claims 1-26 are pending in the case. Claims 1, 7, 18, 23 and 25 are independent

claims.

*Drawings*

3.    This application has been filed with informal drawings which are acceptable for

examination purposes only. Formal drawings will be required when the application is

allowed.

       The drawings submitted with this application were declared informal by the applicant.

Accordingly they have not been reviewed by a draftsperson at this time. When formal

drawings are submitted, the draftsperson will perform a review. Any inquiries concerning

drawing review should be directed to the Drawing Review Branch at (703) 305-8404.

*Specification*

4.    The title of the invention is not descriptive. A new title is required that is clearly

indicative of the invention to which the claims are directed.

5.    Examiner requests that Applicant review the application carefully for informalities

including typographical errors.

G 000426

Serial Number: 09/204,214                                        3
Art Unit: 2776

### *Claim Rejections - 35 USC § 112*

6.    Claims 1-6 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite

for failing to particularly point out and distinctly claim the subject matter which applicant

regards as the invention.

Independent claim 1 claims both apparatus and method (in line 1, "A computer

implemented method and system") as the subject matter.  The hybrid structure renders the

claim indefinite, since it is unclear what subject matter is actually being claimed.  See Ex

Parte Lyell, 17 USPQ2d 1548.

Claims that are noted above as being rejected but not specifically cited below are

rejected based on their dependency on rejected independent claims.

### *Claim Rejections - 35 USC § 101*

7.    35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of
> matter or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions
> and requirements of this title.

8.    Claim 1, 7 and 18 are rejected under 35 U.S.C. 101 because the claims are directed to

"Manipulation of Abstract Ideas Without a Claimed Practical Application" (the below

paragraphs are from MPEP § 2106 *Patentable Subject Matter - Computer - Related*

*Inventions).*

> A process that consists solely of the manipulation of an abstract idea without any limitation to a
> practical application is nonstatutory. E.g., Warmerdam , 33 F.3d at 1360, 31 USPQ2d at 1759. See also
> Schrader,22 F.3d at 295, 30 USPQ2d at 1459. Office personnel have the burden to establish a prima facie
> case that the claimed invention taken as a whole is directed to the manipulation of abstract ideas without a
> practical application.
>       In order to determine whether the claim is limited to a practical application of an abstract idea,
> Office personnel must analyze the claim as a whole, in light of the specification, to understand what subject
> matter is being manipulated and how it is being manipulated. During this procedure, Office personnel must

G 000427

Serial Number: 09/204,214                                                    4
Art Unit: 2776

    evaluate any statements of intended use or field of use, any data gathering step and any post - manipulation
    activity. See section IV.B.2(d) above for how to treat various types of claim language. Only when the claim
    is devoid of any limitation to a practical application in the technological arts should it be rejected under 35
    U.S.C. 101. Further, when such a rejection is made, Office personnel must expressly state how the language
    of the claims has been interpreted to support the rejection.

    (b)    Statutory Process Claims

        A claim that requires one or more acts to be performed defines a process. However, not all
    processes are statutory under 35 U.S.C. 101. To be statutory, a claimed computer - related process must
    either: (1) result in a physical transformation outside the computer for which a practical application in the
    technological arts is either disclosed in the specification or would have been known to a skilled artisan
    (discussed in (I) below), or (2) be limited by the language in the claim to a practical application within the
    technological arts (discussed in (ii) below). See Diamond v. Diehr , 450 U.S. at 183 - 84, 209 USPQ at 6
    (quoting Cochrane v. Deener , 94 U.S. 780, 787 - 88 (1877)) ("A [statutory] process is a mode of treatment
    of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject -
    matter to be transformed and reduced to a different state or thing. . . . . The process requires that certain
    things should be done with certain substances, and in a certain order; but the tools to be used in doing this
    may be of secondary consequence."). See also Alappat , 33 F.3d at 1543, 31 USPQ2d at 1556 - 57 (quoting
    Diamond v . Diehr, 450 U.S. at 192, 209 USPQ at 10). See also id. at 1569, 31 USPQ2d at 1578 - 79
    (Newman, J., concurring) ("unpatentability of the principle does not defeat patentability of its practical
    applicants") (citing O`Reilly v . Morse,56 U.S. (15 How.) at 114 - 19). The claimed practical application
    must be a further limitation upon the claimed subject matter if the process is confined to the internal
    operations of the computer. If a physical transformation occurs outside the computer, it is not necessary to
    claim the practical application. A disclosure that permits a skilled artisan to practice the claimed invention,
    i.e., to put it to a practical use, is sufficient. On the other hand, it is necessary to claim the practical
    application if there is no physical transformation or if the process merely manipulates concepts or converts
    one set of numbers into another.

    Accordingly, the presently pending independent claims 1, 7 and 18 are non-statutory,

since it neither: "(1) result in a physical <u>transformation outside the computer</u> for which a

practical application in the technological arts is either disclosed in the specification or would

have been known to a skilled artisan" or "(2) be limited by the <u>language in the claim to a</u>

<u>practical application</u> within the technological arts".

    The claims presently recite the steps of "receiving... information", "parsing said...

information..." and then "selecting...site identifiers" which are all performed inside of a

computer without any transformation outside the computer. Furthermore, none of those

limitations constitutes a "practical application". As Examiner understands, the practical

G 000428

Serial Number: 09/204,214                                                    5
Art Unit: 2776

application in the Applicant's invention is using the "identifier" to retrieve data from the

remote internet sites which are then displayed on screen. Thus, the independent claims must

be limited by a language in the claims to such practical application within the technological

arts.

### *Claim Rejections - 35 USC § 102*

9.     The following is a quotation of the appropriate paragraphs of 35 U.S.C. § 102 that
form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless --
> (a) the invention was known or used by others in this country, or patented or described in a printed
> publication in this or a foreign country, before the invention thereof by the applicant for a patent.

10.    Claims 1-5, 7-11 and 13-22 are rejected under 35 U.S.C. 102(a) as being anticipated

by Applicant's admitted known prior art.

On page 3 of the specification, in the Background Information section, applicant admits

that "Yahoo" search engine was a well known prior art.

As per independent claim 1, Applicant admits that the following claimed steps in a

method for retrieving information from network was well known in the art:

- receiving a first file of information which includes site identifiers and other

information (in FIG.4, at the bottom of the figure, the dialog box shows input area for the user

to type in keywords for search, and item 406 in FIG.5 shows the window with the received

results.);

- parsing said 1st file of information to extract a list comprising site identifiers (since

the "NETSCAPE" browser in FIGs.4 and 5, parses the HTML document and underlines the

URL hotlinks.);

Serial Number: 09/204,214                                                    6
Art Unit: 2776

    - responsive to a jump command, determining which of the list of site identifiers is

currently selected and automatically selecting an other of said site identifier form said list

(e.g., the Yahoo search engine shown in FIG.5C, item 588 "Next 20" shows where the user

activates the next page request, and in view of the current page, the next page (i.e., site)

identifier is automatically chosen.).

    As per dependent claims 2 and 3, which are dependent on claims 1 and 2, respectively,

the prior art further shows accessing and displaying a 2nd file (since the browser displays the

second file containing the "Next 20" items.).

    As per dependent claims 4 and 5, which are dependent on claims 1 and 3, respectively,

the prior art further shows that the identifiers comprise URLs (as Applicant admits on page 3

of the specification, line 21, "A hot-link comprises ...a corresponding URL").

    Independent claim 7 and its dependent claims 8-11 are for computer readable medium

comprising the methods of claims 1-5, respectively, and are similarly rejected under the same

rationale.

    Independent claim 13 and its dependent claims 14-17 recite substantially similar

limitations as claims 1-5, respectively, and are similarly rejected under the same rationale.

Furthermore, Applicant's admitted prior art discloses the additional feature of "automatically

sending a plurality of jump commands to the browser", since the Yahoo search engine (in

FIG.5C, item 406) shows a plurality of URL links and the user activation of those links are

automatically translated to the browser as the request to retrieve files from the URLs.

Serial Number: 09/204,214                                                                    7
Art Unit: 2776

     Independent claim 18 and its dependent claims 19-22 are for computer readable

medium comprising the methods of claims 13-22, respectively, and are similarly rejected

under the same rationale.


*Claim Rejections - 35 USC § 103*

11.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art
> are such that the subject matter as a whole would have been obvious at the time the invention was made to a
> person having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be
> negatived by the manner in which the invention was made.
>
> This application currently names joint inventors.  In considering patentability of the claims under 35
> U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at
> the time any inventions covered therein were made absent any evidence to the contrary.  Applicant is advised
> of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not
> commonly owned at the time a later invention was made in order for the examiner to consider the
> applicability of 35 U.S.C. 103© and potential 35 U.S.C. 102(f) or (g) prior art under 35 U.S.C. 103(a).

12.    Claims 6 and 12 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Applicant's admitted prior art in view of AltaVista, "http:/www.altavista.com", 2/20/98,

screen printouts pp.1-2.  Note that although the printouts of the AltaVista search engine was

made on 2/20/98, as Applicant admits on page 4, line 7 of the specification, it was available to

public before the filing date of the present application.

     As per dependent claim 6, which is dependent on claim 5, Applicant's admitted prior

art discloses the limitations of claim 5, but does not explicitly teach the following additional

limitations: automatically selecting from a group consisting of: a next site identifier, a prior

site identifier, a first site identifier and a last site identifier.  In the Applicant's admitted prior

art of the Yahoo search engine, this feature does not seem to be shown.  However, another

G 000431

Serial Number: 09/204,214                                                    8
Art Unit: 2776

well known search engine called AltaVista discloses this feature (see page 2 of the print out, as

the "Prev" icon, "Next" icon, "1" icon and "20" icon). It would have been obvious to a

person of ordinary skill in the art at the time the invention was made to have incorporated the

feature of AltaVista into Yahoo, since they both taught accessing the site identifiers resulted

from a search, and AltaVista taught the features which improved user interface for the

navigation.

      Dependent claims 12 is for computer readable medium comprising the methods of

claim 6, and is similarly rejected under the same rationale.


13.    Claims 23-26 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Applicant's admitted prior art in view of <u>CNN Interactive</u>, "http:/cnn.com/index", 2/20/98,

screen printout pp.1-7. It is noted that although the screen printout date of the CNN web site

is 2/20/98, Examiner takes an Official Notice that the CNN Interactive web site was available

to the public before the filing date of the present application.

      As per independent claim 23, the CNN Interactive teaches the following claimed

limitations:

      - receiving into a browser window a 1st file of information network (on page 1 of the

printout, as the content of the CNN page is received.);

      - displaying a jumper window (on page 1, on the left most column, the jumper window

containing the index image of "WORLD", "U.S.", "LOCAL"...);

G 000432

Serial Number: 09/204,214                                          9
Art Unit: 2776

     - selecting and receiving one of said 1st site identifier from said browser (on page 5,

see the jumper window as the "EARTH" was chosen and the right window shows that the

"EARTH MAIN PAGE" is retrieved.);

     - selecting and receiving an other of said 1st file identifier from said jumper window

(on page 5 of the printout, since each of the "WORLD", "U.S", "LOCAL", indexes is

accessible.).

     However, the claimed invention differs from the prior art of CNN Interactive in that

the prior art fails to show the steps of: parsing the 1st file of the information to extract a list

comprised of said 1st file site identifiers and then receiving into said jumper window said set

of 1st file site identifiers.  Regarding this feature, the Applicant's admitted prior art at least

shows the feature of parsing the 1st file retrieved, as FIG.5B shows that the URL links are

underlined by the browser after the browser parsed the 1st file and recognized the existence of

the URLs.  Therefore, the issue is whether or not it would have been obvious to a person of

ordinary skill in the art at the time the invention was made to have provided, to the Yahoo, the

jumper window like that of CNN Interactive.  In view of the prior art teachings as a whole,

such feature would have been obvious to a person of ordinary skill in the art at the time the

invention was made, since the CNN-like jumper window in the Yahoo search engine would

have given the user the concurrent access to the URL indexes while viewing the contents of an

index.

     Dependent claim 24, which is dependent on claim 23, recites substantially similar

limitations as claim 5, and is similarly rejected under the same rationale.

G 000433

Serial Number: 09/204,214                                                          10
Art Unit: 2776

Independent claim 25 and its dependent claim 26 are for computer-readable medium

comprising the methods of claims 23 and 24, respectively, and are similarly rejected under the

same rationale.

### *Conclusion*

14.    This is a Continuation of applicant's earlier Application No. 08/727,085.  All claims
are drawn to the same invention claimed in the earlier application and could have been finally
rejected on the grounds and art of record in the next Office action if they had been entered in
the earlier application.  Accordingly, **THIS ACTION IS MADE FINAL** even though it is a
first action in this case.  See MPEP § 706.07(b).  Applicant is reminded of the extension of
time policy as set forth in 37 CFR 1.136(a).
       A shortened statutory period for reply to this final action is set to expire THREE
MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO
MONTHS of the mailing date of this final action and the advisory action is not mailed until
after the end of the THREE-MONTH shortened statutory period, then the shortened statutory
period will expire on the date the advisory action is mailed, and any extension fee pursuant to
37 CFR 1.136(a) will be calculated from the mailing date of the advisory action.  In no,
however, event will the statutory period for reply expire later than SIX MONTHS from the
mailing date of this final action.

G 000434

Serial Number: 09/204,214                                                    11
Art Unit: 2776

15.    Any inquiry concerning this communication or earlier communications from the examiner should be directed to Steve Hong whose telephone number is (703) 308-5465. The examiner can normally be reached on Monday-Friday from 8:00 AM-5:30 PM.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Michael Razavi, can be reached on (703) 305-4713.

    Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 305-3900.

    Any response to this action should be mailed to:
            Commissioner of Patents and Trademarks
            Washington, D.C. 20231
    or faxed to:
            (703) 308-9051, (for formal communications intended for entry)
    Or:
            (703) 305-9724 (for informal or draft communications, please label
            "PROPOSED" or "DRAFT")
    Hand-delivered responses should be brought to Crystal Park II, 2121 Crystal Drive, Arlington,
    VA., Sixth Floor (Receptionist).

                                        Stephen Hong

                                        Primary Examiner

                                        November 16, 1999

SHEET 1 OF 1

| INFORMATION DISCLOSURE CITATION | ATTY. DOCKET NO. 18041-702 | SERIAL NO. 09/204,214 |
|---|---|---|
| PTO-1449 | APPLICANT Gilbert Borman et al. | |
| | FILING DATE December 2, 1998 | GROUP 2776 |

## U.S. PATENT DOCUMENTS

| EXAMINER'S INITIALS | PATENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| EXAMINER'S INITIALS | PATENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| SSH | CNN Interactive "http://cnn.com/index", 2/20/98, screen printouts, 7 pages. |
| | AltaVista, "http://www.altavista.com", 2/20/98, screen printouts, 2 pages. |
| | |
| | |
| | |

| EXAMINER _Hong_ | DATE CONSIDERED 11-16-9 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

C:\AIRPORTGIL\PALEINDA30995461.1

FORM PTO-948 (REV. 11-97)    U.S. DEPARTMENT OF COMMERCE-Patent and Trademark Office    Application No. 09/204/214

## NOTICE OF DRAFTPERSON'S
## PATENT DRAWING REVIEW

The drawing filed (insert date) 12-2-98 are:

A. _____ not objected to by the Draftperson under 37 CFR 1.84 or 1.152.

B. ✓ objected to by the Draftperson under 37 CFR 1.84 or 1.152 as indicated below. The Examiner will require submission of new, corrected drawings when necessary. Corrected drawings must be submitted according to the instructions on the back of this notice.

1. DRAWINGS. 37 CFR 1.84(a): Acceptable categories of drawings:
   Black ink. Color.
   _____ Color drawing are not acceptable until petition is granted.
   Fig.(s)_____
   _____ Pencil and non black ink is not permitted. Fig(s)_____

2. PHOTOGRAPHS. 37 CFR 1.84(b)
   _____ Photographs are not acceptable until petition is granted.
   _____ 3 full-tone sets are required. Fig(s)_____
   _____ Photographs not properly mounted (must bristol board or photographic double-weight paper). Fig(s)_____
   _____ Poor quality (half-tone). Fig(s)_____

3. TYPE OF PAPER. 37 CFR 1.84(e)
   _____ Paper not flexible, strong, white and durable.
   Fig.(s)_____
   ✗ Erasures, alterations, overwritings, interlineations, folds, copy machine marks not acceptable. (too thin)
   _____ Mylar, vellum paper is not acceptable (too thin).
   Fig(s)_____

4. SIZE OF PAPER. 37 CFR 1.84(F): Acceptable sizes:
   _____ 21.0 cm by 29.7 cm (DIN size A4)
   _____ 21.6 cm by 27.9 cm (8 1/2 x 11 inches)
   _____ All drawings sheets not the same size.
   Sheet(s)_____

5. MARGINS. 37 CFR 1.84(g): Acceptable margins:
   Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
   SIZE: A4 Size
   Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
   SIZE: 8 1/2 x 11
   ✓ Margins not acceptable. Fig(s) 2,5A-9B
   ✓ Top (T) ✓ Left (L)
   _____ Right (R) _____ Bottom (B)

6. VIEWS. CFR 1.84(h)
   REMINDER: Specification may require revision to correspond to drawing changes.
   _____ Views connected by projection lines or lead lines.
   Fig.(s)_____
   Partial views. 37 CFR 1.84(h)(2)
   _____ Brackets needed to show figure as one entity.
   Fig.(s)_____
   _____ Views not labeled separately or properly.
   Fig.(s)_____
   _____ Enlarged view not labeled separately or properly.
   Fig.(s)_____

7. SECTIONAL VIEWS. 37 CFR 1.84(h)(3)
   _____ Hatching not indicated for sectional portions of an object.
   Fig.(s)_____
   _____ Sectional designation should be noted with Arabic or Roman numbers. Fig.(s)_____

8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)
   ✓ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned, so that the top becomes the right side, except for graphs. Fig.(s) 2
   _____ Views not on the same plane on drawing sheet. Fig.(s)_____

9. SCALE. 37 CFR 1.84(k)
   _____ Scale not large enough to show mechanism without crowding when drawing is reduced in size to two-thirds in reproduction.
   Fig.(s)_____

10. CHARACTER OF LINES, NUMBERS, & LETTERS. 37 CFR 1.84(l)
    ✓ Lines, numbers & letters not uniformly thick and well defined, clean, durable and black (poor line quality).
    Fig.(s) 1,3-9B

11. SHADING. 37 CFR 1.84(m)
    _____ Solid black areas pale. Fig.(s)_____
    _____ Solid black shading not permitted. Fig.(s)_____
    _____ Shade lines, pale, rough and blurred. Fig.(s)_____

12. NUMBERS, LETTERS, & REFERENCE CHARACTERS:
    37 CFR 1.48(p)
    _____ Numbers and reference characters not plain and legible.
    Fig.(s)_____
    _____ Figure legends are poor. Fig.(s)_____
    _____ Numbers and reference characters not oriented in the same direction as the view. 37 CFR 1.84(p)(3) Fig.(s)_____
    ✓ English alphabet not used. 37 CFR 1.84(p)(3) Fig.(s)_____
    ✓ Numbers, letters and reference characters must be at least .32 cm (1/8 inch) in height. 37 CFR 1.84(p)(3) Fig.(s) 2

13. LEAD LINES. 37 CFR 1.84(q)
    _____ Lead lines cross each other. Fig.(s)_____
    _____ Lead lines missing. Fig.(s)_____

14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.84(t)
    _____ Sheets not numbered consecutively, and in Arabic numerals beginning with number 1. Fig.(s)_____

15. NUMBERING OF VIEWS. 37 CFR 1.84(u)
    _____ Views not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig.(s)_____

16. CORRECTIONS. 37 CFR 1.84(w)
    _____ Corrections not made from PTO-948 dated_____

17. DESIGN DRAWINGS. 37 CFR 1.152
    _____ Surface shading shown not appropriate. Fig.(s)_____
    _____ Solid black shading not used for color contrast.
    Fig.(s)_____

COMMENTS

REVIEWER Tam    DATE 1/22/99    TELEPHONE NO._____

ATTACHMENT TO PAPER NO. 3
PTO COPY

G 000437



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|---|
| 09/204,214 | 12/02/98 | DORMAN | | G | 002 |

```
                                    LMCI/0606
021971
WILSON SONSINI GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO CA 94304-1050
```

| HONG, EXAMINER |
|---|
| ART UNIT | PAPER NUMBER |
| 06/ / 00 |

DATE MAILED:

### NOTICE OF ABANDONMENT

This application is abandoned in view of:

☑ Applicant's failure to timely file a proper response to the Office letter mailed on ___11-23-99___ .

    ☐ A response (with a Certificate of Mailing or Transmission of_____ ) was received on _____, which is after the expiration of the period for response (including a total extension of time of_____month(s)) which expired on _____.

    ☐ A proposed response was received on _____, but it does not constitute a proper response to the final rejection.

    (A proper response to a final rejection consists only of: a timely filed amendment which places the application in condition for allowance; a Notice of Appeal; or the filing of a continuing application under 37 CFR 1.62 (FWC).

    ☑ No response has been received.

☐ Applicant's failure to timely pay the required issue fee within the statutory period of three months from the mailing date of the Notice of Allowance.

    ☐ The issue fee (with a Certificate of Mailing or Transmission of_____ ) was received on _____.

    ☐ The submitted issue fee of $_____is insufficient. The issue fee required by 37 CFR 1.18 is $_____ .

    ☐ The issue fee has not been received.

☐ Applicant's failure to timely file new formal drawings as required in the Notice of Allowability.

    ☐ Proposed new formal drawings (with a Certificate of Mailing or Transmission of _____ ) were received on _____.

    ☐ The proposed new formal drawings filed _____ are not acceptable.

    ☐ No proposed new formal drawings have been received.

☐ The express abandonment under 37 CFR 1.62(g) in favor of the FWC application filed on _____.

☐ The letter of express abandonment which is signed by the attorney or agent of record, the assignee of the entire interest, or all of the applicants.

☐ The letter of express abandonment which is signed by an attorney or agent (acting in a representative capacity under 37 CFR 1.34(a) upon the filing of a continuing application.

☐ The decision by the Board of Patent Appeals and Interferences rendered on _____ and because the period for seeking court review of the decision has expired and there are no allowed claims.

☐ The reason(s) below:

STEPHEN S. HONG
PRIMARY EXAMINER

FORM PTO-1432 (REV. 10-95)

G 000438

AF/GAU2776/8
#5
6-15-00

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:

GILBERT BORMAN ET AL.

Serial No.:     09/204,214

Group Art Unit: 2776

Examiner: S. Hong

Filed:          December 2, 1998

For:            METHOD AND APPARATUS FOR RETRIEVING DATA
                FROM A NETWORK USING LINKED LOCATION
                IDENTIFIERS (as amended)

Attorney Docket No.: NJI.0102 PUS

RECEIVED MAY 31 2000 TC 2700 MAIL ROOM

RECEIVED JUN -2 2000 TC 2700 MAIL ROOM

AMENDMENT UNDER 37 C.F.R. § 1.111
AND PETITION FOR EXTENSION OF TIME
UNDER 37 C.F.R. § 1.136(a)

Commissioner for Patents
United States Patent and Trademark Office
Washington, D.C.  20231

Sir:

        In response to the Office Action mailed November 23, 1999, the period for

response to which has been extended through May 23, 2000 by payment of the appropriate

extension of time fee, please amend the above-identified patent application as follows.

<u>In The Title</u>

        Please replace the title with –METHOD AND APPARATUS FOR

RETRIEVING DATA FROM A NETWORK USING LINKED LOCATION IDENTIFIERS–.

05/30/2000 JDOBLES 00000043 09204214
01 FC:217                  435.00 OP

CERTIFICATE OF MAILING UNDER 37 C.F.R. § 1.8

I hereby certify that this paper, including all enclosures referred to herein, is being deposited with the United States Postal
Service as first-class mail, postage pre-paid, in an envelope addressed to: Commissioner for Patents, United States Patent
and Trademark Office, Washington, D.C. 20231 on:

5/23/00          DAVID S. BIR
Date of Deposit   Name of Person Signing              Signature

*FF 6 A-(Nc)*
*6-15-a*

S/N: 09/204,214                                Atty Dkt No. NJI 0102 PUS

## In The Claims

Please cancel claim 2 without prejudice.  Please amend claims 1, 3-5, 7-11, 13, 18, and 21-26 as follows:

1.  (Amended)  A computer implemented method [and system] for retrieving information from a network comprising [the following steps]:

receiving a [1ˢᵗ] first file of information from the network which includes site identifiers [and other information];

parsing said [1ˢᵗ] first file of information to extract a list [comprising] of site identifiers; and

responsive to a jump command, determining which of the list of site identifiers is currently selected, [and] automatically selecting an other of said site identifiers from said list, and accessing a second file at the other of said site identifiers on the network.

3.  (Amended)  the computer implemented method of claim [2] 1 wherein said responsive step further comprises[;]:

displaying said [2ⁿᵈ] second file.

4.  (Amended)  The computer implemented method of claim 1 wherein[;]:

said [1ˢᵗ] first file comprises information in a markup language; and said site identifiers comprise URLs.

5.  (Amended)  the computer implemented method of claim 3 wherein:

said [1ˢᵗ] first file and said [2ⁿᵈ] second file comprise information in a markup language; and

said site identifiers comprise URLs.

7.  (Amended)  A computer usable medium having computer readable program code means embodied therein for causing a retrieval of information from a network, the computer readable program code means in said article of manufacture comprising:

-2-

G 000440

S/N: 09/204,214                                                Atty Dkt No. NJI 0102 PUS

computer readable program code means for causing a computer to receive a [1st] first file of information which includes site identifiers [and other information];

computer readable program code means for causing a computer to parse said [1st] first file or information to extract a list comprising site identifiers;

computer readable program code means for causing a computer responsive to a jump command, to determine which of the list of site identifiers is currently selected and to automatically select an other of said site identifiers from said list.

8. (Amended)  The computer readable program code means in said article of manufacture of claim 7 comprising:

computer readable program code means for causing a computer responsive to said jump command, to access a [2nd] second file at a site corresponding to said automatically selected other side identifier from said list.

9. (Amended)  The computer readable program code means in said article of manufacture of claim 8 comprising:

computer readable program code means for causing a computer responsive to said jump command, to display said [2nd] second file.

10. (Amended)  The computer readable program code means in said article of manufacture of claim 7 comprising:

computer readable program code means for causing a computer to receive said [1st] first file of information, wherein said [1st] first file, comprises information in a markup language said site identifiers comprise URLs.

11. (Amended)  The computer readable program code means in said article of manufacture of claim 9 comprising:

computer readable program code means for causing a computer to receive a [1st] first file of information and to access a [2nd] second file, wherein each of said [1st] first and [2nd] second files, comprise information in a markup language and said site identifiers comprise URLs.

-3-

G 000441

S/N: 09/204,214                                          Atty Dkt No. NJI 0102 PUS

15. (Amended) A computer implemented method of retrieving information from a network comprising [the following steps]:

receiving a [1ᵃ] first file of information which includes at least site identifiers [and other information];

parsing said [1ᵃ] first file of information to extract a list [comprising] of site identifiers storing the list of site identifiers;

automatically sending a plurality of jump commands to the browser separated by a selectable delay period wherein each of said jump commands includes a one of said site identifiers from said list comprising site identifiers, and wherein further responsive to said plurality of jump commands a site corresponding to each of said site identifiers is accessed.

16. (Amended) The computer implemented method of claim 15 wherein:

said [1ᵃ] first file comprises information in a markup language; and

said site identifiers comprise URLs.

17. (Amended) The computer implemented method of claim 15 wherein:

said [1ᵃ] first file comprises information in a markup language; and

said site identifiers comprise URLs.

18. (Amended) A computer usable medium having computer readable program code means embodied therein for causing a retrieval of information from the computer readable program code means in said article of manufacture comprising:

computer readable program code means for causing a computer to receive a [1ᵃ] first file of information which includes site identifiers and other information;

computer readable program code means for causing a computer to parse said [1ᵃ] first file of information to extract a list comprising site identifiers;

computer readable program code means for causing a computer to automatically send a plurality of jump commands separated by a delay period wherein each of said jump commands includes a one of said site identifiers from said list comprising site identifiers, and wherein further responsive to said plurality of jump commands, a site corresponding to each of said site identifiers is accessed.

-4-

S/N: 09/204,214                                        Atty Dkt No. NJI 0102 PUS

21. (Amended)  The computer readable program code means in said article of manufacture of claim 18 comprising:

computer readable program code means for causing a computer to receive said [1ˢᵗ] first file of information, wherein said [1ˢᵗ] first file, comprises information in a markup language and said site identifiers comprise URLs.

22. (Amended)  The computer readable program code means in said article of manufacture of claim 20 comprising:

computer readable program code means for causing a computer to receive said [1ˢᵗ] first file of information, wherein said [1ˢᵗ] first file, comprises information in a markup language and said site identifiers comprise URLs.

23. (Amended)  A computer-implemented method of retrieving information from a network comprising [the following steps]:

receiving into a browser window a [1ˢᵗ] first file of information from the network which includes site identifiers and other information;

parsing said [1ˢᵗ] first file of information to extract a list comprised of said [1ˢᵗ] first file site identifiers;

displaying a jumper window;

receiving into said jumper window said set of [1ˢᵗ] first file site identifiers;

automatically selecting a one of said [1ˢᵗ] first file site identifiers from said browser window, wherein the browser accesses a location on the network corresponding to said one selected and retrieves from said location a [2ⁿᵈ] second file which includes [side] site identifiers [and other information];

automatically receiving into said browser window said [2ⁿᵈ] second file of information;

automatically selecting an other of said [1ˢᵗ] first file site identifier from said jumper window, wherein the browser accesses a location corresponding to said other selected site identifier and retrieves from said location a [3ʳᵈ] third file.

G 000443

S/N: 09/204,214                                    Atty Dkt No. NJI 0102 PUS

24. (Amended)  A computer-implemented method of retrieving information through a browser according to claim 23, wherein:

[wherein] said [1ˢᵗ] first and said [2ⁿᵈ] second file comprise information in a markup language and said site identifiers comprise URLs.

25. (Amended)  A computer usable medium having computer readable program code means embodied therein for causing a retrieval of information from a network, the computer readable program code means in said article of manufacture comprising[;]:

computer readable program code means for causing a computer to receive into a browser window a [1ˢᵗ] first file of information which includes site identifiers and other information;

computer readable program code means for causing a computer to parse said [1ˢᵗ] first file of information to extract a list comprised of said [1ˢᵗ] first file site identifiers;

computer readable program code means for causing a computer to display a jumper window;

computer readable program code means for causing a computer to receive into said jumper window said set of [1ˢᵗ] first file site identifiers;

computer readable program code means for causing a computer to select a one of said [1ˢᵗ] first file site identifiers from said browser window, wherein the browser accesses a location corresponding to said one selected and retrieves from said location a [2ⁿᵈ] second file which includes side identifiers and other information;

computer readable program code means for causing a computer to receive into said browser window said [2ⁿᵈ] second file of information;

computer readable program code means for causing a computer to select an other of said [1ˢᵗ] first file site identifier from said jumper window, wherein the browser accesses a location corresponding to said other selected and retrieves from said location a [3ʳᵈ] third file; and

computer readable program code means for causing a computer to receive into said browser said [3ʳᵈ] third file.



-6-

G 000444

S/N: 09/204,214                                    Atty Dkt No. NJI 0102 PUS

26. (Amended). The computer readable program code means in said article of manufacture of claim 25 comprising:

computer readable program code means for causing a computer to receive said [1st] first of information, wherein said [1st] first file, comprises information in a markup language and said site identifiers comprise URLs.



## REMARKS

Applicants submit a new Power Of Attorney And Revocation Of Previous Power Of Attorney herewith.

In the first Office Action to this continuation application, the Examiner objected to the title. The Examiner rejected claims 1-6 under 35 U.S.C. § 112, second paragraph. The Examiner rejected claims 1, 7, and 18 under 35 U.S.C. § 101 as being directed to "Manipulation of Abstract Ideas Without a Claimed Practical Application." The Examiner rejected claims 1-5, 7-11, and 13-22 under 35 U.S.C. § 102(a) as being anticipated by Applicants' admitted prior art. The Examiner rejected claims 6 and 12 under 35 U.S.C. § 103(a) as being unpatentable over Applicants' admitted prior art in view of AltaVista. The Examiner rejected claims 23-26 under 35 U.S.C. § 103(a) as being unpatentable over Applicants' admitted prior art in view of CNN Interactive.

Reconsideration and reexamination of the application as amended is respectfully requested.

### A.    Objection To The Specification

The Examiner objected to the title as not being descriptive. Applicants have amended the title to clearly indicate the invention to which the claims are directed. If the title remains objectionable to the Examiner, the Examiner is respectfully requested to suggest an appropriate title in the next Office Action to advance the prosecution of this case.

-7-

G 0004452

S/N: 09/204,214                                      Atty Dkt No. NJI 0102 PUS

**B.    Rejection Under 35 U.S.C. § 112**

The Examiner rejected claims 1-6 as being indefinite for reciting both a method and system.  Applicants have amended claim 1 to overcome the Examiner's objection. Claims 2-6 depend from claim 1 and are now believed to be acceptable.

**C.    Rejection Under 35 U.S.C. § 101**

The Examiner rejected claims 1, 7, and 18 under 35 U.S.C. § 101 as being directed to non-statutory subject matter.  Applicants respectfully disagree and traverse the Examiner's rejection.  In particular, Applicants respectfully submit that the claims as filed and now as amended meet the requirement for statutory subject matter.  Consistent with MPEP § 2106 recited by the Examiner, claims 1, 7, and 18 are clearly directed to "a practical application within the technological arts."  In particular, these claims are directed to a computer implemented method for retrieving information from a network.  This is clearly a "practical application within the technological arts."  The recited steps of receiving a first file, parsing the first file, and receiving a jump command implement the method for retrieving information from a network.  Applicants respectfully submit the claims as filed and amended are clearly directed to a statutory process and the rejection under 35 U.S.C. § 101 should be withdrawn.

**D.    Rejection Under 35 U.S.C. § 102**

The Examiner rejected claims 1-5, 7-11, and 13-22 as being anticipated by Applicants' admitted prior art.  Applicants respectfully disagree and traverse the Examiner's rejection.

In particular, the Examiner takes the position that each of the steps recited in claim 1 (receiving, parsing, and responsive to a jump command) are performed by the Yahoo search engine described as prior art in the application.  However, The Examiner mischaracterizes the operation of the search engine.  In particular, the search engine does not parse the first file to extract a list of site identifiers as disclosed and claimed by Applicants. While the browser may underline the URL links in a particular retrieved file, the Netscape browser illustrated and described with reference to **Figures 4 and 5** does not extract a list of

-8-

S/N: 09/204,214                                      Atty Dkt No. NJI 0102 PUS

site identifiers as disclosed and claimed by Applicants. This function is in addition to parsing the file.

With respect to the "responsive" step, again, the Examiner has mischaracterized the operation of the Yahoo search engine and Netscape browser. Taken alone or in combination, the search engine and browser do not automatically select another of the site identifiers extracted from the list obtained from parsing the first file. Rather, as indicated by the Examiner, "the user activates the next page request." As such, it is respectfully submitted the rejection under 35 U.S.C. § 102 is improper and should be withdrawn.

The above-identified limitations are found in independent claims 7 and 13 which are also patentable over the prior art relied upon by the Examiner for the same reasons described above. With respect to claim 13 and its dependent clams 14-17, again, the Examiner has mischaracterized Applicants' admitted prior art. The Yahoo search engine requires user activation of links. This is admitted by the Examiner on page 6 of the Office Action "since the Yahoo search engine (in FIG.5C, item 406) shows a plurality of URL links and the user activation of those links . . ." (emphasis added). As such, the search engine does not "automatically select" the next site identifiers from the list. In addition, as stated above, the search engine does not extract a list of site identifiers from the received file. Therefore, it is respectfully submitted that Applicants' claimed invention includes various features which are neither disclosed nor suggested by the prior art relied upon by the Examiner. It is believed the claims as filed and now as amended patentably distinguish over the prior art.

E.    Rejection Under 35 U.S.C. § 103

The Examiner rejected claims 6, 12, and 23-26 as being unpatentable over Applicants' admitted prior art in view of AltaVista and CNN Interactive. With respect to the prior art status of the CNN Interactive site, Applicants have not yet determined whether or not the site as depicted on 2/20/98 is indeed prior art to Applicants' invention. However, this material was submitted to satisfy Applicants' duty of candor and arguments in response to the Office Action are intended to define over the CNN Interactive website assuming it is prior art to Applicants' invention. While the Examiner's "Official Notice" that the CNN Interactive website was available to the public before the filing date of the present application may be

-9-

G 000447

S/N: 09/204,214                                                                          Atty Dkt No. NJI 0102 PUS

correct, this alone does not make it prior art to Applicants' invention. Applicants reserve the right to challenge the prior art status of this material to Applicants' invention.

      With respect to the rejection of claims 6 and 12, Applicants respectfully submit that these claims include various limitations which are neither suggested nor disclosed by the proposed combination taken as a whole. In particular, claims 6 and 12 automatically select from the group consisting of a next site identifier, a prior site identifier, a first site identifier, and a last site identifier. As described above in relation to the rejection under 35 U.S.C. § 102, the prior art relied upon by the Examiner including the Yahoo search engine in combination with AltaVista neither discloses nor suggests the automatic selection of site identifiers. Rather, each search engine requires manual or user selection of a particular hot link. There is no teaching or motivation to combine the prior art relied upon by the Examiner, nor to modify the combination to arrive at Applicants' claimed invention. Therefore, it is respectfully submitted that the invention as recited in claims 6 and 12 is patentably distinguishable over the combination proposed by the Examiner.

      Likewise, with respect to claims 23-26, the CNN Interactive site does not parse the first file to extract a list of file site identifiers as disclosed and claimed by Applicants. Therefore, the CNN Interactive website cannot subsequently select one of the site identifiers, automatically receive the second file, automatically select another of the first file site identifiers from a jumper window, and automatically receive a third file as disclosed and claimed by Applicants. As with the Yahoo search engine and AltaVista website, the CNN Interactive site requires manual or user intervention for selection of a particular hot link to access or receive the additional files.

      For the reasons stated above, it is respectfully submitted that claims 23-26 are patentably distinguishable over the CNN Interactive reference, assuming the reference is prior art.

## F.   Summary

      Applicants have made a genuine effort to respond to each of the Examiner's rejections and objections in advancing the prosecution of this case. Applicants believe that the claims as filed and now as amended are in condition for allowance, which action is respectfully requested.

G 000448

S/N: 09/204,214                                    Atty Dkt No. NJI 0102 PUS

An additional fee of $435.00 is believed to be due for a three-month extension for a small entity. A check is enclosed in payment of this fee. Any additional fees or credits should be applied to deposit account 02-3978. A duplicate of this paper is enclosed for that purpose.

The Examiner is respectfully requested to telephone the undersigned to discuss resolution of any remaining issues which may be necessary to place this case in condition for allowance.

Respectfully submitted,

GILBERT BORMAN ET AL.

By _____
DAVID S. BIR
Reg. No. 38,383
Attorney/Agent for Applicants

Date: May 23, 2000
Enclosure:    Power of Attorney

BROOKS & KUSHMAN P.C.
1000 Town Center, 22nd Floor
Southfield, MI 48075
Phone: 248-358-4400
Fax:  248-358-3351

-11-

G 000449



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 09/204,214 | 12/02/98 | BORMAN | 18041-702 |

| | |
|---|---|
| 621971          LM41/0626<br>WILSON SONSINI GOODRICH & ROSATI<br>650 PAGE MILL ROAD<br>PALO ALTO CA 94304-1050 | **EXAMINER**<br>HONG, S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2776 | 7 |

DATE MAILED:    06/26/00

*Below is a communication from the EXAMINER in charge of this application*

**COMMISSIONER OF PATENTS AND TRADEMARKS**

## ADVISORY ACTION

☑ THE PERIOD FOR RESPONSE:

a) ☑ is extended to run **6 months** or continues to run _____ from the date of the final rejection

b) ☐ expires three months from the date of the final rejection or as of the mailing date of this Advisory Action, whichever is later. In no event however, will the statutory period for the response expire later than six months from the date of the final rejection.

Any extension of time must be obtained by filing a petition under 37 CFR 1.136(a), the proposed response and the appropriate fee. The date on which the response, the petition , and the fee have been filed is the date of the response and also the date for the purposes of determining the period of extension and the corresponding amount of the fee. Any extension fee pursuant to 37 CFR 1.17 will be calculated from the date of the originally set shortened statutory period for response or as set forth in b) above.

☐ Appellant's Brief is due in accordance with 37 CFR 1.192(a).

☑ Applicant's response to the final rejection, filed **5/30/00** has been considered with the following effect, but it is not deemed to place the application in condition for allowance.

1. ☑ The proposed amendments to the claim and/or specification will not be entered and the final rejection stands because:

    a. ☑ There is no convincing showing under 37 CFR 1.116(b) why the proposed amendment is necessary and was not earlier presented.

    b. ☑ They raise new issues that would require further consideration and/or search. (See Note).

    c. ☐ They raise the issue of new matter. (See Note).

    d. ☑ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal.

    e. ☐ They present additional claims without cancelling a corresponding number of finally rejected claims.

    NOTE: *The added limitations would require further consideration.*

2. ☐ Newly proposed or amended claims _____ would be allowed if submitted in a separately filed amendment cancelling the non-allowable claims.

3. ☐ Upon the filing an appeal, the proposed amendment ☐ will be entered ☐ will not be entered and the status of the claims will be as follows:

    Claims allowed: _____
    Claims objected to: _____
    Claims rejected: _____

    However;

    ☐ Applicant's response has overcome the following rejection(s): _____

4. ☑ The affidavit, exhibit or request for reconsideration has been considered but does not overcome the rejection because *it is based substantially on the new issues. (see NOTE above)*

5. ☐ The affidavit or exhibit will not be considered because applicant has not shown good and sufficient reasons why it was not earlier presented.

☐ The proposed drawing correction ☐ has ☐ has not been approved by the examiner.

☐ Other

S1_____    GM00450
PRIMARY _____

PTOL-303 (REV. 5-89)