UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NETJUMPER SOFTWARE, L.L.C.,                    Case No. 04-70366-CV
a Michigan limited liability corporation,      Hon. Julian Abele Cook
                                               Magistrate Judge R. Steven Whalen

      Plaintiff,

vs.


GOOGLE INC.,
a Delaware corporation,

      Defendant.

_____/

| | |
|---|---|
| SOMMERS SCHWARTZ, P.C. | DICKINSON WRIGHT, PLLC |
| Andrew Kochanowski (P55117) | Kathleen A. Lang (P34695) |
| Nabeel N. Hamameh  (P60981) | L. Pahl Zinn (P57516) |
| Attorneys For Plaintiff | Attorneys For Defendant |
| 2000 Town Center, 9th Floor | 500 Woodward Ave., Ste. 4000 |
| Southfield, MI  48075 | Detroit, MI 48226 |
| (248) 355-0300 | (313) 223-3500 |
| | |
| BANIAK, PINE & GANNON | FISH & RICHARDSON P.C. |
| Michael Baniak | Howard G. Pollack |
| Co-Counsel For Plaintiff | Attorneys For Defendant |
| 150 N. Wacker Drive, Suite 1200 | 500 Arguello Street, Ste. 500 |
| Chicago, IL 60606 | Redwood City, CA 94063 |
| (312) 673-0360 | (650) 839-5070 |
| | |
| | FISH & RICHARDSON P.C. |
| | Frank E. Scherkenbach |
| | 225 Franklin Street |
| | Boston, MA 02110-2804 |
| | (617) 542-5070 |

_____/

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

## PLAINTIFF NETJUMPER'S RESPONSE TO DEFENDANT GOOGLE'S OPENING CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

I.        INTRODUCTION ............................................................................................ 1

II.       ARGUMENT ................................................................................................... 2

         A.      THE APPLICABLE LAW OF CLAIM CONSTRUCTION. ............................. 2

         B.      THE CLAIM PREAMBLE IN THE '172 PATENT PROVIDES ANTECEDENT BASIS FOR THE CLAIM BODY ................................................................... 4

         C.      GOOGLE'S PROFFERED CONSTRUCTION OF THE TERM "PARSING" IS INCORRECT ............................................................................................ 5

         D.      THE ACTS OF PARSING, FORMING, AND STORING NEED NOT BE SEPARATED TEMPORALLY FROM THE ACTS OF RETRIEVING AND DISPLAYING, AS SUGGESTED BY GOOGLE ........................................... 11

         E.      CLAIMS 4 AND 8 ARE MARKUSH CLAIMS ............................................. 17

III.      CONCLUSION ............................................................................................. 18

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

## <u>INDEX OF AUTHORITIES</u>

### <u>CASES</u>

*Cybor Corp. v. FAS Tech., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) ....................................3

*Ductmate Industries, Inc. v. Famous Supply Corp.*, 55 F. Supp.2d 777, 782 (N.D. Ohio 1999)...............3

*E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*
   849 F.2d 1430 (Fed. Cir.), *cert. denied,* 488 U.S. 986 (1988) ................................................3

*Interactive Gift Express, Inc. v. Compuserve, Inc.*
   256 F.3d 1323 (Fed. Cir. 2001)........................................................................................2

*Vitronics Corp. v. Conceptronic, Inc.*
   90 F.3d 1576 (Fed. Cir. 1996)..........................................................................................2

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

## I.    <u>INTRODUCTION</u>

Google suggests that the Court construe six terms: "search," "parsing," "to form," "storing," "responsive to selection of the first icon," and location identifiers of Claims 4 and 8. This is contrary to what it stated in the May 10, 2006 telephone conference with this Court.  In that conference, Google stated that it would brief only two terms: the "parsing" term and the "searching" term in the preamble of the '172 Patent's claims.  During that conference, this Court did not give Google wholesale leave to argue the construction of any other terms in the claims.[1] But having lost outright on its attempt at obtaining summary judgment of noninfringement and invalidity, Defendant Google Inc. ("Google") – in the eleventh hour – asks this Court to construe even more terms from the patent-in-suit, United States Patent No. 5,890,172 ("the '172 Patent"). The timing of Google's effort alone suggests the desperate nature of its request.  The substance of Google's effort reinforces its desperation – a (perhaps) final attempt at avoiding infringement, almost a year after a dispositive motion cutoff.   The Court should refuse to countenance Google's actions.

Regardless, the Court need not construe the terms presented by Google now, particularly not beyond their plain and ordinary meanings.  Google's proposed constructions ignore the language of the claims and even the specification, relying in large part on extrinsic evidence, in a manner that contradicts the plain and ordinary meaning of the subject claim terms as suggested and confirmed by the claims and specification themselves.  This is contrary to current Federal Circuit case law governing claims construction, law that the Court has already cited in its Opinion denying Google's summary judgment motion.   Google further corrupts the claim

---

[1] In fact, the parties have previously briefed the "parsing" issue in context of Google's failed summary judgment motion.

construction exercise by attempting to convince this Court to import all manner of additional, restrictive limitations on the meanings of the claims terms it addresses. To do so would be error.

NetJumper sets forth herein, and separately on Exhibit 1 hereto, what it suggests are the plain and ordinary meanings of the claim terms that Google now wants this Court to construe. It demonstrates how these plain and ordinary meanings are consistent with the '172 Patent's intrinsic evidence, and how Google's proffered constructions are anything but. The Court should reject Google's proposed re-writing of the '172 Patent, and adopt NetJumper's positions.

## II.    ARGUMENT

### A.    THE APPLICABLE LAW OF CLAIM CONSTRUCTION

"It is well-settled that, in interpreting an asserted claim, the Court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, the specification and, if in evidence, the prosecution history. Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001), *quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The Federal Circuit went on to state that the court should follow a hierarchical analysis of the intrinsic evidence, starting with the claim language and continuing on to the specification and the prosecution history, as necessary. *Interactive Gift*, 256 F.3d at 1331.

The Federal Circuit, in a much anticipated recent decision, reiterated the primacy of a patent's intrinsic evidence in construing patent claim terms. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005). In *Phillips*, the Federal Circuit explicitly noted that "undue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

the prosecution history,' thereby undermining the public notice function of patents." *Id.*, quoting *SouthwallTechs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995).

Even without citing to *Phillips*, the Court has already acknowledged the correct legal standard to use to construe claims at issue:

> In construing a patent claim, a court "looks first to the three sources of intrinsic evidence of record: the patent itself, including the claims, the specification, and, if in evidence, the prosecution history…A construing court does not accord the specification, prosecution history, and other relevant evidence the same weight as the claim itself, but consults these sources to give the necessary context to the claim language." *Ductmate Industries, Inc. v. Famous Supply Corp.*, 55 F. Supp.2d 777, 782 (N.D. Ohio 1999) (citing *Cybor Corp. v. FAS Tech., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). "Terms used in the claim are to be given their ordinary and customary meaning, unless another meaning is specified or evident from the patent history." *Id.* (internal quotation and citation omitted). A court should look "to extrinsic evidence [such as expert testimony], to assist construing a patent claim only if the intrinsic evidence is ambiguous." *Id.*

(Court's Opinion dated 3/29/06, at p. 4).

Finally, a court should not venture beyond the bounds of a claim's ordinary meaning unless the inventor has explicitly chosen to create a special vocabulary to describe the invention. Even in such cases, a court can use the specification only as an aid to interpretation and not as a license to introduce extraneous limitations into the claims. "Where a specification does not require a limitation, that limitation should not be read from the specification into the claims." *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir.), *cert. denied,* 488 U.S. 986 (1988).

### B.    THE CLAIM PREAMBLE IN THE '172 PATENT PROVIDES ANTECEDENT BASIS FOR THE CLAIM BODY

Google asserts that the preamble language of claims 1 and 5 of the '172 Patent is not a limitation because, in Google's words, it simply states an intended use of the invention. Google's whimsical argument is curious – an accused infringer, like Google, typically wishes to graft all manner of limitations onto an invention, in order to narrowly define the invention and thus avoid infringement.  Indeed, Google goes to great lengths elsewhere in its present brief, to do just that (with respect to, for instance, the claim term "parsing").

Nevertheless, Google is wrong.  It acknowledges exceptions to the rule it attempts to rely upon, chiefly where a claim preamble can in fact prove to be limiting, is where the preamble language provides "antecedent basis" for the claim body, i.e., the exact term in the preamble alleged to be a limitation is repeated in the body of the claim.  (*See* Google Opening Brief, at 4.) Google dismissively ignores this exception, however, stating that "[n]either exception applies to claims 1 or 5 of the '172 patent…"  (*Id.*).[2]

But this is not entirely accurate.  The term "searching" in the preamble of claims 1 and 5 ("[a] computer implemented method for *searching* on a local computer…") is followed by the term "search", which appears multiple times in the body of the claims ("constructing a *search* window…", etc.).  ('172 Patent, Ex. 2 to Google Opening Brief, claim 1, Col. 13, ll. 44-67; Claim 5, Col. 14, ll. 27-47).  This term "search," in fact, was part and parcel of the parties' summary judgment briefing to the Court, and the Court's ruling on Google's summary judgment motion – particularly with respect to the claim term "search window".  (*See, e.g.,* NetJumper's Response to Defendant Google's Motion for Summary Judgment of Non-infringement and Invalidity of the '172 Patent, dkt. 54, at 8-16, and the Court's Order of 3/29/06, dkt. 84, at 5-7.)

---

[2]  In support, Google states only that "the term 'searching' is not repeated in the claim body." (*Id.*).

4

Google was obviously not satisfied with the Court's construction of the term "search window", and now attempts to circumvent that construction by once again attacking the "search" aspects of the '172 Patent's invention.

The problem for Google, of course, is that the term "searching," found in the preamble, is nothing more than the active verb form of the term "search," found in the claims - and the two are thus interconnected in the '172 Patent. The claim preamble's use of the term "searching," provides the antecedent basis for the term "search" in the claims of the '172 Patent. The Court has already construed the term "*search* window" as item 406, or "the browser view window." (Court's Order of 3/29/06, dkt. 84, at 8-9.) As such, the claim preamble is limiting, particularly to "a computer implemented method for searching on a local computer a network of nodes with data files stored at corresponding ones of the nodes…"

## C.  GOOGLE'S PROFFERED CONSTRUCTION OF THE TERM "PARSING" IS INCORRECT

Instead of giving the term "parsing" its plain and ordinary meaning, a meaning that is apparent from the '172 Patent's claim language itself, Google opts for a much more labored, inappropriate construction. Google suggests that the Court define this relatively simple term as involving three actions – (1) examining a string of text, (2) breaking it into subunits, and (3) establishing the relationships among the subunits. (*See* Google Opening Brief, at 5.) Google's argument should be rejected for at least two reasons.

### 1.  Google's Focus On The Originally Filed Claims And A Different Patent That Is Not At Issue Is Misplaced

First, Google turns immediately to the '172 Patent's prosecution history for its construction, rather than the actual issued claim language itself. Only in doing so can Google

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

make the argument that "parsing" cannot mean "extracting" – as previously suggested by NetJumper -  because such a construction would allegedly render the claims as originally filed superfluous.  The problem with Google's argument, of course, is that this Court is not construing the originally filed claims.  Nor, for that matter, is this Court construing claims of the '655 Patent – which Google also relies upon for its strained construction.

Rather, this Court is construing the issued claims of the '172 Patent.  And as Google itself acknowledges, the claims as issued use "somewhat different language" than in the original application.  (*See* Google Opening Brief, at 6.)  In fact, the claim language as issued actually reads, "parsing the location identifiers from the initial data file to form an initial list of location identifiers…".  ('172 Patent, Ex. 2 to Google Opening Brief, Claim 1, col. 13, ll. 60-61).  Google's arguments based on the claim language as originally filed are irrelevant and off-base, and the Court should ignore them.

It is also improper for the Court to rely upon statements made during the '655 Patent's prosecution history to construe claims in the '172 Patent.  The '655 patent was filed as a continuation application, but *after* the '172 Patent claims had been allowed[3].  In order for a statement made in a subsequent prosecution of a related patent to be binding on an earlier allowed patent, the patent examiner must rely upon it in granting the claims in the patent at issue.  *See Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1333 (Fed. Cir. 1999); *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004), *cert. denied*, 125 S. Ct. 61 (2004) (affirming that in *Georgia-Pacific*, "[w]e rejected the argument that the patentee was bound, or estopped, by a statement made in connection with a later application on which the examiner of the first application could not have relied.").

---

[3] *Compare* Ex. 3 to Google Opening Brief, at G000285 ('172 Patent Notice of Allowability dated 8/1/1998); Ex. 5 to Google Opening Brief, at G000330 ('655 Patent filed on December 2, 1998).

In the *Microsoft* case cited by Google, the court there found that statements made concerning inventions disclosed in the common specification of related patents can be "relevant" for claim construction purposes, but that evidentiary relevance does not constitute an estoppel. *See Microsoft Corp. v. Multi-Tech., Inc.,* 357 F.3d 1340, 1350  (Fed. Cir. 2004).  The law on this subject is clear, and indeed nothing in the '172 Patent suggests to one skilled in the art that the '655 Patent should be the source to interpret any of the '172 Patent's terms.  Google, of course, has offered nothing of the sort either.

Regardless, the prosecution history for the '655 Patent actually undermines Google's argument.  The very statement by the applicant during the '655 patent's prosecution that Google cites to as "evidence" that the applicant distinguished the terms "parsing" and "extracting" demonstrates the exact opposite.

> In particular, the search engine does not parse the file to extract a list of site identifiers as disclosed and claimed by Applicants.  While the browser may underline the URL links in a particular received file, the Netscape browser illustrated and described with references to Figures 4 and 5 does not extract a list of site identifiers as disclosed and claimed by Applicants.  This function is in addition to parsing the file.

(Ex. 5 to Google Opening Brief, at G446-447).  In other words, NetJumper used the phrase, "parse the file to extract a list of site identifiers," interchangeably with the phrase, "extract a list of site identifiers."  Further, NetJumper actually distinguished the Netscape browser by stating that the act of underlining the URL links in a particular received file is not the same as extracting a list of site identifiers.  The very next sentence is then, "[underlining URL links] is in addition to *parsing* the file."  (*Id.*)  Thus NetJumper uses the terms extracting and parsing interchangeably.

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

### 2.    Google Improperly Relies on Extrinsic Evidence

Second, Google relies on extrinsic evidence, i.e., a technical dictionary, for support of its awkward construction, rather than looking at the intrinsic evidence as directed by Phillips.[4] (Google Opening Brief, at 7.)   In fact, Google's "establishing the relationships among the subunits" portion of its strained construction does not come from the '172 Patent or its prosecution history at all – it simply does not appear anywhere in any document associated with the '172 patent.   Rather, this phrase appears in a technical dictionary, which is indisputably a piece of extrinsic evidence.   This alone makes clear Google's desperation to avoid infringement through a narrow claim construction concocted through reference to an extrinsic source.

While the law is clear that extrinsic evidence may be useful to the Court, the law is also clear that it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence, i.e., the claims themselves.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005).   What Google asks this Court to do is highly problematic, and was the subject of a very direct warning from the Federal Circuit in *Phillips* - "undue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents."   *Id*., (*quoting*, *SouthwallTechs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995).

---

[4] Google fails to present any evidence that one of ordinary skill in the art would find the intrinsic evidence ambiguous or that one of such skill would consult this dictionary rather than the file history.  Other than attorney argument, then, there is no evidence for this Court to connect the dictionary to the '172 Patent.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

### 3.     Proper Construction of the Term "Parsing" Should Focus on the Claim Language

The proper construction of the term parsing requires nothing more than a review of the language of the '172 Patent claims and the Patent's specification.  As NetJumper noted in opposing Google's motion for summary judgment, the term parsing should properly be construed to mean "extracting".  (NetJumper's Response to Defendant Google's Motion for Summary Judgment of Non-infringement and Invalidity of the '172 Patent, at 23-24, *citing* Decl. of Bernard A. Galler filed 9/27/05, which, to assist the Court in its analysis, is filed again concurrently herewith and incorporated herein.)  Indeed, the '172 Patent specification nowhere restricts the common word "parse" to one requiring (1)"examining a string of text," (2) "breaking it into subunits," and (3) "establishing the relationships" among the subunits.  (*Id.*)

Rather, the '172 Patent specification notes in numerous places that the claimed invention includes a parsing step which can take different forms and functions.  (*Id.*)  As explained in the specification, "parsing" is performed when the jumper software takes the HTML file obtained by the browser and "parses" it in a variety of alternative ways for access by the local computer.  For instance, the software may handle the task of "converting an HTML encoded file uploaded from browser user…into a format suitable for a single jump or automatic jump mode search…" ('172 Patent, Ex. 2 to Google Opening Brief, col. 6, ll. 26-28). Or the "parsing" may involve extracting hotlinks: "The jump site window **308** has an associated drop down list…this list comprises parsed hot-links… These hot-links are extracted from a file initially retrieved by the browser"" (*Id.*, col. 6, ll. 55-58). The "parsed list" may "be stored in [the local computer's] HTML storage segment **230**…" (*Id.*, col. 7, ll. 20-21). The software may provide for parsing "categories… given their location in the search result," or to allow the user to define "how many site identifiers should be parsed from the search results," or "what types of results should be parsed." (*Id.*, col.

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

12, ll. 44-58). Nothing in the '172 Patent's specification suggests that "parsing" as defined by the Inventors has the added steps of breaking down text, establishing relationships, and so on as suggested by Google.

The '172 Patent's prosecution file history is equally consistent. When the Examiner rejected the first set of claims he concluded that by underlining the URL links on the display page, the Netscape browser "parses" the original data file. In response, without acknowledging that the Examiner's assignment of "parsing" to that browser operation was correct, the Inventors pointed out that the "parsing" in the invention "results in the extraction from the web page displayed in the browser's view window the selection of which option results in the extraction from the selected web page of specific information…and the storage of that information for later use." (Ex. 3 to Google Opening Brief, at G000260). There is simply no indication that the act of "parsing" was more involved, detailed, or complex, than the action set forth.

Google, in fact, recognizes that when the specification refers to a "parser," it is referring to something that "extracts" items from a web page. (*See* Google Opening Brief, at 5.) In short, the Court should refuse Google's invitation to error, and simply define "parsing" as "extracting." To the extent the Court disagrees, it must surely conclude that Google's self-serving definition, "the act of examining a string of text, breaking it into subunits and establishing the relationships among those subunits," goes too far and seeks to add limitations to the claim that are found nowhere in the specification or prosecution history of the '172 Patent. In such instance, the Court may wish to define the term as "examining the initial data file, identifying location identifiers in the initial data file, and extracting those location identifiers." While not necessary, such a construction reflects the claim language, is supported by the '172 Patent's specification,

and does not improperly import additional limitations into the claims or rely on extrinsic evidence to contradict the plain meaning – as would Google's proposed construction.

### D. THE ACTS OF PARSING, FORMING, AND STORING NEED NOT BE SEPARATED TEMPORALLY FROM THE ACTS OF RETRIEVING AND DISPLAYING, AS SUGGESTED BY GOOGLE

The language of Claim 1 at issue is as follows:

> …displaying a first and second icon separate from the search window…retrieving an initial data file from the network together with displaying the initial data file in the search window, and the initial data file including location identifiers;

> parsing the location identifiers from the initial data file to form an initial list of location identifiers together with storing the initial list, responsive to a selection of the first icon; and…

Google suggests that the Court read into this claim a limitation requiring a particular, set sequence of operations. Google's request is directly contradictory to current Federal Circuit case law, which says unless a claim specifically limits acts to a particular sequence, or method steps implicitly require that they be performed in the order written, such a sequence cannot be read into the claims. *Interactive Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342-43 (Fed. Cir. 2001).

With all due respect, Google's brief on this subject is a confused mess. Google has not so much as attempted to demonstrate that the '172 Patent's claims specifically limit – or so much as suggest – that the acts of parsing, forming, and storing must not only follow "selection of the first icon," but must also follow the acts of retrieving and displaying. In Google's words, "the acts of parsing, forming, and storing are performed in direct response to, and only if, the first icon was selected, which cannot happen until after the initial data file is retrieved and displayed."

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER ● SUITE 900 ● SOUTHFIELD, MICHIGAN 48075 ● (248) 355-0300

(Google Opening Brief, at 8.)  Where in the claims are the terms "direct," "only if," and "cannot happen until after"?  The answer, of course, is nowhere.

To the extent that its argument can be followed, Google's proffered construction requires that the sequence of events be performed in *this and only this* sequence:

(1)     an initial data file is retrieved from the network; then

(2)     the initial data file is displayed in the search window; then

(3)     the first icon is selected; then

(4)     location identifiers are parsed from the initial data file;

(5)     an initial list of location identifiers is formed; and then

(6)     the initial list of location identifiers is stored.

This is wrong and Google's proposed construction invites error.  First and foremost, the language of the '172 Patent claims in no way requires the sequence of acts as suggested by Google:  this terminology does not state, expressly or implicitly, that there must be some specific sequence of events that transpires in order to satisfy the limitation.

This is clear from the claims language itself.  The phrase at issue uses the word "a" when it describes "**a** selection of the first icon."  In other words, one, singular selection of the first icon sometime during the operation is what is required to meet the claim limitation.  Google has not suggested or stated otherwise, but it has ignored this important aspect of the subject claim limitation.

The one, singular selection of the first icon in the claim may, under the claims as issued, permit the performance of the entire sequence of the acts that Google identifies.  In other words, the '172 Patent's claims permit that the acts of retrieving an initial data file, displaying the initial data file in the search window, parsing location identifiers from the initial data file, forming a list

of location identifiers, and storing the list may all follow the one, singular selection of the first icon.

Nothing in the claim as issued prohibits such construction.  In fact, such "automatic" action is ***specifically described as an alternative embodiment of the invention of the '172 Patent***.  (*See* '172 Patent, Exh. 2 to Google's Opening Brief, col. 12, ll. 23-32, stating that "[i]n one embodiment of the invention, when a user initiates a search in the browser, the jumper **automatically** starts and begins parsing the results of the search…" (emphasis added), after first noting that "each of these embodiments include features that can be combined with the features discussed above…".)  Google wholly ignores this statement in the specification, in attempting to obtain its narrow, strained construction.

NetJumper's proffered construction is consistent with - - and should be understood in the context of - - the invention as described in the specification of the '172 Patent.  By late 1995 the World Wide Web ("WWW") had popularized the Internet to the point where millions of people could connect from their home computers to the vast number of servers which stored data, pictures, and other information.  A number of search engines were accessed through a user's computer through a Web browser.

When a user enters a search request, the search engine looks through its particular WWW index.  It typically returns many site references to the user in response to a search request.  The search engine working through the user's browser shows the listed references in the Web display area.  These references contain text together with a site identifier called a uniform resource locator ("URL").  By entering a particular URL reference into a browser a user can find where a particular web page is stored.  The URL gives the specific direction to the browser to locate the particular page.  The utility of a URL is further enhanced by a computer language called

hypertext markup language ("HTML") which allows each URL to be located by a "hotlink" in a web data file. By mouse clicking on a hotlink, a computer user instantly directs the browser to locate the server that contains the hotlink address and to display it on the user's computer screen.[5]

In the typical computer operation, once the user launches the browser software and performs a search, the Web page display shows a list of search results. When a user begins to use the search results, he is taken "into" the results by clicking on the first search result on the displayed list that appeared relevant to the user. The user's computer automatically saves each Web page displayed by the browser. When that search result is clicked, the user's display window changes to show only the page that was clicked on, with the search result list disappearing from sight (the Web page that holds the results is simply cached into memory as every other viewed page). Once the user is in the displayed page, he or she is typically presented with hotlinks on that page which lead to other Web pages. By clicking on those links, the user goes down an additional level of search. A typical WWW search can lead a user to tunnel, or "drill-down" many levels of Web pages. (*See generally*, '172 Patent, Exh. 2 to Google's Opening Brief, at col.2, ll. 44-60).

What happens when the user wants to go back to the original search result? The user has to click the "back" button hardwired in the software browser frame as many times as was necessary to traverse back through the cached pages to the original search site results page returned by the search engine. (*Id.,* Col. 2, l. 57). Only then could the user be able to go to

---

[5] This background is explained in the '172 Patent, generally at cols. 1 and 2. The '172 Patent identifies a number of prior-art search engines, like Yahoo, Alta Vista, Excite, and others. (Exh. 2 to Google's Opening Brief, col. 1, ll.64-66). It identifies that these information indexers store indexes of Internet files to allow computer users to find a list of all indexed files that meet a search criterion or criteria. (*Id.*, col. 2, ll. 2-6).

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

another listed search result and begin his search anew.  That technique wasted a lot of time and effort.

To improve on this inefficiency, the invention covered by and claimed in the '172 Patent is a method of navigating a list of search results.  This is done by the invented software generating a list of site identifiers found in the results of a search, and using automated navigation tools to jump directly between those search results without having to retrieve the cached search results page and going page-by-page by using the "back" button on a browser.

Nowhere in the '172 Patent is the invention described as requiring or even contemplating that a specific order of the acts involved in the invention is necessary or required, as Google attempts to convince the Court here.  Not able to find support for its stilted construction in the claim language in the '172 Patent itself, Google again resorts to the prosecution history of the '172 Patent.  Unfortunately for Google, however, the passages from the prosecution history do not support what it asks the Court to do.

Google goes so far as to assert that NetJumper "disclaimed" and "disavowed" coverage of so-called "automatic (or unconditioned) parsing, forming, and storing…" (Google Opening Brief, at 11.)  It again is incorrect, and ignores the law of the subject.  A disclaimer or disavowal of claim scope requires "the alleged disavowing statements to be both so clear as to show reasonable clarity and deliberateness, … and so unmistakable as to be unambiguous evidence of disclaimer.  *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003) (internal citations omitted).  NetJumper did nothing of the sort.  Nothing it said during prosecution of the '172 Patent evidenced, with reasonable clarity and deliberateness, in a manner so unmistakable

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

15

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

as to be unambiguous, that the acts of retrieving, displaying, parsing, forming, and storing must be temporally separated in any manner whatsoever.[6]

NetJumper did clearly state to the Examiner that, for example, "the parsing in the applicant's invention is an optional treatment accorded to a web page displayed in the browser's view window, the selection of which option results in the extraction from the selected web page of specific information…"  (Ex. 3 to Google Opening Brief, at G000260).  But in doing so, NetJumper did no more than highlight for the Examiner that its invention included parsing, forming, and storing acts, all responsive to a single selection of a first icon.  NetJumper's statements did not disclaim or disavow coverage of parsing, forming, and storing, that happen to be performed "responsive to *a* selection of a first icon." And more importantly, NetJumper in no way, "affirmatively disclaimed, any coverage of selecting the first icon **before** the initial data file is retrieved and displayed in the browser window", as also stated by Google.  (Google Opening Brief, at 11) (citations omitted).  It simply did not say this, and no amount of Google's massaging of the file history could lead to such a finding.

Based on the '172 Patent claims themselves, it is readily evident that the "parsing", "forming" and "storing" acts, as Google refers to them, need only happen in response to one selection of the first icon, and this one selection of the first icon may also perform the retrieving and displaying acts as well.  That a first icon must be selected for these acts to be performed makes the acts "conditional," as described in the file history.  Thus, even if the Court accepts Google's assertion that NetJumper somehow disclaimed or disavowed coverage for "automatic" acts—which it clearly did not (see, for example the alternate embodiment described in the

---

[6]  The Court has previously dealt with the issue of alleged disavowal of claim scope by NetJumper, and rejected this argument presented by Google, in the context of the patent examiner's statement of reasons for allowance.  (*See* Court's Order of 3/29/06, dkt. No. 84, at 8-9 and n. 8.)

specification), NetJumper's proposed construction is consistent with the specification and claims language.

### E.    CLAIMS 4 AND 8 ARE MARKUSH CLAIMS

Google closes by claiming that claims 4 and 8 of the '172 Patent, written in what is called "Markush group" claim language, require the presence of only one of the enumerated items in the group.  (Google Opening Brief, at p. 12.)  The claim language at issue here is as follows:

> retrieving the first data file corresponding to the one of the location identifiers in the stored initial list selected from a group consisting of:
>
> a next location identifier, a prior location identifier, a first location identifier and a last location identifier.

Google's position regarding this claim element is perplexing.   While NetJumper generally agrees that Markush Group language as in these claims contemplates the presence of a next location identifier, a prior location identifier, a first location identifier, and a last location identifier, these location identifiers refer to the "one of the location identifiers" clause in the claims.  In other words, "retrieving the first data file corresponding to one of the next location identifier, prior location identifier, first location identifier, and last location identifier".

Google confuses the issue, however, stating that these claims and this claim language allegedly require that "an additional 'retrieval' step be made by selecting a second icon, and that the second icon correspond to any one of" the four listed location identifiers.  (Google's Opening Brief, p. 12.)  NetJumper does not exactly understand what Google's statement is intended to mean, but cannot agree that the "second icon" elsewhere claimed must "correspond" to these various location identifiers.  To be sure, Google has provided no support for such a construction, and the Court should not render such a construction.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

III.    **CONCLUSION**

For the above reasons, the Court should refuse to adopt Defendant Google's claim constructions set forth in its Opening Brief.  Rather, the Court should enter Plaintiff NetJumper's claim constructions set forth herein.

Respectfully submitted,


s/Andrew Kochanowski (P55117)
SOMMERS SCHWARTZ, P.C.
Attorneys for Plaintiff
2000 Town Center Drive, Suite 900
Southfield, MI  48075-1100
(248) 355-0300
akochanowski@sommerspc.com

DATED:  July 31, 2006

**<u>PROOF OF SERVICE</u>**

I certify that on 7-31-06, I electronically filed
the forgoing paper with the Clerk of the Court using
the ECF system which will send notification of such
filing to the following:

Kathleen A. Lang; klang@dickinsonwright.com
L. Pahl Zinn; pzinn@dickinsonwright.com
Jason W. Wolff; wolff@fr.com
Michael H. Baniak; baniak@bpglaw.com

and I hereby certify that I have mailed by United
States Postal Service First Class Mail the paper
to the following non-ECF participants:

FISH & RICHARDSON P.C.
Howard G. Pollack
500 Arguello Street, Ste. 500
Redwood City, CA 94063

FISH & RICHARDSON P.C.
Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804

<u>s/Andrew Kochanowski (P55117)</u>
Sommers Schwartz, PC
2000 Town Center, Suite 900
Southfield, MI 48075
(248) 355-0300
akochanowski@sommerspc.com