# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

NETJUMPER SOFTWARE, L.L.C.
a Michigan limited liability corporation,

        Plaintiff,

  v.

GOOGLE INC.,
a Delaware corporation

        Defendant.

Civil Action No. 04-70366-CV
Judge Julian Abele Cook, Jr.

Magistrate Judge R. Steven Whalen

---

Andrew Kochanowski
Nabeel N. Hamameh
SOMMERS SCHWARTZ, PC
2000 Town Center, Suite 900
Southfield, MI  48075

Michael H. Baniak
Gary E. Hood
BANIAK PINE & GANNON
150 North Wacker Drive, Suite 1200
Chicago, IL 60606

*Attorneys for NetJumper Software, L.L.C.*

Kathleen A. Lang (P34695)
L. Pahl Zinn (P57516)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226-3425
(313) 223-3500

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804

Howard G. Pollack
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063

Jason W. Wolff
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130-2081

*Attorneys for Google Inc.*

## GOOGLE INC.'S CLAIM CONSTRUCTION REPLY BRIEF

**TABLE OF CONTENTS**

**Page**

I.    **SUMMARY OF REPLY** ............................................................................................... 1

II.   **ARGUMENT** ............................................................................................................... 2

      A.    The Claim Preambles Are Not Limitations. ........................................................ 2

      B.    Parsing Does Not Mean Extracting............................................................... 4

      C.    The Plain Language of the Claims Recites a Particular Sequence of Steps. .......... 7

      D.    Claims 4 and 8 Require Retrieval of the First Data File In Response to Selecting the Second Icon. ...................................................................................... 9

III.  **CONCLUSION** ........................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*Cybor Corp. v. FAS Tech., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) .................................................. 7

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002) .................. 1, 8

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370 (Fed. Cir. 2004) ........................................................................................................................................ 3

*Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367 (Fed. Cir. 2005) .................................. 1, 9

*Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ................. 4, 7

*Johnson & Johnson Assocs. v. R.E. Serv. Co.,* 285 F.3d 1046 (Fed. Cir. 2002) *(en banc)* ........ 1, 8

*Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369 (Fed. Cir. 2004) ................................................ 2

*Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340 (Fed. Cir. 2004) ..................................... 5

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir., 2005) (*en banc*) ........................................... 1, 6

*SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107 (Fed. Cir. 1985) (*en banc*) ............................. 1

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ........................................... 7

*Zenith Elecs. Corp. v. ExZec, Inc.*, 1995 U.S. Dist. LEXIS 6177 (N.D. Ill. 1995), *aff'd* and *rem'd* on other grounds, 182 F.3d 1340 (Fed. Cir. 1999) ..................................................................... 4

I.    **SUMMARY OF REPLY**

NetJumper's rhetoric obscures the straightforward issues the Court needs to consider in construing the claim terms that remain in dispute, and its arguments rest on several important misunderstandings about the legal framework for construing claims. The most important of these misconceptions is that the search for "plain meaning" precludes reference to anything outside the intrinsic evidence. This is wrong both as a matter of law—courts properly resort to extrinsic evidence such as technical dictionaries all the time when resolving disputes about what the plain meaning of a claim term is—and of common sense.[1] If a court cannot look outside the patent and file history for help in construing a claim term that is not defined in the intrinsic evidence, how can it possibly resolve a dispute over what the plain and ordinary meaning of that term is? A second important misunderstanding apparent from NetJumper's opposition is that a claim must be construed to cover everything disclosed in the specification. NetJumper cites no authority for this proposition, and there is none. It is typical that claims cover only a subset of the patent disclosure.[2] Indeed, when a patentee discloses additional embodiments but does not claim them, the so-called "disclosure dedication" rule of *Johnson & Johnson Assocs. v. R.E. Serv. Co.*[3] operates to dedicate the disclosed but unclaimed subject matter to the public. As the Federal Circuit has noted, "Specifications teach. Claims claim."[4]

---

[1] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) (*en banc*) ("because extrinsic evidence can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, it is permissible for the district court in its sound discretion to admit and use such evidence.").

[2] Prosecution history estoppel is another reason embodiments described in the specification are not covered by the claims. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 739-740 (2002)

[3] *Johnson & Johnson*, 285 F.3d. 1046, 1054 (Fed. Cir. 2002) (*en banc*).

[4] *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1370 (Fed. Cir. 2005) (quoting *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 n. 14 (Fed. Cir. 1985) (*en banc*).

NetJumper also misses the mark with its more specific arguments.[5] In the preambles, "searching" does not provide "antecedent basis" for the different phrase "search window." Even if it did, there is simply no support in the claim language or the intrinsic record for the construction NetJumper has proposed. For the "parsing" limitation, NetJumper's substitution of the different word "extracting" has no basis in either the intrinsic or extrinsic evidence—both show that "parsing" does not mean "extracting," and it is NetJumper's burden to prove that the patentees provided some clear indication that they intended to give the term a special meaning.[6] As for the remaining terms, including the sequence of the claimed steps, both the plain language of the claims and the intrinsic record amply support Google's constructions and refute the constructions offered by NetJumper.

## II.     ARGUMENT

### A.     The Claim Preambles Are Not Limitations.

NetJumper's contention that the verb "searching" in the preamble provides antecedent basis for the phrase "search window" in the claim body is incorrect for several reasons, the most important of which are that: (1) the Court construed the term "search window" to mean "the browser view window," (2) it so without resorting to any language in the preamble of the claim, and (3) it did not construe the "search" portion of "search window" to require the additional concepts for which NetJumper continues to lobby. Thus, Google understands the Court's existing construction of "search window" to be dispositive of NetJumper's renewed request to import more limitations into that phrase.

---

[5] At the hearing on May 25, 2006, Google told the Court that it had *three*—not two—claim construction issues: the preambles, the parsing clause, and Markush claims. It has addressed those issues and no more. Again, Google did not deal with certain claim issues in its summary judgment motion because NetJumper changed its infringement contentions *after* Google's summary judgment motion was filed, and at the close of discovery. *See* Google's Reply Brief In Support of Its Motion for Summary Judgment (Docket No. 62, page 6, n.9, and Exhibit 4).

[6] *See Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369, 1375 (Fed. Cir. 2004) (requiring patentee to provide "clear definition" in order "to show that the patentee has acted as a lexicographer in redefining a claim term").

Moreover, if the Court were to now accept NetJumper's proposed construction of the term "search," and were to add it to the existing construction of "search window," then the term "search window" would become "a browser view window for entering keywords or terms on a local computer in order to search the Internet." In addition to having no support in the intrinsic evidence as explained below, this construction would make no sense because the claims would not even cover the disclosed embodiment:[7] the Internet Buffet described in the patent does not contain a box for "entering keywords or terms on a local computer in order to search the Internet."[8]  Figure 3 of the patent shows the Internet Buffet; box 308 is not a text box for entry of a search term, but an area for displaying URLs from the adjacent pull-down menu 310 (see Exhibit 2, at 12:11-14):



FIG. 3

---

[7] NetJumper's infringement contentions would fail too, since this same "search window," with all of the extra limitations, is where the "initial data file" and the "first data file" must be displayed.  When either of the two files is displayed, the so-called "search window" would no longer meet the requirement that it provide a place to "enter keywords or terms in order to search the Internet."  The term must mean the same thing consistently throughout the claim, and not one thing in some limitations and something else in others.  *See, e.g., Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1377 (Fed. Cir. 2004).

[8] *See* Exhibit 6 (NetJumper's admission that Internet Buffet is an embodiment of the '172 patent).

Furthermore, NetJumper's view of what "antecedent basis" means lacks any support in fact or law. The claim term in the preamble is the verb "searching," whereas the claim term in the body is the noun phrase "search window." These are two different terms. "Patent drafting has established rules for antecedent basis in claims…A definite article ('the' or 'said') is used when a term has already been introduced, thereby making mention of the earlier recitation of the element."[9] As NetJumper appears to concede on page 4 of its brief, "antecedent basis" applies only where the exact same term is repeated in the claim body, yet NetJumper cites no support for its novel "similar term having a common root" argument. In addition, the term "search window" in the body is in fact introduced as "**a** search window"—not "the search window"—thus, not only are the terms different, but the "search window" is expressly identified as something new when it is first recited in the claim body.[10]

### B.    Parsing Does Not Mean Extracting.

NetJumper now offers the Court two definitions for the term "parsing." The first is that "parsing" means "extracting." The second—conceding the weakness of the first—is that it means "examining the initial data file, identifying location identifiers in the initial data file, and extracting those location identifiers."[11] NetJumper's second construction comes close to Google's construction, which is "examining a string of text, breaking it into subunits, and establishing the relationships among the subunits," but differs in that its second and third parts recite the extra functions one can *do* with something that has been parsed as opposed to what

---

[9] *Zenith Elecs. Corp. v. ExZec, Inc*., 1995 U.S. Dist. LEXIS 6177 (N.D. Ill. 1995), at 11-12, *aff'd* and *rem'd* on other grounds, 182 F.3d 1340 (Fed. Cir. 1999) (internal citations omitted) (finding that, "without an antecedent basis to 'surface acoustic wave,' 'a surface wave' is a new element."). Exhibit 7.

[10] *See also, Interactive Gift Express, Inc. v. Compuserve Inc*., 256 F.3d 1323, 1334 (Fed. Cir. 2001) (refusing to limit the claims by using the preamble even though the preambles contained a term similar to the same term found in the body).

[11] NetJumper's Response to Defendant Google's Opening Claim Construction Brief ("NetJumper Oppo. Brief"), at 10 (Document No. 93).

4

parsing *means*. In addition, NetJumper's alternative construction is improper because of its use of the term "extracting."

The flaw in NetJumper's analysis on this point stems from its mistaken understanding of the case law cited by Google. In this regard, NetJumper contends that "[i]t is improper for the Court to rely upon statements made during the '655 Patent's prosecution history to construe claims in the '172 Patent."[12] To support this conclusion, it characterizes the *Microsoft* case as follows:

> (affirming that in Georgia-Pacific, "[w]e rejected the argument that the patentee was ["]bound by["], or estopped, by a statement made in connection with a later application on which the examiner of the first application could not have relied.")[13]

NetJumper omits the context in which the statement was made, which begins where NetJumper's excerpt ended:

> We did not suggest, however, that such a statement of the patentee as to the scope of the disclosed invention would be irrelevant. ***Any statement of the patentee in the prosecution of a related application as to the scope of the invention would be relevant to claim construction***, and the relevance of the statement made in this instance is enhanced by the fact that it was made in an official proceeding in which the patentee had every incentive to exercise care in characterizing the scope of its invention. Accordingly, we conclude that Multi-Tech's statements made during the prosecution of the 627 patent with regard to the scope of its inventions as disclosed in the common specification are relevant not only to the 627 and 532 patents, ***but also to the earlier issued '649 patent***.[14]

It is plainly proper for the Court to find NetJumper bound with regard to the scope and meaning of the term "parsing" by what it said in the later-issued—and directly-related—'655 patent on this exact same claim term.

---

[12] NetJumper Oppo. Brief, at 6.
[13] *Id.*, citing *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004).
[14] *Id.* (emphasis added).

5

Moreover, contrary to NetJumper's protestations, the prosecution history of the '655 patent does not "demonstrate the exact opposite."[15]  First, the Patent Examiner found that the Netscape browser parsed the initial data file in both the '172 patent and the '655 patent.[16] NetJumper did not challenge this finding.  What NetJumper challenged was that the Netscape browser did not perform both functions: parsing ***and extracting***.  That is why NetJumper did not use the phrase "*parse the file*" when it recited its claim language distinguishing its invention over the Netscape browser, and that is why NetJumper said "[t]his function [i.e., extracting] is in addition to parsing the file."[17]  Furthermore, NetJumper's assertion that it used the terms "parsing" and "extracting" interchangeably makes no sense because both terms occur in the claims of the '655 patent, thus also showing that they are different and the patentee used them to mean different things.

Lastly, it is true that Google relied on a 1996 technical dictionary that is not part of the file history for the definition of "parsing."  But the law instructs courts to refer to such extrinsic evidence in order to identify the ordinary meaning of a term when the intrinsic evidence provides no guidance.[18]  The authority NetJumper cites concurs: "Dictionaries, which are a form of extrinsic evidence, hold a special place and may sometimes be considered along with the

---

[15] NetJumper Oppo. Brief, at 7.
[16] *See* Google Brief, at 9 (rejection of the claims found in Exhibit 3, at G 209).
[17] NetJumper has re-written this sentence from the prosecution history in its brief to mean "[underlining URL links] is in addition to parsing the file."  *Id*. at 7.  The artistic license NetJumper has taken does not distinguish its claims from the Netscape browser because the claims are open-ended and would still cover an accused product that met all the other limitations *and* underlined URL links.  Furthermore, if NetJumper's re-writing were correct, and it was referring to the functions performed by the Netscape browser, then it would be still be admitting that parsing is performed by Netscape browser too.  What really mattered here was that the Netscape browser did not perform the step of "extract[ing] a list of site identifiers" in addition to its parsing step.
[18] *See Phillips*, 415 F.3d at 1319 ("because extrinsic evidence can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, it is permissible for the district court in its sound discretion to admit and use such evidence.").

6

intrinsic evidence."[19]  And while NetJumper has pointed to a number of places in the specification where it identified what is to be parsed, or what can be done with the results of the parsing function, nowhere does it—nor could it—identify what parsing means or how it is to be performed.  It is simply not there.

Google's definition, from a contemporaneous technical dictionary at the time of the alleged invention, is consistent with everything NetJumper has identified and does not constrain the claims to a particular algorithm for parsing.  It is in fact exactly the type of technical reference that a person of ordinary skill in the art at the time—as identified by NetJumper's expert, Dr. Galler—could have consulted to figure out what the term meant.[20]  In fact, NetJumper has done nothing to show that Google's definition, or its application, does not still permit all the extra functions that can be performed with the parsed information other than to simply assert that it is too complicated.

### C.  The Plain Language of the Claims Recites a Particular Sequence of Steps.

The plain language of the claims and the intrinsic record compels a construction that gives the parsing clause a particular sequence relative to the other limitations.  The language that supports this construction is found in the parsing clause itself:

> parsing the location identifiers from the initial data file to form an initial list of location identifiers together with storing the initial list, ***responsive to a selection of the first icon***.[21]

To begin with, all of the steps in the parsing clause (parsing, forming, and storing) are triggered from the step of "selection of the first icon"—an infringing method must do this, first, to satisfy the limitation.  NetJumper argued this very point to the Patent Office, explaining that adding the phrase "responsive to a selection of the first icon" to the claim meant that the parsing

---

[19] *Interactive Gift Express*, 256 F.3d at 1332 (citing *Cybor Corp. v. FAS Tech., Inc.*, 138 F.3d 1448, 1459 (Fed. Cir. 1998) and *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) for support).
[20] *See* Exhibit 8 (printouts from the IEEE organization website, which is the publisher of the technical dictionary proffered by Google; the printouts identify its extensive membership by individuals in the computer and technical fields, which include over 68,000 student members).
[21] Emphasis added.

7

clause is "***an optional treatment*** accorded to a web page ***displayed in the browser's view window, the selection of which option*** results in the extraction from the selected web page of specific information, i.e., hot links, and the storage of that information for later use."[22] Thus, the parsing clause is properly understood, as NetJumper defined it, as optional—not automatic—and based upon a selection of the first icon once the initial data file is displayed in the browser's view window (what the Court has identified as the "search window"). The "displayed" language used by NetJumper is found in the first retrieving clause of the claims ("retrieving an initial data file…together with ***displaying*** the initial data file…"), which also provides antecedent basis for "the initial data file" term found in the parsing clause. Indeed, it does not even make sense that the "first icon" could be selected if it was not first displayed, nor that the "initial data file" could be parsed if it was not first retrieved. The plain language and structure of the claim, as well as the intrinsic record, require that the selection of the first icon is what must trigger the parsing clause and all of the steps it additionally performs on the initial data file that has been retrieved. Thus, the parsing clause is inextricably intertwined with, and performed after, the first retrieving clause, as well as after the first icon has been optionally selected.[23]

When the claim language does not help NetJumper's argument, it once again takes refuge in the specification and suggests that everything therein must be covered by the claims. But the claims in a patent do not have to cover every embodiment in the specification.[24] Indeed, it is improper to construe the claims in a way that restores to the patentee that which he surrendered to secure issuance of the patent, particularly if the surrendered subject matter contradicts the plain language of the claims.[25] But worse than simply retreating to the specification, NetJumper

---

[22] *See* Google Brief, at 9-10, citing Exhibit 3, at 260 (response to Office action, page 12, emphasis added).

[23] In fact, this same observation, that the antecedent basis of the thing being acted upon depends upon the performance of any earlier recited step, is found in every step in the claims of the '172 patent, thus requiring a dependence by each of the steps on an earlier one.

[24] *See, e.g., Johnson & Johnson*, 285 F.3d at 1054 (dedication to public) and *Festo*, 535 U.S. at 739-740 (prosecution history estoppel).

[25] *Id*.

8

re-writes a few lines in the background of the patent—describing the prior art—over several pages to comport with its newfound view of what its patent is all about: "a method of navigating a list of search results."[26]  However, even when prosecuting the '172 patent, NetJumper expressly argued no such limitation existed, taking care to explain that "***[t]he applicant claims*** that the subsequent display of any of the data files stored on the network in the search window, ***any files from any site***…"[27]  Thus, the "files" recited in the independent claims are not a particular type of file, nor are they from any particular website.  They are any files from any website.

Ultimately, it is unclear how the section of NetJumper's brief which rewrites the specification supports its position, because what matters most is the content of the claims—and the claims clearly recite a particular sequence for the parsing limitation, for the reasons described above.[28]

### D. Claims 4 and 8 Require Retrieval of the First Data File In Response to Selecting the Second Icon.

NetJumper now agrees that its expert's earlier position (that all four location identifiers are required) was incorrect,[29] thereby narrowing the parties' dispute now to this:  whether the additional retrieval limitation described in claims 4 and 8 depends upon the "selection of the second icon," and whether that second icon corresponds to the **selected** member of the recited group of location identifiers.

---

[26] NetJumper Oppo. Brief, at 13-15.  NetJumper's revisions are not even accurate, particularly beginning at the bottom of page 14, where it states that the only way to go back to the original search result is to click on the "back" button hardwired in the browser.  The URL shown in Figure 4 of the '172 patent could be stored and accessed either as the browser home page or as a bookmark, thus eliminating the need for  multiple "back" button clicking, which also explains why the Patent Examiner would not initially allow the claims over the Netscape browser.
[27] Google Exhibit 3, at G 261 (emphasis added).
[28] *Gillette*, 405 F.3d at 1370 ("Specifications teach. Claims claim.").
[29] *See* Google's Reply Brief In Support of Its Motion for Summary Judgment (Document No. 62), at 11-12.

9

Regarding the first issue, the plain language of the claims require that the retrieval and display of the **first data file** (which is different than the **initial data file**) are performed **in response to**—and thus after—**selection of the second icon**. It is not at all apparent what this claim language means if it does not condition the step of retrieving and displaying the first data file. Claims 1 and 4, which are representative, read:

> 1.  A computer implemented method for searching on a local computer a network of nodes with data files stored at corresponding ones of the nodes and each of the data files identifiable by a location identifier and several of the data files containing location identifiers for others of the data files, and the method for searching comprising the acts performed on the local computer of:
> constructing a search window on a display screen of the local computer;
> displaying a first and a second icon separate from the search window on said display screen;
> retrieving an initial data file from the network together with displaying the initial data file in the search window, and the initial data file including location identifiers;
> parsing the location identifiers from the initial data file to form an initial list of location identifiers together with storing the initial list, responsive to a selection of the first icon; and
> *retrieving a first data file* corresponding to a <u>*selected one of the location identifiers*</u> in the stored initial list together with *displaying the first data file* in the search window, *responsive to a selection of the second icon*.
>
> 4.  The computer implemented method of claim 1 *wherein said retrieving act further comprises*;
> *retrieving the first data file* corresponding to <u>*the one of the location identifiers*</u> in the stored initial list selected from a group consisting of: a next location identifier, a prior location identifier, a first location identifier and a last location identifier, together with displaying the first data file in the search window, *responsive to a selection of the second icon*.[30]

As for the second issue, and according to the independent claims upon which claims 4 and 8 depend, the **first data file** must **correspond to a <u>*selected*</u> one of the location identifiers**.

---

[30] Exhibit 2 ('172 patent), emphasis added in relevant portions of claims.

10

The only thing *selected* in the claims that logically could correspond to the first data file is the second icon.  Thus, Google had assumed that the **second icon** established this relationship between the first data file and the **selected** one of the stored location identifiers.  If NetJumper now contends that there is an additional selecting step associated with these claims that establishes this relationship, which obviously flows from the last receiving clause in independent claims 1 and 5, Google has no objection.

### III.     CONCLUSION

For the above reasons, Google requests that its constructions, shown in attached Exhibit 9, be adopted.

Dated: August 7, 2006

Respectfully submitted,
FISH & RICHARDSON P.C.
By: /s/ Jason W. Wolff
12390 El Camino Real
San Diego, CA 92130
(858) 678-5070
wolff@fr.com
*Attorneys for Google Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2006, I electronically filed GOOGLE'S CLAIM CONSTRUCTION REPLY BRIEF, together with its attached Exhibits 6-9, with the Clerk of the Court using the ECF system, which will send notice of such filing upon the following attorneys: ANDREW KOCHANOWSKI, NABEEL N. HAMAMEH, and MICHAEL H. BANIAK.

By: /s/ Jason W. Wolff

FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
(858) 678-5070
wolff@fr.com