EXHIBIT 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NETJUMPER, L.L.C.,
a Michigan limited liability corporation,

    Plaintiff,

vs.

GOOGLE, INC.,
a California corporation,

    Defendant.
_____/

Case No. 04-70366-CV
Hon. Julian Abele Cook
Magistrate Judge R. Steven Whalen

SOMMERS, SCHWARTZ, SILVER
& SCHWARTZ, P.C.
Andrew Kochanowski (P55117)
Attorneys For Plaintiff
2000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-0300

BANIAK, PINE & GANNON
Michael Baniak
Co-Counsel For Plaintiff
150 N. Wacker Drive, Suite 1200
Chicago, IL 60606
(312) 673-0360

DICKINSON WRIGHT, PLLC
Kathleen A. Lang (P34695)
L. Pahl Zinn (P57516)
Attorneys For Defendant
500 Woodward Ave., Ste. 4000
Detroit, MI 48226
(313) 223-3500

FISH & RICHARDSON, P.C.
Howard G. Pollack
Attorneys For Defendant
500 Arguello Street, Ste. 500
Redwood City, CA 94063
(650) 839-5070

FISH & RICHARDSON, P.C.
Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
(617) 542-5070
_____/

## PLAINTIFF'S ANSWERS TO DEFENDANT GOOGLE INC.'S FIRST SET OF INTERROGATORIES

NOW COMES Plaintiff, by and through its attorneys, SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C., and for its answers to Defendant Google Inc.'s First Set of Interrogatories, states as follows:

## INTERROGATORIES

1. For each claim of the patents-in-suit that You contend is infringed by Google, provide an infringement claim chart that fully and completely states the basis for such contention, including identifying Your construction of each element of such claim, every Google product (including product version number, release number and/or release date, and particular feature) (i.e., "accused Google product") that You contend infringes such claim, how each element of such claim is met by or is present in each such accused Google product, whether literal or by the doctrine of equivalents, all facts, information and data alleged to support such contention, and if such alleged infringement is indirect (i.e., under 35 U.S.C. §§ 271 (b) and/or (c)), identify all persons or entities who You contend directly infringe such claims.

**ANSWER:** Plaintiff objects to this Interrogatory on the grounds it is overly broad, and premature. Without wavier of its objection, NetJumper refers Google to Attachment 1 for an infringement chart showing the claims of the patents-in-suit, the current version of Google Toolbar, and the Google Viewer as it existed in approximately January, 2004. NetJumper is not yet aware of Google's position concerning infringement, and therefore cannot respond factually whether Google has caused indirect or contributory infringement. Investigation continues.

2. If you allege infringement under the doctrine of equivalents, identify all evidence, including citations to the patents and their prosecution history, allegedly indicating that features of the accused Google products are equivalent under the doctrine of equivalents to elements of the claims in the patents-in-suit.

**ANSWER:** NetJumper cannot respond to this Interrogatory at this point in discovery, as it believes Google's products infringe literally. Once Google responds to NetJumper's discovery requests and provides its non-infringement position, if any, NetJumper will be in position to respond to this Interrogatory.

3. For each claim of the patents-in-suit that You contend is infringed by Google, describe fully the history and process leading to the alleged invention of each such claim, including identifying the date of conception and the date of first reduction to practice for that claim, the circumstances of such conception and first reduction to practice and any diligence there between, all persons involved in such conception, diligence, and first reduction to practice, and all documents that and persons who can corroborate such conception, diligence, and first reduction to practice.

**ANSWER:** **Plaintiff objects to this Interrogatory on the grounds it is vague, overly broad and not calculated to lead to discovery of relevant evidence. Without waiver of any objection, NetJumper responds that the claims at issue in the '172 Patent and the '655 Patent were the result of collaboration between and among Gilbert Borman, Rajet Bhatnagar, Arul Sebastion, Anup Mathur, Vinay Wadwha, Mukesh Kumar and C. Viney Kumar Singh. The conception of the claims '172 Patent occurred no later than May, 1996. Although Plaintiff has no duty to do so as the patents are presumed valid, the individuals set forth above can collaborate the development of the invention. Additionally, see Response to Interrogatory No. 4.**

4. Identify all things or methods (including all programs, software products, source code, object code, shareware, models, prototypes, samples, beta tests and the like) created, devised, made, sold, used, given away, produced, or manufactured by any person or entity anywhere in the world at any time that practice, employ, implement, or embody, or that are capable of practicing, employing, implementing, or embodying, any claim of the patent-in-suit.

**ANSWER:** **Plaintiff objects to this Interrogatory on the grounds it is overly broad and burdensome. Without waiving its objection, NetJumper responds that other than Google's Toolbar and Viewer, and certain of NetJumper's own products, it is unaware of any other thing or method that currently implement the claims of the subject patents. Responding further, NetJumper developed the following software that embodies the claims:**

**Prototypes One and Two:**

**In May of 1996 HCL Technologies was directed to develop the first prototype of the invention. The prototype was initially internally called Internet Buffet.**

3

The initial development prototype was created on or about August of 1996. Its buttons and look and feel were subsequently changed to present an improved user look and feel.

In September, 1996 the second prototype was completed. It was shown to the Yahoo, Excite and Infoseek. These discussions were held under an NDA. NetJumper then finalized an end user download version of the product.

**First Commercial Version:**

NetJumper 2.5 shipped in early 1997. Based on the original prototype, the product was a cleaned up, debugged version of the product with a standard Windows software installer and full documentation.

In 1998 a prototype NetJumper Lite freeware version was developed but it was not distributed or sold. The product was discontinued before release.

Linkgrabberer '99 was the last version of the software to directly incorporate the claims of the patent. This product was a simplified version of NetJumper 2.5 with direct saving of links to bookmarks. An internet advertising module, iTimessquare was concurrently developed to display advertising in Linkgrabber and other internet software products.

NetJumper is not aware of other products that incorporate its claims. A slideshow product from Beagle software was briefly distributed, however no analysis of that technology to the claims at issue was ever done. In 1997 and 1998, prior to the issuance of NetJumper's patent, NetJumper was aware of New York based company Robocast distributing software that incorporated certain similar features. Robocast ceased business operations about the time NetJumper's patents issued. To the best of NetJumper's knowledge the company was liquidated, and no analysis comparing the features in that technology to the patents was ever performed.

In addition, NetJumper was aware of a company called eTour which exhibited slideshowing webpages in 1999. eTour was sold to Ask Jeeves sometime in 2000 or 2001. NetJumper has not seen any eTour technology at Ask Jeeves since its acquisition, and no infringement analysis was ever performed concerning that product.

5.   For each thing or method identified in response to Google's Interrogatory No. 4, describe the circumstances of the commercialization and publication of such thing or method, including by identifying the person and/or entity that made or devised the thing or method, the first offer for sale, first sale, first offer to license, first license, first public demonstration, first use, and first public use of the

4

thing or method, and the date(s) and country(ies) during and in which the thing or method was available for use, purchase, or sale.

**ANSWER:** **Plaintiff objects to this Interrogatory on the grounds it is vague and overly broad. Without waiving its objections, NetJumper will produce documents from which response to this Interrogatory can be obtained.**

**In addition to the above, NetJumper 2.5 was released in early 1997, and first shown to the public at Spring Internet World in Los Angeles.**

**All substantive work done on the prototypes and actual release products was done by the listed inventors on the patents-in-suit during the times specified in Response to Interrogatory Nos. 3 and 4. All persons, including Gilbert Borman were required to assign all rights to their invention to NetJumper. No persons other than the listed inventors were permitted to work on the technology.**

**Also in 1997, NetJumper retained S&S Public Relations of Chicago to act as NetJumper's publicist and to arrange technology media reviews of the software. A press tour for NetJumper.25 was done in Spring 1997.**

**NetJumper 2.5 was first sold via sellable download at Netsales, Buydirect.com and Digital River in 1997. Trial copies were made available at download.com, file pile and other online free download sites.**

6. Describe all discussions or communications that any person or entity (including Net Jumper, Gilbert Borman, and the predecessors-in-interest of the patents-in-suit) has had with any other person or entity, anywhere in the world at any time, regarding any license or assignment agreement, proposal or offer to license or assign, or request to license or assign concerning or relating to the patents-in-suit or the patent applications that issued as the patents-in-suit, including identifying all documents concerning such discussions or communications and all persons with knowledge of such discussions or communications.

**ANSWER:** **Plaintiff objects to this Interrogatory as vague, ambiguous, and overly broad. Without waiving its objections, most NetJumper sales were conducted online using then existing software distributors. NetJumper did a bundling deal with IMSI Software of Marin County CA. In 1998 NetJumper had discussions with Kirk Colvin of FerretSoft in which the NetJumper stand alone product would be taken over by Ferret Soft. IMSI licensed the software for approximately**

5

$.25 per copy and paid a $10,000 advance royalty for bundling the NetJumper application on IMSI's Internet Accelerator package. After the first payment, IMSI did not exend the deal nor did it continue any bundling of the software after May of 1998. In or about 1999, NetJumper ceased getting sales reports from IMSI.

In 1997 NetJumper was approached by the Marubeni Company of Japan regarding rights in Japan. No financial terms were discussed and all further contact with Marubeni ended in mid 1997. A German user of the product requested an alliance to localize the software into German, however no further discussions were held and no financial terms were discussed beyond informing the prospective partner that localizing the software might cost well in excess of $10,000.

7. Describe the relationship of Net Jumper, L.L.C, to its predecessors in interest, including Tenretni, Inc., Net Jumper, Inc., Net Jumper Software, L.L.C., and any other company, subsidiary, division, parent, or other entity to which Net Jumper, L.L.C. is related, including identifying the members, principals, beneficiary shareholders, directors, officers, and/or management, and in particular the assignment, ownership, license or other proprietary interest of Net Jumper in the patents-in-suit.

**ANSWER:** **Plaintiff objects to this Interrogatory on the grounds it is overly broad, irrelevant and not calculated to lead to discovery of admissible evidence. Without waiving its objections, NetJumper will produce documents from which response to this Interrogatory can be obtained. Responding further, and without waiving its objections, the entity currently known as NetJumper was founded and incorporated as Tenretni Dynamics Inc. in May of 1996. The company was and always remained an independent company and at no time did it ever create any subsidiaries.**

8. Identify each person who participated in the decision to use the GOGGLE Marks, the GOOGRAB Mark, and the Goograb.com Domain website layout as they were used on the Goograb.com Domain.

**ANSWER:**
**Plaintiff objects to this Interrogatory on the grounds it is overly broad. Without waiving its objections, NetJumper will produce documents from which response to this Interrogatory can be obtained. Without waiving its objection, Gilbert Borman was the sole creator of the name Goograb. The logo was implemented by Alex Petrov, a one month high school intern.**

9. Identify the goods and services that are or were sold, distributed, rendered, and/or offered to be sold, distributed, or rendered at the Goograb.com Domain, or in any other medium in conjunction with the GOGGLE Marks or GOOGRAB Mark, and for each such good and service identify: (1) each of the methods used by You to market and promote the goods and services; (2) the persons or entities involved in creating any advertising to market and promote the goods and services; (3) the identity of the customers who received any such goods or services from You whether by sale or distribution; and (4) the date(s) each good or service was first sold, distributed, rendered and/or offered to be sold, distributed, or rendered.

**ANSWER:**
**Plaintiff objects to this Interrogatory on the grounds it is overly broad. Without waiving its objection, NetJumper will produce documents from which response to this Interrogatory can be obtained. Without waiving its objection, responding further, at no time was GooGrab accessible from the web. Neither did NetJumper advertise or sell any product or service. The only functioning link to anything other than the results links were back to NetJumper for any inquiries related to GooGrab.**

10. Identify the source of all images depicting the GOGGLE Marks, GOOGRAB Mark, and the Goograb.com Domain website layout that are or have ever been used by You.

**ANSWER:**
**Plaintiff objects to this Interrogatory on the grounds it is vague, ambiguous and overly broad. Without waiving its objections, NetJumper will produce documents from which response to this Interrogatory can be obtained.**

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

11.  Identify any poll, search, survey, or study conducted by You, or caused to be conducted by You related to any of the issues in this lawsuit, including but not limited to trademark availability searches and likelihood of confusion surveys.

**ANSWER:** None.

12.  Identify and describe in detail any instances of actual or purported confusion between You and Google arising from your use of the GOGGLE Marks, GOOGRAB Mark, and/or the Goograb.com Domain website layout.

**ANSWER: None known.**

Respectfully submitted,

SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.

By: /s/ Andrew Kochanowski

Andrew Kochanowski (P55117)
Attorneys for Plaintiff
2000 Town Center Drive, Suite 900
Southfield, MI 48075-1100
(248) 355-0300

BANIAK, PINE & GANNON
Michael Baniak
Co-Counsel For Plaintiff
150 N. Wacker Drive, Ste. 1200
Chicago, IL 60606
(312) 673-0360

Dated: September 20, 2004

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on 9/20/04

By: ☒ U.S. Mail          ☐ FAX
    ☐ Hand Delivered     ☐ Overnight Courier
    ☐ Federal Express    ☐ Other

Signature: [signature]

LAW OFFICES SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C. • 2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

8