EXHIBIT 7

LEXSEE 1995 U.S. DIST. LEXIS 6177

ZENITH ELECTRONICS CORPORATION and ELO TOUCHSYSTEMS, INC., Plaintiffs, v. EXZEC, INC., TERENCE J. KNOWLES, and CARROLL TOUCH, INC., Defendants. EXZEC, INC. and CARROLL TOUCH, INC., Counter-Plaintiffs v. ZENITH ELECTRONICS CORPORATION and ELO TOUCHSYSTEMS, INC., Counter-Defendants.

No. 93 C 5041

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1995 U.S. Dist. LEXIS 6177

May 5, 1995, Decided
May 8, 1995, DOCKETED

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holder brought an action for patent infringement against defendants, competitor and its president (collectively, competitor). The competitor filed a motion for summary judgment of non-infringement pursuant to Fed. R. Civ. P. 56.

**OVERVIEW:** The patent holder sought to establish infringement under the doctrine of equivalents. There was no genuine issue of material fact regarding literal infringement and summary judgment was granted on that issue without discussion. The court granted the alleged infringer's motion for summary judgment with regard to the doctrine of equivalents in part and denied it in part. The court granted the motion on one patent, holding that the prosecution history estoppel limited the application of the doctrine of equivalents as to that patent; because a limitation was added to overcome a rejection based on prior art, the court ruled that the patent holder was estopped from asserting a claim scope in seven claims that were given up in prosecution. The court denied summary judgment with regard to two remaining claims on the first patent and with regard to two other patents, stating that the patent holder had shown a genuine issue that the accused device performed substantially the same function in substantially the same way to achieve substantially the same result as the claimed invention.

**OUTCOME:** The court granted the competitor's motion for summary judgment on four claims of one patent and denied the motion for summary judgment with respect to two other patents and with respect to two claims of the first patent.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > Appropriateness*
*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
*Patent Law > Inequitable Conduct > General Overview*
[HN1] A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A party moving for summary judgment bears the burden of showing that there are no genuine issues of material fact and that the movant is entitled to summary judgment as a matter of law. The grant of summary judgment is appropriate in a patent case where the standards set forth in Rule 56(c) are satisfied.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Patent Law > Infringement Actions > Summary Judgment > General Overview*
[HN2] Not every factual dispute between the parties prevents summary judgment. The disputed facts must be material. The facts must be those that under the substantive law might affect the outcome of the suit. The dispute also must be genuine. The facts must be such that if they

Case 2:04-cv-70366-JAC-RSW   Document 97-4   Filed 08/07/2006   Page 3 of 9

Page 2
1995 U.S. Dist. LEXIS 6177, *

were proven at trial, a reasonable jury could return a verdict for the non-moving party. The non-moving party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial.

*Patent Law > Infringement Actions > Claim Interpretation > General Overview*
[HN3] The determination of infringement involves two steps: (1) properly construing a claim to determine its scope and meaning, and (2) comparing the properly construed claim with the accused device. A claim reads on an accused device if the device embodies every limitation of the claim, either literally or by a substantial equivalent.

*Patent Law > Infringement Actions > Doctrine of Equivalents > Elements > General Overview*
[HN4] The doctrine of equivalents recognizes that a patented invention may be infringed not only by a device precisely described in a patent claim, but also by a device that falls outside the literal claims, which performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed invention. The doctrine applies where an infringer, instead of inventing a new device, merely makes a small change, essentially "stealing" the invention by appropriating the essence of an invention while barely avoiding the literal language of the claims. The application of the doctrine is the exception, not the rule, since it is equitable in nature.

*Patent Law > Infringement Actions > Doctrine of Equivalents > Equitable Aspects*
*Patent Law > Infringement Actions > Doctrine of Equivalents > Limits on Equivalence*
*Patent Law > Infringement Actions > Prosecution History Estoppel > General Overview*
[HN5] Prosecution history estoppel is an equitable doctrine for determining the permissible scope of patent claims. Under prosecution history estoppel, a patentee should not be able to obtain, through litigation, coverage of subject matter disclaimed or abandoned during prosecution to distinguish her invention from the prior art. Prosecution history estoppel bars a patentee from enforcing its claims against otherwise legally equivalent structures if those structures were excluded by claim limitations added in order to avoid prior art. Prosecution history limits the interpretation of claims to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance. Unmistakable assertions made by the applicant to the Patent and Trademark Office in support of patentability, regardless of whether required to secure allowance of a claim, may preclude the patentee from asserting equivalency. Depending on the nature and purpose of an amendment, it may have a limiting effect within a spectrum ranging from great to small to zero.

*Patent Law > Infringement Actions > Prosecution History Estoppel > General Overview*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Examinations > General Overview*
[HN6] The disclaimed difference of an amendment in prosecution of a patent is to be strictly construed.

*Patent Law > Infringement Actions > Prosecution History Estoppel > General Overview*
[HN7] Assertions made to the Patent and Trade Office to support patentability may preclude the patentee from asserting equivalency even when not required to secure allowance of that claim. The prosecution history must be viewed as a whole in determining whether estoppel applies.

*Patent Law > Infringement Actions > Prosecution History Estoppel > General Overview*
[HN8] The fact that claims were not amended during prosecution does not mean that the claims can be extended by the doctrine of equivalents to cover the precise subject matter that was distinguished to obtain allowance of a more general claim. An estoppel can be created even when the claim, which is the basis for the assertion of infringement under the doctrine of equivalents, was not amended during prosecution.

*Patent Law > Infringement Actions > Claim Interpretation > General Overview*
[HN9] Patent drafting has established rules for antecedent basis in claims. 35 U.S.C.S. § 112; Manual of Patent Examining P. § 706.03(e) (1995). An indefinite article ("a" or "an") is used to introduce an element. A definite article ("the" or "said") is used when a term has already been introduced, thereby making mention of the earlier recitation of the element.

*Patent Law > Infringement Actions > Doctrine of Equivalents > General Overview*
*Patent Law > Infringement Actions > Prosecution History Estoppel > General Overview*
[HN10] The prior art and prosecution history estoppel are separate and distinct limitations on the doctrine of

Case 2:04-cv-70366-JAC-RSW   Document 97-4   Filed 08/07/2006   Page 4 of 9

Page 3
1995 U.S. Dist. LEXIS 6177, *

equivalents. The limits imposed by prosecution history estoppel can be, and frequently are, broader than those imposed by the prior art.

*Patent Law > Infringement Actions > Doctrine of Equivalents > Limits on Equivalence*
*Patent Law > Infringement Actions > Prosecution History Estoppel > General Overview*
[HN11] In determining whether prosecution history estoppel applies because of a change in claim language during prosecution, the court must consider not only what was surrendered, but also the reason for such a change.

*Patent Law > Infringement Actions > Prosecution History Estoppel > General Overview*
[HN12] The standard for determining what subject matter was relinquished is an objective one, measured from the vantage point of what a competitor was reasonably entitled to conclude from the prosecution history that the applicant gave up to obtain a patent.

*Patent Law > Infringement Actions > Doctrine of Equivalents > Limits on Equivalence*
*Patent Law > Infringement Actions > Prosecution History Estoppel > Abandonment & Amendment*
[HN13] The doctrine of equivalents is limited by prosecution history estoppel, which limits a patentee's reliance on the doctrine of equivalents by preventing her from contending later in an infringement action that her claims should be interpreted as if limitations added by amendment were not present.

*Patent Law > Infringement Actions > Prosecution History Estoppel > General Overview*
[HN14] Prosecution history estoppel arises when an applicant affirmatively relinquishes subject matter (either through amendment, argument or outright cancellation of a claim) during prosecution. The cancellation of claims does not conclusively establish that an applicant wants to relinquish coverage of the subject matter encompassed by the cancellation, and thus does not necessarily create an estoppel. Consideration of other factors along with the cancellation of claims determines whether estoppel is appropriate.

*Patent Law > Infringement Actions > Summary Judgment > General Overview*
*Patent Law > Statutory Bars > Abandonment & Forfeiture Bar > Abandonment*

*Patent Law > Statutory Bars > Abandonment & Forfeiture Bar > Fact & Law Issues*
[HN15] All evidence must be viewed in the light most favorable to the non-moving party, and all reasonable inferences should be drawn in favor of the non-moving party.

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Patent Law > Infringement Actions > Summary Judgment > General Overview*
[HN16] The party opposing summary judgement need not prove its case, but only must come forward with evidence showing that such proof is possible.

*Patent Law > Infringement Actions > Doctrine of Equivalents > Fact & Law Issues*
*Patent Law > Infringement Actions > Summary Judgment > General Overview*
[HN17] Infringement under the doctrine of equivalents is a question of fact. Since equivalency and infringement are questions of fact, infringement by equivalency is a question for the jury.

**COUNSEL:** [*1] For ZENITH ELECT CORPORATION, a Delaware corporation, plaintiff: John M. Calimafde, Hopgood, Calinafde, Kalil, Blaustein & Judlowe, New York, NY. Joel S. Feldman, Sachnoff & Weaver, Ltd., Chicago, IL.

For EXZEC INCORPORATED, TERANCE J KNOWLES, defendants: Jean Dudek Kuelper, McAndrews, Held & Malloy, P.C., Chicago, IL. Robert Edward Browne, Jeannine Marie Pisoni, Thomas C. McDonough, Mark R. Galis, Vedder, Price, Kaufman & Kammholz, Chicago, IL. For CARROLL TOUCH INC, defendant: Jerold A. Jacover, James P. Naughton, Steven F. Borsand, Meredith Leigh Martin, Willian, Brinks, Olds, Hofer, Gilson & Lione, Ltd., Chicago, IL.

For EXZEC INCORPORATED, TERANCE J KNOWLES, counter-claimants: Jean Dudek Kuelper, McAndrews, Held & Malloy, P.C., Chicago, IL. Robert Edward Browne, Jeannine Marie Pisoni, Thomas C. McDonough, Mark R. Galis, Vedder, Price, Kaufman & Kammholz, Chicago, IL. For CARROLL TOUCH INC, counter-claimant: Jerold A. Jacover, James P. Naughton, Meredith Leigh Martin, Willian, Brinks, Olds, Hofer, Gilson & Lione, Ltd., Chicago, IL.

For ZENITH ELECT CORPORATION, counter-defendant: John M. Calimafde, Hopgood, Calinafde,

Kalil, Blaustein & Judlowe, New York, NY. Joel S. Feldman, Sachnoff & Weaver, Ltd., Chicago, IL.

**JUDGES:** BLANCHE M. MANNING, United States District Court Judge

**OPINIONBY:** BLANCHE M. MANNING

**OPINION:**

MEMORANDUM AND ORDER

INTRODUCTION

Zenith Electronic Corporation (hereinafter "Zenith") brought an action for patent infringement against a competitor, Exzec, Inc. (hereinafter "Exzec") and Exzec's president, Terence J. Knowles (hereinafter "Knowles"). Zenith alleges that the manufacture, use, and sale of Exzec's SureTouch infringes United States Patents Number 4,700,176 (hereinafter "the '176 Patent"), Number 4,644,100 (hereinafter "the '892 Patent"), and Reissue 33,151 (hereinafter "the '151 Patent"). All independent claims of the '176, '100, and '151 Patents include the term "surface acoustic waves." The present dispute centers on the surface acoustic wave limitation. Elo Touchsystems, Inc. (hereinafter "Elo Touch") was joined as necessary party to this action by order of this Court. See Zenith Electronics Corp. v. Exzec, Inc., 876 F. Supp. 175 (N.D. Ill. 1995). Defendants Exzec and Knowles moved for summary judgment of non-infringement on Zenith's First Amended Complaint pursuant to Fed.R.Civ.Pro. 56.

[HN1] A summary judgment "shall be rendered forthwith if the pleadings, depositions, [*2] answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party moving for summary judgment bears the burden of showing that there are no genuine issues of material fact and that the movant is entitled to summary judgment as a matter of law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 151-60, 90 S. Ct. 1598, 1605-10, 26 L. Ed. 2d 142 (1970). The grant of summary judgment is appropriate in a patent case where the standards set forth in Rule 56(c) are satisfied. Paragon Podiatry Lab., Inc. v. KLM Labs., Inc., 984 F.2d 1182, 1190, 25 U.S.P.Q.2d 1561, 1567 (Fed. Cir. 1993).

[HN2] Not every factual dispute between the parties prevents summary judgment. The disputed facts must be material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The facts must be those that under the substantive law might affect the outcome of the suit. Id. The dispute also must be genuine. Id. The facts must be such that if they were proven at trial, a reasonable jury [*3] could return a verdict for the non-moving party. Id. The non-moving party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial. Id. at 248-49 (citing First Nat. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89, 88 S. Ct. 1575, 1592, 20 L. Ed. 2d 569 (1968)).

Zenith may establish infringement under either of two theories, literal infringement or infringement under the doctrine of equivalents. Exzec's motion for summary judgment primarily addresses the issue of literal infringement and argues that infringement under the doctrine of equivalents should not be reached due to prosecution history estoppel. [HN3] The determination of infringement involves two steps: (1) properly construing a claim to determine its scope and meaning, and (2) comparing the properly construed claim with the accused device. Carroll Touch, Inc. v. Electro Mechanical Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993). A claim reads on an accused device if the device embodies every limitation of the claim, either literally or by a substantial equivalent. Id.

DISCUSSION

Literal Infringement [*4]

The first question that we address is whether there is a genuine issue about literal infringement. The absence of literal infringement was conceded by Elo Touch and uncontroverted by Zenith. There is no genuine issue of material fact about literal infringement in dispute. Thus, the moving parties are entitled to summary judgment as a matter of law on the issue of literal infringement.

Reaching the Doctrine of Equivalents

While the accused panel does not literally infringe the claims of the patents in suit, Elo Touch and Zenith seek to establish infringement under the doctrine of equivalents. Elo Touch conceded that shear waves, surface acoustic waves, and lamb waves are different physical phenomena, which relates that the Exzec device does not literally infringe. However, Elo Touch states further that there are substantial similarities between shear waves and surface acoustic waves as used in touch screen devices. Plaintiffs, the non-movants, contend that there is a genuine issue of material fact whether the Exzec device infringes as equivalent.

The Doctrine of Equivalents

[HN4] The doctrine of equivalents recognizes that a patented invention may be infringed not only [*5] by a device precisely described in a patent claim, but also by a device that falls outside the literal claims, which per-

forms substantially the same function in substantially the same way to achieve substantially the same result as the claimed invention. Carroll Touch, 15 F.3d at 1578-79 (citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608, 70 S. Ct. 854, 856, 94 L. Ed. 1097, 85 U.S.P.Q. 328 (1950)). The doctrine applies where an infringer, instead of inventing a new device, merely makes a small change, essentially "stealing" the invention by appropriating "the essence of an invention while barely avoiding the literal language of the claims." Extrel FTMS, Inc. v. Bruker Instruments, Inc., 22 U.S.P.Q.2d 1945, 1948 (Fed. Cir. 1992) (citations omitted). The application of the doctrine is the exception, not the rule, since it is equitable in nature. Id.

Prosecution History Estoppel

Before reaching the doctrine of equivalents issue, however, the Court must first discuss Exzec's contention that the doctrine of equivalents is totally irrelevant to this motion because of prosecution history estoppel. Exzec argues that since the Exzec shear panel [*6] falls within the disclaimed difference created by Zenith's claim cancellation and amendments, the doctrine of equivalents is not reached. [HN5] Prosecution history estoppel is an equitable doctrine for determining the permissible scope of patent claims. Builders Concrete, Inc. v. Bremerton Concrete Prods., 757 F.2d 255, 225 U.S.P.Q. 240 (Fed. Cir. 1985). Under prosecution history estoppel, a patentee should not be able to obtain, through litigation, coverage of subject matter disclaimed or abandoned during prosecution to distinguish her invention from the prior art. Haynes Int'l v. Jessop Steel Co., 8 F.3d 1573, 1577, 28 U.S.P.Q.2d 1652 (Fed. Cir. 1993), Opinion Clarified on Rehearing in Part, 15 F.3d 1076, 29 U.S.P.Q.2d 1958 (Fed. Cir. 1994).

Prosecution history estoppel bars "a patentee from enforcing its claims against otherwise legally equivalent structures if those structures were excluded by claim limitations added in order to avoid prior art." Mannesmann Demag Corp. v. Engineered Metal Prods. Co., 793 F.2d 1279, 1284, 230 U.S.P.Q. 45, 48 (Fed. Cir. 1986). Prosecution history limits the interpretation of claims to exclude any interpretation that may have been disclaimed [*7] or disavowed during prosecution in order to obtain claim allowance. Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448, 452, 227 U.S.P.Q. 293, 296 (Fed. Cir. 1985).

Unmistakable assertions made by the applicant to the Patent and Trademark Office (hereinafter "PTO") in support of patentability, regardless of whether required to secure allowance of a claim, may preclude the patentee from asserting equivalency. Texas Instruments Inc. v. United States Int'l Trade Comm'n, 988 F.2d 1165, 1174, 26 U.S.P.Q.2d 1018, 1025 (Fed. Cir. 1993). Depending on the nature and purpose of an amendment, it may have a limiting effect within a spectrum ranging from great to small to zero. Hughes Aircraft Co. v. United States, 717 F.2d 1351, 1363, 219 U.S.P.Q. 473, 481 (Fed. Cir. 1983).

Prosecution History for the Patents in Suit

The '100 Patent

Exzec argues that the prosecution history of the '100 Patent estops Zenith and Elo Touch from raising the doctrine of equivalents for the '100 Patent. The '100 Patent has 10 claims of which claims 1 through 9 are independent claims. In prosecuting the '100 Patent, Zenith did not limit its original claims 1 through 3 to a touch panel [*8] using surface acoustic waves. Originally filed claims 2, 3, and 5 were rejected as anticipated by the Glenn 4,488,000 Patent (hereinafter "Glenn '000 Patent"), and 1 and 4 were rejected as obvious in light of the Glenn '000 Patent.

Original claims 1 through 5 were "amended in order to more clearly distinguish applicant's invention over the prior art." The amendment distinguishing the Glenn '000 Patent was dated July 24, 1986 and file stamped by the PTO on July 28, 1986. The prosecution history states that:

> "The Glenn patent is concerned with apparatus for obtaining position and writing pressure information in a data space. The apparatus comprises a polystyrene tablet having a thickness of about 1 mm and the applied acoustic energy as a mid-frequency of operation of about 600 kHz. The mode of operation of this tablet that lamb waves are generated not surface acoustic waves. The significance of this distinction goes to the heart of the difference between applicants' invention and the Glenn apparatus. Namely, applicants' touch panel system is an absorptive system whereas Glenn is not. In applicants' arrangement, when the panel is touched, as by an operator's finger, surface [*9] acoustic wave energy is absorbed by the finger which absorption is the basis for developing an output signal. It is this output signal that is representative of the degree of absorption of the surface acoustic waves." (emphasis in original)

Original claims 1 through 3 were specifically amended in response to an Office Action to narrow the claims to absorptive systems and to add "surface acoustic

Case 2:04-cv-70366-JAC-RSW   Document 97-4   Filed 08/07/2006   Page 7 of 9

Page 6
1995 U.S. Dist. LEXIS 6177, *

waves" to distinguish from lamb waves in the prior art. In the Glenn '000 Patent, lamb waves were called "compressional mode energy" and "shear mode energy." [HN6] The disclaimed difference of an amendment in prosecution of a patent is to be strictly construed. Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 136, 62 S. Ct. 513, 86 L. Ed. 736 (1942). Thus, the disclaimed difference between surface acoustic waves and lamb waves narrows the scope of these claims to not encompass shear waves. Amending claims 1 through 3 has estopped Zenith from asserting coverage that may include shear acoustic waves.

Claims 4 and 5 were amended to distinguish Zenith's absorptive system from the non-absorptive systems of the prior art. The term "surface acoustic wave" was not added to distinguish [*10] over the prior art since the preamble of original claims 4 and 5 included a "surface acoustic wave touch panel system." Claim 10 was not amended, but it is dependent on multiple claims.

Prosecution history estoppel applies to the first 5 claims and claim 10 as dependent on those claims though the differences in claims 4 and 5, and 10/5 after amendment did not necessarily include the asserted difference of surface acoustic waves over other waves. The same narrowed scope for "surface acoustic wave" is conferred throughout the same patent application. [HN7] Assertions made to the PTO to support patentability may preclude the patentee from asserting equivalency even when not required to secure allowance of that claim. Texas Instruments, 988 F.2d at 1174, 26 U.S.P.Q.2d at 1025. The prosecution history must be viewed as a whole in determining whether estoppel applies. Id.

Claims 6 through 9 were allowed over the prior art and not amended at all. These claims will be interpreted independently. Claim 7 includes "surface acoustic wave" in its last element described, as pertinent, "... said surface acoustic wave propagating on said surface...." Claim 9 contains a "surface acoustic wave" [*11] limitation in the preamble. The narrowed scope of "surface acoustic wave" applies to claims 7 and 9. [HN8] The fact that claims were not amended during prosecution does not mean that the claims can be extended by the doctrine of equivalents to cover the precise subject matter that was distinguished to obtain allowance of a more general claim. See Builders Concrete, 757 F.2d at 260. An estoppel can be created even when the claim, which is the basis for the assertion of infringement under the doctrine of equivalents, was not amended during prosecution. Haynes, 8 F.3d at 1579. Though these claims were not specifically amended to add "surface acoustic waves," there is no material issue whether prosecution history estoppel applies to claims 7 and 9.

Claims 6 and 8 only mention "surface acoustic wave" in the element "a substrate having a (touch) surface capable of propagating surface acoustic waves...." The substrate element only restricts the device to one capable of propagating surface acoustic waves.

The subsequent claiming of "surface wave" in claims 6 and 8 does not support the finding of prosecution history estoppel. [HN9] Patent drafting has established rules for antecedent basis [*12] in claims. 35 U.S.C. sec. 112; Manual of Patent Examining Procedure, sec. 706.03(e) (6th ed. 1995). An indefinite article ("a" or "an") is used to introduce an element. A definite article ("the" or "said") is used when a term has already been introduced, thereby making mention of the earlier recitation of the element. Slimfold Mfg. Co. v. Kinkead Properties, Inc., 626 F. Supp. 493, 495, 229 U.S.P.Q. 298 (N.D. Ga. 1985), affirmed, 810 F.2d 1113, 1 U.S.P.Q.2d 1563 (Fed. Cir. 1987). This practice indicates that without an antecedent basis to "surface acoustic wave," "a surface wave" is a new element. "Surface wave" is more general than the limited scope of "surface acoustic wave." Zenith will not recapture anything given up in prosecuting the '100 Patent by asserting claims 6, 8 and 10/8. Thus, even given the narrowed scope of surface acoustic waves, prosecution history estoppel does not apply to claims 6, 8 and 10/8.

Zenith maintains four distinctions exist over the prior art: 1) using surface acoustic waves instead of lamb waves; 2) collectively employing a single acoustic emitter to generate many different parallel paths of acoustic waves; 3) the use of time to determine [*13] where the touch occurred; and 4) the detection based on the absorption of acoustic energy. The non-movants argue that distinguishing lamb waves was only one of the four distinctions over the Glenn '000 Patent. Further, Zenith argues that it distinguished the Glenn '000 Patent to differentiate absorptive systems from non-absorptive systems, not a lamb wave from a surface acoustic wave system. Zenith revised its claim language to include limitations regarding both surface acoustic waves and absorption of acoustic energy. The Court need not second guess whether only adding the "absorptive limitation" would have convinced the examiner of the patentability of the '100 Patent. The necessity of making this amendment or a possible alternate choice is not as significant as what was surrendered during prosecution. See Wang Laboratories, Inc. v. Toshiba Corp., 993 F.2d 858, 868, 26 U.S.P.Q.2d 1767 (Fed. Cir. 1993).

The differences between the claimed invention and the prior art do not raise a genuine issue. [HN10] The prior art and prosecution history estoppel are separate and distinct limitations on the doctrine of equivalents. Haynes 8 F.3d at 1579. The limits imposed by prosecution history [*14] estoppel can be, and frequently are,

Case 2:04-cv-70366-JAC-RSW   Document 97-4   Filed 08/07/2006   Page 8 of 9

Page 7
1995 U.S. Dist. LEXIS 6177, *

broader than those imposed by the prior art. Id. Whether the prior art would have precluded Zenith from successfully invoking the doctrine of equivalents in this case is not a material issue. In this case, prosecution history is more restrictive than differences in prior art. The accused device need not embody all four elements used to distinguish over the prior art for estoppel to exist.

The non-movants' inferences of no estoppel will not be preserved by the lack of prosecution history estoppel as set forth in Read Corp. v. Portec, Inc., 970 F.2d 816, 23 U.S.P.Q.2d 1426 (Fed. Cir. 1992). In Read, the adding of the set of wheels could not have been the basis for allowance. Id. at 824. In this case, the "surface acoustic wave" limitation, though in combination with the absorptive limitation, was a basis for overcoming the prior art and for allowing the issuance of the '100 Patent. Unlike the applicant in Read, Zenith asserted that the "surface acoustic wave" feature was in itself a basis for establishing patentability over the Glenn '000 Patent.

The non-movants note that merely because certain prosecution history is used to [*15] more narrowly define a claim, there still may be an appropriate range of equivalents under the doctrine of equivalents. E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1439, 7 U.S.P.Q.2d 1129 (Fed. Cir. 1988), cert denied, 488 U.S. 986, 109 S. Ct. 542, 102 L. Ed. 2d 572 (1988). [HN11] In determining whether prosecution history estoppel applies because of a change in claim language during prosecution, the court must consider not only what was surrendered, but also the reason for such a change. Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 882, 20 U.S.P.Q.2d 1045 (Fed. Cir. 1991). The amendments adding surface acoustic waves were made to overcome novelty and obviousness rejections based on the Glenn '000 Patent. Thus, the range of equivalents is very small.

[HN12] The standard for determining what subject matter was relinquished is an objective one, measured from the vantage point of what a competitor was reasonably entitled to conclude from the prosecution history that the applicant gave up to obtain a patent. Haynes, 8 F.3d at 1578. In this case, a reasonable competitor could conclude that by narrowing claims 1 through 3 by limiting [*16] them to surface acoustic waves, Zenith gave up coverage in procuring a patent that includes different waves (as well as non-absorptive systems as discussed earlier).

It is well established that [HN13] the doctrine of equivalents is limited by prosecution history estoppel, which limits a patentee's reliance on the doctrine of equivalents by preventing her from contending later in an infringement action that her claims should be interpreted as if limitations added by amendment were not present.

Jonsson v. Stanley Works, 903 F.2d 812, 821, 14 U.S.P.Q.2d 1863 (Fed. Cir. 1990). For the '100 Patent, the prosecution history estoppel limits the application of the doctrine of equivalents. Since the "surface acoustic wave" limitation was added to overcome a rejection based on prior art, Zenith and Elo Touch are estopped from asserting a claim scope in claims 1 through 5, 7 and 9 that was given up in prosecution.

The '176 and '151 Patents

Exzec also argues that the prosecution history estops Zenith and Elo Touch from raising the doctrine of equivalents for the '176 and '151 Patents. Exzec bases its argument for prosecution history estoppel for the '176 and '151 Patents on originally filed [*17] Claim 31 of patent application 698,306, which was part of the prosecution history of both the '176 and '151 Patents. Original Claim 31 was not limited to a touch panel using surface acoustic waves, but it was not rejected for reasons concerning types of waves either. It was rejected as anticipated by the Nauman Patent, which is able to indicate the location of a touch as well as a shape of the touch applied to the sensor panel. It was cancelled in an amendment by Zenith.

[HN14] Prosecution history estoppel arises when an applicant affirmatively relinquishes subject matter (either through amendment, argument or outright cancellation of a claim) during prosecution. Haynes, 8 F.3d at 1578. The cancellation of claims does not conclusively establish that applicant wants to relinquish coverage of the subject matter encompassed by the cancellation, and thus does not necessarily create an estoppel. See Id. In Haynes, consideration of other factors along with the cancellation of claims determined whether estoppel was appropriate. Id.; Haynes, 15 F.3d 1076, 29 U.S.P.Q.2d 1958.

The purpose of the cancellation of claim 31 was due to prior art; however, the nature of the cancellation [*18] is unrelated to the surface acoustic wave/ shear wave dispute. The abandoned difference that Zenith gave up in cancelling claim 31 was the right to claim the shape of the touch applied to the sensor panel. Zenith did not affirmatively relinquish subject matter pertinent to the type of wave dispute. Asserted claim 31 never developed into a claim that is currently being wielded against Exzec. Thus, the limiting effect of the Claim 31 cancellation for the wave issue is small. n1 See Hughes Aircraft, 717 F.2d at 1363, 219 U.S.P.Q. at 481.

> N1 *Movants did not attempt to convey the shear wave limitation from the '100 Patent to these patents. The '100 patent estoppel occurred after the 698,306 application had already been filed.*

Case 2:04-cv-70366-JAC-RSW     Document 97-4     Filed 08/07/2006     Page 9 of 9

Page 8
1995 U.S. Dist. LEXIS 6177, *

The question is whether Zenith is estopped from asserting a scope of coverage of its patent as it relates to shear waves, not whether the shape of the touch can be determined. Movants have not shown the relevance of the abandoned difference of shape determination to the distinction [*19] between surface acoustic waves and shear waves. [HN15] All evidence must be viewed in the light most favorable to the non-moving party, and all reasonable inferences should be drawn in favor of the non-moving party. Pfaff v. Wells Electronics, Inc., 5 F.3d 514, 517, 28 U.S.P.Q.2d 1119, 1122 (Fed. Cir. 1993). Exzec has not shown that it is entitled to judgement as a matter of law based on the prosecution histories of the '176 and '151 Patents. Thus, Zenith is not precluded from asserting infringement under the doctrine of equivalents in the '176 and '151 Patents. n2

> N2 *In Exzec's Reply Motion, it states that "regardless of whether the court is considering a summary judgement motion of noninfringement, the burden of proving infringement is always on the patentee," (citing Intellical, Inc. v. Phonmetrics, Inc., 952 F.2d 1384, 1389, 21 U.S.P.Q.2d 1383 (Fed. Cir. 1992)(actually addressing a non-movant who produced no evidence) and Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 798, 17 U.S.P.Q.2d 1097 (Fed. Cir. 1990)(actually addressing the issue that no genuine issue of material fact with respect to at least one structural limitation not being found exactly or equivalently in the accused device permits the grant of summary judgment.) Exzec continues 'thus, the question is not whether Exzec met its burden of proof under the doctrine of equivalents but whether Zenith and Elo Touch have met their burden in presenting on each of the three specific elements required by Graver Tank." Zenith has put forth more than mere conclusory statements on all three elements. The proper standard is set forth above.*

[*20] [HN16]

The party opposing summary judgement need not prove its case, but only must come forward with evidence showing that such proof is possible. D.L. Auld Co. v. Chroma Graphics Corp., 714 F.2d 1144, 1146, 219 U.S.P.Q. 13 (Fed. Cir. 1983). Zenith need prove the presence of genuine factual disputes on the three aspects of equivalency.

Genuine Issue of Equivalency

The Court is next called upon to determine whether a genuine issue of equivalents exists that might encompass the accused device to preclude summary judgment under the remaining claims. [HN17] Infringement under the doctrine of equivalents is a question of fact. Charles Greiner & Co. v. Mari-Med Mfg. Inc., 962 F.2d 1031, 1034, 22 U.S.P.Q.2d 1526 (Fed. Cir. 1992). Since equivalency and infringement are questions of fact, infringement by equivalency is a question for the jury. The Court will not resolve these factual disputes.

The pleadings and affidavits show that there is a genuine issue of material fact under the doctrine of equivalents. Zenith provides evidence that Exzec copied the system of the patents in Suit, feature for feature, except using a different form of acoustic energy to power its SureTouch system. [*21] The declarations of Kent, Johnson, and White set forth evidence showing there is a material genuine issue about infringement under the doctrine of equivalents for trial. For example, the Johnson declaration states that the only relevant difference between Exzec's Sure Touch and Zenith's patents is that Exzec's device uses shear acoustic waves and the inventions call for surface acoustic waves. In addition, it states that the waves are substantially similar as used in touch screen technology. There is a genuine, material issue of fact whether the claimed acoustic waves are equivalent to those found in accused device. The non-movants have shown a genuine issue that the accused device performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed invention.

On the issue of infringement under the doctrine of equivalents for the '176 and '151 patents, the movants, defendants Exzec and Knowles, fail to satisfy their burden as the moving parties on a motion for summary judgment. Movants do not produce evidence showing the absence of a genuine issue of material fact or otherwise show that the movants are entitled to summary judgment [*22] as a matter of law.

Conclusion

It is hereby ordered that Defendants' motion for summary judgement on Zenith's First Amended Complaint is granted for claims 1 through 5, 7, and 9 of the '100 Patent, and Defendants' motion is denied for the '176 and '151 Patents and for claims 6 and 8 of the '100 Patent.

**ENTER:**

**BLANCHE M. MANNING**

**United States District Court Judge**

**DATED:** MAY - 5 1995