EXHIBIT 1



473 F.3d 1213                                                                                                                                 Page 1

473 F.3d 1213, 81 U.S.P.Q.2d 1385

**(Cite as: 473 F.3d 1213)**

**E-Pass** Technologies, Inc. v. **3Com** Corp
C.A.Fed. (Cal.),2007.

United States Court of Appeals,Federal Circuit.
**E-PASS** TECHNOLOGIES, INC., Plaintiff-Appellant,
v.
**3COM** CORPORATION (also known as **3Com**, Inc.), Palm, Inc., Palmone, Inc. and Handspring, Inc., Defendants-Appellees,
andVisa International Service Association and Visa U.S.A., Inc., Defendants-Appellees,
andPalmSource, Inc., Defendant-Appellee.
**Nos. 2006-1356, 2006-1357, 2006-1358.**

Jan. 12, 2007.
Rehearing En Banc Denied February 21, 2007.

**Background:** Assignee of patent for electronic multi-function card brought suit against alleged infringer. Alleged infringer asserted counterclaims of noninfringement and invalidity. After construing patent claims, 177 F.Supp.2d 1033, the district court, 222 F.Supp.2d 1157, granted summary judgment of noninfringement, and assignee appealed. The Court of Appeals, 343 F.3d 1364, vacated and remanded. On remand, the United States District Court for the Northern District of California, D. Lowell Jensen, Senior Judge, entered final summary judgment of non-infringement. Assignee appealed.

**Holdings:** The Court of Appeals, Linn, Circuit Judge, held that:

(1) district court had authority on remand to entertain motion for summary judgment;

(2) claim construction of term " card" embraced attributes of being able to be " carried about" and of not having protruding buttons, keyboards, antennae, indented display screens, or hinged covers;

(3) any error by district court on remand, in treating words of claim construction performed by Court of Appeal as additional claim limitations, was harmless; and

(4) evidence that competitors taught their customers each step of claimed method in isolation did not prove that customers actually performed claimed patented method.

Affirmed.
West Headnotes
**[1] Patents 291 ⟶324.5**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k324 Appeal
                291k324.5 k. Scope and Extent of Review in General. Most Cited Cases
A district court's patent claim construction is subject to de novo review.

**[2] Federal Courts 170B ⟶916.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)8 Subsequent Appeals
                170Bk916 In General
                    170Bk916.1 k. In General. Most Cited Cases
De novo review applied to a district court's interpretation on remand of the prior mandate of Court of Appeals.

**[3] Patents 291 ⟶324.60**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k324 Appeal
                291k324.60 k. Determination and Disposition of Cause. Most Cited Cases
District court had authority on remand to entertain motion for summary judgment, after Court of Appeals vacated judgment of district court on basis that its decision rested upon erroneous grounds, in infringement action over patent directed toward system for simplifying use of various cards, such as credit cards, check cards, and identity cards, where Court of Appeals indicated that proper claim construction might support judgment in favor of either party, depending on evidence and argument submitted to district court on remand and considered

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

473 F.3d 1213                                                                                                Page 2
473 F.3d 1213, 81 U.S.P.Q.2d 1385
**(Cite as: 473 F.3d 1213)**

by district court in first instance. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

### [4] Federal Courts 170B ☞949.1

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(L) Determination and Disposition of Cause
            170Bk949 Mandate and Effect of Decision in Lower Court
                170Bk949.1 k. In General. Most Cited Cases

Once a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit.

### [5] Patents 291 ☞327(13)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k327 Operation and Effect of Decision
                291k327(13) k. Matters Concluded. Most Cited Cases

Prior decision of Court of Appeals did not constitute law of the case as to parties and accused devices that were not yet part of patent infringement litigation when that decision issued.

### [6] Patents 291 ☞101(2)

291 Patents
    291IV Applications and Proceedings Thereon
        291k101 Claims
            291k101(2) k. Construction in General. Most Cited Cases

Claim construction of term " card," in patent directed toward electronic multi-function card, although not precise restriction on size or portability, embraced attributes of being able to be " carried about" and of not having protruding buttons, keyboards, antennae, indented display screens, or hinged covers.

### [7] Patents 291 ☞327(13)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k327 Operation and Effect of Decision
                291k327(13) k. Matters Concluded. Most Cited Cases

A patent claim construction articulated by a prior panel decision of the Court of Appeals ordinarily remains the law of the case unless it is in conflict with a subsequent decision by the Court sitting en banc or by the Supreme Court.

### [8] Patents 291 ☞157(1)

291 Patents
    291IX Construction and Operation of Letters Patent
        291IX(A) In General
            291k157 General Rules of Construction
                291k157(1) k. In General. Most Cited Cases

Any articulated definition of a patent claim term ultimately must relate to the infringement questions that it is intended to answer.

### [9] Patents 291 ☞324.56

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k324 Appeal
                291k324.56 k. Harmless Error. Most Cited Cases

Any error by district court on remand was harmless, in treating words of claim construction performed by Court of Appeal as additional claim limitations, in infringement action over patent directed toward system for simplifying use of various cards, such as credit cards, check cards, and identity cards, where district court did not improperly depart from claim construction of " card" as articulated in opinion of Court of Appeals.

### [10] Patents 291 ☞237

291 Patents
    291XII Infringement
        291XII(A) What Constitutes Infringement
            291k233 Patents for Machines or Manufactures
                291k237 k. Substitution of Equivalents. Most Cited Cases

Under the all elements rule, the doctrine of equivalents must be applied to individual elements of the patent claim, not to the invention as a whole.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[11]** Patents 291 🗝312(6)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k312 Evidence
                291k312(3) Weight and Sufficiency
                    291k312(6) k. Particular Matters, Sufficiency as To. Most Cited Cases
Evidence that competitors' manuals taught their customers each step of claimed method in isolation, regarding patent on payment technology for personal digital devices, did not prove that customers actually performed claimed patented method, through accused general-purpose computing devices that could be used for variety of purposes and in variety of ways, where manual excerpts did not teach all steps of claimed method together, much less in required order, and patent assignee otherwise did not introduce evidence of even one customer who practiced steps of claimed method in required order.

**Patents 291** 🗝328(2)

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original Utility. Most Cited Cases
5,276,311. Not Infringed.

**\*1215** Stephen N. Weiss, Moses & Singer LLP, of New York, NY, argued for plantiff-appellant **E-Pass** Technologies, Inc. With him on the brief was Gregory J. Fleesler.
Edward H. Sikorski, DLA Piper Rudnick Gray Cary U.S. LLP, of San Diego, CA, argued for defendants-appellees **3Com** Corporation (also known as **3Com**, Inc.), et al. With him on the brief was John Allcock. Also on the brief were M. Elizabeth Day, Vincent S. Lam, and Sal Lim, of Palo Alto, CA.
William J. Bohler, Townsend and Townsend and Crew LLP, of Palo Alto, CA, for defendants-appellees Visa International Services Associates, et al. With him on the brief were Madison C. Jellins and Julie J. Han.
Mark D. Rowland, Fish & Neave IP Group of Ropes & Gray LLP, of Palo Alto, CA, argued for defendant-appellee PalmSource, Inc. With him on the brief were James T. Canfield and Andrew T. Oliver.

Before MICHEL, Chief Judge, LINN and PROST, Circuit Judges.
LINN, Circuit Judge.
**E**-**Pass** Technologies, Inc. (" **E-Pass**" ) appeals from a final summary judgment of non-infringement by the United States District Court for the Northern District of California, in which the court held that none of the defendants directly or indirectly infringed **E-Pass's** U.S. Patent No. 5,276,311 (" the 311 patent" ). *E-Pass Techs., Inc. v. 3Com Corp.,* Nos. 00-CV-2255, 03-CV-4747, 04-CV-0528 (N.D.Cal. Mar. 17, 2006) (" *SJ Order* " ). Because the district court correctly determined that no reasonable jury could have found any of the defendants liable on the basis of the evidence presented, summary judgment was proper, and we affirm.

**\*1216** I. BACKGROUND

A. Introduction and Prior Appeal

As we discussed in a prior appeal in this case, **E**-**Pass** is the assignee of the 311 patent, entitled " Method and Device for Simplifying the Use of a Plurality of Credit Cards, or the Like." The object of the invention is to provide a method and device for substituting a single electronic multifunction card for multiple credit cards.... To address problems associated with carrying multiple cards, " the user needs, and is required to carry about, [only] a single card."

*E-Pass Techs. v. 3Com Corp.,* 343 F.3d 1364, 1365 (Fed.Cir.2004) (" *E-Pass I* " ) (quoting 311 patent, col. 1, ll. 64-66). Claim 1 of the 311 patent, the only independent claim asserted in this litigation, reads as follows:A method for enabling a user of an electronic multi-function card to select data from a plurality of data sources such as credit cards, check cards, customer cards, identity cards, documents, keys, access information and master keys comprising the steps of:
transferring a data set from each of the plurality of data sources to the multi-function card;
storing said transferred data set from each of the plurality of data sources in the multi-function card;
assigning a secret code to activate the multi-function card;
entering said secret code into the multi-function card to activate the same;
selecting with said activated multi-function card a select one of said data sets; and
displaying on the multi-function card in at least one predetermined display area the data of said selected

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

473 F.3d 1213 Page 4

473 F.3d 1213, 81 U.S.P.Q.2d 1385

**(Cite as: 473 F.3d 1213)**

data set.

311 patent, col. 10, l. 54-col. 11, l. 3.

On February 28, 2000, **E-Pass** filed a complaint for patent infringement against **3Com** Corporation and Palm, Inc. (collectively, " **3Com** " ). In it, **E-Pass** accused **3Com** of inducing consumers to practice the steps of the patented method on its Palm VII and Palm VIIx personal digital assistant (" PDA" ) products. Following a claim construction that construed " electronic multi-function card" to be " [a] device having the width and outer dimensions of a standard credit card with an embedded electronic circuit allowing for the conversion of the card to the form and function of at least two different single-purpose cards," *E-Pass Techs. v. 3Com Inc.,* 177 F.Supp.2d 1033, 1037 (N.D.Cal.2001), the district court granted **3Com's** motion for summary judgment of noninfringement both literally and under the doctrine of equivalents, *E-Pass Techs. v. 3Com Corp.,* 222 F.Supp.2d 1157, 1165 (N.D.Cal.2002).

**E-Pass** appealed. On appeal, we held that the district court had erred by " requiring the dimensions of a standard credit card." *E-Pass I,* 343 F.3d at 1371. We observed that " the ordinary meaning of the word ' card' here, as used in the phrase ' electronic multi-function card,' is the proper construction," and we vacated and remanded to the district court to address the issue of infringement under the proper construction. *Id.* at 1370-71. Notably, we emphasized that " it may be or may not be that the accused Palm Pilot devices literally infringe" under that construction. *Id.* at 1371.

B. Events After Remand

After we remanded the action against **3Com**, **E-Pass** filed two new infringement **\*1217** actions in the district court. It filed the first new action, Case No. 03-CV-4747, on October 22, 2003, against Visa U.S.A., Inc., and Visa International Service Association (collectively, " Visa" ). In that action, **E-Pass** alleged that Visa had infringed the 311 patent by using a Palm V PDA in two demonstrations in 2001. **E-Pass** filed the second new action, Case No. 04-CV-0528, against PalmSource, Inc., palmOne, Inc., and Handspring, Inc., on February 9, 2004. In the second new action, it made claims of direct, induced, and contributory infringement of the 311 patent based on three new PDA product lines-the Tungsten, Zire, and Treo lines-that had been introduced since the filing of the initial action.

On March 17, 2006, the district court granted summary judgment of noninfringement as to all defendants. *SJ Order.* It rested its finding of noninfringement on two independent grounds. First, it held that even under a broader construction of " card," none of the accused devices could infringe the " electronic multi-function card" limitation. *Id.,* slip op. at 25-34. Second, it held that **E-Pass** had failed to adduce sufficient evidence to support a finding that any of the defendants or their customers had practiced all of the steps of the claimed method. *Id.,* slip op. at 17-25. Having demonstrated no instances of direct infringement, **E-Pass** could not prove liability for induced or contributory infringement.

**E-Pass** appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

II. DISCUSSION

[1][2] We review without deference all of the issues here on appeal: the propriety of the district court's grant of summary judgment, *see E-Pass I,* 343 F.3d at 1367; the district court's claim construction, *see id.;* and the district court's interpretation of this court's mandate in *E-Pass I, see Tronzo v. Biomet, Inc.,* 236 F.3d 1342, 1346 (Fed.Cir.2001). Summary judgment is appropriate when, based on the record, no genuine issue exists as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). A genuine issue exists if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[3] On appeal, **E-Pass** challenges both grounds upon which the district court rested its judgment of noninfringement. First, it argues that the district court violated this court's mandate in *E-Pass I* when it granted summary judgment of noninfringement based on the " electronic multi-function card" limitation. It further argues that even without consideration of the law of the case, summary judgment as to that limitation was improper either as a matter of literal infringement or under the doctrine of equivalents. Second, it argues that the district court ignored circumstantial evidence that the defendants or their customers practiced the steps of the claimed method. Therefore, it argues, summary judgment as to the step limitations was improper.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

473 F.3d 1213                                                                                                   Page 5
473 F.3d 1213, 81 U.S.P.Q.2d 1385
**(Cite as: 473 F.3d 1213)**

To prevail, **E-Pass** must convince us to overturn the district court's rulings as to both issues. We consider each of its arguments in turn.

A. The " Electronic Multi-Function Card" Limitation

     1. Law of the Case

[4] " Once a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit." Gindes v. United States, 740 F.2d 947, 949 (Fed.Cir.1984) (quoting ***1218**Schwartz v. NMS Indus., Inc., 575 F.2d 553, 554 (5th Cir.1978)). **E-Pass** argues that the district court disobeyed the mandate of this court by entering summary judgment in favor of the defendants as to the subject of the prior appeal, the " electronic multi-function card" limitation of claim 1 of the 311 patent. It further argues that the district court disobeyed our mandate when it elaborated upon our claim construction in *E-Pass I* in light of the teachings of this court's en banc decision in Phillips v. AWH Corp., 415 F.3d 1303 (Fed.Cir.2005) (en banc). We disagree as to each of these contentions.

     a. Summary Judgment

**E-Pass's** first argument rests in substantial part on our statement in *E-Pass I* that " issues of material fact remain in dispute as to both literal and doctrine of equivalents infringement under the proper construction" of the term " card." E-Pass I, 343 F.3d at 1365. That statement, however, must be read in context. As the very same sentence announced, we vacated the grant of summary judgment and remanded to the district court for further proceedings. Id. By vacating, we signaled that, although the district court's prior decision rested upon erroneous grounds, a proper claim construction might support a judgment (summary or otherwise) in favor of either party, depending on the evidence and argument submitted to the district court on remand and considered by the district court in the first instance. Cf. Communities for Equity v. Mich. High Sch. Athletic Ass'n, 459 F.3d 676, 680 (6th Cir.2006) (noting that when the Supreme Court grants a writ of certiorari, vacates, and remands, it " does not indicate, nor even suggest, that the lower court's decision was erroneous" ).

The balance of our opinion in *E-Pass I* supports this interpretation. We discussed in detail the claim construction of the term " card" and the district court's error in construing " card" to mean a card with the precise dimensions of a standard credit card. E-Pass I, 343 F.3d at 1367-71. At the conclusion of this discussion, we emphasized that " under the correct construction of ' card' in this context ... it may or may not be that the accused Palm Pilot devices literally infringe." Id. at 1371. Indeed, we could not have intended to foreclose a summary judgment of noninfringement because the record did not yet contain the evidence that the parties would put forward in support of their infringement and noninfringement contentions under the proper construction.

[5] Accordingly, the district court correctly concluded that it had the authority to entertain the defendants' motions for summary judgment on remand. SJ Order, slip op. at 11, 12; see also Liquid Dynamics Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1220 (Fed.Cir.2006) (" Issues not decided by the court in a prior proceeding are not covered by the law-of-the-case doctrine." ). As the district court observed, we did not in *E-Pass I* " inten [d] ... to preclude [the district court] from hearing a complete summary judgment motion as to the Palm VII on remand." [FN1] SJ Order, slip op. at 12. As we discuss next, the district court on remand properly undertook a thorough and thoughtful analysis of the infringement issues, and in so doing, it ***1219** followed our claim construction in *E-Pass I.*

> FN1. Of course, the decision in *E-Pass I* does not constitute law of the case as to parties and accused devices that were not yet part of the litigation when that decision issued. See Jamesbury Corp. v. Litton Indus. Prods., Inc., 586 F.2d 917, 920 (2d Cir.1978) (noting that " because the present case involves a different defendant ... the earlier decision ... is n[ot] ' law of the case' " ).

     b. Claim Construction

[6] In *E-Pass I,* we addressed the question of whether the district court had improperly added a dimensional limitation to the claim. See 343 F.3d at 1368-69. We concluded that a dimensional limitation was not warranted and overturned a claim construction that improperly limited the claim to encompass only devices having exact credit card dimensions. Id. at

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

473 F.3d 1213                                                                                                                                Page 6
473 F.3d 1213, 81 U.S.P.Q.2d 1385
**(Cite as: 473 F.3d 1213)**

1368. We went on to hold that " the ordinary meaning of the word ' card' ..., as used in the phrase ' electronic multi-function card,' is the proper construction." *Id.* at 1370-71. From this, we articulated a definition of " card" -namely, a " flat rectangular piece of stiff material" -derived from several general-purpose dictionaries. *See id.* at 1367-68.

[7] Following our decision in *E-Pass I* and prior to the district court's ruling on remand, our court, sitting en banc, decided *Phillips.* 415 F.3d at 1303. In its brief, Visa argues that the district court was " at liberty to reconstrue ' card' " because *Phillips* " supercedes the *3Com* panel decision." Visa Br. at 19-20. This is an overstatement. A claim construction articulated by a prior panel decision of this court ordinarily remains the law of the case unless it is in conflict with a subsequent decision by this court sitting en banc or by the Supreme Court. *See Cal. Fed. Bank v. United States,* 395 F.3d 1263, 1274-75 (Fed.Cir.2005) (declining to revisit earlier ruling where intervening en banc decision was not in direct conflict, and where Supreme Court analysis of the same issue controlled); *see also United States v. Moran,* 393 F.3d 1, 7 (1st Cir.2004) (" [A] legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled...." ). Here, we see no conflict between the guidance provided in *Phillips* and the claim construction we articulated in *E-Pass I.* As we discuss below, *see infra* Part II.A.2, the district court correctly applied our construction as the governing definition of " card."

[8] Nonetheless, any articulated definition of a claim term ultimately must relate to the infringement questions that it is intended to answer. *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.,* 442 F.3d 1322, 1326 (Fed.Cir.2006) (" [T]he legal function of giving meaning to claim terms always takes place in the context of a specific accused infringing device or process." ). The definition of " card" that we articulated in *E-Pass I* described the properties of a " card" relevant to the accused devices, and it thereby sufficed to determine the question of infringement. Thus, the district court's observation that not every " flat rectangular piece of stiff material" is a " card," *see SJ Order,* slip op. at 26, was not strictly necessary to its holding.

Even so, the district court's observation was correct.

For example, no reasonable jury, if properly instructed, would conclude that a 4 x8 x 1/2 piece of plywood or a plate glass window infringes the " card" limitation of 311 patent claim 1. *See id.* The specification of the 311 patent makes it clear that a " card," as used in the patent's claims, is something a user will " carry about." *See, e.g.,* 311 patent, col. 1, l. 44. Although not a precise restriction on size or portability, the attributes of being able to be " carried about" and of not having protruding buttons, keyboards, antennae, indented display screens, or hinged covers are characteristics that a complete claim construction of " card" can be expected to embrace.

*1220 Moreover, we reiterated in *Phillips* the paramount importance to claim construction of the language of the claims themselves. *See Phillips,* 415 F.3d at 1312; *see also Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (" [W]e look to the words of the claims themselves ... to define the scope of the patented invention." ). This case hinges on the construction of a term that not only bears one of its ordinary meanings, but is a straightforward name for an everyday object. Most members of a jury are likely to have at least one " card" in the sense of the 311 patent in their pockets, wallets, or purses. The district court implicitly recognized this observation when it boiled the infringement inquiry down to a " straightforward question-using the plain meaning of the word ' card,' can any of the accused devices be considered to be a ' card' ?" *SJ Order,* slip op. at 33.

2. Literal Infringement

[9] Answering this question of infringement brings us, as it brought the district court, back to an application of the claim construction in *E-Pass I.* As the district court correctly observed, the accused devices are neither flat nor rectangular:

They have buttons, joysticks and keyboards which project above the surface. They have screens which sit below the surface. Some have indented spaces holding a stylus which can be used on the device. They have projecting antennae. The Treo cell phone has a full QWERTY keyboard and a flip cover which sits at a 150 degree angle to the surface of the phone when it is open.

....

... A review of the accused devices ... shows that none of them meet the definition [of rectangular]. Corners and edges are fully rounded. The sides of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

473 F.3d 1213                                                                                                                                    Page 7
473 F.3d 1213, 81 U.S.P.Q.2d 1385
**(Cite as: 473 F.3d 1213)**

devices are generally curved, some convex, some concave, rather than straight. They have built-in or flip-up antennae which completely alter the straight line sides of a rectangle. Some have USB connectors which have the same effect.

*SJ Order,* slip op. at 31-32. Likewise, the accused devices are not " piece[s] of stiff material," *see E-Pass I,* 343 F.3d at 1371, but rather " are all elaborate mixes of multiple pieces and multiple materials," *SJ Order,* slip op. at 32. Accordingly, the district court properly concluded that no reasonable jury could find that the accused devices are " cards."

**E**-**Pass** argues that in performing its infringement analysis, the district court improperly treated the words of our claim construction as additional claim limitations. **E-Pass** is correct that " [c]laim interpretation is the process of giving proper meaning to the claim language," *Abtox, Inc. v. Exitron Corp.,* 122 F.3d 1019, 1023 (Fed.Cir.1997), and that the terms courts use to enunciate the proper construction of a claim are not themselves limitations that require interpretation. Here, however, any error was harmless. Although the district court may have carried the process of claim construction unnecessarily too far, it did not improperly depart from the claim construction of " card" as articulated by *E-Pass I.*

Accordingly, we affirm the district court's grant of summary judgment of noninfringement as to the " electronic multi-function card" limitation.

3. The Doctrine of Equivalents

The above discussion does not resolve the question of whether the accused devices might meet the " card" limitation of claim 1 under the doctrine of equivalents. The district court held that " [i]nasmuch as the patent method must be performed on a **\*1221** card, a performance on something that is not a card cannot be considered to be a performance in the same way as that required by the patent, and cannot constitute infringement by the doctrine of equivalents." *Id.,* slip op. at 36. However, this conclusion is too summary.

[10] Under the " all elements" rule, " the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). As we recently explained in *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* the " all elements rule" may foreclose resort to the doctrine of equivalents where " the evidence is such that no reasonable jury could conclude that an element of an accused device is equivalent to an element called for in the claim, or that the theory of equivalence to support the conclusion of infringement otherwise lacks legal sufficiency." 469 F.3d 1005, 1018-19 (Fed.Cir.2006).

**E**-**Pass's** theory of equivalence is that no reasonable jury could conclude that the differences between the accused products and the " electronic multi-function card" of the 311 patent are substantial. Mot. for Summ. J. of Infringement Against PalmOne, Inc., *E-Pass, Inc. v. 3Com, Inc.,* Nos. 00-CV-2255, 03-CV-4747, 04-CV-0528 (N.D.Cal. Aug. 26, 2005) (Dckt. No. 464). This is the proper inquiry. To hold that performance of the claimed method on something not a card is not " a performance in the same way as that required by the patent," *SJ Order,* slip op. at 36, is to beg the question of whether the accused devices-which, taken as a whole, are alleged to meet a single limitation of the claimed method-are insubstantially different from a " card."

We need not decide whether the district court's judgment as to the doctrine of equivalents can be sustained on other grounds, nor indeed whether the alleged equivalence of the accused devices to cards is amenable to summary judgment. As we discuss next, we agree with the district court that **E**-**Pass** has failed to meet its burden of proof on the question of whether anyone has practiced the steps of the claimed method. This, without more, warrants affirmance.

B. The Steps of the Claimed Method

[11] The district court held, simply, that " **E-Pass** has submitted *no* evidence that the patented method has ever been practiced on any Palm VII device. The same circumstance is true as to the Tungsten, Zire and Treo devices-there is no evidence that the patented method has ever been practiced on any of these devices." *SJ Order,* slip op. at 17. **E-Pass** argues that this summary conclusion improperly ignores circumstantial evidence of direct infringement that supports its claim of inducement of infringement as to all of these devices. We disagree; we have no reason to believe that the district court ignored any of this evidence, all of which was before it. *Cf. Medtronic, Inc. v. Daig Corp.,* 789 F.2d 903,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

473 F.3d 1213                                                                                              Page 8
473 F.3d 1213, 81 U.S.P.Q.2d 1385
**(Cite as: 473 F.3d 1213)**

906 (Fed.Cir.1986) (" We presume that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise." ). Even when all the evidence that **E**-**Pass** cites is accounted for, its claim cannot survive summary judgment.<sup>FN2</sup>

> FN2. **E**-**Pass** does not raise in its opening brief any arguments against the district court's finding that there is no evidence of infringement during the two demonstrations that **E**-**Pass** described in its complaint against Visa. *See SJ Order,* slip op. at 17-25. Accordingly, and because we see no reason why doing so would be unfair, we exercise our discretion and deem this issue to have been waived. *See Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 800 (Fed.Cir.1990) (" [A]n issue not raised by an appellant in its opening brief ... is waived." ); *id.* (noting that the rule " may as a matter of discretion not be adhered to where circumstances dictate that it would result in basically unfair procedure" ).

**\*1222 E**-**Pass's** difficulty is twofold. Procedurally, it is hornbook law that to survive the defendants' motions for summary judgment, **E**-**Pass** must " make a showing sufficient to establish the existence of [each] element essential to [its] case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Substantively, because the language of most of the steps of its method claim refer to the completed results of the prior step, **E**-**Pass** must show that all of those steps were performed in order. *E.g.,* 311 patent, claim 1 (" transferring a data set ...; storing *said transferred* data set" ); *see Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.,* 152 F.3d 1368, 1376 (Fed.Cir.1998) (holding that " the sequential nature of the claim steps is apparent from the plain meaning of the claim language and nothing in the written description suggests otherwise" ).

The documents that **E**-**Pass** cites on appeal are not sufficient to meet its burden under *Celotex.* First, it cites a chart of documents produced by Visa, showing that Visa was interested in PDA-based payment technology. However, this chart does not demonstrate that Visa actually performed or induced anyone to perform all of the steps of the claimed method, much less that it did so in the necessary order and in the United States. Second, it cites to a Visa document describing plans for a contactless payment demonstration in Cartes, France, in 2004. This, too, fails to demonstrate that the steps of the method were actually performed, much less that they were performed in the United States. Likewise, its citations to business analyses of proposed contactless payment protocols fail to show that any such protocol was ever actually deployed or that, if deployed, it would infringe.

**E**-**Pass's** final piece of evidence, to which it devotes the bulk of its argument, is a set of excerpts from the product manuals for various of the accused devices. These, it argues, establish infringement under *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261 (Fed.Cir.1986). In *Moleculon,* we considered a claim of induced infringement against the distributor of a Rubik's Cube-like puzzle. *Id.* at 1272. The patented method-a protocol for solving such a puzzle-could only be infringed by a user, not the manufacturer, of the puzzle, just like the method at issue here. We held that " evidence of extensive puzzle sales, dissemination of an instruction sheet teaching the method of restoring the preselected pattern with each puzzle, and the availability of a solution booklet on how to solve the puzzle" was sufficient to support a finding that a puzzle distributor had induced infringement of the claimed method. *Id.*

In contrast, the evidence here shows, at best, that the Palm defendants taught their customers each step of the claimed method in isolation. Nowhere do the manual excerpts teach all of the steps of the claimed method together, much less in the required order. Accordingly, it requires too speculative a leap to conclude that any customer actually performed the claimed method. Indeed, the very same record evidence upon which **E**-**Pass** attempts to rely also shows that the accused PDAs are general-purpose computing devices that can be used for a variety of purposes and in a variety of ways. In comparison, the device at issue in *Moleculon* was intended to be used in only one way-to practice the infringing method-and that method was explicitly taught by the proffered instructions. *Id.* If, as **E**-**Pass** argues, it is " unfathomable" **\*1223** that no user in possession of one of the accused devices and its manual has practiced the accused method, *see* **E**-**Pass** Repl. Br. at 16, **E**-**Pass** should have had no difficulty in meeting its burden of proof and in introducing testimony of even one such user. Having failed to meet that burden, **E**-**Pass** has no basis to overturn the district court's decision.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

473 F.3d 1213    Page 9
473 F.3d 1213, 81 U.S.P.Q.2d 1385
**(Cite as: 473 F.3d 1213)**

### III. CONCLUSION

For the foregoing reasons, we conclude that the district court properly granted summary judgment in favor of the defendants. Accordingly, the judgment is

*AFFIRMED.*

C.A.Fed. (Cal.),2007.
E-Pass Technologies, Inc. v. 3Com Corp
473 F.3d 1213, 81 U.S.P.Q.2d 1385

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.