# Exhibit 6

▷Middleton, Inc. v. Minnesota Mining and Mfg. Co.
S.D.Iowa,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. Iowa, Central Division.
MIDDLETON, INC., Plaintiff,
v.
MINNESOTA MINING AND MANUFACTURING COMPANY, Defendant.
No. 4:03-CV-40493.

Aug. 24, 2004.

Donald William Rupert, Mayer Brown Rowe & Maw LLP, Joseph A. Grear, George C. Summerfield, Keith A. Vogt, Stadheim & Grear, Jonathan G. Bunge, Bunge Law Firm PC, Chicago, IL, Suzanne J. Levitt, Des Moines, IA, for Plaintiff and Counter-Defendant. Daniel L. Hartnett, Crary Huff Inkster Hecht & Sheehan PC, Soux City, IA, David M. Swinton, Ahlers & Cooney PC, Des Moines, IA, William A. Streff, Jr., David Kenneth Callahan, Mary E. Zaug, Karen J. Nelson, Kirkland & Ellis LLP, Chicago, IL, Kevin H. Rhodes, 3M Innovative Properties Company, St. Paul, MN, for Defendant and Counter-Claimant.

ORDER GRANTING DEFENDANT'S MOTION TO STAY

GRITZNER, J.
*1 This matter is before the Court on Defendant's Motion to Stay (Clerk's No. 170). Defendant brought the motion as a result of a recently granted reexamination [FN1] of the patent-in-suit by the Patent and Trademark Office ("PTO"). Based on Defendant's request for expedited relief, an oral hearing was held on Friday, August 13, 2004, via telephone. Attorney George C. Summerfield appeared on behalf of the Plaintiff; attorneys David Callahan and Karen Nelson appeared on behalf of the Defendant. Following the hearing, the Court took the matter under advisement and finds Defendant's motion is now fully submitted and ready for ruling.

FN1. While the PTO officially granted an inter partes reexamination, counsel for Defendant noted at the hearing that this was clerical error, and the PTO is in the process of rectifying the mistake. The reexamination must necessarily be ex parte due to the age of the patent at issue. This change has no effect on the parties' arguments or the Court's analysis of the motion to stay.

PROCEDURAL HISTORY AND BACKGROUND FACTS

The Plaintiff, Middleton, Inc. ("Middleton"), commenced this action against the Defendant, Minnesota Mining and Manufacturing Co. ("3M"), in the United States District Court for the Northern District of Illinois, Chicago Division, on October 17, 1996. After much litigation activity in that district, the Honorable James F. Holderman of the Northern District of Illinois transferred the action to this Court on August 29, 2003. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, the federal question statute, and 28 U.S.C. § 1338(a), as this case arises under the federal patent laws, 35 U.S.C. §§ 101 et seq.

The lawsuit alleges infringement of a patent held by Middleton, specifically, U.S. Patent No. 4,944,514 ("the '514 patent"), by 3M. Trial is scheduled for the week beginning October 12, 2004. The Court also has three summary judgment motions pending. The first motion was filed by Middleton and pertains to infringement. The second and third motions, filed by 3M, pertain to validity and infringement, respectively. 3M filed an application for reexamination [FN2] and learned on July 26, 2004, that the PTO had granted the request. The pending reexamination prompted the current motion to stay, which Middleton has resisted.

FN2. Out of courtesy, 3M made the Court aware of its pending application for reexamination. While the PTO was making its decision, the present action moved forward in accordance with the scheduling order.

ANALYSIS

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1968669 (S.D.Iowa)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1968669)

Page 2

3M has moved to stay this matter based on the PTO's granted reexamination of the patent-in-suit. This case has a long and convoluted history even before the present circumstances giving rise to this motion. Prior to even coming to rest before this Court, this action proceeded from the United States District Court for the Northern District of Illinois to the Federal Circuit and back multiple times. Now, the present motion comes after eight years of litigation and with just over two months remaining before trial. Middleton resists the motion based primarily on the short time left before trial and the delay in seeking reexamination. Middleton also contends 3M lacks the authority to even bring the pending motion.

Briefly, the PTO recently granted [FN3] 3M's request for reexamination of the '514 Patent based on the determination that the multiple independent prior art references identified by 3M in its application "raised substantial new questions of the patentability of claims 4-7," the patent claims at issue in the present infringement action.[FN4] Based upon this determination, 3M contends "[i]t is now highly likely that the PTO will either declare these claims of [the '514 Patent] invalid, or require Middleton to narrow the claims to avoid the prior art references." See Tap Pharm. Prods., Inc. v. Atrix Labs., Inc., 2004 WL 422697, at *2 (N.D.Ill. March 4, 2004) ("There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope.").[FN5] 3M contends the result of the reexamination could end or dramatically impact the remaining issues in this case, especially considering the PTO found all 13 references cited in the reexamination patent, either alone or in combination, relevant to patentability. Therefore, 3M requests the Court stay all proceedings in this case pending the outcome of the reexamination by the PTO. Specifically, 3M argues the stay should be granted because this will allow for the most efficient use of the Court's resources, it will simplify the issues for trial, and it will not unduly prejudice Middleton.

> FN3. The determination was mailed by the PTO on July 19, 2004, and received by 3M on July 26, 2004.
>
> FN4. The prior art references identified by 3M consist of the following: U.S. Patent No. 3,785,102 ("Amos"); U.S. Patent No. 4,151,319 ("Sackoff"); U.S. Patent No. 4,543,765 ("Barrett"); U.S. Patent No. 4,328,274 ("Tarbutton"); Russian Patent Publication SU 1,111,880 ("Shevchenko"); U.S. Patent No. 3,665,543 ("Nappi"); Japanese Patent Document Sho 61-98834 ("Shirasu"); Unexamined German Patent Application Number 1,809,794 ("Wilson"); U.S. Patent No. 3,788,941 ("Kupits"); U.S. Patent No. 2,987,103 ("Yakubik"); U.S. Patent No. 4,221,620 ("Milne"); U.S. Patent No. 4,095,340 ("Kingsley"); and U.S. Patent No. 4,115,917 ("Charon").
>
> FN5. "Generally speaking, the PTO invalidates 10% of the patents it reexamines and amends the claims in 64%." Tap Pharm. Prods., Inc., 2004 WL 422697, at *2.

A. Statutory Authority to Request a Stay

*2 Middleton first argues that 3M lacks the statutory authority to request a stay. Middleton bases this assertion on an examination of the statues governing patent reexamination. Pursuant to section 318 of the Patent Statute,

Once an order for *inter partes* reexamination of a patent has been issued under section 313, *the patent owner* may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the *inter partes* reexamination order, unless the court before which such litigation is pending determines that a stay would not serve the interests of justice.

35 U.S.C. § 318 (emphasis added).

Middleton claims this section clearly limits the rights set forth to those of the patent owner. In contrast, section 311 of the Patent Statute provides that *"[a]ny person* at anytime may file a request for *inter partes* reexamination...."35 U.S.C. § 311(a) (emphasis added). When Congress uses different terms in a statute, the presumption is that those terms have different meanings. See Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 497, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). Therefore, according to Middleton, while "any person" may file an *inter partes* reexamination request, only "the patent owner" may seek a stay of litigation once such a

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1968669 (S.D.Iowa)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1968669)

Page 3

request is granted.

Further, courts generally refer to Federal Rule of Civil Procedure 1 ("Rule 1"), allowing for "the just, speedy, and inexpensive determination of every action," when reciting their authority to grant a stay of proceedings. *See, e.g.,W. Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis,* 138 F.Supp.2d 1015, 1029 (W.D.Tenn.2000). Regulations cannot, however, trump the plain language of conflicting statutes. *Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703, 709 (11th Cir.1998) (quoting *Robbins v. Bentsen,* 41 F.3d 1195, 1198 (7th Cir.1994)); *seealsoCaldera v. J.S. Alberici Constr. Co.,* 153 F.3d 1381, 1383 n.\*\* (Fed.Cir.1998) (finding that "[s]tatutes trump conflicting regulations"). Because the relevant statute provides that "the patent owner" can ask for a stay in the event of an *inter partes* reexamination, Middleton contends that Rule 1 does not give the Court the broader authority to grant such a request by 3M, which is not the patent owner.

This contention is easily resolved as Middleton disregards the Court's inherent discretionary power to issue a stay. *SeeSoftview Computer Prods. Corp. v. Haworth, Inc.,* 2000 WL 1134471, at \*2 (S.D.N.Y. Aug.10, 2000) (finding "there is no question that a district court in which an infringement action has been filed has the discretion to stay the infringement action pending the outcome of the reexamination proceeding") (citing *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988)); *see alsoRobert H. Harris Co. v. Metal Mfg. Co.,* 1991 WL 217666, at \*3 (E.D.Ark. June 21, 1991) ("Whether the action should be stayed pending the outcome of the reexamination proceeding before the PTO resides in the discretion of the court."). The Court has this discretion even though the reexamination procedure does not expressly provide for an automatic stay of parallel district court proceedings. *Softview Computer Prods. Corp.,* 2000 WL 1134471, at \*2 (citations omitted); *see alsoGrayling Indus., Inc. v. GPAC, Inc.,* 1991 WL 236196, at \*1 (N.D.Ga. March 25, 1991) ("The decision whether to stay proceedings in district court while a reexamination by the PTO takes place, while not vested expressly in the discretion of the district court by the statute, has been recognized to be within the district court's inherent discretionary power.").

\*3 As the courts have recognized, "Congress stated its approval of district courts liberally granting stays within their discretion" when the committee stated " '[i]t is believed by the committee that *stay provisions are unnecessary in that such power already resides with the Court*....' " *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.,* 1987 WL 6314, at \*2 (quoting H.R.Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, *reprinted in*1980 U.S.Code Cong. & Ad. News 6460, 6463 (emphasis added)); *see alsoFisher Controls Co. v. Control Components Inc.,* 443 F.Supp. 581, 581 (S.D.Iowa 1977) ("The district court's power to stay proceedings has been drawn purposefully broad and is discretionary."). Indeed, "[c]ourts have routinely stayed infringement actions pending the outcome of reexamination proceedings," *Softview Computer Prods. Corp.,* 2000 WL 1134471, at \*2 (citations omitted), and Middleton has cited to no authority supporting the limitation it asserts. Accordingly, this Court finds it has the authority to issue a stay in the present matter if the circumstances weigh in favor of staying the proceedings. *SeeGould v. Control Laser Corp.,* 705 F.2d 1340, 1341-42 (Fed.Cir.1983).[FN6]

> FN6. In addition, as noted in footnote 1, this is an *ex parte* reexamination, while the statutes relied on by Middleton in raising this argument apply to *inter partes* reexaminations.

B. Standard for Motion to Stay

Generally, courts consider the following factors in determining whether to grant a stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set."*Softview Computer Prods. Corp.,* 2000 WL 1134471, at \*2-3 (quoting *Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citations omitted)). In other words, based on these factors the Court determines whether the benefits of a stay outweigh the associated costs.

The advantages that may result from a stay of the district court proceedings pending completion of reexamination by the PTO include,

"1. All prior art presented to the Court will have been

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1968669 (S.D.Iowa)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1968669)

Page 4

first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court."

*Emhart Indus., Inc.*, 1987 WL 6314, at *2 (quoting *Fisher Controls Co.*, 443 F.Supp. at 582 (S.D.Iowa 1977)).[FN7] Reexamination may result in the elimination of most, if not all, of the issues remaining in the pending litigation. *See Gould*, 705 F.2d at 1342. If not found invalid, the reexamination will at least likely result in a narrowing and simplifying of the issues before the Court.[FN8] *See Loffland Bros. Co. v. Mid-Western Energy Corp.*, 1985 WL 1483, at *2 (W.D.Okla. Jan.3, 1985). In addition, the technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain. *See Gould*, 705 F.2d at 1342.

> FN7. "Although not binding on the Court, the PTO's determination will be admissible and will carry a presumption of validity." *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Co.*, 68 U.S.P.Q.2d 1755, 1759 (E.D.Mich.2003).

> FN8. This is because the scope of the patent claims, which the PTO may narrow or otherwise limit, controls the outcome of any subsequent infringement analysis. *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed.Cir.2002) (finding "an assessment of whether an accused device infringes claims of a patent necessarily involves both an identification and interpretation of the asserted claims, and a comparison of the properly interpreted claim limitations to the elements of the accused device").

*4 Plaintiff makes three primary arguments against issuance of a stay. First, Middleton argues the issuance of a stay will not promote judicial economy. Second, Middleton urges the Court to deny the stay based on 3M's delay in filing for reexamination. Third, Middleton contends it will be prejudiced if the stay is granted. In the alternative, if the Court determines a stay is warranted, Middleton requests the Court grant a stay only as to those issues before the PTO. Each of these contentions is summarized and discussed below.

1. Judicial Economy

Both parties accept that one factor in determining the propriety of a stay of proceedings in the face of reexamination is the judicial economy that such stay would promote. Middleton contends that, contrary to 3M's assertions, a stay would not promote judicial economy at all in this case because of the amount of preparation by the parties thus far. This matter has now been pending for eight years, and that fact alone would seem to argue strongly against a stay. However, despite the lengthy pendency of this matter in the Northern District of Illinois, the validity of the '514 patent has only been explored by the parties for a little over a year, in isolation hardly an unusual period of time for development of such issues.

According to Middleton, the court in *Toro Co. v. L.R. Nelson Corp.* ruled a stay was unwarranted under similar circumstances.

This suit has been pending in litigation for almost 3 1/2 years. Before the motion for stay was filed, the court had under advisement a motion by defendant for summary judgment, which may well be dispositive of the issue of validity of asserted claims 14 and 15. Those factors militate against a stay at this stage of the proceedings.

The pendency of this suit does not necessarily preclude any further proceedings which the Patent Office may choose to pursue. It is the opinion of the

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1968669 (S.D.Iowa)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1968669)

Page 5

court that its granting of a stay order would accomplish little, other than the delay of disposition of a suit which has, until now, run an overly protracted course.

*Toro Co. v. L.R. Nelson Corp.*, 223 U.S.P.Q. 636, 638 (C.D.Ill.1984).

Middleton contends that the factual circumstances impacting judicial economy in *Toro* and in the present case are vastly different than those involved in the cases cited by 3M. *SeeTap Pharm. Prods., Inc.*, 2004 WL 422697, at *1 ("Plaintiffs have known from the start of this case three months ago that the pending reexaminations could create grounds for a stay. As of yet, this case has not progressed beyond the initial pleadings stage; the parties have not engaged in any discovery and have not filed any other substantive motions."); *Ralph Gonnocci Revocable Living Trust*, 68 U.S.P.Q.2d at 1758 ("This action has been pending for less than a year. Undoubtably the parties have spent considerable time and resources thus far-substantial discovery has been conducted and the parties have submitted witness lists and three lengthy summary judgment motions. Yet far more time and resources remain to be spent before this matter is concluded. Two responses to motions for summary judgment must be submitted, the Court has not begun to review those motions, and much remains to be done by the parties and the Court to prepare this case for trial."); *Softview Computer Prods. Corp.*, 2000 WL 1134471, at *3 ("[A]lthough there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous summary judgment motions have been served, the *Markman* hearing has not yet been held and the Pretrial Order has not yet been prepared."); *Robert H. Harris Co., Inc.*, 1991 WL 217666, at *4 ("[T]his action has been pending less than a year. Although it is set for trial next month, the Court is not persuaded that this a case which has 'run an overly protracted course' ... The parties appear not to have engaged in expensive discovery or extensive pretrial preparation") (citations omitted); *Emhart Indus., Inc.*, 1987 WL 6314, at *3 (noting that "substantially no trial preparations have been carried out-there is no pretrial order in place and no trial schedule has been set"). Arguably, none of these cases was at the stage of litigation that the present case indicates.

*5 In the present action, all summary judgment motions have been fully briefed, and discovery appears essentially complete. Accordingly, Middleton claims a stay at this point would do little to serve the interests of judicial economy, and would only have the effect of further delaying final resolution of this matter, which has already been pending far too long.

Additionally, Middleton contends 3M's reliance in part on *Standard Havens Products, Inc. v. Gencor Industries, Inc.* is misplaced as Middleton does not base its opposition to the present motion to stay on the proposition found to be faulty. *SeeStandard Havens Prods., Inc. v. Gencor Indus., Inc.*, 996 F.32d 1236, 1993 WL 172432, at *1 (Fed.Cir. May 21, 1993) (reversing the lower court's decision denying a stay, as such decision was based upon the obviously incorrect proposition that a "reexamination decision can have no effect on this infringement suit even if the reexamination decision becomes final.").[FN9]

> FN9. Middleton also notes that this decision is unreported and, as such, "shall not be employed as precedent by this court, and may not be cited by counsel, except in support of a claim of res judicata, collateral estoppel, or law of the case."Fed. Cir. R. 47.8. However, the decision is relevant not as precedent but to demonstrate the final result of issues similar to those in the present case.

At least one court found the fact that discovery is complete and the case set for trial has been found to be the most compelling reason to justify denial of a motion to stay pending reexamination by the PTO. *SeeEnprotech Corp. v. Autotech Corp.*, 1990 WL 37217, at *1-2 (N.D.Ill. March 16, 1990) (finding these factors the most compelling and concluding the action was "too far along the road to justify halting the journey while the defendant explores an alternate route" in denying the motion to stay). Likewise, this is the most compelling argument made by Middleton in resisting the pending motion to stay.

In the present case, the litigation has been ongoing for over eight years.[FN10] The trial date is set and is scheduled for the week of October 12, 2004. In addition, several motions for summary judgment

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1968669 (S.D.Iowa)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1968669)

Page 6

remain pending that may be dispositive of some or all of the issues remaining in the case. Discovery is completed, and the parties are most likely well into their trial preparation. Thus, the parties have already spent a considerable amount of time and money on the pending litigation. On its face, these facts seem to weigh against granting a stay.

> FN10. As indicated in the text, most of the history of this case occurred in the Northern District of Illinois and the Federal Circuit through litigation activities promoted by both parties. The issue now before the Court is of much more recent vintage.

However, these facts should be weighed against the benefits of issuing a stay. As argued by 3M, the following factors weigh in favor of issuing a stay: (1) a stay will be the most efficient use of judicial resources by preventing duplication of effort; (2) the reexamination may simplify and narrow the issues in the case; and (3) the Court will be able to benefit from the expertise of the PTO. Moreover, a stay issued pending reexamination "is not for such a protracted or indefinite period" as reexamination proceedings are to " 'be conducted with special dispatch." ' FN11 *Gould*, 705 F.2d at 1341 (quoting 35 U.S.C. § 305). Thus, while some courts have denied a stay based on the end of discovery and the proximity of trial, *see Toro Co.*, 223 U.S.P.Q. at 638; *Enprotech Corp.*, 1990 WL 37217, at *2, the ultimate determination is within the Court's discretion based on a weighing of the benefits of issuing a stay versus any added expenses resulting from the stay.

> FN11. One study listed the average pendency of a reexamination to be 19 months. *See* Note, "Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination", 66 Geo. Wash. L.Rev. 172, 192 app. A (Nov.1997). This note is, however, over seven years old, and the parties were unable to indicate to the Court whether this estimate is accurate, though Defendant's counsel thought, but could not state definitively, that the average pendency has been shortened.

*6 In the present action, the Court finds the element of judicial economy does in fact weigh in favor of granting the motion to stay. First, a stay would preserve the costs of a trial on the merits that may be obviated by the results of the reexamination. Second, even if a trial is ultimately required, the Court can have all issues heard in one trial on the proper scope of the patent claims. In addition to limiting the issues at trial, the reexamination decision may also limit the issues in the currently pending dispositive motions. Finally, the Court will be able to use the expertise of the PTO in making further determinations as related to the proper patent claims. In that regard, the Court is influenced by the breadth of the reexamination and the number of prior art references under active review.

The Court acknowledges the considerable expense already endured by the parties in the present action but notes that these costs will not be recouped by denying a stay and proceeding to a trial. This may actually compound the parties' expenses if some or all of the issues need to be retried later as a result of the reexamination. In addition, the Court disagrees with Middleton's contention that only incremental resources will be expended if the action proceeds to trial. It is simply not efficient to rule on three motions for summary judgment, complete pretrial, and hold a full jury trial if all or part have to be redone. The apparent scope of the reexamination, the technical expertise of the PTO, and the relationship to the issues in this case suggest to the Court a great likelihood that the continuing work of this Court would be impacted by the reexamination. The judicial efforts that a stay would preserve outweigh any additional cost in staying the proceedings even at this late juncture.

C. Filing for Reexamination

Middleton also argues that 3M's delay in filing reexamination warrants denying the motion. As noted above, 3M did not seek reexamination of the patent-in-suit until well after the commencement of the litigation. In addition, one of the references upon which 3M relied in seeking reexamination was one of its own patents. Under these circumstances, Middleton contends that it is an inevitable conclusion that 3M delayed unduly in seeking reexamination.FN12

> FN12. Middleton avers this is not the first time that 3M has used the reexamination procedure to engage in delay. For proof,

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1968669 (S.D.Iowa)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1968669)

Page 7

Middleton cites to the decision in *Freeman v. Minnesota Mining & Mfg. Co.*, in which the court, apparently anticipating a motion to stay from 3M, had the following to say:

> Though not before the Court, it seems worthwhile to state the Court's view on granting a stay of court proceedings pending the PTO reexamination. In *Digital Magnetic,* the court commented that 'parties should not be permitted to abuse the [reexamination] process by applying for reexamination after protracted, expensive discovery or trial preparation.'...Discovery was concluded in this case seven months ago, and the first of the two suits was filed two and a half years ago. Moreover, 3M knew about all three of the documents on which its reexamination petition will be based no later than August 8, 1986. To allow 3M to now use the reexamination process to get this case stayed would be to allow a defendant to use the reexamination as a mere dilatory tactic.

*Freeman v. Minnesota Mining & Mfg. Co.*, 661 F.Supp. 886, 888 (D.Del.1987) (citations omitted). However, 3M's actions in another case are not relevant to the present action, especially considering the court's statement in *Freeman* was *anticipatory* and not in reaction to any actual motion to stay filed by 3M, let alone any proof that 3M was so moving for the purpose of delaying or unduly protracting the litigation. 3M's motion in the present case will be analyzed on its own merits and under the circumstances of the present action.

Courts have generally considered a delay in seeking reexamination in evaluating the propriety of a stay in light of such reexamination. Indeed, "[t]he potential for abuse inherent in granting a stay where the petition for reexamination comes very late and without explanation is apparent."*Grayling Indus., Inc.*, 1991 WL 236196, at *2. For example, in *Enprotech Corp.*, the defendant first raised the question of reexamination and an associated stay some 18 months after the commencement of litigation and four months before trial. *Enprotech Corp.*, 1990 WL 37217, at *1. That court, in denying the motion to stay, stated "[w]e are too far along the road to justify halting the journey while the defendant explores an alternate route."*Id.* at *2; *see alsoToro Co.*, 223 U.S .P.Q. at 638 (denying stay given three and a half year delay).

*7 Middleton asserts again that the authority cited by 3M in support of granting a stay is inapposite on this issue. In *Emhart Industries, Inc.*, the court found that although there was a delay in filing reexamination, that delay was the fault of the patentee in postponing needed discovery regarding the prior art. *Emhart Indus., Inc.*, 1987 WL 6314, at *3 ("Whatever plaintiff's reasons were for postponing these depositions, plaintiff will not now be heard to object to defendant's motion for stay on the grounds that too much time has passed since the commencement of this litigation.").

With regard to the other authority cited by 3M, in no instance was the delay between the commencement of the suit and the request for reexamination nearly as long as in this case. *SeeTap Pharm. Prods., Inc.*, 2004 WL 422697, at *1 (reexamination requests were filed before the lawsuit began); *Ralph Gonnocci Revocable Living Trust*, 68 U.S.P.Q.2d at 1756 (request for reexamination filed within two months of the defendant's counsel's notice of appearance, and within eight months of commencement of suit); *Robert H. Harris Co.*, 1991 WL 217666, at *4 (request for reexamination filed within one year of commencement of suit); *Loffland Bros. Co.*, 1985 WL 1483, at *1 (request for reexamination filed within one year of commencement of suit); *Gioello Enterprises Ltd. v. Mattel, Inc.*, 2001 WL 125430, at *1 (D.Del. Jan. 29, 2001) (request for reexamination filed within 18 months of commencement of suit); *Grayling Indus., Inc.*, 1991 WL 236196, at *1 (reexamination request filed within two years of commencement of suit).[FN13]

> FN13. It is unclear in the *Softview Computer* decision, also relied upon by 3M, how much time elapsed between the commencement of suit and the reexamination request. *Softview Computer Prods. Corp.*, 2000 WL 1134471, at *1.

3M seeks to justify its delay in filing for

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1968669 (S.D.Iowa)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1968669)

Page 8

reexamination by arguing there was a discovery stay in place as to validity that was "implicitly" lifted on March 11, 2003. Middleton counters by stating that, in the first place, the prior art upon which 3M based its request for reexamination was not the result of any discovery efforts engaged in by 3M and that 3M has not taken a single deposition on the subject prior art after such art was identified. Middleton asserts that 3M could have filed for reexamination at the PTO at any time, notwithstanding any discovery stay imposed by a district court. Finally, even if 3M was somehow impeded by a discovery stay, it still took 3M over a year after the stay was "implicitly" lifted to file its reexamination request. Middleton contends that under the circumstances of the present case, a one-year delay is inexcusable, and 3M should not be allowed to benefit from its delay.

Middleton seemingly misses the point in arguing 3M's delay warrants denial of the motion to stay. More important than when the reexamination application was made was the purpose behind said application. Thus, instead of looking solely at when the application was made with regard to the pending litigation, the Court looks at whether the petition for reexamination was made with a dilatory purpose. See _Grayling Indus., Inc.,_ 1991 WL 236196, at *2-3;_Emhart Indus., Inc.,_ 1987 WL 6314, at *3. While the timing of the application is relevant in making this determination, the Court also looks to the proffered reasons for the delay. See _Ralph Gonnocci Revocable Living Trust,_ 68 U.S.P.Q.2d at 1758 ("Plaintiff may be correct that [defendant] did not act swiftly in seeking reexamination. Nothing in the record, however, indicates when [defendant] became aware of the prior art which is the basis for his request for reexamination.... Thus the Court cannot conclude that [defendant] unnecessarily delayed seeking a reexamination or that he is doing so now to stall this litigation."); _Grayling Indus., Inc.,_ 1991 WL 236196, at *3 (finding that "although it is not clear that Plaintiffs had good reason for the delay in petitioning the PTO for reexamination, neither has Defendant shown such egregiously dilatory conduct as would justify short-circuiting the reexamination procedure now that Plaintiffs have invoked it"). Moreover, if "the Court finds that the benefits of granting a stay in the present proceedings outweigh the burdens, it need not decide whether the defendant could actually have filed its request at an earlier date."_Emhart Indus., Inc.,_ 1987 WL 6314, at *3.

*8 In the present action, Middleton has presented no evidence, beyond pointing out that one of the prior art references asserted by 3M was its own patent, that indicates 3M had knowledge of the prior art and could have made the request for reexamination much earlier. Due to the stay of discovery on issues related to the validity issue, 3M was not actively pursuing this issue.[FN14] Significantly, 3M had won a judgment of non-infringement on two different occasions in the Northern District of Illinois. Accordingly, 3M may have had little reason to pursue the issue of validity until the stay on discovery was lifted. 3M also argues that under the last decision from the Federal Circuit, the construction of the claims at issue was significantly broadened.

> FN14. Middleton argues that 3M did not have its hands tied by the Illinois court but instead put all its eggs into the infringement basket, holding in abeyance any argument on validity even though 3M has alleged validity from the beginning.

The record indicates it was not until this decision, and the subsequent course of the proceeding, that 3M began to actively pursue the validity issue. In May 2003, 3M received information pursuant to discovery that was relevant to this issue. Based on this information, 3M was able to gather additional information. Upon determining the validity of the '514 patent was an issue, 3M drafted the reexamination application, notified the Court, submitted a motion for summary judgment on validity, and, as soon as the reexamination was granted, moved for a stay. The Court finds it is not unreasonable under all of the unique circumstances of this case that it took 3M nearly a year from this time to file for reexamination, particularly in light of the numerous prior art references discovered, both domestic and foreign.

The Court finds that any delay in filing for reexamination is not cause to deny the motion to stay. While 3M may be guilty of focusing too much attention on the infringement issue, it was led on that course by the proceedings in the action. As soon as validity became a very real issue, 3M did not unduly delay in moving for reexamination. Moreover, there is no evidence that 3M has moved for a stay solely for a dilatory purpose beyond Middleton's argument

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1968669 (S.D.Iowa)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1968669)

Page 9

to the contrary.

D. Prejudice to Middleton

Pursuant to section 318 of the Patent Statute, a court is not to issue a stay if it "would not serve the interests of justice." 35 U.S.C. § 318. Middleton contends that because of the prejudice it would incur should a stay be granted, such interests would not be served. When Middleton first filed suit against 3M, the patent in suit had more than a decade of useful life remaining, whereas now it is due to expire in less than three years. If 3M's proposed stay is granted, Middleton claims that it is likely that there will be no life remaining in the patent in suit in the event this matter is revived following reexamination; however, this fact alone is not sufficient to deny the motion to stay. See Tap Pharm. Prods., Inc., 2004 WL 422697, at *1 (dismissing plaintiff's argument that patent may expire thereby depriving them of any injunctive remedy because patent may still expire before trial is completed).

*9 3M answers by stating that monetary compensation is sufficient to remedy infringement. Middleton disagrees and asserts that while it has no intention of commercializing the '514 patent, it would be deprived of its right to exclude others under the patent, stating that 3M's position would be tantamount to a compulsory license for using the patented invention. The Federal Circuit has found this to be an inadequate remedy for infringement. See, e.g., Reebok Int'l, Ltd. v. Baker, Inc., 32 F.3d 1552, 1557 (Fed.Cir.1994); Hybritech Inc. v. Abbott Lab., 849 F.2d 1446, 1456-57 (Fed.Cir.1988). According to Middleton, because it stands to lose its ultimate remedy for patent infringement in the event 3M's proposed stay becomes a reality, Middleton will be severely prejudiced by such a stay, and this warrants denial of 3M's motion.

At present Middleton is not, however, selling or marketing products under its patent. Indeed, it has never done so and thus has no market to protect. Under similar circumstances, a district court found "money damages is an adequate remedy for any delay in redress" where the patentee was not "selling or actively licensing goods or services related to" the patent in suit. Gioello Enters, Ltd., 2001 WL 126350, at *2; see also Emhart Indus., Inc., 1987 WL 6314, at *2 (finding that "notwithstanding plaintiff's argument that monetary damage will not compensate for its losses, this is a suit for money damages and plaintiff has never sought preliminary injunctive relief from the Court").

Middleton is not currently selling products related to the patent in issue and would be entitled to any money damages if infringement is ultimately found. Ultimately, the Court finds this is sufficient to protect Middleton from suffering any undue prejudice or a clear tactical disadvantage. Should the action proceed to trial following reexamination, the Court may still order appropriate injunctive relief. In addition, Middleton would be entitled to money damages if proven, and there is no immediate danger of not being able to collect said damages from 3M.

E. Alternatively, Granting Stay Solely on Issues Before the PTO

In the alternative, if the Court issues a stay in light of the reexamination, Middleton urges that the stay be limited to those issues pending before the PTO as part of the reexamination proceedings, i.e., anticipation and obviousness. Thus, the issues of infringement, willfulness, damages, and inequitable conduct would continue before the Court under Middleton's plan. Under this proposal, any judgment would not become final until the PTO has ruled on the reexamination and the parties' appeal rights have been exhausted unless the Court makes the judgment final as to those issues tried,[FN15] thereby entitling the parties to appeal the judgment immediately.

FN15. See Fed.R.Civ.P. 54(b).

As concerns the issue of validity, 3M's request was for a reexamination proceeding pursuant to Chapter 30 of the Patent Statute. Pursuant to section 315 of the Patent Statute,

*10 A third party requester whose request for an *inter partes* reexamination results in an order under section 313 is estopped from asserting at a later time, in any civil action arising in whole or in part under section 1338 of title 28, the invalidity of any claim finally determined to be valid and patentable on any ground which the third party requester raised or could have raised during the *inter partes* reexamination proceeding.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1968669 (S.D.Iowa)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1968669)

Page 10

35 U.S.C. § 315(c). In other words, in the event the PTO finds the subject claims patentable, 3M would be estopped from returning to court to re-argue validity of those claims. Therefore, Middleton contends that staying only those issues before the PTO would be a practical solution that would provide Middleton with more timely relief on the remaining issues.

The PTO's reexamination could, however, affect more than just the validity issues before the Court. Indeed, a PTO decision that the '514 Patent is invalid could render moot the issues of validity *and* infringement. *See* *Gioello Enters. Ltd.,* 2001 WL 125340, at *1 (finding the PTO's decision could render moot the issues of non-infringement and invalidity before the court in pending motions for summary judgment); *ASCII Corp. v. STD Entm't USA, Inc.,* 844 F.Supp. 1378, 1380-81 (N.D.Cal.1994) (finding stay was justified because if claims were cancelled in reexamination then the need to try the infringement issue would be eliminated); *Loffland Bros. Co.,* 1985 WL 1483, at *2 ("The reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled.")."In addition, if a final decision of unpatentability means the patent was void *ab initio,* then damages would also be precluded."*Standard Havens Prods., Inc.,* 1993 WL 172432, at *1. The issues of inequitable conduct and willfulness may not be impacted by the PTO's determination, *see* *Enprotech Corp.,* 1990 WL 37217, at *1 (finding reexamination would not affect the inequitable conduct claim at issue), though to only proceed on these two issues would not serve the interests of justice. Therefore, the Court finds it would not be appropriate to stay only a portion of the pending issues.

## CONCLUSION

For the foregoing reasons, the Court hereby grants Defendant's Motion to Stay the Proceedings Pending Reexamination of U.S. Patent No. 4,944,514 by the Patent and Trademark Office (Clerk's No. 170). The Court finds a high likelihood that results of the PTO's reexamination would have a dramatic effect on the issues before the Court, up to and including dismissal of the entire action if the patent claims are found to be unpatentable. In any event, the Court will benefit from the PTO's expertise and determination on reexamination, and Middleton will not be unduly prejudiced by the stay. Thus, under the unique circumstances of this case the Court finds the benefits of issuing the stay outweigh the arguments made by Middleton in resistance to the motion.

*11 IT IS SO ORDERED.

S.D.Iowa,2004.
Middleton, Inc. v. Minnesota Mining and Mfg. Co.
Not Reported in F.Supp.2d, 2004 WL 1968669 (S.D.Iowa)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.