# EXHIBIT 5

Dockets.Justia.com



**H**Cooper Technologies Co. v. Thomas & Betts Corp.
E.D.Tex.,2008.
Only the Westlaw citation is currently available.
United States District Court,E.D. Texas,Marshall
Division.
COOPER TECHNOLOGIES CO.
v.
THOMAS & BETTS CORP.
No. 2:06-CV-242.

March 31, 2008.

Robert Stanford Harrell, James Leroy Beebe,
Fulbright & Jaworski - Houston, Clay Erik Hawes,
Paul E. Krieger, Morgan, Lewis & Bockius-Houston,
Houston, TX, Deborah J. Race, Otis W. Carroll, Jr.,
Ireland Carroll & Kelley, Tyler, TX, Franklin Jones,
Jr., Jones & Jones - Marshall, Marshall, TX, for
Cooper Technologies Co.
Samuel Franklin Baxter, McKool Smith - Marshall,
Marshall, TX, Alan M. Fisch, Coke M. Stewart,
Jason F. Hoffman, Kelly A. Clement, Kevin W.
Jakel, Roy W. Sigler, Kaye Scholer - Washington,
Washington, DC, for Thomas & Betts Corp.

### *MEMORANDUM OPINION AND ORDER*

CHARLES EVERINGHAM IV, United States
Magistrate Judge.
*1 Before the court is the defendant's **motion** (# 20)
to **stay** this action **pendingreexamination** of the
**patents**-in-suit. For the foregoing reasons, the court
denies the defendant's motion.

### 1. Background

In this case, Cooper Technologies, Co. ("Cooper")
contends that Thomas & Betts, Corp. ("Thomas &
Betts") infringes various claims of U.S. Patent Nos.
6,504,103 and 6,984,791. The '791 patent issued from
an application that was a continuation of the
application that underlies the '103 patent. The
patents-in-suit are each entitled, "Visual Latching
Indicator Arrangement for an Electrical Bushing and
Terminator."

On December 21, 2006, T & B filed a request with
the U.S. Patent and Trademark Office ("PTO") for an
*ex parte* reexamination of the '103 patent, and an
*inter partes* reexamination of the '791 patent. In early
2007, the PTO granted both requests, and Thomas &
Betts filed the instant motion to stay this action. This
motion is now ripe for review.

### 2. Discussion

"The district court has the inherent power to control
its own docket, including the power to stay
proceedings."*Soverain Software LLC v. Amazon.*
*com, Inc.,* 356 F.Supp.2d 660, 662 (E.D.Tex.2005)
(citations omitted). Management of the court's docket
requires "the exercise of judgment, which must
weigh competing interests and maintain an even
balance."*Landis v. North American Co.,* 299 U.S.
248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

Courts typically consider three things when deciding
whether to stay litigation pending reexamination: "(1)
whether a stay will unduly prejudice or present a
clear tactical advantage to the nonmoving party, (2)
whether a stay will simplify the issues in question
and trial of the case, and (3) whether discovery is
complete and whether a trial date has been
set."*Soverain Software LLC,* 356 F.Supp.2d at 662.

The court will separately address each patent in light
of the distinct nature of each reexamination
proceeding.

### A. A Stay of the '103 Patent Proceedings Pending *Ex Parte* Reexamination is Not Appropriate.

### 1. Prejudice and Tactical Advantage

Cooper and Thomas & Betts are direct competitors.
In addition, the PTO has not provided any definitive
guidance on the length of time required for the
reexamination. Accordingly, the potential delay for
an indefinite period would likely prejudice Cooper.
*See Ricoh Co., Ltd. v. Aeroflex, Inc.,* 2006 WL
3708069, *2 (N.D.Cal. Dec.14, 2006); *Lexington*
*Lasercomb I.P.A. G. v. GMR Products, Inc. .,* 442
F.Supp.2d 1277, 1278 (S.D.Fla.2006). This factor

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

weighs against a stay of the '103 patent proceedings.

## 2. Simplification of the Case

Thomas & Betts contends that a stay will simply the case because the '103 patent claims will likely materially change or become void during the reexamination proceeding. However, it is also likely that some of the patent's claims will survive reexamination. Accordingly, waiting for the completion of the reexamination may only simplify the case to a limited degree. This factor is speculative and does not support a stay.

## 3. Stage of the Proceedings

**\*2** The present motion was filed early in the case, in advance of the court's scheduling conference. Therefore, this factor supports a stay of the proceedings.

The court has considered the competing interests, and concludes that the interest in proceeding with the '103 patent proceedings outweighs any benefits from staying these proceedings. As such, the court finds that granting a stay of the '103 patent proceedings is not appropriate.

## B. A Stay of the '791 Patent Proceedings Pending *Inter Partes* Reexamination is Not Appropriate.

## 1. Prejudice and Tactical Advantage

For the reasons discussed above, the court finds that this factor weighs against a stay of the '791 patent proceedings.

## 2. Simplification of the Case

If the court stays the '791 proceedings, Thomas & Betts will be estopped from making the same invalidity arguments in this case that it makes to the PTO during the reexamination proceeding. 35 U.S.C. § 315(c). This estoppel will usually simplify the issues in the case. However, in this action, the '103 patent and the '791 patent share a written description, and the claims of both patents are directed to closely-related subject matter. Because the ' 103 patent is subject to *ex parte* reexamination, Thomas & Betts will not be estopped from urging invalidity

arguments in this case against the '103 patent that are similar to the invalidity arguments it makes against the ' 791 patent during reexamination. The related nature of the patents-in-suit, combined with the *ex parte* reexamination of the '103 patent, counteract the effects of the *inter partes* reexamination proceeding. As such, this factor weighs against staying this case.

## 3. Stage of the Proceedings

The present motion was filed early in the case, in advance of the court's scheduling conference. Therefore, this factor supports a stay of the proceedings.

The court has considered the competing interests, and concludes that the interest in proceeding with the '791 patent proceedings outweighs any benefits from staying these proceedings. As such, the court finds that granting a stay of the '791 patent proceedings is not appropriate.

## 4. Conclusion

The court finds that a stay of the '103 patent pending *ex parte* reexamination is not appropriate. Because the '103 patent and '791 patent share a written description, and have claims that are directed to closely-related subject matter, a stay of the '791 patent proceedings pending *inter partes* reexamination is also not appropriate. Therefore, the court denies Thomas & Betts' motion (# 20) to stay this action pending completion of the reexamination proceedings.

E.D.Tex.,2008.
Cooper Technologies Co. v. Thomas & Betts Corp.
Slip Copy, 2008 WL 906315 (E.D.Tex.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.


**H**Fujitsu Ltd. v. Nanya Technology Corp.
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
FUJITSU LIMITED, a Japanese corporation, and
Fujitsu Microelectronics America, Inc., a California
corporation, Plaintiffs,
v.
NANYA TECHNOLOGY CORP., a Taiwanese
corporation, and Nanya Technology Corp., U.S.A., a
California corporation, Defendants.
No. C 06-6613 CW.

Nov. 6, 2007.

Christopher E. Chalsen, Michael M. Murray,
Lawrence T. Kass, Milbank, Tweed, Hadley &
McCloy LLP, New York, NY, Mark Scarsi,
Christopher Holm, Milbank, Tweed, Hadley &
McCloy LLP, Los Angeles, CA, for Plaintiffs.
Michael W. Shore, Alfonso G. Chan, Jeffrey R.
Bragalone, Shore Chan Bragalone LLP, Dallas, TX,
Martin C. Fliesler, Rex Hwang, Fliesler Meyer LLP,
San Francisco, CA, for Defendants.

ORDER DENYING DEFENDANTS' MOTION TO
STAY PROCEEDINGS PENDING RE-
EXAMINATION OF PATENTS

CLAUDIA WILKEN, J.
*1 Defendants Nanya Technology Corp. and Nanya
Technology Corp., U.S .A. (collectively, Nanya)
move for a stay of the portion of these proceedings
concerning U.S. Patent Nos. 4,801,989, 6,104,486,
6,292,428, 6,320,819 and 5,227,996 until the U.S.
Patent and Trademark Office (PTO) has completed
its re-examination of the patents. Plaintiffs Fujitsu
Ltd. and Fujitsu Microelectronics America
(collectively, Fujitsu) oppose Defendants' motion.
The matter was taken under submission on the
papers. Having considered all of the papers submitted
by the parties, the Court denies Nanya's motion.

BACKGROUND

On September 13, 2006, Nanya filed a lawsuit
against Fujitsu in the District of Guam alleging

antitrust violations and infringement of three of
Nanya's patents, and seeking a declaration that it did
not violate any of fifteen of Fujitsu's patents. A
month later, Fujitsu filed suit against Nanya in this
Court alleging infringement of the five patents listed
above, all of which were among the fifteen patents in
the Guam action.

The parties disputed whether the Guam court had
personal jurisdiction over Fujitsu; there is no
significant connection between Guam and either the
parties or the cause of action. The matter was the
subject of extensive jurisdictional discovery. On July
27, 2007, the Guam court ordered the action
transferred to this district, where it was assigned Case
No. 07-3672.This Court subsequently related the 07-
3672 action to the present 06-6613 action and
consolidated the two. It later severed and stayed all
anti-trust issues and Nanya's patent misuse
affirmative defense.

While the Guam proceeding was still underway,
merits-based discovery in this action began pursuant
to a case management order issued on February 7,
2007. Under the order, fact discovery is scheduled to
be completed on February 1, 2008; dispositive
motions are set to be heard by September 26, 2008;
and trial is scheduled to begin on January 12, 2009.
Nanya claims to have produced just under 100,000
pages of documents to date, largely pursuant to its
disclosure obligations under the Local Patent Rules.
Nanya states that Fujitsu has provided less than 4,000
pages of documents in connection with its disclosures
under the Local Patent Rules, and has not provided
any documents in response to Nanya's requests for
production. Fujitsu counters that it has produced
800,000 pages of material, including documents
produced in the Guam action. It argues that much of
this material goes to the merits of the case. No
merits-based depositions have yet taken place.

Between June 21, 2007 and July 20, 2007, as the
Guam court was reaching a resolution of the
jurisdiction question and as discovery was
proceeding in this case, Nanya filed five requests for
re-examination with the PTO. In those requests,
Nanya used previously unexamined prior art to
challenge the patentability of the five patents it is

accused of infringing.[FN1] The requests were filed after Nanya had already produced at least 80,000 pages of documents during discovery. *See* Holm Dec. Exs. 1 and 3.

> FN1. In its reply, Nanya claims to have begun filing these requests on May 15, 2007. Nanya does not support this assertion with any evidence, and the May 15 date is not consistent with other filings in this case. *See* Docket Nos. 128, 129, 130, 132, and 133 (notices of the PTO's grant of Nanya's re-examination requests).

*2 Between August 3, 2007 and September 11, 2007, the PTO granted all of Nanya's requests. In doing so, it found that substantial questions existed concerning the patentability of certain claims in each of the five patents. On October 4, 2007, Nanya moved the Court for a stay of the portion of these proceedings concerning the patents undergoing re-examination. Nanya also stated that, if the Court were to grant its motion, it would file a Rule 41 motion to dismiss without prejudice all of its claims for declaratory judgment based on the ten Fujitsu patents that Fujitsu has not asserted against it. Nanya apparently wishes to go forward with its own infringement claims against Fujitsu.

## DISCUSSION

As the Federal Circuit has noted, "Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO examination." *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) (citation omitted). While courts are not required to stay judicial proceedings pending re-examination of a patent, a stay for purposes of re-examination is within the district court's discretion. *See, e.g., Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 603 (Fed.Cir.1985). One court in this district has noted that there is "a liberal policy in favor of granting motions to stay proceedings pending the outcome" of re-examination or re-issuance proceedings, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery. *ASCII Corp. v. STD Entm't USA, Inc.,* 844 F.Supp. 1378, 1381 (N.D.Cal.1994).

In determining whether to stay a case pending re-examination, a court may consider the following factors: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay would simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *In re Cygnus Telecomm. Tech., LLC Patent Litig.,* 385 F.Supp.2d 1022, 1023 (N.D.Cal.2005).

Nanya characterizes this case as in an early stage of discovery, noting that the parties only completed their disclosures pursuant to the Local Patent Rules in June, 2007, and that no merits-based depositions have yet been taken. Nonetheless, significant factual discovery has already taken place. By Nanya's own account, it has produced nearly 100,000 pages of documents going to the merits of the case. Fujitsu, for its part, has produced over 800,000 pages of material. While much of this was produced in the Guam action in connection with the jurisdictional dispute, Fujitsu asserts that at least 100,000 pages of these documents go to the merits of the case. *See* Holm Dec. Ex. 5. The parties have also exchanged material on claim construction and their contentions of infringement and invalidity. The fact that much of this discovery may have been compelled by the Local Patent Rules rather than by the parties' discovery requests does not detract from its significance. In fact, discovery has proceeded to such a degree that the parties plan to substantially complete document production by November 16, 2007. Additionally, pursuant to the Court's case management order, less than four months remain before all fact discovery is to be concluded. Considering also that fact discovery will not be significantly affected by the results of the examination proceedings, the Court sees no good reason to stay the remainder of fact discovery pending a conclusion of those proceedings.

*3 Additionally, while the outcome of the PTO's re-examination proceedings could simplify the issues in this case, the chance of any given patent emerging from a third-party-initiated re-examination with all re-examined claims canceled is only twelve percent. Holm Dec. Ex. 16. Thus, the chance that all five of the patents will have all of the re-examined claims canceled is 0.0025 percent. It is therefore very unlikely that the PTO proceedings will completely eliminate the need to move forward with this case.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Fujitsu argues that it will be severely prejudiced if this case is stayed pending re-examination. It notes that, during any stay, "witnesses may become unavailable, their memories may fade, and evidence may be lost."These concerns are valid. The Court also agrees with Fujitsu that it would be unreasonable to permit Nanya to proceed on its infringement claims against Fujitsu while staying Fujitsu's infringement proceedings against Nanya, as Nanya proposes.

The Court notes that Nanya could have filed its requests for re-examination with the PTO at an early point in this litigation. Instead, it waited until nine months after initiating the Guam action-which itself was the source of considerable delay and expense-and after hundreds of thousands of documents had been produced. Nanya should not succeed in obtaining a tactical advantage over Fujitsu by continuing to delay these proceedings. Accordingly, the Court declines to exercise its discretion to issue a stay pending re-examination of the patents by the PTO.

## CONCLUSION

For the foregoing reasons, Nanya's motion for a stay (Docket No. 134) is DENIED. The case will proceed according to the deadlines contained in the Court's existing case management order.

IT IS SO ORDERED.

N.D.Cal.,2007.
Fujitsu Ltd. v. Nanya Technology Corp.
Slip Copy, 2007 WL 3314623 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.))

Page 1

KLA-Tencor Corp. v. Nanometrics, Inc.
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
KLA-TENCOR CORPORATION, a Delaware
corporation, Plaintiff,
v.
NANOMETRICS, INC., a California corporation,
Defendant.
**No. C 05-03116 JSW.**

March 16, 2006.

Michael N. Edelman, Michael H. Kalkstein, Ben S. Bedi, Daniel T. McCloskey, Dechert, LLP, Palo Alto, CA, for Plaintiff.
Peter H. Kang, Matthew Laurence McCarthy, Teague I. Donahey, Sidley Austin LLP, San Francisco, CA, for Defendant.

ORDER GRANTING DEFENDANT'S MOTION
TO STAY ALL PROCEEDINGS PENDING
REEXAMINATION OF PATENTS-IN-SUIT

JEFFREY S. WHITE, J.
*1 Now before the Court is Defendant Nanometrics, Inc.'s ("Nanometrics") Motion to Stay Proceedings Pending Reexamination of Patents-in-Suit. Having considered the parties' pleadings, relevant legal authority, and the parties' arguments at the hearing on this matter, the Court HEREBY GRANTS Defendant's motion and STAYS ALL PROCEEDINGS with respect to all patents-in-suit.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff KLA-Tencor Corporation ("KLA-Tencor"), the assignee of United States Patents Nos. 6,483,580 ("the '580 patent") and 6,590,656 ("the '656 patent"), brought this action claiming that Nanometrics had infringed these patents by manufacturing, offering for sale and/or selling six devices, including but not limited to the Atlas metrology system and/or other metrology systems. (Declaration of Michael N. Edelman in Support of KLA-Tencor's Opposition to Stay ("Edelman Decl."), Ex. A at 2-3; Declaration of Edward V. Anderson in Support of Motion to Stay

Pending Reexamination ("Anderson Decl. 1"), Ex. A at 1.) KLA-Tencor then filed a first amended complaint adding a cause of action for infringement of United States Patent No. 6,611,330 ("the '330 patent"). (Edelman Decl., Ex. H.)

This litigation is in the early stages. Both parties have propounded, and one has responded to, their first set of requests for production of documents. (*See* Declaration of Edward V. Anderson in Support of Motion to Stay and *Ex Parte* Motion to Shorten Time ("Anderson Decl. 2"), Ex. 4; *see also* Edelman Decl., Exs. L-N.) The tutorial has been set for August 22, 2006, but no trial date has yet been set. Magistrate Judge Spero has established a schedule for an exchange of discovery plans and a date and time for a discovery conference. Neither claim construction briefing nor discovery has occurred on the '330 patent infringement cause of action that KLA-Tencor has recently added.

On December 21, 2005, the United States Patent & Trademark Office ("PTO") granted Nanometrics's requests for reexamination of the '580 patent and the '656 patent. (Anderson Decl. 2, Exs. 1, 2.) On February 21, 2006, Nanometrics filed a request for reexamination of the '330 patent with the PTO. (Nanometrics's Notice of New Authorities, Ex. A.)

On January 6, 2006, Nanometrics filed the instant motion. Nanometrics moves the Court for a stay of all proceedings, including the litigation as to the '330 patent infringement cause of action, pending the reexamination of the '580 and '656 patents. (Mot. at 2.) KLA-Tencor urges this Court to deny Nanometrics's motion on the following grounds: (1) a stay should not be entered where the reexamination does not implicate all patents-in-suit; (2) considerations of judicial efficiency militate in favor of permitting discovery on the infringement of all patents-in-suit; (3) a stay would substantially prejudice KLA-Tencor and unnecessarily delay the action given the slow pace of PTO reexamination proceedings; and (4) a stay would put KLA-Tencor at a clear tactical disadvantage.

ANALYSIS

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.))**

Page 2

A. Legal Standards Applicable to a Motion to Stay Proceedings Pending Reexamination.

**\*2** The patent reexamination statute provides in pertinent part that "[a]ny person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under the provisions of section 301."35 U.S.C. § 302. The PTO must "determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request...."35 U.S.C. § 303(a). The reexamination statute further provides that "[a]ll reexamination proceedings ... including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch."35 U.S.C. § 305.

The determination of whether to grant a stay pending the outcome of the PTO's reexamination is soundly within the Court's discretion. *See Tap Pharm. Prods. Inc. v. Atrix Labs. Inc.,* 70 U.S.P.Q.2d 1319, 1320 (N.D.Ill.2004) (citing *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1341 (Fed.Cir.1983)). When ruling on such a stay, courts consider several factors: (1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court. *Id.; Methode Elecs., Inc. v. Infineon Techs. Corp.,* No. 99-21142, 2000 U.S. Dist. LEXIS 20689, at \*5-6 (N.D.Cal. Aug. 7, 2000). There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings."*ASCII Corp. v. STD Entertainment,* 844 F.Supp. 1378, 1381 (N.D.Cal.1994).

B. The Early Stage of the Litigation Weighs in Favor of Granting a Stay.

The early stage of a litigation weighs in favor of granting a stay pending reexamination. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc.,* 33 U.S.P.Q.2d 2022, 2023 (N.D.Cal.1995) (holding that the absence of "significant discovery" or "substantial expense and time ... invested" in the litigation weighed in favor of staying the litigation); *see also*

*ASCII Corp.,* 844 F.Supp. at 1381 (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial. Here, discovery has just begun. Nanometrics and KLA-Tencor have each propounded their first set of requests for the production of documents, and Nanometrics has responded to KLA-Tencor's first set of requests. (*See* Anderson Decl. 2, Ex. 4; Edelman Decl., Exs. L-N.) Magistrate Judge Spero just recently laid out a schedule for an exchange of discovery plans. Neither party has conducted any discovery with respect to the '330 patent-in-suit. The tutorial has been set for August 22, 2006, but no trial date has been set. Therefore, the fact that this case is still in the early stages and the parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. *See Target Therapeutics,* 33 U.S.P.Q.2d at 2023.

C. A Stay Will Not Unduly Prejudice KLA-Tencor.

**\*3** In determining whether to grant a stay, courts also consider any resulting undue prejudice on the nonmoving party. *See Methode Elecs.,*2000 U.S. Dist. LEXIS 20689, at \*7. Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. *Id.* KLA-Tencor correctly notes that "the average time for the completion of a reexamination is approximately 18.2 months," excluding appeals. *Rohm and Haas Co. v. Brotech Corp.,* 24 U.S.P.Q.2d 1369, 1372 (D.Del.1992). However, parties having protection under the patent statutory framework may not "complain of the rights afforded to others by that same statutory framework."*Pegasus Dev. Corp. v. DirecTV, Inc.,* 2003 WL 21105073, at \*2 (D.Del. May 14, 2003). Nanometrics "is legally entitled to invoke the reexamination process," and the PTO has already determined to reexamine two of the three patents-in-suit. *See id.*Moreover, if after reexamination the PTO again upholds KLA-Tencor's patents, this will only strengthen KLA-Tencor's rights because Nanometrics's burden of proof becomes more onerous. *See id.*Under such circumstances, the delay inherent to the reexamination process does not constitute, by itself, undue prejudice. *See id.*

As a result, courts also consider evidence of dilatory motives or tactics, such as when a party unduly

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.))

Page 3

delays in seeking reexamination of a patent. *Methode Elecs.,* 2000 U.S. Dist. LEXIS 20689 at *7. KLA-Tencor has failed to show, beyond the delay implicit in the reexamination process, how it would be unduly prejudiced or tactically disadvantaged if this Court were to grant a stay. In particular, the Court finds no evidence of dilatory tactics on Nanometrics's part in seeking reexamination at this early stage of the litigation. This is not a case where reexamination is sought on the eve of trial or after protracted discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc.,* 983 F.Supp. 1126, 1128 (S.D.Tex.1997) (finding that "courts are inclined to deny a stay when the case is set for trial and the discovery phase has almost been completed"). Rather, KLA-Tencor filed its complaint on August 1, 2005, the PTO granted Nanometrics's requests to reexamine the '580 and '656 patents on December 21, 2005, and Nanometrics filed its motion to stay proceedings on January 6, 2006. (Edelman Decl., Ex. A at 4; Anderson Decl. 2, Exs. 1, 2.) In addition, KLA-Tencor filed a stipulation and proposed order seeking to add the '330 patent on January 26, 2006, and Nanometrics filed a request for reexamination of the '330 patent on February 21, 2006. (Nanometrics, Inc.'s Notice of New Authorities, Ex. A.) This does not evince dilatory motives. Furthermore, KLA-Tencor will be fully compensated for delays if it prevails at reexamination and trial. *See Brown v. Shimano Am. Corp.,* 18 U.S.P.Q.2d 1496, 1496 (C.D.Cal.1991). Thus, because a stay will not unduly prejudice KLA-Tencor, this factor also weighs in favor of granting a stay.

D. A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both the Parties and the Court.

*4 The PTO is currently reexamining two of the three patents-in-suit and reviewing Nanometrics's request for reexamination of the third patent-in-suit. (Anderson Decl. 2, Exs. 1, 2; Nanometrics's Notice of New Authorities, Ex. A.) Statistical information regarding reexamination indicates that the PTO confirms all claims in approximately 24% of the cases, cancels all claims in approximately 12% of the cases, and changes some claims in approximately 64% of the cases. *Rohm and Haas,* 24 U.S.P.Q.2d at 1372. These statistics "suggest that in a typical case there is a substantial probability a reexamination will have a major impact on the issues to be resolved in

the litigation."*Id.* This is because "waiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial by providing the court with the opinion of the PTO and clarifying the scope of the claims."*Target Therapeutics,* 33 U.S.P.Q.2d at 2023;*see also Pegasus,* 2003 WL 21105073, at * 1-2 (noting the benefits of granting a stay pending reexamination include potentially narrowing the issues, reducing the complexity and length of trial, alleviating discovery problems relating to prior art, and encouraging settlement or even dismissal if the patent is declared invalid).

When there are overlapping issues between the reexamined patents and other patents in suit, courts have found staying the entire case to be warranted. In *Methode,* for example, the court stayed the litigation of both the reexamined and non-reexamined patents because the issues regarding the non-reexamined patent "may be narrowed or amended as a result of the PTO's decision."*Id.* Moreover, the *Methode* court stayed the litigation of both the reexamined and non-reexamined patents because "it appears that there are overlapping issues" in the infringement action of the two patents. *Id.* If the court stayed the litigation with respect to the reexamined patents-in-suit only, duplicative discovery could have resulted because there were likely to be common documents and witnesses in the infringement litigation of the two patents. *Id.*

Similarly, here, even though the PTO has not determined yet whether it will reexamine the '330 patent, a stay of the entire suit is warranted because the reexamination of the '580 and '656 patents may significantly affect the litigation of the '330 patent. First, at the hearing on the instant motion, KLA-Tencor conceded that it accuses the same Nanometrics products of infringement of all three patents-in-suit. Second, Nanometrics argued at the hearing on this matter, and KLA-Tencor did not dispute, that the only real difference in discovery would involve the deposition of the different inventor of the '330 patent. Otherwise, as Nanometrics argued, the engineering and sales personnel deposed would be the same for all three patents-in-suit. Third, KLA-Tencor conceded at the hearing that there are overlapping issues between all three patents-in-suit. For example, the "first optics focusing a polarized sample beam of broadband radiation onto the surface

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.))

Page 4

of the sample" language of claim 28 of the '330 patent overlaps with the "optics providing a sampling beam of polarized broadband radiation and directing the beam towards the structure at an oblique angle" language of claim 111 of the '580 patent. Therefore, a stay will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court.

**\*5** Finally, in determining whether to grant a stay of an entire case, courts consider whether there would remain, after the PTO reexamination, issues "completely unrelated to patent infringement" for which a stay would not reduce the burden of litigation on both the parties and the court. *Imax Corp. v. In-Three, Inc.,* 385 F.Supp.2d 1030, 1033 (C.D.Cal.2005). If such matters "would continue to be an issue ... a stay would not preserve many resources."*Id.* at 6.

Here, the only claims in the case are for patent infringement. Therefore, the Court finds that there are no issues in the case unrelated to patent infringement for which the PTO's expertise resulting from the reexamination process would not be helpful. Accordingly, the Court finds that a stay of the entire case pending reexamination of the '580 and '656 is warranted.

Therefore, having considered the factors relevant in determining whether to grant a stay pending reexamination, the Court hereby GRANTS Nanometrics's motion to stay all proceedings pending reexamination of the '580 and '656 patents.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Nanometrics's motion to stay pending reexamination of the '580 and '656 patents. The proceedings are stayed from the date of this Order until further notice. The Court HEREBY ORDERS the parties to submit a joint status report regarding the status of the reexamination proceedings every 120 days, or sooner if the PTO issues a final decision with respect to any of the patents-in-suit, until the stay in this case is lifted.

If the PTO grants Nanometric's application to reexamine the '330 patent and the reexamination proceedings for the '330 patent extend beyond those

for the '580 and '656 patents, the Court will entertain a motion extend the stay at that time.

IT IS SO ORDERED.

N.D.Cal.,2006.
KLA-Tencor Corp. v. Nanometrics, Inc.
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Slip Copy
Slip Copy, 2007 WL 772891 (W.D.Mich.)
(Cite as: 2007 WL 772891 (W.D.Mich.))

Page 1

©Magna Donnelly Corporation v. Pilkington North
America, Inc.
W.D.Mich.,2007.
Only the Westlaw citation is currently available.
United States District Court,W.D. Michigan,Southern
Division.
MAGNA DONNELLY CORPORATION, Plaintiff,
v.
PILKINGTON NORTH AMERICA, INC., et al.,
Defendants.
**No. 4:06-CV-126.**

March 12, 2007.

David Michael Schoenherr, Jeffrey A. Sadowski,
Kristopher K. Hulliberger, Howard & Howard
Attorneys PC, Bloomfield Hills, MI, for Plaintiff.
John Frank Rabena, Sughrue Mion PLLC,
Washington, DC, Scott L. Gorland, James D.
Vandewyngearde, Pepper Hamilton LLP, Detroit,
MI, for Defendants.

### OPINION

ROBERT HOLMES BELL, Chief United States
District Judge.
**\*1** Plaintiff Magna Donnelly Corporation has filed
the instant patent infringement action under 35
U.S.C. §§ 101 and 271, alleging that Defendants
Pilkington North America, Inc. and United L-N
Glass, Inc. have infringed nine patents-in-suit to
which Magna Donnelly is the current assignee of
right.[FN1] The matter presently is before the Court on
Defendants' motion to stay the litigation (Docket #
23) pending determination of Defendants' requests
for reexamination by the United States Patent and
Trademark Office ("PTO") of all of the patents-in-
suit. For the reasons that follow, the motion is
granted.

> FN1. The following are the nine patents-in-
> suit: United States Patent 5,551,197 ("the
> '197 patent"); United States Patent
> 5,704,173 ("the '173 patent"); United States
> Patent 5,853,895 ("the '895 patent"); United
> States Patent 5,966,874 ("the '874 patent");
> United States Patent 6,068,719 ("the '719

patent"); United States Patent 6,128,860
("the '860 patent"); United States Patent
6,298,606 ("the '606 patent"); United States
Patent 6,319,344 ("the '344 patent"); and
United States Patent 6,871,450 ("the '450
patent").

## I.

The instant action was filed on October 17, 2006
against these and other Defendants. The nine patents-
in-suit involve a series of bonded vehicular window
assemblies and bonding methods. Plaintiff alleges
that Defendants are willfully manufacturing
automotive windows that infringe upon Plaintiff's
patents and are thereby causing Plaintiff a loss of
sales and undermining Plaintiff's competitive
position.

After a stipulated dismissal of the other named
Defendants, the remaining Defendants filed answers
to the complaint, affirmative defenses and
counterclaims on December 28, 2006. Defendants'
counterclaims seek declaratory judgment on the
grounds of noninfringement, invalidity and
unenforceability of the patents. Plaintiff answered
Defendants' counterclaims on January 17, 2007. The
Court ordered a scheduling conference before the
Magistrate Judge for January 29, 2006.

In the interim, on January 26, 2007, Defendant
Pilkington filed requests with the PTO for
reexamination of all nine patents. The requests for
reexamination seek to invalidate the patents-in-suit
on the grounds of prior art not considered by the PTO
during prosecution of the patents-in-suit. On January
29, 2007, Defendants filed the instant motion to stay
the litigation pending resolution by the PTO of the
requests for reexamination. During the scheduling
conference held that same date, the Magistrate Judge
reserved issuing a scheduling order until after this
Court had resolved the instant motion. At this date,
due dates for FED. R. CIV. P. 26(a)(1) disclosures,
fact discovery and expert discovery have not been
established and no discovery has been conducted. In
the parties' joint status report filed January 24, 2007,
Plaintiff has requested that Rule 26(a)(1) disclosures
be delayed until May 1, 2007.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 772891 (W.D.Mich.)
(Cite as: 2007 WL 772891 (W.D.Mich.))

Page 2

## II.

Reexamination of patent validity is allowed under 35 U.S.C. § 301*et seq.* A reexamination may be requested at any time by any person upon showing the existence of "prior art," "consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent."35 U.S.C. §§ 301, 302. Within three months of the request, the PTO must determine "whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications."35 U.S.C. § 303(a). Reexamination, if granted, may result in an order cancelling the patent as unpatentable, confirming the patent, or amending the patent. *See*35 U.S.C. § 282; *Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC,* 464 F.Supp.2d 481, 483 (D.Md.2006).

**\*2** "The primary purpose of the reexamination procedure is to 'eliminate trial of that issue (when the [patent] is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the [USPTO] (when a claim survives the reexamination proceedings)." ' *ASCII Corp. v. STD Entm't USA, Inc.* ., 844 F.Supp. 1378, 1380 (N.D.Cal.1994) (quoting *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed.Cir.1983)); *Glafish v. Tyco Toys, Inc.,* 1993 WL 625509, 29 U.S.P.Q.2d 1718 (E.D.Cal. Sept.15, 1993). The intent of Congress in establishing the reexamination procedure was to provide an inexpensive and rapid resolution that would provide the federal courts with the expertise of the PTO in resolving patent claims. *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 602 (Fed.Cir.1985). Courts have noted that issuing a stay has many advantages, including the narrowing or elimination of issues, the alleviation of discovery problems, the encouragement of settlement, the benefit to the court of PTO expertise, the simplicity of introducing the PTO record as evidence at trial, and the reduction of costs for both the parties and the court. *See Lectrolarm Custom Servs., Inc. v. Vicon Indus., Inc.,* No. 03-2330, 2005 WL 2175436, at \*2 (W.D.Tenn. Sept.1, 2005); *Ralph Gonocci Revocable Living Trust v. Three M Tool & Machine, Inc.,* 2003 U.S. Dist. LEXIS 24423, 68 U.S.P.Q.2D (BNA) 1755 (E.D.Mich. Oct.7, 2003) (quoting *Emhart Indus. v. Sankyo Seiki Mfg. Co. Ltd.,* 1987 U.S. Dist. LEXIS

15033, 3 U.S.P.Q.2D 1889, 1890 (N.D.Ill.1987)); *see also Softview Computer Prods. Corp. v. Haworth, Inc.,* 2000 U.S. Dist. LEXIS 11274, 56 U.S.P.Q.2D 1633, 1635 (S.D.N.Y.2000).

The decision whether to issue a stay rests within the sound discretion of the district court. *Bausch & Lomb Inc. v. Alcon Labs., Inc.,* 914 F.Supp. 951, 953 (W.D.N.Y.1996); *Gonocci,*2003 U.S. Dist. LEXIS 24423 at \*5 (citing *Gould,* 705 F.2d at 1342.) In determining whether to grant a stay, courts routinely have considered three factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *See, e.g., Akzenta,* 464 F.Supp.2d at 484;*IMAX Corp. v. In-Three, Inc.,* 385 F.Supp.2d 1030, 1032 (C.D.Cal.2005); *Lectrolarm,* 2005 WL 2175436, at \*3;*Gonocci,*2003 U.S. Dist. LEXIS 24423 at \*7; *Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406-07 (W.D.N.Y.1999).

Defendants argue that, in the instant case, all three factors point to the granting of a stay. The Court finds that, on balance, the factors weigh heavily in favor of a stay.

### A. Simplification of Issues

Defendants argue that a stay of litigation pending determination by the PTO will simplify or moot the issues before this Court. In addition, the grant of a stay will benefit the Court by ensuring the availability of the PTO's expertise and experience to resolve the remaining issues. Further, they argue that the PTO's reexamination is likely to prevent either the parties or the Court from litigating claims that may be declared void by the PTO. For all these reasons, they argue that both efficiency and judicial economy favor staying the litigation.

**\*3** In response, Plaintiff contends that, because only 12% of reexamination proceedings result in the invalidation of a patent and because Plaintiff views Defendants' grounds for reexamination as weak, the litigation, in all likelihood, will not be mooted by the PTO's reexamination. While Plaintiff acknowledges that in 59% of the cases, some claims are changed during reexamination, it argues that, because trial will still likely be necessary and because invalidity of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 772891 (W.D.Mich.)
(Cite as: 2007 WL 772891 (W.D.Mich.))

Page 3

patents will continue to be an issue, the reexamination procedure will not simplify the case.

Plaintiff's argument proves too much. The mere fact that reexamination is not likely to completely dispose of the case does not mean that issues will not be simplified by reexamination. The statistics recited by both parties clearly indicated that patent claims are invalidated or modified in over 70% of reexamination proceedings conducted. The cases cited by the parties strongly suggest that reexamination generally, though not always, simplifies litigation. *See, e.g., Gonocci,* 2003 U.S. Dist. LEXIS 24423 at 13 (noting that, even if issues are not eliminated, the PTO's decision will be admissible and will carry a presumption of validity); *Softview,* 2000 U.S. Dist. LEXIS 11274 at *10 (emphasizing the significance of PTO's expertise as factor in simplification); *IMAX,* 385 F.Supp.2d at 1032 (recognizing that stay will always simplify the issues to some extent by narrowing discovery and providing PTO expertise, even if in particular case, other claims are so likely to predominate that simplification is not sufficient). Those cases cited by Plaintiff to the contrary typically rest on the particular facts and stage of the litigation in issue, where the potential for simplification is small. *See, e .g., Nexmed Holdings, Inc. v. Block Inv., Inc.,* No. 2:04-cv-288, 2006 WL 149044, at *1 (D.Utah Jan.19, 2006) (noting that, because the defense of invalidity was waived and the case was at late stage of proceedings, stay would not simplify issues); *Cognex Corp. v. Nat'l Instruments Corp.,* No. Civ. A. 00-442-JJF, 2001 WL 34368283 (D.Del. June 29, 2001) (in light of late stage of litigation and existence of large number of claims not linked to the patent infringement claim, reexamination would not significantly simplify the case); *Glafish,* 1993 WL 625509, at *2 (because PTO does not consider the type of evidence that predominates in the case, a trial considering such evidence would remain necessary).

Moreover, courts routinely have recognized the benefits to courts of having PTO expertise and experience to inform patent trial proceedings. *See Bausch & Lomb,* 914 F.Supp. at 953 ("Because the PTO is considered to have expertise in deciding issues of patentability many courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it.") (citations omitted). Congress itself has recognized that "an advantage of the reexamination process is that it allows the validity of the patent to be 'tested in the Patent Office where the most expert opinions exist and at a much reduced cost.' " *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426 (Fed.Cir.1988)) (quoting H. Rep. 1307(I), 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S.C.C.A.N. 6460, 6463; *see also Patlex,* 758 F.2d at 602;*Gould,* 705 F.2d at 1342).

**\*4** The Court is persuaded that reexamination is likely to simplify both the issues remaining before the Court and the trial on those issues. Nine patents are in issue and Defendants have filed reexamination petitions of between 50 and 100 pages on each. The particulars of the prior art are technical, complicated and interrelated. *See Gonocci,* 2003 U.S. Dist. LEXIS 24423 at *13. Defendants affirmatively defend the case on the grounds of patent invalidity and they have filed a counterclaim on that issue. *Cf. Nexmed,* 2006 WL 149044, at * 1. By all parties' representations, it is statistically likely that reexamination will result in at least some modification of the claims, even if no patents are canceled. And both discovery and trial on the matter will be greatly simplified by having the opinion and expertise of the PTO before the Court. *See, e.g., Gonocci,* 2003 U.S. Dist. LEXIS 24423 at 13 (noting that the PTO's decision will be admissible and will carry a presumption of validity). Moreover, most of the issues pending in the litigation are closely related to patent validity. *Cf. Cognex,* 2001 WL 34368283, at *2 (finding little simplification where case contained many claims not related to the patent infringement claim, including copyright and trademark infringement and unfair competition). The Court therefore concludes that this factor strongly favors issuance of a stay.

*B. Stage of the Litigation*

Defendants assert that a stay is particularly appropriate at this early stage of litigation, where neither party has conducted fact discovery and answers have just been served. Plaintiff does not dispute that the action is in its earliest stages. It argues instead that contemporaneous discovery in this action is appropriate in order to most quickly resolve the claim.

The Court concludes that the stage of the litigation weighs strongly in favor of granting Defendants' motion. Defendants have sought reexamination before the PTO and a stay in this Court even before

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 772891 (W.D.Mich.)
(Cite as: 2007 WL 772891 (W.D.Mich.))

Page 4

case scheduling deadlines have been set. It would be difficult to conceive of a case in which this factor more strongly favored the issuance of a stay. *See Gonocci,* 2003 U.S. Dist. LEXIS 24423, at *12 (granting stay where action pending less than a year); *Softview,* 2000 U.S. Dist. LEXIS 11274, at 9 (granting stay, despite fact that case had been pending three years and substantial activity had occurred, because much remained to be done before trial); *ASCII Corp.,* 844 F.Supp. at 1381 (noting that case had been pending less than one year); *cf. Akzenta,* 464 F.Supp.2d at 484 (finding that stage-of-litigation factor did not weigh heavily either way where some discovery had occurred but there existed a dispute about what remained).

## C. *Prejudice to Non-Moving Party*

Plaintiff asserts that it will be prejudiced by issuance of a stay during the pendency of the reexamination proceedings. Plaintiff has filed an extensive affidavit by Niall R. Lynam, Ph.D., Plaintiff's Senior Vice President and Chief Technical Officer, supporting three central claims of prejudice over time. First, Plaintiff contends, Defendants' past patent infringements already have jeopardized Plaintiff's hardware bonding business, which employs 200 people. Second, Plaintiff argues that it is unable to compete with manufacturers that do not respect its patents because, since it does not manufacture the glass, its proprietary technology is its principal competitive advantage. Third, Plaintiff argues that its demand will have little or no meaning if, by the time the reexamination process is concluded, competitors including Defendants have scooped its remaining hardware bonding business.

**\*5** The Court is unpersuaded by Plaintiff's claims that it will be prejudiced in ways not remediable by monetary damages. First, despite Plaintiff's claims that delay would cause irreparable damage to its business, Plaintiff has not sought a preliminary injunction in this matter. Indeed, Plaintiff itself requested in the Joint Status Report that Rule 26(a) disclosures not be required before May 1, 2007. Further, although Plaintiff contends that it did not have clear evidence that Defendants were infringing its patent before October 3, 2006, (Lynam Aff. ¶¶ 11-14, docket # 29, Ex. 1), Plaintiff unquestionably was aware that Defendants purported to have their own process and were competing with Plaintiff as early as

2003 on projects that included specifications tailored to Plaintiff's technology. (Ash Aff. ¶¶ 4-6, docket # 25, Ex. 13; Lynam Aff. ¶¶ 6-12, docket # 29, Ex. 1.) Yet Plaintiff did not file the instant action until October 2006.

In addition, Plaintiff admits it previously has licensed its patents-in-suit. (Lynam Aff. ¶ 12.) Even accepting Plaintiff's claims that the license it issued was limited and does not apply to the RT Window Program, licensure to others suggests that the manufacture of Plaintiff's products by others has not been treated by Plaintiff as imminently threatening to its window business.

Plaintiff argues that courts have recognized that reexamination proceedings can take years to resolve. *See IMAX,* 385 F.Supp.2d at 1033 (noting prejudice in a delay of potentially two years); *St.-Gobain Perf. Plastics. Corp. v. Advanced Flexible Composites, Inc.,* 436 F.Supp.2d 252 (D.Mass.2006) (noting that the average reexamination takes 21 months). Plaintiff therefore contends that it will have lost its competitive position by the time reexamination is complete.

While reexamination procedures undoubtedly take some time to resolve, the PTO is required to decide whether to grant the requests for reexamination within three months, or by April 28, 2007, before initial disclosures were even proposed by Plaintiff.[FN2] As a result, a stay clearly is appropriate at least during that period. Moreover, while courts have found that the average reexamination procedure takes over one-and-one-half years, *see Akzenta,* 464 F.Supp.2d at 485, reexamination cases involved in litigation are required to "be conducted with special dispatch within the [PTO]."35 U.S.C. § 305. Section 2261 of the Manual of Patent Examining Procedure (MPEP) more specifically defines the statutory requirement:

> FN2. Indeed, in a supplement filed on March 8, 2006, Defendants advise the Court that the PTO already has granted reexamination of two of the patents-in-suit because the petitions have raised "substantial new question[s] of patentability affecting claims ... of United States Patent Number[s '173 and '874] ...." (Supp. to Def's Mot. for Stay, Docket # 32, Ex. 1 & 2 at 2.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases.

MPEP 2261. Neither party has indicated the average amount of time for the conduct of proceedings entitled to such special dispatch. However, given the early stages of this litigation and the present litigation delays in this Court caused by judicial vacancies, a stay pending the reexamination process is unlikely to cause substantial prejudice from delay. Reexamination is likely to be completed well before adjudication would be possible in this district.

**\*6** Plaintiff next represents that it will be damaged during certain automakers' bidding processes likely to occur in 2007 to 2008 because the stay will prevent a judicial determination during that time. It asserts that its Engineered Glass Division may have to close if these contracts are lost. However, as previously noted, Plaintiff has not sought to expedite this action or to obtain a preliminary injunction. As the Court has indicated, pretrial preparation and trial in this Court would not be completed in time to satisfy the 2007/2008 deadline upon which Plaintiff rests for its claim of prejudice. As a result, the claim of prejudice does not appear to comport with Plaintiff's conduct to this point.

Finally, the Court notes that, if Plaintiff's patents are ultimately found to be valid and infringed, Defendants will be responsible to Plaintiff for damages, including possible treble damages, for all of the infringing products it has sold. *See Softview*, 2000 U.S. Dist. LEXIS 11274, at \*10-11 (citing 35 U.S.C. § 284). Despite Plaintiff's representations that up to 200 jobs will be lost because Plaintiff's divisions operate on an entrepreneurial basis and must justify program continuations, it is apparent from Plaintiff's own exhibits that the alleged infringements and delay are unlikely to have a significant prejudicial effect on the company. Plaintiff is a multinational corporation with $23 billion in sales in 2005. (Pl. Resp. to Motion to Stay, Ex. 1-B at 4.) Of those total sales, $1.5 billion (6.5%) were in the mirror and window division. (Pl. Resp. to Motion to Stay, Ex. 1-B at 5.) Window sales constituted only 20% of the mirror and window business. (Pl. Resp. to Motion to Stay, Ex. 1-B at 5.) By Plaintiff's own evidence, window sales amount to only 1.3% of Plaintiff's total sales, and the hardware bonding business represents only some fraction of total window sales. Plaintiff has nine "bonded hardware" programs. (Pl. Resp. to Motion to Stay, Ex. 1-B at 17.) As a result, it is clear that the RT contract would represent only a small fraction of Plaintiff's total business. The Court is unpersuaded by either Lynam's affidavit or Plaintiff's own prior conduct that delay will result in the claimed irreparable prejudice.

In sum, balancing all three factors, the Court finds that issuance of a stay pending reexamination by the PTO will promote efficient and expeditious disposition of the claims, will conserve judicial resources, and will ensure that adjudication is informed by the expertise of the PTO. In light of the early stage of the proceedings and the absence of credible evidence that Plaintiff will be prejudiced in a way not fully remediable by monetary compensation, the Court concludes that a stay should issue.

### III.

For the foregoing reasons, the Court will grant Defendants' motion to stay proceedings pending reexamination by the PTO. An order consistent with this opinion shall issue.

W.D.Mich.,2007.
Magna Donnelly Corporation v. Pilkington North America, Inc.
Slip Copy, 2007 WL 772891 (W.D.Mich.)

END OF DOCUMENT



Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2007 WL 627920 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 627920 (N.D.Cal.))

CNanometrics, Inc. v. Nova Measuring Instruments, Ltd.
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court, N.D. California, Oakland Division.
NANOMETRICS, INC., Plaintiffs,
v.
NOVA MEASURING INSTRUMENTS, LTD., et al., Defendants.
No. C 06-2252 SBA.
Docket No. 32.

Feb. 26, 2007.

Alfredo A. Bismonte, Justin T. Beck, Ronald Craig Finley, Jeremy Michael Duggan, Beck, Ross, Bismonte & Finley, LLP, San Jose, CA, for Plaintiffs.
David Schnapf, Neil A. Smith, Sheppard Mullin Richter & Hampton LLP, San Francisco, CA, for Defendants.

**ORDER**

SAUNDRA BROWN ARMSTRONG, United States District Judge.
*1 Before the Court is defendants Nova Measuring Instruments, Ltd. and Nova Measuring Instruments, Inc.'s (collectively "Nova") Motion to Stay Proceedings Pending the Re-examination of the Patent-in-Suit [Docket No. 32]. After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. For the reasons that follow, the Court GRANTS Nova's motion.

**BACKGROUND**

On March 29, 2006, plaintiff Nanometrics, Inc. filed a complaint alleging that Nova is infringing on Patent No. 34,783 ('783). The parties are competitors in the business of inventing, designing, manufacturing, and marketing systems that monitor, measure, and control processes for the semiconductor manufacturing industry. On May 22, 2006, Nova counterclaimed.

The '783 patent is the only patent in dispute. The '783 patent issued in 1991 and expires on February 1, 2010. On December 7, 2006, the United States Patent and Trademark Office (PTO) granted Nova's request for re-examination of the '783 patent. In light of the PTO granting a re-examination of the ' 783 patent, Nova requests the Court stay all proceedings.

**LEGAL STANDARDS**

Re-examination is a procedure by which any person can request that the PTO re-examine or re-evaluate the patentability of an unexpired United States patent. *See*35 U.S.C. § 302; *see also Broadcast Innovation, L.L.C. v. Charter Commc'ns., Inc.,* 2006 WL 1897165, at *1 (D.Colo.2006)."Congress instituted the reexamination process to shift the burden or reexamination of patent validity from the courts to the PTO. Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's specialized expertise to reduce costly and timely litigation."*Canady v. Erbe Elektromedizin GmbH,* 271 F.Supp.2d 64, 78 (D.D.C.2002) (citations omitted).

Courts are not required to stay judicial proceedings pending re-examination of a patent. It is, however, within a district court's discretion to do so. *See, e.g., Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) (citations omitted) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO examination"); *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 603 (Fed.Cir.1985); *Telemac Corp. v. Teledigital, Inc.,* 450 F.Supp.2d 1107, 1110 (N.D.Cal.2006). There is "a liberal policy in favor of granting motions to stay proceedings pending the outcome" of re-examination, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery. *ASCII Corp. v. STD Entm't USA, Inc.,* 844 F.Supp. 1378, 1381 (N.D.Cal.1994); *see also Robert H. Harris Co. v. Metal Mfg. Co.,* 19 U.S.P.Q.2d 1786, 1788 (E.D.Ark.1991) ("[t]he legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays").

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 627920 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 627920 (N.D.Cal.))

Page 2

**\*2** In determining whether to grant a stay pending re-examination, courts consider: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See Telemac,* 450 F.Supp.2d at 1110;*KLA-Tencor Corp. v. Nanometrics, Inc.,* 2006 WL 708661, at \*2 (N.D.Cal.2006); *IMAX Corp. v. In-Three, Inc.,* 385 F.Supp.2d 1030, 1032 (C.D.Cal.2005). A trial court's order staying an infringement suit pending the completion of re-examination proceedings is not appealable. *See Gould v. Control Laser Corp.,* 705 F.2d 1340, 1341 (Fed.Cir.1983), *cert. denied,*464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983).

## ANALYSIS

Nova contends that the re-examination process will either make this litigation moot, or it will significantly narrow the issues for resolution. Nanometrics counters that "[a] stay is not warranted because it would merely delay the day of reckoning."Docket No. 38, at 2. Moreover, Nanometrics asserts that Nova has in the past made multiple re-examination requests of patents held by Nanometrics which have largely been unsuccessful.

## 1. Stage of Litigation

Nova's request for stay comes approximately nine months after the patent infringement claim was brought against it. This litigation is, however, still in the early stages. The parties exchanged initial disclosures on November 30, 2006, and a case management conference was held on December 6, 2006. Discovery has commenced, but it has not proceeded beyond this point. No briefing on claim construction has been filed. No dispositive motions have been submitted. And as currently scheduled, trial will not commence until April 28, 2008, at the earliest. This being the early stage of litigation weighs in favor of granting a stay. *See, e.g., KLA-Tencor,* 2006 WL 708661, at \*2 (granting stay where discovery had just begun); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.,* 33 U.S.P.Q 2d 2022, 2023 (N.D.Cal.1995) (holding that the absence of significant discovery or substantial expense and time invested in the litigation weighed in favor of stay);

*ASCII Corp. v. STD Entm't USA, Inc.,* 844 F.Supp. 1378, 1381 (N.D.Cal.1994) (granting stay where the parties had undertaken little or no discovery).

## 2. Simplification of the Issues for Trial

There is little doubt that should the PTO find the '783 patent invalid, this action will be rendered moot. *See*35 U.S.C. § 307(a) (a decision by the PTO that the re-examined claims of an issued patent are canceled as unpatentable renders the claims unenforceable in the pending litigation and in any future disputes). Moreover, if the PTO should narrow any of the five claims of the '783 patent, the scope of this litigation may be significantly altered and/or simplified. Statistically, there is a good chance that the PTO will do one of these two things. The PTO cancels all claims in approximately twelve percent of all re-examinations, and changes some claims in approximately sixty-four percent. *See KLA-Tencor,* 2006 WL 708661, at \*4;*see also Broadcast Innovation, L.L.C. v. Charter Commc'ns., Inc.,* 2006 WL 1897165, at \*8 n. 8 (D.Colo.2006) (there is a 74% chance that the PTO will eliminate, amend, or otherwise limit the claims at issue).

**\*3** Waiting for the outcome of the re-examination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial by providing the Court with the opinion of the PTO and clarifying the scope of the claims. *See Target Therapeutics,* 33 U.S.P.Q 2d at 2023;*see also Pegasus Dev. Corp. v. DirecTV, Inc.,* 2003 WL 21105073, at \*2 (D.Del.2003) (benefits of granting a stay pending re-examination include potentially narrowing the issues, reducing the complexity and length of trial, alleviating discovery problems relating to prior art, and encouraging settlement or even dismissal if the patent is declared invalid); *Loffland Bros. Co. v. Mid-Western Energy Corp.,* 225 U.S.P.Q. 886, 887 (W.D.Okla.1985). Along these same lines, if the PTO finds some or all of the claims of the patent are invalid, the Court will have wasted resources and the parties will have spent funds addressing an invalid claim or claims if this action goes to trial prior to the re-examination. *See Softview Computer Prods. Corp. v. Haworth, Inc.,* 56 U.S.P.Q.2d 1633, 1636 (S.D.N.Y.2000). On the other hand, if the PTO upholds the validity of the re-examined patent, this is strong evidence that a district court must consider in assessing whether the party

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 627920 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 627920 (N.D.Cal.))

Page 3

asserting invalidity has met its burden of clear and convincing evidence. *See Custom Accessories, Inc. v. Jeffery-Allan Indus., Inc.,* 807 F.2d 955, 961 (Fed.Cir.1986); *Broadcast Innovation,* 2006 WL 1897165, at *2 (D.Colo.2006). Accordingly, the second factor also weighs in favor of granting a stay.

### 3. Undue Prejudice or Clear Tactical Disadvantage to Nanometrics

One of Nanometrics's objections to a stay is that "it would merely delay the day of reckoning."Docket No. 38, at 2. It expresses concern that the ' 783 patent is nearing its expiration date of 2010. By statute, the PTO is required to conduct re-examination proceedings with "special dispatch." *See*35 U.S.C. § 305. Nevertheless, several courts have recognized that the re-examination process may be lengthy. *See, e.g., In re Cygnus Telecommc'ns. Tech. LLC Patent Litig.,* 385 F.Supp.2d 1022, 1023 (N.D.Cal.2005) (finding that re-examinations generally take from six months to three years); *Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406 n. 1 (W.D.N.Y.1999) (suggesting average pendency of re-examination before the PTO is 19.2 months, excluding appeals). Mere delay, without more though, does not demonstrate undue prejudice. Assuming the PTO does not cancel or substantively change the '783 patent, Nanometrics's potential recovery of damages will not be affected by the re-examination proceeding. *See The Laitram Corp. v. NEC Corp.,* 163 F.3d 1343, 1346 (Fed.Cir.1998). Nanometrics will be able to recover for any infringement that occurs prior to 2010. In fact, if the PTO upholds the validity of the patent, then Nanometrics's position is strengthened, and its likelihood of monetary damages will increase. *See Broadcast Innovation, L.L.C.,* 2006 WL 1897165, at *10. Additionally, in this case there is a single patent. Some delay is more than off-set by increased certainty of whether this single patent will survive re-examination and whether there will be any need for litigation.

**\*4** Nanometrics also objects that, in essence, Nova has abused the re-examination process by utilizing it in other litigation between the parties. As Nanometrics characterizes it, Nova has placed 97 of Nanometrics's patent claims in the re-examination process, with only two claims being rejected and three amended. It appears, however, that Nanometrics is referring to a total of two patents that have been

disputed in other cases, and both of these had claims cancelled or amended. This does not suggest a pattern of strategic abuse of the process by Nova.

More importantly, though, is that the re-examination process is a Congressionally created option of which any person or party may avail themselves. "Any person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art ...." 35 U.S.C. § 302. Indeed, "[t]he stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation." *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 606 (Fed.Cir.1985). The fact that Nova has employed this statutory option does not itself suggest abuse of it.

Accordingly, Nanometrics has not shown that it will be unduly prejudiced by a stay or that it will it will be subject to a clear tactical disadvantage if a stay is imposed. Nova's motion will therefore be granted. Given the potential duration of the stay however, the motion is granted without prejudice to Nanometric's revisiting the issue with the Court should prejudice accrue, or if factual circumstances change warranting the Court's lifting the stay.

### CONCLUSION

IT IS HEREBY ORDERED THAT Nova's Motion to Stay Proceedings Pending the Re-examination of the Patent-in-Suit [Docket No. 32] is GRANTED.

IT IS SO ORDERED.

N.D.Cal.,2007.
Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.
Not Reported in F.Supp.2d, 2007 WL 627920 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.


**H**Ricoh Co., Ltd. v. Aeroflex Inc.
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
RICOH COMPANY, LTD, Plaintiff,
v.
AEROFLEX INCORPORATED et al, Defendant.
Synopsys, Inc., Plaintiff,
v.
Ricoh Company, Ltd, Defendant.
**Nos. C03-04669 MJJ, C03-02289 MJJ.**

Dec. 14, 2006.

Jeffrey B. Demain, Jonathan Weissglass, Altshuler Berzon Nussbaum Rubin & Demain, San Francisco, CA, Robert W. Whetzel, Richards, Layton & Finger, Wilmington, DE, Deanna Dahlyce Allen, Eric Oliver, Michael A. Weinstein, Gary M. Hoffman, Esq., Kenneth W. Brothers, Esq., Dicksten Shapiro Morin & Oshinsky LLP, Washington, DC, Edward A. Meilman, Esq., Dickstein Shapiro LLP, New York, NY, for Ricoh Company, Ltd.

Francis Digiovanni, George Pazuniak, Connolly, Bove, Lodge & Hutz, Robert Scott Saunders, Skadden Arps Slate Meagher & Flom, Josy Ingersoll, John Walter Shaw, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, Louis Campbell, Esq., Howrey Simon Arnold & White LLP, Menlo Park, CA, for Aeroflex Incorporated, AMI Semiconductor, Inc., Matrox Graphics, Inc., Matrox International Corporation, Matrox Electronic Systems Ltd., Matrox Tech. Inc.

Brian A. E. Smith, Denise M. De Mory, Ethan B. Andelman, Jaclyn C. Fink, Matthew Greinert, Christopher L. Kelley, Teresa M. Corbin, Howrey Simon Arnold & White LLP, San Francisco, CA, Henry C. Su, Howrey LLP, East Palo Alto, CA, Erik Keith Moller, Matthew E. Hocker, Howrey Simon Arnold & White LLP, Menlo Park, CA, Thomas C. Mavrakakis, Palo Alto, CA, for Aeroflex Incorporated, AMI Semiconductor, Inc., Matrox Graphics, Inc., Matrox International Corporation, Matrox Electronic Systems Ltd., Matrox Tech. Inc., Synopsys, Inc.

## ORDER GRANTING SYNOPSYS' MOTION TO STAY

MARTIN J. JENKINS, United States District Judge.

### INTRODUCTION

**\*1** Before the Court is Synopsys, Inc. ("Synopsys") and Aeroflex Incorporated, AMI Semiconductor, Inc., Matrox Electronic Systems, Ltd., Matrox Graphics, Inc., Matrox International Corp., Matrox Tech, Inc. and Aeroflex Colorado Springs, Inc.'s (collectively the "Customer Defendants") Motion for Stay.[FN1]The motion is opposed by Ricoh Company, Ltd. ("Ricoh" or "Plaintiff"). For the following reasons, the Court **GRANTS** Synopsys and the Customer Defendants' Motion for Stay.

FN1.Docket No. 729,Case No. 03-4669 and Docket No. 536,Case No. 03-2289.Filed December 7, 2006

### FACTUAL BACKGROUND

This case concerns the alleged infringement of U.S. Patent Number 4,922,432 ("the '432 patent") entitled "Knowledge Based Method and Apparatus for Designing Integrated Circuits Using Functional Specifications."By assignment, Ricoh is the owner of the entire right, title, and interest in the '432 patent. Ricoh complains that Synopsys' customers, the Customer Defendants, are infringing on certain claims of the patent. In response, Synopsys complains that Ricoh's suit is an improper effort to improperly extract royalties from the Customer Defendants' use of Synopsys' products, including Design Compiler.

On April 7, 2005, the Court issued a Claim Construction Order (("Claims Construction"), Docket No. 296) construing the language of Claim 13 of the '432 patent. On August 9, 2005, the Customer Defendants moved for summary judgment, asking the Court to hold that Claims 13-17 [FN2] of the '432 patent did not infringe under § 271(g) and to grant declaratory relief that the Synopsis Design Compiler is not capable of infringing the asserted claims. On November 7, 2005, this Court denied Customer Defendants' motion for summary judgment. Currently

pending before the Court are Synopsys and the Customer Defendants' (hereafter collectively, "Defendants") two motions for summary judgment motion asking the Court to hold that the Customer Defendants do not infringe Claims 13-17 of the '432 patent and that the Synopsys Design Compiler system is not capable of infringing the asserted claims.

> FN2. The claims at issue in the '432 patent read as follows:

> 13. A computer-aided design process for designing an application specific integrated circuit which will perform a desired function comprising

> [A] storing a set of definitions of architecture independent actions and conditions;

> [B] storing data describing a set of available integrated circuit hardware cells for performing the actions and conditions defined in the stored set;

> [C] storing in an expert system knowledge base a set of rules for selecting hardware cells to perform the actions and conditions;

> [D] describing for a proposed application specific integrated circuit a series of architecture independent actions and conditions;

> [E]specifying for each described action and condition of the series one of said stored definitions which corresponds to the desired action or condition to be performed; and

> [F] selecting from said stored data for each of the specified definitions a corresponding integrated circuit hardware cell for performing the desired function of the application specific integrated circuit, said step of selecting a hardware cell comprising applying to the specified definition of the action or condition to be performed, a set of cell selection rules

> stored in said expert system knowledge base and generating for the selected integrated circuit hardware cells, a netlist defining the hardware cells which are needed to perform the desired function of the integrated circuit and the interconnection requirements therefor.

> 14. A process as defined in claim 13, including generating from the netlist the mask data required to produce an integrated circuit having the desired function.

> 15. A process as defined in claim 13 including the further step of generating data paths for the selected integrated circuit hardware cells.

> 16. A process as defined in claim 15 wherein said step of generating data paths comprises applying to the selected cells a set of data path rules stored in a knowledge base and generating the data paths therefrom.

> 17. A process as defined in claim 16 including the further step of generating control paths for the selected integrated circuit hardware cells.

On December 7, 2006, Defendants filed the current [FN3] motion to stay. Defendants notified the Court that the United States Patent and Trademark Office ("PTO") issued a non-final office action in the pending examination re-examination of the '432 patent. In that office action the PTO rejected all claims of the '432 patent, including each of the claims asserted in the pending litigation. The PTO ordered Ricoh to respond to the office action within two months and noted that it intends the next office action to be the final office action.

> FN3. On April 3, 2006, this Court denied Defendants' earlier motion to stay. At that time the USPTO's re-examination of the '432 patent had just begun. At that time, this Court found that a stay would be inappropriate.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## LEGAL STANDARD

While courts are not required to stay judicial resolution in view of reexamination, *Viskase Corp. v. American Nat. Can Co.,* 261 F.3d 1316, 1328 (Fed.Cir.2001), a stay for purposes of PTO reexamination is within the district court's discretion. *Patlex Corp. v. Mossinghoff,* 758 F.2d 1394, 603 (Fed.Cir.1985); *see also Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."). A stay is particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue. *See, e.g., Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed.Cir.1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)."). Once the PTO undertakes to reexamine a patent, it shall do so with "special dispatch" and cannot otherwise be compelled to cease reexamination. 35 U.S.C. § 305; *Ethicon,* 849 F.2d at 1426-27.

**\*2** When determining the appropriateness of a stay pending reexamination, the court considers the following three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set."*ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F.Supp. 1378, 1380 (N.D.Cal.1994) (granting stay) (citing *GPAC, Inc. v. DWW Enterprises, Inc.,* 144 F.R.D. 60, 66 (D.N.J.1992)).

## ANALYSIS

Defendants argue that a stay is appropriate because the PTO has issued an office action that has *rejected* all claims of the '432 patent, including the claims at issue in this litigation. Defendants contend that if the PTO determines that the '432 patent in invalid, there is no basis for the instant patent infringement suit.

Defendants also contend that the posture of this case has significantly changed since their last request for a stay. Ricoh disagrees and maintains that nothing has changed since this Court's prior denial of Defendants' request for a stay. The Court now addresses the merits of Defendants' request for a stay and the relevant factors in turn.

## I. Whether a Stay Would Unduly Prejudice or Present a Clear Tactical Disadvantage to the Nonmoving Party

Ricoh argues that the Court has already determined that a stay would prejudice Ricoh when the Court denied Defendants' previous request for a stay. Ricoh contends that a stay would prevent Ricoh from suing other selected ASIC manufacturers. Defendants respond that Ricoh's tactical litigation strategy in suing other ASIC manufacturers is not relevant in the Court's stay analysis. Defendants also point out that the "delay inherent to the reexamination process does not constitute, by itself, undue prejudice."*Photoflex Prods. v. Circa 3 LLC,* 2006 U.S. Dist. LEXIS 37743 at \*5 (N.D.Cal. May 24, 2006) (citing *Pegasus Dev. Corp. v. DirecTV, Inc.,* 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, at \*2 (D.Del. May 14, 2003)).

At the time the Court denied Defendants' previous request for a stay the procedural posture of the reexamination request was significantly different. At that time, the PTO had only recently granted a third-party request for a reexamination of the '432 patent. The PTO had not identified the particular claims at issue or provided any definitive guidance on the length of time required for the reexamination. At that time, in balancing the uncertainty as to the length of time required to complete the reexamination with the current stage of the proceedings, the Court found that the potential delay would likely prejudice Ricoh. However, as the Court indicated during the previous status conference [FN4], the circumstances surrounding the PTO's reexamination of the '432 patent have changed.

> FN4. On December 8, 2006, the Court held a status conference and heard the parties' arguments regarding the pending motion to stay. The Court then permitted the parties to submit additional briefing, which the Court has now considered.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Currently, the PTO's office action indicates that the PTO has specifically *rejected all claims of the '432 patent* and has required Ricoh to respond to the action within two months. The rejected claims include each of the claims at issue in the current case. Additionally, the PTO arrived at is current decision rejecting the claims of the '432 patent relatively quickly-approximately 9 months after initiation of the reinvestigation. Ricoh's responses to the current PTO action are due in just over one month. In light of the PTO's rejection of the specific claims at issue and the PTO's relatively quick turnaround, the Court finds the previous finding of risk of prejudice to be significantly lessened.

*3 Ricoh also makes a vague argument that a stay would be prejudicial to Ricoh's ability to obtain an injunction. Ricoh avers that it is an ASIC market competitor of some of the Customer Defendants and therefore Ricoh would be entitled to an injunction against them. However, as Defendants point out, the '432 patent expires in January 2008. Thus, as a practical matter, even if the case were to proceed to trial, by the time an injunction request is fully considered, the patent will be close to its expiration date. Moreover, Ricoh has indicated that it is not seeking lost profits, but instead is seeking reasonable royalty damages. As a result, the Court finds that a stay would not significantly prejudice Ricoh's potential remedies.

Although not addressed by the parties, the Court notes the risk of prejudice to Defendants if a stay is not issued. Defendants will be forced to potentially litigate a lengthy patent trial and a potential appeal, and possibly be forced to pay significant damages for infringing the exact claims that have already been determined to be invalid by the PTO.

The Court recognizes that a stay will cause further delay in this case. The Court is sensitive to the Ricoh's right to have its day in court. Nonetheless, in light of the respective risk of prejudice to the parties and the speed under which the PTO has conducted its reexamination of the claims at issue, the Court finds this factor weighs in favor of staying the action.

## II. Whether a Stay Will Simplify the Issues in Question and Trial of the Case

Ricoh argues that the reexamination will not simplify the issues in question. Rather, Ricoh argues that proceeding to trial will better simplify the issues because the PTO could apply the doctrine of collateral estoppel based on the factual findings of this Court. Lastly, Ricoh declares that this Court has already found this factor to be neutral. Defendants insist that a court decision in Ricoh's favor will not bind the PTO. Defendants also argue that the circumstances surrounding the reexamination have changed since their last request for a stay.

Courts routinely consider the expertise of the PTO, under which claim validity will be rigorously reevaluated, as an important factor in determining whether to stay its proceedings. *See e.g. Gould,* 705 F.2d at 1342;*GPAC Inc. v. D.W.W. Enter. Inc.,* 144 F.R.D. 60 (D.N.J.1992); *see also Bausch & Lomb Inc. v. Alcon Labs. ., Inc.,* 914 F.Supp. 951, 953 (W.D.N.Y.1996) ("Because the PTO is considered to have expertise in deciding issues of patentability[,] many courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it."). The technical nature of the patent claims in question increases the utility of PTO expertise, which is further amplified by the need to examine prior art and publications not before the PTO during its original patent examination. *See Brown v. Shimano Am. Corp. (BNA),* 18 U.S.P.Q.2d 1496 (C.D.Cal.1991) ("[R]eexamination by the PTO when issues relevant to prior art are involved is especially helpful given the PTO's expertise."). In turn, patent cases not hinging upon the consequences of prior art references have less of a need for the PTO's expertise. *Emhart Indus. v. Sankyo Seiki Mfg.,* 3 U.S.P.Q.2D (BNA) 1889, 1892 n. 3 (N.D.Ill.1987) (distinguishing the matter before it on such grounds, explaining that if "the issue of prior art was involved, the PTO's opinion [would] be invaluable.") (quotation omitted).

*4 In analyzing this factor, the Court again notes that the circumstances surrounding the PTO's reexamination of the '432 patent have changed since Defendants' previous request for stay. The Court's primary concern regarding this factor in denying Defendants' previous request was the unpredictability of the PTO's reexamination proceedings. However, that is no longer an issue for concern. As explained above, the PTO has specifically *rejected each of the '432 patent claims* and has done so in a relatively expeditious manner. As a result the likelihood that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the PTO's reexamination and expertise would assist the Court in determining patent validity, or potentially eliminating the need to try the action, has increased significantly.

Next, the Court addresses the issue of collateral estoppel. Ricoh argues that if the jury finds that the cited prior art does not invalidate the '432 patent, the PTO could find under the doctrine of collateral estoppel that there no longer exists a substantial question of patentability and terminate the reexamination. *See* Manual of Patent Examining Procedure ("MPEP") § 2259. Defendants accuse Ricoh of selectively citing to the MPEP. Defendants point out that § 2259 reads, "MPEP § 2242 and § 2286 relate to the [Patent] Office policy controlling the determination on a request for reexamination and the subsequent examination phase of the reexamination where there has been a Federal Court decision on the merits as to the patent for which reexamination is requested."Section 2286 addresses the actual reexamination proceedings and sets forth the PTO policy on what happens when a court makes a final determination on a patent that is in reexamination:

The issuance of a final Federal Court decision upholding validity during an ex parte reexamination also *will have no binding effect on the examination of the reexamination.*This is because the court states in *Ethicon v. Quigg,* 849 F.2d 1422, 1428[ ] (Fed.Cir.1988) that the Office is not bound by a court's holding of patent validity and should continue the reexamination ....

MPEP § 2286 at § IV (emphasis added). The PTO's procedures, as set forth in § 2286, are in accord with *Ethicon,* where the Federal Circuit noted that the statutory scheme and the different burdens of proof in court and the PTO meant that "[t]he two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions."*Ethicon,* 849 F.2d at 1428 (stating "[t]he doctrine of collateral estoppel does not prevent the PTO from completing the reexamination in this situation. Courts do not find patents 'valid,' only that the patent challenger did not carry the 'burden of establishing invalidity in the particular case before the court' under 35 U.S.C. § 282. Thereupon, the patent simply remains valid until another challenger carries the § 282 burden.

Accordingly, a court's decision upholding a patent's validity is not ordinarily binding on another challenge to the patent's validity in either the courts or the PTO.") (citations omitted); *see also Bausch & Lomb, Inc. v. Alcon Lab., Inc.,* 914 F.Supp. 951, 952 (W.D.N.Y.1996). Thus, neither the MPEP nor binding precedent permit the PTO to simply adopt a court's determination, therefore the reexamination at issue would otherwise proceed.[FN5]As a result, the Court finds Ricoh's collateral estoppel argument unavailing.

> FN5. The Court also notes that the PTO provisions apply to final decisions on the merits. Thus, in order for the trial in this case to have an effect on the reexamination, Ricoh would need to prevail at trial and on appeal. When compared to the simplicity of allowing the reexamination to be completed, the Court finds Defendants' request for a stay to be well taken.

**\*5** The Court also finds that the PTO's reexamination may simplify the issues before this Court. Simplification may occur by the very nature of the reexamination procedure itself, as claims, arguments and defenses can be narrowed or entirely disposed of, preserving the resources of the parties and the court. *See Broadcast Innovation, LLC v. IO Research Pty, Ltd.,* 2006 U.S. Dist. LEXIS 46623 (D.Colo.2006). Here, if the rejected claims are found to be invalid by the PTO, then there will be no basis for the present action. Conversely, if not found invalid, the reexaminationmay result in a narrowing and simplifying of the issues before the Court because the scope of the patent claims, which the PTO may narrow or otherwise limit, controls the outcome of any subsequent infringement analysis. *See e.g., Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1344 (Fed.Cir.2002).

Finally, since it is possible that this Court and the PTO could reach inconsistent conclusions regarding the same patent, there is a significant concern of wasting resources by unnecessarily proceeding to trial. If this Court were to deny the stay and proceed to trial, it is possible that the time, resources, and significant efforts of all those involved in such a trial, including a jury, would be wasted. The risk of potentially inconsistent decisions between this Court and the PTO would not only cause Defendants

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

significant harm (as noted above) but it also would be a tremendous waste of the time and resources of all those involved. For the reasons above and because the reexamination is to be conducted "with special dispatch," the Court finds that this factor weighs in favor of a stay. *See* 35 U.S.C. § 305.

### III. Whether Discovery is Complete and Whether a Trial Date Has Been Set

Ricoh argue against a stay and point out that discovery is closed and this case is currently set for trial. Defendants contend that although the case is set for trial, a large amount of time and a significant amount of resources remain before the parties and the Court are ready for trial.

The proximity of the trial date, by itself, does not preclude entry of a stay. *Broadcast Innovation,* 2006 U.S. Dist. LEXIS at *27. It is not uncommon for courts to have granted stays where discovery has been completed, and when a trial date has been scheduled or is forthcoming. *Id.* (citing *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc.,* 68 U.S.P.Q.2d 1755, 1757 (E.D.Mich.2003); *see also Perricone v. Unimed Nutritional Services, Inc.,* 2002 U.S. Dist. LEXIS 17613, 2002 WL 31075868, *3 (D.Conn.2002) (noting that courts "have granted stays pending reexamination proceedings notwithstanding the well-developed posture of the litigation")). For every court that yields to completed discovery and a looming trial date, another court finds these dates outweighed by other factors-be it the complexity of the suit, the value of PTO expertise, simplification of the issues, lack of hardship to the nonmovant, or the overall burden of duplicitous litigation on the parties and on the court. *Id.* at *28. "Put simply, trial time doesn't always tell the tale."*Id.* (citing *Gould,* 705 F.2d at 1342 (order granting motion to stay proceedings five years into litigation and twenty days before scheduled trial date); *Middleton, Inc. v. Minn. Mining & Mfg.,* 2004 U.S. Dist. LEXIS 16812, at *10 (granting motion to stay proceedings eight years after start of litigation and less than two months before trial); *Loffland Bros.,* 225 U.S.P.Q. at 887 (order granting motion to stay proceedings after significant discovery, rulings on dispositive motions, pretrial conference and setting of initial trial date); *Robert H. Harris Co.,* 19 U.S.P.Q .2d at 1789 (granting stay despite the fact that case was set for trial in less than

a month); *Motson,* 2005 U.S. Dist. LEXIS 34067, 2005 WL 3465664 at *2 (granting stay despite discovery being complete and summary judgment decided).

**\*6** In examining this factor in light of the changed circumstances after the Court's ruling on Defendants' previous motion to stay, the Court finds that a stay is appropriate. Undoubtably the parties have spent considerable time and resources thus far-substantial discovery has been conducted and the parties have submitted witness lists and lengthy summary judgment motions. Yet far more time and resources remain to be spent before this matter is concluded. Not only must the Court hear the pending motions for summary judgment, but the parties must also begin to prepare for trial by finalizing deposition designations, preparing witnesses, finalizing jury instructions, drafting and preparing motions in limine, drafting and exchanging witness and exhibit lists, and preparing arguments. Defendants argue that neither the Court nor the parties should expend additional resources when it is uncertain which, if any, of the claims will survive the reexamination process. Given the PTO's initial rejection of each of the relevant claims, the reexamination proceedings may well alter, moot, or resolve the issues set for trial. Staying the trial pending conclusion of the PTO's review will eliminate the additional expense of trial preparation and the risk of inconsistent rulings.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Synopsys and the Customer Defendants' Motion for a Stay. Because the PTO's reexamination and current rejection of the claims may materially affect the issues in this case, the Court will grant the motion to stay. The case is stayed pending a disposition of the PTO's reexamination of the '432 patent and the relevant claims. All pending motions will be denied without prejudice; the parties may refile them following the stay and upon the entry of a new scheduling order, if applicable.

**IT IS SO ORDERED.**

N.D.Cal.,2006.
Ricoh Co., Ltd. v. Aeroflex Inc.
Slip Copy, 2006 WL 3708069 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**H**Visto Corp. v. Research in Motion Ltd.
E.D.Tex.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. Texas,Marshall
Division.
VISTO CORP.,
v.
RESEARCH IN MOTION LTD., et al.
**No. 2:06-CV-181-TJW-CE.**

Sept. 28, 2007.

Samuel Franklin Baxter, McKool Smith, Marshall,
TX, Brett Maurice Charhon, Erick Scott Robinson,
Gary Scott Kitchen, Jamie Mozola Shouse, Jill
Frances Lynch, Martin C. Robson, III, Theodore
Stevenson, III, William Ellsworth Davis, III, McKool
Smith, Dallas, TX, Eugene L. Hahm, Imran A.
Khaliq, James Bruce McCubbrey, Robert D. Becker,
Ronald S. Katz, Shawn G. Hansen, Manatt Phelps &
Phillips LLP, Palo Alto, CA, Michael Steven Perez,
Peter John Ayers, Steven John Pollinger, McKool
Smith, Austin, TX, for Visto Corp.
Harry Lee Gillam, Jr., Gillam & Smith, LLP,
Marshall, TX, Christopher R. Liro, Jamie H. McDole,
Linda S. Debruin, Michael A. Parks, William E.
Devitt, Kirkland & Ellis LLP, Chicago, IL, Eric
Hugh Findlay, Ramey & Flock, Tyler, TX, Joe W.
Redden, Jr., Beck Redden & Secrest LLP, Houston,
TX, for Research in Motion Ltd. and Research in
Motion Corporation.

### MEMORANDUM ORDER

CHARLES EVERINGHAM, IV, United States
Magistrate Judge.
*1 Pending before the court is the defendants' motion
(# 45) to **stay** the case pending *ex parte* patent
**reexamination** proceedings. For the reasons
discussed below, the court denies the defendants'
motion.

### 1. Introduction

Visto Corp. ("Visto") filed suit on April 28, 2006,
against the defendants Research in Motion Ltd. and

Research in Motion Corp. (collectively, "RIM") for
infringement of U.S. Patent Nos. 6,023,708 ("the '708
patent"), 6,085,192[FN1] ("the '192 patent"), 6,151,606
("the '606 patent"), and 6,708,221 ("the '221 patent").
On March 5, 2007, the court granted RIM leave to
amend its complaint to add a declaratory judgement
claim that Visto's U.S. Patent No. 7,039,679 ("the
'679 patent")[FN2] is invalid and not infringed by RIM.
Before the instant suit was filed, the '708 patent was
the subject of an on-going *ex parte*reexamination
proceeding before the U.S. Patent and Trademark
Office ("PTO"). Since the inception of this litigation,
an *ex parte*reexamination proceeding has been
instituted with respect to each of the four other Visto
patents at issue in this action.

> FN1. As amended by the November 22,
> 2005, **Reexamination** Certificate.

> FN2. All of the Visto patents in this action
> are collectively referred to as "the Visto
> patents-in-suit."

### 2. Discussion

"The district court has the inherent power to control
its own docket, including the power to **stay**
proceedings."*Soverain Software LLC v. Amazon.com,
Inc.,* 356 F.Supp.2d 660, 662 (E.D.Tex.2005)
(citations omitted). Management of the court's docket
requires "the exercise of judgment, which must
weigh competing interests and maintain an even
balance."*Landis v. North American Co.,* 299 U.S.
248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

Courts typically consider three things when deciding
whether to **stay** litigation pending **reexamination**:
"(1) whether a **stay** will unduly prejudice or present a
clear tactical advantage to the nonmoving party, (2)
whether a **stay** will simplify the issues in question
and trial of the case, and (3) whether discovery is
complete and whether a trial date has been
set."*Soverain Software LLC,* 356 F.Supp.2d at 662
(citation omitted).

### A. Prejudice and Tactical Advantage

Visto and RIM compete in the wireless email communication market. The PTO has not provided any definitive guidance on the length of time required for the **reexamination** proceedings. Accordingly, the potential delay for an indefinite period will likely prejudice Visto. *See Ricoh Co., Ltd. v. Aeroflex, Inc.,* 2006 WL 3708069, *2 (N.D.Cal. Dec.14, 2006); *Lexington Lasercomb I.P.A.G. v. GMR Products, Inc.,* 442 F.Supp.2d 1277, 1278 (S.D.Fla.2006).

### B. Simplification of Case

Although RIM argues that the patent claims will likely materially change or cancel during **reexamination**, it is also likely that some claims will remain after the **reexamination** proceedings have completed. For example, the '192 patent has already reissued from one **reexamination** proceeding, only to be sent back into another **reexamination** proceeding at the request of RIM. Accordingly, waiting for the completion of the **reexamination** proceedings may only simplify the case to a limited degree. This factor is speculative. Therefore it does not support a **stay**.

### C. Stage of Proceedings

**\*2** The present motion was filed early in the case, and this factor would support a **stay** of proceedings.

### 3. Conclusion

The court has considered the competing interests and concludes that the interest in proceeding with this case outweighs any benefits from staying this case. Accordingly, the court exercises its discretion and denies the defendant's motion (# 45) to **stay** pending **reexamination**.

E.D.Tex.,2007.
Visto Corp. v. Research in Motion Ltd.
Slip Copy, 2007 WL 2900478 (E.D.Tex.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.