**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NET JUMPER SOFTWARE, L.L.C.
a Michigan limited liability corporation,

        Plaintiff/Counterclaim       Civil Action No. 04-70366-CV
        Defendant,                      District Judge Julian Abele Cook, Jr.

   v.                                   Magistrate Judge R. Steven Whalen

GOOGLE INC.,
a Delaware corporation

        Defendant/Counterclaim
        Plaintiff.

_____/

| | |
|---|---|
| Andrew Kochanowski<br>SOMMERS SHWARTZ, PC<br>2000 Town Center, Suite 900<br>Southfield, MI  48075 | Kathleen A. Lang (P34695)<br>L. Pahl Zinn (P57516)<br>DICKINSON WRIGHT PLLC<br>500 Woodward Avenue, Suite 4000<br>Detroit, MI 48226-3425<br>(313) 223-3500 |
| Michael H. Baniak<br>Gary E. Hood<br>MCDONNEL BOEHNEN HULBERT &<br>BERGHOFF, LLP<br>300 South Wacker Drive<br>Chicago, IL 60606 | Frank E. Scherkenbach<br>FISH & RICHARDSON P.C.<br>225 Franklin Street<br>Boston, MA 02110-2804 |
| *Attorneys for NetJumper Software, L.L.C.* | Howard G. Pollack<br>FISH & RICHARDSON P.C.<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063 |
| | Jason W. Wolff<br>FISH & RICHARDSON P.C.<br>12390 El Camino Real<br>San Diego, CA 92130-2081 |
| | *Attorneys for Google Inc.* |

**REPLY BRIEF IN SUPPORT OF GOOGLE'S MOTION TO RESET THE TRIAL DATE
AND TO STAY PENDING RESOLUTION OF REEXAMINATION PROCEEDING
BEFORE THE UNITED STATES PATENT AND TRADEMARK OFFICE, OR IN THE
ALTERNATIVE TO CONTINUE THE TRIAL DATE TO LATE SEPTEMBER OR
EARLY OCTOBER**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | SUMMARY OF REPLY | 2 |
| II. | A STAY IS WARRANTED HERE | 5 |
|  | A. A stay pending reexamination simplifies the case. | 6 |
|  | B. Discovery is not complete | 8 |
|  | C. Delay will not prejudice NetJumper | 10 |
| III. | ALTERNATIVELY, A CONTINUANCE IS WARRANTED | 11 |
| IV. | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cooper Technologies Co. v. Thomas & Betts Corp.*,
 2008 WL 906315 at *1 (E.D. Tex. 2008) ............................................................................ 7

*Donnelly Corp. v. Guardian Indus.*,
 2007 WL 3104794, Case No. 05-74444 (E.D. Mich. Oct. 22, 2007) ................................ 7

*IMRA America Inc. v. IPG Photonics Corp.*,
 Case No. 2:06-cv-1539 (E.D. Mich. Apr. 3, 2008) ............................................................ 7

*In re: Civility Principles*,
 Administrative Order No. 08-AO-009 (E.D. Mich. January 23, 2008) ............................. 2

*Magna Donnelly Corp. v. Pilkington North Am., Inc.*
 2007 WL 772891, 4:06-cv-126 (W.D. Mich. Mar. 12, 2007) ........................................... 7

*Visto Corp. v. Research In Motion Ltd.*,
 2007 WL 2900478 at *1 (E.D. Tex. 2007) ......................................................................... 7

I.    **SUMMARY OF REPLY**

NetJumper's opposition presents four basic arguments. None justify a potentially unnecessary trial, let alone one commencing on July 22 in the absence of any expert discovery.[1]

First, NetJumper feigns surprise that Google filed its motion just "six weeks before trial," despite the Court having set the trial date just two weeks earlier. As Google noted in its opening brief, and NetJumper does not dispute, this two week delay was due to Google waiting on counsel for NetJumper to respond to Google's prompt request for a stipulated continuance, which counsel for NetJumper intimated was a possibility, so as to avoid burdening the Court with motion practice. (*See* Google Br. (Dkt. No. 116) at fn 4; *see also In re: Civility Principles*, Administrative Order No. 08-AO-009, Attorneys' Responsibilities to the Court at #7 (E.D. Mich. January 23, 2008))

Second, NetJumper objects that the parties have long known about the expert discovery deadline because of the scheduling order, suggesting that, with that deadline now passed, it is inappropriate for Google to rely on the need for expert discovery as justification for a stay or continuance. Missing from NetJumper's papers is any mention that the parties had an operating agreement that, for obvious reasons, expert discovery would be completed **after** the Court issued its claim construction order, which issued just weeks before the Court set the trial date. (*See* Exhibit 12 (letter to Kochanowski from Wolff regarding expert discovery dated September 11, 2006) ("…timing of these events for after the claim construction order") NetJumper repeatedly told Google that expert discovery should be postponed until it received further direction from the Court, to wit:

---

[1] Google's damages expert, Barbara Luna, just informed counsel for Google that she expected to be testifying in a trial that commences on July 8 in Los Angeles in August, but that she just learned she will be scheduled to testify on July 22-23 instead. This inhibits not only her preparation, but her ability to listen to and comment on the testimony of witnesses, including NetJumper's damages expert, as the Google trial is proceeding because she will not arrive in Detroit until July 24, two days after the trial commences.

> Andy sent a letter to the Court on 9/19 on which you were carbon copied seeking direction as to how to proceed given the circumstances. It is our position that all depositions should be postponed until we find a liability expert to get back on track. Accordingly, we would like to postpone the depositions of Dr. Luna and Steckel. We ask that Phil Green's deposition also be adjourned until we can put together one solidified scheduling order after a status conference with the Court and after we identify a new expert. I don't see how this plan would prejudice Google in any way, but please advise as to your thoughts.

(Exhibit 15 (email to Wolff from Hamameh dated September 21, 2006))  NetJumper also conveniently neglects to mention, while holding up as sacrosanct the scheduling order, that NetJumper itself served two reports by Mr. Kitchen on infringement and validity in August 2007 - nearly a year *after* the court ordered deadline for expert discovery.  In view of the unfortunate and unforeseen death of NetJumper expert, NetJumper itself therefore understandably acted as if the prior scheduling order no longer in substance applied, and Google just as understandably cooperated, expecting both parties to be reasonable about completing discovery under the circumstances.  In effect, NetJumper wants to ignore the scheduling order to justify the filing of Mr. Kitchen's untimely reports, but rely on that scheduling order to preclude Google from taking depositions of the experts.  NetJumper cannot have it both ways.

Third, NetJumper objects that all the third party witnesses should have known that the trial date was imminent and should have indefinitely held their schedules open based on the possibility of trial being set at any moment.  This position is untenable and ignores the real and undisputed prejudice to Google if these witnesses cannot attend the trial, as well as the burden and inconvenience on the third party witnesses who apparently must suspend their work and personal lives for a matter they have no personal interest in.

Lastly, NetJumper argues it will be prejudiced because "it is a small company with limited resources."  This is misdirection.  NetJumper is not really a "small company," it is a nonexistent company (Exhibit 7 (Dkt. No. 116-9)), and to the extent it does exist and has "limited resources" that is because it is the undercapitalized alter ego of Gilbert Borman.  And while NetJumper suggests that the cost of this litigation over the past four years is driving its need for a trial nine weeks earlier than what Google has proposed, it neglects to tell the Court

that NetJumper did not sue Google until nearly over three years after the Google Toolbar was launched and after NetJumper ceased any real operations.

Even so, regarding costs, trial will be the single largest expense of this litigation – and the trial itself may potentially be an unnecessary expense in view of the results of the reexamination proceedings given the substantial likelihood that the reexamination of the '172 patent will result in a modification or cancellation of the claims, which happens approximately 75% of the time, a trial now, before the reexamination process runs its course, would make this case even more expensive and time consuming for all involved, including the Court and the non-party witnesses. NetJumper has no active business and any injury caused by the alleged infringement (in the unlikely event injury is found) can be wholly compensated by royalty damages and interest. In other words, NetJumper is hardly going to be harmed by a stay pending the reexamination, nor would it be harmed by a short continuance to accommodate third party witnesses, Google's counsel, and the substantial amount of work (including expert discovery) that remains to be done. Indeed, fear of the outcome of the reexamination, and an opportunity to handicap Google's defense, is what is driving NetJumper's new-found zeal for trial.

In short, NetJumper uses the recently set trial date, the death of its expert, and the obsolete scheduling order to its tactical advantage so as to deprive Google access to discovery and witnesses. This is manifestly unfair. Money damages are an adequate remedy here, and a stay is appropriate in view of the removal of the accused Next & Previous buttons and the likely cancellation or modification of the patent by reexamination.[2] If the Court opts not to stay the

---

[2] NetJumper does not dispute that approximately 75% of all reexaminations result in cancellation or modification of the claims. NetJumper simply notes that of the 75%, 12% result in a **total** cancellation of the claims. (NetJumper Opp. (Dkt. No. 119) at 7) NetJumper ignores that 63% of all reexaminations result in a modification of the claims, triggering intervening rights and thus no liability. In this regard, NetJumper does not dispute that the Next & Previous buttons are no longer being developed and have been removed from the most current development efforts for the Google Toolbar. Instead, it notes that the 2007 version of the Toolbar for Firefox does still have the buttons. This is correct: old versions of the Toolbar do still have them (for now). Google's point is that development stopped because the buttons have been discontinued as documents it produced in 2007 show. NetJumper does not dispute this with regard to the Toolbar for Internet Explorer. (Google notes that the Toolbar for Firefox accounts for 3.6% of NetJumper's alleged damages; Internet Explorer accounts for 96.4%.) This is, of course,

4

case pending the reexamination, Google respectfully requests a nine-week continuance of the trial date so as to avoid any undue prejudice on Google.

## II. A STAY IS WARRANTED HERE

The reexamination is substantially under way at the USPTO. It has been pending for over eight months now, the USPTO found substantial new questions of patentability raised by nine different invalidating prior art references, and the USPTO assigned the case to an examiner who has indicated further action by the USPTO is imminent. (*See* Exhibit 1 (Dkt. No. 116-3); Exhibit 8 (Dkt. No. 116-10); Wolff Declaration (Dkt. No. 117) ¶ 1)) There are only two independent claims in this case, which are essentially mirror images of each other, meaning there is basically one base claim. The USPTO only needs to find that one of these nine references, each already independently considered by the USPTO presents a substantial new question of patentability, to invalidate the one base claim. (*See* Exhibit 1 (Dkt. No. 116-1)) Unlike the typical context where a stay is sought, Google last year discontinued development of the Next & Previous buttons in its Toolbar, the latest version for Internet Explorer (Version 5) has already been released without these buttons, and the latest version for Firefox, also with these buttons removed, is scheduled to be released within a week of this filing. Given the high percentage of claims that are modified or cancelled by reexamination, the sheer number of anticipatory prior art references before the USPTO, and the fact that the alleged infringing buttons are no longer part of the active development of the Toolbar product, this case is at best for NetJumper a damages and prejudgment interest case. More likely it is an intervening rights case (meaning Google will have no liability at all because the claims will at least be changed in reexamination) or the case will be entirely moot if the USPTO invalidates the claims, meaning that there would be no need for the Court, the parties, a jury, and the non-party witnesses to waste any more time on this matter. It is hardly in the public interest or the fair and orderly administration of justice

---

because NetJumper is using a 2007 version of the Toolbar for Firefox. The 2008 version, which will be formally released coincident with the third party Mozilla Firefox browser (slated for release June 17) does not have the alleged infringing buttons, as the attached screenshots show. (*See* Exhibit 13 (screenshots of the most recent 2008 Toolbar for Firefox))

to rush to trial under these circumstances. A stay would simplify the case, as discovery is not complete (and may in fact not even be necessary), and there would be no prejudice to NetJumper because money damages and prejudgment interest adequately protect the sole alleged prejudice.

### A. A stay pending reexamination simplifies the case.

Given that the claims are amended or cancelled in 75% of reexaminations, and that any amendments to the claims will result in intervening rights, there is a high likelihood that reexamination will either result in substantive changes to the validity and infringement issues or obviate the need for a trial at all.[3] In view of the high number of prior art references that the USPTO found raised substantial new questions of patentability, the odds are better here. A stay would result in substantial savings to the Court, as it would not have to deal with pretrial papers or take time away from other pressing matters; to non-party witnesses and jury members, who would not have to be inconvenienced by a trial of a case that would, at best, need to be retried; and to the parties, who would not have to bear the time and expense of trial. Furthermore, even if only a few claims are eliminated, that would still reduce the number of issues for resolution for trial and simplify the case. And even if all the claims are affirmed as they are presently drafted, which occurs in less than a quarter of reexaminations, the USPTO's consideration of those prior art references and NetJumper's response to any USPTO action would clarify and possibly eliminate disputes between the parties regarding the scope of the claims and the content and import of the prior art. Under these circumstances, a stay results in far better and more economical use of the Court's time and the public and party resources, especially given that money damages (and prejudgment interest to cover any delay) adequately to compensate any

---

[3] In light of NetJumper's rhetoric about "blatant infringement," is important to note that Google believes, and has always believed, that the claims in their present form are not infringed by the accused Next & Previous buttons. Indeed, in view of the Court's recent claim construction, Google does not believe NetJumper can prove infringement. Google pointed this out to NetJumper's counsel in a letter to which Google received no response. (Exhibit 9 (Dkt. No. 116-11)) Even if the claims survive reexamination in some form, it is highly likely they will be even more narrowed, resulting in either intervening rights, further grounds for non-infringement, or both.

alleged infringement for a feature which has been discontinued and a patentee that has no real operations. (*See* Exhibit 7 (Dkt. No. 116-9))

While NetJumper makes its own arguments regarding simplification, it does not actually dispute much of what Google argues. For instance, NetJumper cites several non-binding Eastern District of Texas cases where stays were denied in different circumstances, but even that court noted that reexamination would simplify issues in the case.[4] NetJumper almost altogether ignores the cases cited by Google, in particular the Eastern District of Michigan *IMRA America* case, which granted a stay even where the USPTO had not yet found substantial new questions of patentability on the grounds that it would simply issues for trial. (*See* Google Br. (Dkt. No. 116) at 9; Exhibit 11 (Dkt. No. 116-6)) In essence, NetJumper's only response is that there is a chance that the issues will not be simplified, misleadingly suggesting that the possibility of simplifying the case occurs in only 12% of reexaminations. To arrive at this statistic, NetJumper focuses only on cases where the claims are eliminated *entirely*. It ignores the other 63% of cases where the claims are *modified* and intervening rights apply. Adding the two means that simplifying the case for trial or obviating it altogether occurs in 75% of the cases, not 12%.

NetJumper also asserts that Google has not "offered" to be bound by the "outcome" of the reexamination. (NetJumper Opp. (Dkt. No. 119) at 7) But courts routinely stay cases without such a requirement, for good reason. *See Donnelly Corp. v. Guardian Indus.*, 2007 WL 3104794, Case No. 05-74444 (E.D. Mich. Oct. 22, 2007) (Dkt. No. 116-5); *IMRA America Inc. v. IPG Photonics Corp.*, Case No. 2:06-cv-1539 at Dkt. No. 65 (E.D. Mich. Apr. 3, 2008) (Dkt. No. 116-6); *Magna Donnelly Corp. v. Pilkington North Am., Inc.* 2007 WL 772891, 4:06-cv-126 (W.D. Mich. Mar. 12, 2007) (Dkt. No. 116-13). This authority reflects the reality that reexamination at the USPTO is limited to certain types of prior art, namely printed publications, and does not take into account other kinds of art, including actual commercially available

---

[4] *See Cooper Technologies Co. v. Thomas & Betts Corp.*, 2008 WL 906315 at *1 (E.D. Tex. 2008) and *Visto Corp. v. Research In Motion Ltd.*, 2007 WL 2900478 at *1 (E.D. Tex. 2007) (while ultimately denying a stay without much substantive discussion of the particulars of the

software products and witness testimony, which Google would rely upon at trial in this case if the reexamination based on the printed prior art before the USPTO does not completely eliminate the claims.

### B. Discovery is not complete

Contrary to NetJumper's revisionist assertions, discovery, particularly expert discovery, is not complete. The previous scheduling order extended expert discovery to September 30, 2006. However, just three weeks before then, days before he was scheduled to be deposed by Google, NetJumper's expert Dr. Galler died. (Exhibit 14 (letter to Court from Kochanowski dated September 19, 2006)) While NetJumper states in its brief that Dr. Galler was deposed, the statement is misleading. Dr. Galler was not deposed in connection with his expert reports; those reports were served months *after* Dr. Galler's deposition on a *different* declaration. (*See* NetJumper Opp. (Dkt. No. 119) at fn 1) Remarkably, NetJumper's position *now* is not what it told the Court on September 19, 2006 when it sought to delay discovery -- then Mr. Kochanowski wrote:

> "Because Dr. Galler's death was so unexpected, no one preserved his testimony regarding his invalidity opinions. Therefore, even if Plaintiff wishes to use his report, there is no sworn testimony under oath that can be used at trial with respect to his liability rebuttal report."

(Exhibit 14) Moreover, as noted above, Mr. Kitchen not only served his own expert reports in August 2007, long after the September 2006 discovery cutoff, but he also adopted Dr. Galler's reports, requiring Google to examine Mr. Kitchen not only on everything he said, but everything Dr. Galler said too. Thus, despite Dr. Galler's untimely death, his reports, and the number of reports in this case, have only grown, and here there are hundreds of pages of expert reports and exhibits to explore in deposition. (*See* Google Br. (Dkt. No. 116) at 6 (listing numerous reports))[5]

---

case, such as where the reexaminations were in the process and whether the product had been discontinued, both acknowledged a stay may simplify the issues).

[5] At footnote 1 of its brief, NetJumper states that "Google [does] not intend to use Joel Steckel" who is Google's survey expert. This is an incomplete representation of counsel's remarks

As for NetJumper's statement that its experts "have always been available," this is an inaccurate characterization of events. Time and again counsel for NetJumper refused to allow Google to take NetJumper's expert's depositions until it ultimately agreed, after Dr. Galler's death, to postpone the discovery until further direction from the Court. NetJumper said:

- "It is [NetJumper's] position that <u>all depositions should be postponed</u> until we find a liability expert to get back on track. Accordingly, we would like to postpone the depositions of Dr. Luna and Steckel. We ask that Phil Green's deposition also be <u>adjourned until we can put together one solidified scheduling order after a status conference with the Court</u> and after we identify a new expert. <u>I don't see how this plan would prejudice Google in any way</u>" (Exhibit 15 (email to Wolff from Hamameh dated September 21, 2006 (emphasis added)))

- "[NetJumper] will assume all depositions--Green, Luna, Steckel, Hardin--will be <u>postponed until we get further order from the Court</u> as to how things will proceed." (Exhibit 16 (email to Wolff from Hamameh dated September 22, 2006 (emphasis added)))

- "<u>It is best if [all parties] hold off on all depositions until we get further direction from the Court and establish new deadlines for expert discovery</u>." (Exhibit 16 (email to Wolff from Hamameh dated September 25, 2006 (emphasis added)))

The subject expert depositions Google now seeks were timely noticed for deposition but NetJumper canceled them in lieu of an event that never happened – namely, NetJumper requesting further direction from the Court.[6] (*See* Exhibit 15) And now, after NetJumper repeatedly turned back Google's attempts to complete discovery, and Google accommodated NetJumper's request to postpone the depositions because of the death of NetJumper's liability expert, NetJumper seeks to capitalize on the professional courtesy and civility Google extended by accommodating the delay NetJumper itself sought when its case was in disarray due to an unforeseen event.

---

during their call last month. Google intends to rely upon actual usage data, which it located and promptly produced in 2007, in lieu of Dr. Steckel's report and testimony. If NetJumper opposes the use of the actual data, then Google does intend to use Dr. Steckel's at trial.

[6] NetJumper's technical expert, Dr. Galler was scheduled for deposition on September 19, 2006. (Exhibit 17 (email to Hamameh from Wolff dated August 21, 2006)) NetJumper's damages expert, Mr. Green, was scheduled for deposition on September 26, 2006. (Exhibit 16)

NetJumper does not dispute the scheduling hardship a July 22 trial presents for Google's technical expert, Prof. Hardin, given the extremely limited time he would have to prepare.[7] NetJumper also does not dispute the scheduling issues with non-party fact witnesses. Rather, NetJumper focuses on Russell Beale, who NetJumper complains is not specifically named in Google's witness list. As the Wolff Declaration notes, Professor Beale, who is prominently identified on the first page of a prior art reference on which Google has long relied, falls under category 9 in its list, which are witnesses to be called only if necessary to establish the status of a reference as prior art if challenged by NetJumper. (*See* NetJumper Exhibit 2 (Dkt. No. 119-4) at #9)

Lastly, the inconsistency of NetJumper's positions on discovery in its opposition is notable and indicative of gamesmanship. On the one hand, NetJumper cites Google's recent letter attempting to schedule depositions in the limited time that remains as evidence that expert discovery could be completed before trial. (NetJumper Opp. (Dkt. No. 119) at 5) But NetJumper never responded to this letter, has not cooperated in scheduling discovery, and does not indicate whether it will offer the expert depositions on the dates requested or any other date prior to trial. Nor does NetJumper say whether it will permit Professor Mendelson's deposition to go forward. On the other hand, NetJumper argues that the scheduling order **prohibits** any more discovery. (*Id*. at 1 ("discovery cut-off … ha[s] long passed")) The Court should see this for what it is.[8]

### C. Delay will not prejudice NetJumper

NetJumper lastly argues that it will be prejudiced because it has been "forced to expend significant time and economic expenses." It does not say what these are, but this case has hardly

---

[7] Google refers to its fn 1 identifying the hardship and prejudice regarding Dr. Luna.
[8] Presumably, NetJumper will have no objection to hearing Mr. Harawitz's testimony regarding the prior art for the first time at trial given the hard line it now draws regarding discovery. Of course, if the line truly is as hard as NetJumper suggests, then the Court should also not permit NetJumper to offer the expert reports of Mr. Kitchen that were not provided either within the time allowed to serve expert reports or before the expert discovery period closed. On the other hand, Google believes that the eventual trial will be more efficient and understandable for the

been highly active, nor has NetJumper been aggressively pushing for a trial date. In fact, NetJumper worked hard to avoid further discovery until this Court gave guidance on how it should be done, or until the claim construction order was issued. (*See* Exhibits 15-16 and excerpts above) While it asserts now that time is of the essence, NetJumper waited nearly a year to replace its liability expert Dr. Galler and serve new expert reports on infringement and validity from Mr. Kitchen. NetJumper fails to make any showing of the alleged prejudice that would befall it – an essentially nonexistent company with no employees and no product that simply exists to litigate this case.[9] (Exhibit 7 (Dkt. No. 116-9) ("NetJumper once employed several people but is no longer active. 'Right now, NetJumper is we're [sic] a lawsuit at this point,' Borman said.")) Given that NetJumper has no operations it is hard to imagine how the sole alleged prejudice of financial hardship applies.[10] As noted above, should NetJumper actually prevail at trial, prejudgment interest is designed to remedy precisely this sort of delay in accounting.

### III. ALTERNATIVELY, A CONTINUANCE IS WARRANTED

NetJumper's response regarding a continuance is simply to rehash its assertions that Google has somehow been dilatory in its own discovery. As noted above, the expert discovery situation is of NetJumper's creation, as it would not permit the requested depositions to go forward, preferring instead to engineer an effective stay of discovery while it awaited further direction from the Court and the claim construction order. (*See* Exhibits 12, 15-16) NetJumper

---

jury if both parties have the opportunity to take reasonable and necessary depositions beforehand.

[9] NetJumper cites to "recent statistics" apparently showing that the pendency of reexaminations today as compared to 1999 has increased, but it does not provide those statistics. (*See* NetJumper Opp. (Dkt. No. 119) at fn 2) It also does not address the "special dispatch" of litigation related reexaminations and changes in the USPTO cited in Google's opening brief. (*See* Exhibit 2 (Dkt. No. 116-4))

[10] NetJumper tries to deflect attention from the lack of real prejudice by faulting Google for "delay" in seeking a stay. But Google appropriately waited until the USPTO in fact declared a substantial new question of patentability, and in light of assurances from the USPTO examiner that a substantive office action on the claims was imminent. (Wolff Declaration (Dkt. No. 117) at ¶ 1)

11

also does not challenge any of the hardships noted regarding non-party witnesses, other than to argue that Russell Beale's name was not on Google's witness list as noted above.

NetJumper suggests that Google should have known that trial was imminent and that its third party witnesses should have held their schedules open indefinitely. This argument is not realistic at all, and demeans the substantial hardship placed on non-party fact witnesses and other non-career litigation experts who do not rely on legal proceedings as their sole source of income. The logistics of coordinating a trial in a high technology patent dispute over technology that is 13 years old, with witnesses strewn about the United States, Canada, and England simply does not lend itself to such short order notice of trial.[11] Nor does NetJumper dispute that the absence of these witnesses would prejudice Google's ability to present its invalidity defenses in a complete manner before the jury, with the testimony of the individuals who actually created, used and sold the prior art computer software products that pre-date and invalidate NetJumper's patent claims.

Although Google firmly believes that this case warrants a stay, if the Court is disinclined to grant one, Google urges the Court to, at the very least, order a two-month continuance to avoid undue hardship on Google, its counsel, its experts, and its non-party witnesses. As noted above, a delay due to a stay would not prejudice NetJumper. Nor would there be any prejudice to NetJumper should the trial date be continued by two months, particularly given NetJumper's failure to make any showing that such a short delay would prevent any of NetJumper's anticipated witnesses or counsel from appearing and participating in the trial at that time.

---

[11] Google is particularly disappointed with footnote 4 in NetJumper's opposition brief, which ignores the professional courtesy and civility extended to NetJumper upon learning of the death of NetJumper's expert Dr. Galler. In its footnote, NetJumper states that Google "demonstrated a complete lack of regard" for third party witnesses during the case, which is simply untrue. The single example for this personal attack is Mr. Bhatnagar's deposition. In 2005, after Mr. Bhatnagar was represented by Mr. Kochanowski, he mistakenly appeared for a deposition because he was not informed by his own lawyer, Mr. Kochanowski, that the deposition had been rescheduled by Mr. Kochanowski to a different date to accommodate Mr. Kochanowski's schedule. (Exhibit 18 (email to Wolff from Bhatnagar dated November 12, 2004 informing Google that NetJumper's lawyer, Mr. Kochanowski, represented him); *see* Exhibit 19 (letter to Hamameh from Wolff dated December 22, 2004, see the second page where NetJumper said it would offer new dates for Mr. Bhatnagar's deposition))

## IV.   CONCLUSION

For the reasons set forth above, Google respectfully requests that the Court stay this case until reexamination proceedings have concluded, or alternatively continue the trial date for approximately nine weeks.[12]

Dated: June 13, 2008

Respectfully submitted,
FISH & RICHARDSON P.C.

By: /s/ Jason W. Wolff
12390 El Camino Real
San Diego, CA 92130
wolff@fr.com

*Attorneys for GOOGLE INC*.

---

[12] If the court is not inclined to grant a stay, but is favorably inclined to grant a continuance, counsel for Google respectfully requests the Court hold a telephonic status conference to discuss the specific schedule in view of the fact that lead trial counsel for Google is also presently scheduled for trials during the periods of September 2-12, October 27-November 7, and December 1-8, 2008.

13

# CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2008, I electronically filed Defendant Google Inc.'s REPLY BRIEF IN SUPPORT OF GOOGLE'S MOTION TO RESET THE TRIAL DATE AND TO STAY PENDING RESOLUTION OF REEXAMINATION PROCEEDING BEFORE THE UNITED STATES PATENT AND TRADEMARK OFFICE, OR IN THE ALTERNATIVE TO CONTINUE THE TRIAL DATE TO LATE SEPTEMBER OR EARLY OCTOBER, together with its attached Exhibits, with the Clerk of the Court using the ECF system, which will send notice of such filing upon the following attorneys: ANDREW KOCHANOWSKI and MICHAEL H. BANIAK.

By: /s/ Jason W. Wolff
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
(858) 678-5070
wolff@fr.com